# **EXHIBIT A**

ALLIED SYSTEMS HOLDINGS, INC.

Page 1

```
 1  UNITED STATES BANKRUPTCY COURT
 2  DISTRICT OF DELAWARE
 3  Case No. 12-11564(CSS)
 4  Adv. Case No. 13-50330(CSS)
 5  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
 6  In the Matter of:
 7
 8  ALLIED SYSTEMS HOLDINGS, INC.,
 9  et al.,
10           Debtors.
11  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
12  THE OFFICIAL COMMITTEE OF UNSECURED
13  CREDOTIRS OF ALLIED SYSTEMS HOLDINGS,
14  INC., and its affiliated debtors,
15
16            Plaintiffs,
17        v.
18
19  YUCAIPA AMERICAN ALLIANCE FUND I,
20  L.P., YUCAIPA AMERICAN ALLIANCE
21  (PARALLEL) FUND I, L.P., YUCAIPA
22  AMERICAN ALLIANCE FUND II, L.P.,
23  YUCAIPA AMERICAN ALLIANCE
24  (PARALLEL) FUND II, L.P., MARK J.
25  GENDREGSKE, JOS OPDEWEEGH, JAMES
```

ALLIED SYSTEMS HOLDINGS, INC.

Page 2

1  FRANK, DEREX WALKER, JEFF

2  PELLETIER, IRA TOUCHNER, and

3  JOSEPH TOMCZAK,

4

5           Defendants.

6  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

7

8                       United States Bankruptcy Court

9                       824 North Market Street

10                      Wilmington, Delaware

11

12                      April 9, 2013

13                      1:06 P.M.

14

15

16

17  B E F O R E :

18  HON CHRISTOPHER S. SONTCHI

19  U.S. BANKRUPTCY JUDGE

20

21

22

23

24

25  ECR OPERATOR:  LESLIE MURIN

Case 13-50530-CSS    Doc 141-1    Filed 05/13/13    Page 4 of 9
ALLIED SYSTEMS HOLDINGS, INC.

Page 3

1  HEARING re Motion to Dismiss in Adversary Proceeding No.
2  13-50530
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Dawn South

Page 31

1  not alleged harm to the company.  Frankly, that's just
2  simply wrong.
3            As an initial matter the fact of the matter is as
4  we know the third amendment was never performed.  Yucaipa
5  acquired debt, it never made a capital contribution, it
6  proceeded to exercise rights that it was never entitled to
7  do as we now know as a result of the fact the fourth
8  amendment was found to be invalid and void ab initio.
9            As a result of these amendments and the failure to
10  perform the company itself was embroiled in years of
11  litigation, not only did that years of litigation cost
12  millions of dollars in legal fees to be spent by the company
13  to litigate on behalf of Yucaipa, but in addition of those
14  millions of dollars in fees the company was forced to spend
15  millions of dollars in fees for Yucaipa to negotiate
16  agreements that as we now know it never had any intention to
17  perform, and with respect to the fourth amendment was void
18  from the very day it was originally proffered and then
19  ultimately -- I guess you would say purportedly enacted.
20            So the statement that we haven't alleged any harm
21  with respect to those isolated incidents -- and I'll talk a
22  little bit more about how the attempts by Mr. Gendregske to
23  parse out little pieces and say no harm or this doesn't --
24  doesn't work.  The complaint needs to be read as a whole.
25            But the fact of the matter is, is that the

```
 1   engaged in a lengthy review and found that the In re: IT
 2   Group decision quote "failed to follow the jurisprudence
 3   articulated by the Delaware Supreme Court in Malpedi (ph),
 4   and concluded that where a duty of loyalty claim remains, a
 5   claim for breach of the duty of due care is not defeated by
 6   an exculpatory provision in the company's charter."
 7              Additionally a year after In re: U.S. Digital this
 8   Court held in In re: Autobacs Strauss that an exculpatory
 9   provision does not require dismissal of duty of care claims
10   where a claim for breach of the duty of loyalty has been
11   properly alleged.
12              And we, as I've noted and am going to continue,
13   there is an actionable claim for breach of the -- for duty
14   of loyalty here clearly set forth in the complaint.  As a
15   result the exculpatory provision does not mandate dismissal
16   of the duty of care claim.
17              Now, you heard a number of times during the
18   argument today talking about insolvency and whether or not
19   the complaint has sufficiently alleged insolvency.  Mr. Ward
20   is going to address the insolvency point in a little more
21   detail, but as we've articulated in our opposition the
22   claims here are brought on behalf of Allied, not on behalf
23   of creditors, and they are for damages to Allied.  And as we
24   -- as I've explained at the beginning of this argument as
25   we've set forth in our opposition and as is pled in the
```

Case 13-50530-CSS Doc 141-1 Filed 05/13/13 Page 7 of 9
ALLIED SYSTEMS HOLDINGS, INC.

Page 45

1   complaint, Allied suffered harm and cognizable harm here as
2   a result of the actions which have been set forth in the
3   complaint. And Mr. Gendregske readily admits that he owes
4   fiduciary duties to Allied.
5           Frankly this whole argument about, you know,
6   whether or not we have pled sufficient amounts to establish
7   insolvency it's a side show, Your Honor, and it's a red
8   herring, because the complaints here broaden the derivative
9   context where there are allegations establishing harm
10  accepted as true for purposes of this motion.
11          The relevant question is not a matter of whether a
12  Gewala or anything like that.
13          THE COURT: Can we -- I'm sorry -- back up just a
14  minute.
15          MR. LAGEMANN: Sure.
16          THE COURT: And if you could specify for me your
17  various allegations that -- as to how Allied suffered -- how
18  Allied suffered harm.
19          MR. LAGEMANN: Yes, Your Honor.
20          First of all Allied suffered harm as a result of
21  the fact that the third amendment was not performed and
22  Yucaipa was -- and Yucaipa went and acquired first lien debt
23  without making the required capital contribution under the
24  third amendment and by taking control of the -- you know,
25  the position of requisite lender, which we've heard so much

Case 13-50530-CSS  Doc 141-1  Filed 05/13/13  Page 8 of 9
ALLIED SYSTEMS HOLDINGS, INC.

Page 46

1   about throughout the pendency of this case.
2           It's taking control of the requisite lendership --
3   if that's a word -- ended up embroiled the company in years
4   of litigation, which in addition to requiring the
5   expenditure of millions of dollars of legal fees -- and
6   we've set forth a number of those legal fees that have been
7   pled, in particular with relation to our fraudulent transfer
8   claims -- in addition, Your Honor, Allied suffered harm in
9   the form of millions of dollars in more legal fees paid on
10  behalf of Yucaipa to Yucaipa's attorneys for Yucaipa to
11  negotiate the terms of these agreements.
12          Your Honor, we also believe that there are
13  additional damages theories.
14          Now I think those are things that'll be proven at
15  trial, but at a bare minimum the complaint sets forth facts
16  and details those allegations about the harm suffered by
17  Allied with regard to the breaches of fiduciary duty that
18  occurred here.
19          Your Honor, if that's sufficient may I continue?
20          THE COURT:  Okay.  So your point being that since
21  the debtor board, including Mr. Gendregske, allowed Yucaipa
22  to have the fruits and advantage under the third amendment
23  without having to actually complied with the third amendment
24  specifically harmed Allied.
25          MR. LAGEMANN:  Yes, Your Honor.

Case 13-50530-CSS Doc 141-1 Filed 05/13/13 Page 9 of 9
ALLIED SYSTEMS HOLDINGS, INC.

Page 68

1       For example, it also opened the door to lots of
2    litigation, which has cost millions of dollars, much of
3    which has been paid to Yucaipa to be involved in litigating
4    and negotiating documents litigating the issues.
5       The problem is, okay, Mr. Gendregske's counsel
6    states, well, we didn't know Yucaipa was going to breach, it
7    was a good plan, but the problem he has with that is the
8    allegations are that he was controlled or at least
9    beholdened to Yucaipa, Yucaipa's statements are pretty clear
10   that they never intended to abide by the third amendment
11   unless the fourth amendment were put forward, and the fourth
12   amendment has its own issues, and it's a little bit like
13   Mr. Gendregske is trying to stick his head in the sand and
14   make sure that everything will be okay and hopefully
15   everything will work out and here we are several years later
16   and things have not worked out at all.
17      And I think the complaint contains and I find the
18   complaint contains enough specificity as to how that
19   happened, when it happened, the effects of it happening to
20   establish at least a plausible claim of damages.  And I
21   think that's important.  Because I was really hung up on
22   that frankly when I read the briefs the first time.  I said
23   where's the damage?  What's the damage?  And looking back at
24   the complaint and the arguments of counsel I think I can get
25   myself over that.