1  UNITED STATES BANKRUPTCY COURT

2  DISTRICT OF DELAWARE

3  - - - - - - - - - - - - - - - - x

4  In the Matter of:                Chapter 11

5  ALLIED SYSTEMS HOLDINGS, INC.,   Case No. 12-11564(CSS)

6  et al.,                          (Jointly Administered)

7          Debtors.

8  - - - - - - - - - - - - - - - - x

9  THE OFFICIAL COMMITTEE OF

10  UNSECURED CREDITORS OF ALLIED

11  SYSTEMS HOLDINGS, INC. AND ITS

12  AFFILIATED DEBTORS, ON BEHALF

13  OF ALLIED SYSTEMS HOLDINGS,

14  INC. AND ITS AFFILIATED DEBTORS,

15

16          Plaintiffs,

17

18  BLACK DIAMOND OPPORTUNITY FUND

19  II, LP, BLACK DIAMOND CLO

20  2005-1 LTD., AND SPECTRUM

21  INVESTMENT PARTNERS, L.P.,

22

23          Intervenors,          Adversary Proceeding

24                                 No. 13-50530(CSS)

25  -against-

1    YUCAIPA AMERICAN ALLIANCE FUND I,

2    L.P., YUCAIPA AMERICAN ALLIANCE

3    (PARALLEL) FUND I, L.P., YUCAIPA

4    AMERICAN ALLIANCE FUND II, L.P.,

5    YUCAIPA AMERICAN ALLIANCE

6    (PARALLEL) FUND II, L.P., MARK J.

7    GENDREGSKE, JOS OPDEWEEGH, JAMES

8    FRANK, DEREX WALKER, JEFF

9    PELLETIER, IRA TOUCHNER, and

10   JOSEPH TOMCZAK,

11

12           Defendants.

13   - - - - - - - - - - - - - - - x

14

15                      United States Bankruptcy Court

16                      824 North Market Street

17                      Wilmington, Delaware

18

19                      May 31, 2013

20                      10:13 A.M.

21    B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECR OPERATOR:  LESLIE MURIN

1   HEARING re Motion of Debtors for Entry of an Order

2   Authorizing Debtors to File Fee Letter Related to Proposed

3   Postpetition Secured Replacement DIP Financing Under Seal

4   [Docket No. 1187; filed May 23, 2013]

5

6   HEARING re Motion for Order, Pursuant to Section 107(b) of

7   the Bankruptcy Code and Bankruptcy Rule 9018, Authorizing

8   Yucaipa to (I) File Under Seal Portions of Yucaipa American

9   Alliance Fund I, L.P.'s and Yucaipa American Alliance

10  (Parallel) Fund I, L.P.'s Omnibus Objection to (I) Debtors'

11  Motion for Authorization to Obtain Postpetition Secured

12  Replacement DIP Financing and Related Relief, and (II)

13  Debtors' Motion for Approval of Bid Procedures and

14  Protections Relating to the Sale of Debtors' Assets, the

15  Asset Purchase Agreement, and Related Relief, and (II) File

16  Under Seal Any Future Related Confidential Documents or

17  Materials [Docket No. 1211; filed May 29, 2013]

18

19  HEARING re Yucaipa American Alliance Fund I, L.P.'s and

20  Yucaipa American Alliance (Parallel) Fund I, L.P.'s Motion

21  for Leave to Exceed Page Limit Requirements with Respect to

22  Yucaipa American Alliance Fund I, L.P.'s and Yucaipa

23  American Alliance (Parallel) Fund I, L.P.'s Omnibus

24  Objection to (I) Debtors' Motion for Authorization to Obtain

25  Postpetition Secured Replacement DIP Financing and Related

Page 4

1   Relief, and (II) Debtors' Motion for Approval of Bid

2   Procedures and Protections Relating to the Sale of Debtors'

3   Assets, the Asset Purchase Agreement, and Related Relief

4   [Docket No. 1213, filed May 29, 2013]

5

6   HEARING re Motion Pursuant to 11 U.S.C. §§ 105, 361, 362,

7   363(c), 363(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e),

8   503(b) and 507(a), Fed. R. Bankr. P. 2002, 4001 and 9014 and

9   Del. Bankr. L.R. 4001-2:  (I) Authorizing Debtors to (A)

10  Obtain Postpetition Secured Replacement DIP Financing and

11  (B) Use Cash Collateral; (II) Granting Superpriority Liens

12  and Proving for Superpriority Administrative Expense Status;

13  (III) Granting Adequate Protection to Prepetition Secured

14  Lenders; (IV) Modifying Automatic Stay; and (V) Scheduling a

15  Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)

16  [Docket No. 1174; filed May 17, 2013]

17

18  HEARING re Motion of the Debtors for Entry of Orders:

19  (A)(I) Approving Bid Procedures Relating to Sale of Debtors'

20  Assets; (II) Approving Bid Protections; (III) Scheduling a

21  Hearing to Consider the Sale; (IV) Approving the Form and

22  Manner of Notice of Sale by Auction; (V) Establishing

23  Procedures for Noticing and Determining Cure Amounts; and

24  (VI) Granting Related Relief; and (B)(I) Approving Asset

25  Purchase Agreement and Authorizing the Sale of Certain

1    Assets of Debtors Outside the Ordinary Course of Business;

2    (II) Authorizing the Sale of Assets Free and Clear of all

3    Liens, claims, Encumbrances, and Interests; (III)

4    Authorizing the Assumption, Sale, and Assignment of Certain

5    Executory Contracts and Unexpired Leases; and (IV) Granting

6    Related Relief [Docket No. 1173; filed May 17, 2013]

7

8    HEARING re Motion of Mark Gendregske to Compel Discovery

9    Responses from Petitioning Creditors [Adv. Docket No. 165;

10   filed May 24, 2013]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

1   A P P E A R A N C E S :

2   RICHARDS, LAYTON & FINGER, P.A.

3        Attorneys for the Debtors

4        One Rodney Square

5        920 North King Street

6        Wilmington, DE 19081

7

8   BY:  ROBERT J. STEARN, JR., ESQ.

9        CHRISTOPHER M. SAMIS, ESQ.

10       MARK D. COLLINS, ESQ.

11

12  TROUTMAN SANDERS LLP

13       Attorney for the Debtors

14       Bank of America Plaza

15       600 Peachtree Street, Suite 5200

16       Atlanta, GA 30308-5200

17

18  BY:  JEFFREY W. KELLEY, ESQ.

19       MICHAEL E. JOHNSON, ESQ. (TELEPHONIC)

20

21

22

23

24

25

1   LATHAM & WATKINS LLP

2        Attorneys for Yucaipa

3        355 South Grant Avenue

4        Los Angeles, CA 90071-1560

5

6   BY:  ROBERT A. KLYMAN, ESQ.

7        RUSSELL F. SAUER, JR., ESQ.

8        SABRINA JACOBS, ESQ. (TELEPHONIC)

9

10  SCHULTE ROTH & ZABEL LLP

11       Attorneys for the Petitioner Creditors

12       919 Third Avenue

13       New York, NY 10022

14

15  BY:  ADAM C. HARRIS, ESQ.

16       ROBERT J. WARD, ESQ.

17       DAVID HILLMAN, ESQ.

18

19  MORRIS, NICHOLS, ARSHT & TUNNELL LLP

20       Attorney for Mark Gendregske

21       1201 North Market Street, 16th Floor

22       Wilmington, DE 19899-1347

23

24  BY:  DEREK C. ABBOTT, ESQ.

25

```
 1   SIDLEY AUSTIN LLP

 2        Attorneys for the Committee

 3        787 Seventh Avenue

 4        New York, NY 10019

 5

 6   BY:  NICHOLAS K. LAGERMANN, ESQ.

 7        MICHAEL A. BURKE, ESQ.

 8        DENNIS KAO, ESQ.

 9

10   LANDIS RATH & COBB, LLP

11        Attorneys for the Petitioning Creditors

12        919 Market Street

13        Suite 1800

14        Wilmington, DE 19801

15

16   BY:  ADAM LANDIS, ESQ.

17        KERRI K. MUMFORD, ESQ.

18

19   SULLIVAN HAZELTINE ALLINSON LLC

20        Attorney for the Committee

21        901 N. Market Street

22        Suite 1300

23        Wilmington, DE 19081

24

25   BY:  WILLIAM D. SULLIVAN, ESQ.
```

1   OFFICE OF THE UNITED STATES TRUSTEE

2        Attorney for the United States Trustee

3        844 King Street, Suite 2207

4        Lockbox 35

5        Wilmington, DE 19801

6

7   BY:  EDMON MORTON, ESQ.

8

9   COOCH & TAYLOR

10        Attorney for TNATINC

11        1000 West Street, 10th Floor

12        Wilmington, DE 19801

13

14   BY:  SUSAN E. KAUFMAN, ESQ.

15

16   COHEN, WEISS AND SIMON LLP

17        Attorney for TNATINC

18        330 We. 42nd Street

19        New York, NY 10036

20

21   BY:  RICHARD SELTZER, ESQ.

22

23

24

25

Page 10

1   DUANE MORRIS LLP

2         Attorney for CIT Group/Business Credit, Inc.

3         1540 Broadway

4         New York, NY 10036

5

6   BY:  SOMMER ROSS, ESQ.

7

8   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

9         Attorneys for CIT Group/Business Credit, Inc.

10        1 New York Plaza

11        New York, NY 10004

12

13  BY:  GARY L. KAPLAN, ESQ.

14        CARL STAPEN, ESQ. (TELEPHONIC)

15

16  BROWN RUDNICK LLP

17        Attorney for the Special Committee of the Board

18        Seven Times Square

19        New York, NY 10036

20

21  BY: ROBERT J. STARK, ESQ.

22

23

24

25

```
 1   MORRIS JONES

 2        Attorney for General Motors

 3        500 Delaware Avenue

 4        Suite 1500

 5        Wilmington, DE 19801-1494

 6

 7   BY:  JEFFREY R. WAXMAN, ESQ.

 8

 9   APPEARED TELEPHONICALLY:

10   JESSE H. AUSTIN

11   STEPHANIE BOND

12   PEG BRICKLEY

13   THEO CIUPITU

14   MARK GENDREGSKE

15   RONALD GHATAN

16   STEPHEN JACOBS

17   STEPHEN S. LAPLANTE

18   DANIEL W. LINNA

19   MEGHAN E. MAREK

20   LES MEIER

21   JEFFREY A. SCHAFFER

22   AMY SENNETT

23   JENNIFER STAM

24   NOAH GOLDSTEIN

25   DEREX WALKER
```

1                P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.

4         (Pause)

5              THE COURT:  Good morning.

6              MR. STERN:  Good morning, Your Honor, may it

7    please the Court.  Bob Stern from Richards, Layton & Finger

8    on behalf of the debtors.

9              I rise in advance of the hearing to raise a

10   housekeeping issue, if I may, concerning next Tuesday's

11   hearing.  It starts at 10 o'clock.  Until a couple of days

12   ago I didn't much care, but then two discovery motions got

13   filed this week which I need to handle at next week's

14   omnibus hearing, both involving privileged matters.

15             I have a previously scheduled mediation on Tuesday

16   morning at the exact same time.  I am trying to deal with

17   the conflicting schedule by asking the Court if we can move

18   up to start time of next Tuesday's omnibus hearing from

19   10:00 to 9:00.  The mediator has already agreed to back up

20   the start time of my mediation.  I've cleared it with the

21   principal parties, but of course I've not cleared it with

22   Your Honor, so I'm making the request.

23             THE COURT:  All right.  So you've cleared with --

24             MR. STERN:  I've cleared with counsel for the

25   committee, Yucaipa, Mr. Gendregske, and the petitioning

1   creditors.

2          THE COURT:  Okay.

3          MR. STERN:  There might be others who would be

4   involved, but I view those as the principal parties.

5          THE COURT:  All right.  I don't think that'll be a

6   problem but let me just double check my calendar.

7      (Pause)

8          THE COURT:  That's fine.

9          MR. STERN:  Thank you very much, Your Honor.

10         THE COURT:  You're welcome.

11         MR. STERN:  I greatly appreciate it.  I'll turn

12  over the podium to my colleagues.

13         THE COURT:  All right.  Mr. Samis.

14         MR. SAMIS:  Good morning, Your Honor.  For the

15  record Chris Samis here today from Richards, Layton & Finger

16  on behalf of the debtors.

17         Your Honor, I just wanted to turn to the agenda

18  and address a couple of ancillary matters.

19         At item number 1, Your Honor, that was the motion

20  of the debtors' to file the fee letter in connection with

21  the DIP under seal.

22         Your Honor, the DIP contains -- the fee letter

23  contains a confidentiality provision and also a sensitive

24  pricing terms that we think should be sealed, and we think

25  we've satisfied the standard under 107(b).

1          There have been no objections to this motion, so

2    at this time, Your Honor, I would ask that you enter this

3    order.

4          THE COURT:  Does anyone wish to be heard?

5          I'll approve the order.

6          MR. SAMIS:  Your Honor, may I approach?

7          THE COURT:  Sure.  Thank you.

8          MR. SAMIS:  Your Honor, the next two agenda items

9    are both Yucaipa items.

10          Agenda item number 2 is the motion to seal

11   portions of their omnibus objection, and agenda item

12   number 3 is their motion to exceed page limits.

13          At this time I'd turn to podium over to counsel

14   for Yucaipa.

15          THE COURT:  Okay.  Mr. Klyman, good morning.

16          MR. KLYMAN:  Good morning, Your Honor.  For the

17   record Robert Klyman of Latham & Watkins on behalf of

18   Yucaipa.

19          We received no objection to these motions, Your

20   Honor.

21          THE COURT:  Anyone wish to be heard?

22          All right, I'll grant the motions.

23          MR. KLYMAN:  Thank you.

24          THE COURT:  Do you have orders?  Everything I have

25   is double sided, so.

1           MR. NESTOR:  May I approach, Your Honor?

2           THE COURT:  Yes, thank you, Mr. Nestor.

3      (Pause)

4           THE COURT:  Okay.

5           MR. SAMIS:  Your Honor, agenda item number 6, just

6   skipping over the next two, is Mr. Gendregske's motion to

7   compel.  That's been adjourned.

8           So that leaves us with the replacement DIP motion

9   and the bid procedures motion that are both up for today.  I

10  believe Mr. Kelley is going to be handling those in kind of

11  a consolidated fashion.  So at this time I would cede the

12  podium to him.

13          THE COURT:  All right.  I assume there's been no

14  settlement.

15          MR. KELLEY:  Good morning, Your Honor, Jeff Kelley

16  for the record.  There's not been a settlement, Your Honor.

17  There have been discussions.

18          Your Honor, with respect to agenda items 4 and 5,

19  which are the replacement DIP motion as I refer to it and

20  the sale motion, the debtors have obviously relied upon

21  Judge Ramos' ruling on the Fourth Amendment to choose an

22  exit strategy premised upon Black Diamond, Spectrum, and one

23  other entity known as AMC as the -- being the requisite

24  lender.

25          What I propose to do, Your Honor, with the Court's

1    permission, is to proceed with the debtors' evidence with

2    respect to these two motions.  Two witnesses, Steve

3    Antinelli (ph) of Rothschild, Scott McCauley (ph), who is

4    the CFO of the debtor.  I am reserving the argument on these

5    issues for later and the other objections.

6              THE COURT:  Yeah, we're not going to go that way.

7              MR. KELLEY:  Okay.

8              THE COURT:  I'd like to make some preliminary

9    comments.

10             MR. KELLEY:  Thank you, Your Honor.

11             There are some changes, Your Honor, that -- some

12   concessions that counsel for the proposed lender and

13   proposed purchaser, Adam Harris had prepared to announce on

14   the record with respect to some of the aspects of the

15   various motions.  It might be good for Your Honor to hear

16   those concessions.

17             THE COURT:  All right.  Mr. Harris.

18             MR. HARRIS:  Good morning, Your Honor.

19             Having seen the objections that were filed we

20   spent a lot of time trying to talk with the committees'

21   counsel, and having spent a lot of time with company's

22   counsel we have agreed to make five different changes to our

23   -- to the proposed DIP -- DIP credit agreement and the DIP

24   procedures/asset purchase agreement.

25             With respect to the asset purchase agreement and

1    bid procedures, Your Honor, the proposed purchaser has

2    agreed to reduce the expense reimbursement request from the

3    $3 million to 3 percent of the $70 million purchase price.

4    So it'll with a $2.1 million expense reimbursement.

5         The other change relative to the bid procedures,

6    Your Honor, is there had been a provision -- and I can't

7    recall whether it's in the asset purchase agreement or the

8    bid procedures -- that said that the debtors were obligated

9    to deliver to the proposed purchaser copies of all

10   expressions of interest, you know, and bids that came in as

11   soon as they were received.  We're prepared to waive that

12   and receive the notice of any other bids that came in as

13   part of the auction process at the same time as any other

14   bidders receive them, which would be one day prior to the

15   commencement of the auction.

16        With respect to the DIP financing, Your Honor,

17   there are three changes that we have agreed to.  One is on

18   economics.  We've agreed to reduce the unused line fee which

19   had been at 1.5 percent down to .75 percent, which is the

20   same percentage unused line fee as in the existing DIP

21   facility.

22        The existing -- the proposed DIP facility has an

23   event of default in Section 8.1(a)(a) if a sale is not

24   consummated by October 14th, 2013.  We've agreed that that

25   date can be extended to a date no later than December 31,

1    which is the maturity date of the facility itself, so long

2    as there is an asset purchase agreement in full force and

3    effect; whether it's ours or somebody else's, and so long as

4    no event has occurred which would allow any party to

5    terminate that agreement.

6            So as long as there is continuing to be movement

7    towards closing of a sale we'll continue to fund, and

8    assuming there's no other event of default that's occurred.

9    And I think that addresses a concern that was raised in a

10   couple of the objections, Your Honor.

11           The last change, Your Honor, has to do with our

12   request for consent rights relative to various settlements

13   that the committee may want to enter into in exchange for

14   agrees to provide financing for the committees' professional

15   fees.

16           And, Your Honor, I think that the way we

17   originally drafted it frankly probably didn't accurately

18   reflect what we were really looking for.  There are numerous

19   counts in the complaint, some of which are counts that could

20   have been directly brought we believe by the petitioning

21   creditors.  Those relate to things like equitable

22   subordination to our claims, which is a separate count in

23   the complaint as Count II, and the three Counts, IV, V, and

24   VI which relate to enforcement of the third amendment since

25   we are a direct contract party to that particular contract.

1          And what I think we had always intended was that

2     as it relates to those particular counts that we should have

3     a consent right in exchange for agreeing to fund because

4     those are claims that we could have brought on our own.

5          As it relates to the breach of fiduciary duty

6     claims against the directors and officers and the fraudulent

7     conveyance claims obviously we have an economic interest in

8     the outcome of that, but there obviously you're standing

9     order said the committee is taking the lead on that, that we

10    have -- that they should be consulting with us, and we would

11    like to be involved with that, and hopefully a consent right

12    relative to that, but ultimately we shouldn't be in a

13    position and don't ask to be in a position where we could

14    say no, you can't go forward with that.

15         So we would -- we would be prepared to work with

16    the committee on language that would basically modify our

17    request for consent rights in exchange for funding along the

18    lines that I just outlined.

19         And those are the changes that we're -- we were

20    prepared to make based upon the discussions we've had since

21    the motion was filed and the objections were filed.

22         Thank you.

23         Oh, sorry, just to be clear, the 2.1 is a cap,

24    it's an up to amount, it's not a fixed amount based upon

25    actual and documented out-of-pocket expenses.

1          THE COURT:  All right.

2          MR. HARRIS:  Thank you.

3          THE COURT:  You're welcome.  Well, thank you.

4          I would characterize those changes as helpful, but

5     not sufficient.  I'd like to make some observations.

6          As far as I'm concerned the DIP motion and the bid

7     procedures motions are dead on arrival.

8          I agree completely with the committees'

9     objections.

10          I agree with a large part of the Yucaipa

11     objections as to making a determination as to who the

12     requisite lender is.  I don't think I'm in a position to

13     make that decision.  And as a result I don't see how I can

14     approve a motion that would be premised on who the requisite

15     lender is.  And I don't believe that ties the debtors'

16     hands.  They can seek non-consensual priming, they can seek

17     use of cash collateral on a non-consensual basis, they can

18     seek financing from individual creditors as opposed to the

19     lenders as a whole.

20          Very importantly I don't see how at this point the

21     drag along rights could be binding.  But (indiscernible -

22     10:25:26) understand is the tail wagging the dog, and I'm

23     more concerned with and in agreement with the committees'

24     points.  And frankly at this point I don't think it's worth

25     the effort to go through a hearing, to go through an

1    argument on a DIP motion and bid procedures motion that are

2    so pervasively improper.

3              Without getting into any of the details, and

4    Mr. Harris talked about it just briefly here, I found

5    perhaps the most offensive provision to be the settlement

6    detail.  They're directly contrary to previous rulings of

7    this Court.  I think it's too clever by half.

8              Also the cost of the replacement financing is also

9    particularly troubling.

10             So -- I'm sorry, looking at my points -- so I find

11   -- I found it, you know, really as I said dead on arrival.

12             And I have two comments and then I want to move on

13   to something else, is that I would seriously at this point

14   where this case is headed I would seriously consider

15   entertaining a motion to appoint a Chapter 11 trustee.

16             I'm also seriously considering revoking Black

17   Diamond's intervention in the adversary proceeding.  I'm

18   really tired of this nonsense.  This case is dying on the

19   vine and the parties are not acting in a responsible manner.

20             So having said all that I want to move on to

21   another thing, and that is an issue with regard to the

22   mediation that I'm going to look into.  I don't want to hear

23   about it right now, but I'm going to put it out there for

24   the parties.

25             First of all, I understand, and I didn't get into

1    the details with him, but I understood from Judge Drain that

2    there had been basically an agreement in principal on how

3    the DIP would prepare and how the bid procedures would

4    proceed on a consensual basis.  Now whether that actually

5    was what happened or didn't happen that was certainly the

6    impression that he gave and that he forwarded on to me, and

7    it was my impression when I signed the motion to shorten

8    notice that that was the situation.

9                Now, I have to say, I did not read the merits of

10   the underlying motion when I granted the motion to shorten

11   based on my understanding, which may or may not have been

12   correct, but was based on conversations I'd had with Judge

13   Drain, that it was going to be a consensual process.

14               I'm not saying I wouldn't have granted the motion

15   to shorten if I had looked at the merits, but I didn't look

16   at the merits and I was relying on his comments to me.

17               I understand that earlier this week he became

18   aware obviously that things were going forward on a

19   contested basis, inquired it to at least some counsel

20   whether he should be involved, was told yes, and scheduled a

21   mediation for yesterday to which no one appeared other than

22   committee counsel.

23               Now, it's quite possible there was a communication

24   issue, and I'd be shocked if there wasn't given the

25   integrity and the experience of the attorneys involved, but

1    I'm going to look into it, and obviously if there was any

2    kind of shabby behavior to Judge Drain it will not be

3    tolerated.  I haven't had an opportunity to actually have a

4    lengthy discussion with him given how things have developed,

5    and it may very well be that I'm overstating what happened.

6    But I want to put that out there that I'm going to look into

7    that.

8              So where I stand as I sit here today on the merits

9    is that I just believe that the motions as they sit in front

10   of me are so much a non-starter that it really doesn't make

11   sense to go through this entire process of evidence and then

12   trying to mark up an order that is so pervasively

13   unacceptable.

14             I'd be willing to hear responses to whether we

15   should go forward or not, but it may make sense to take a

16   recess to allow the parties to gather their thoughts after

17   having heard the Court's initial thoughts.

18             MR. KELLEY:  Your Honor, Jeff Kelley.

19             First let me state that counsel for the debtor,

20   and I've confirmed it with Mr. Collins, certainly received

21   no notice from Judge Drain --

22             THE COURT:  Yeah, I don't want to get -- we'll

23   figure that out later.

24             MR. KELLEY:  -- about yesterday.  We told him we

25   were willing to participate and there would be some

1    scheduling, and I frankly intended to get back to him after

2    this hearing today on that issue.

3              I hear what the Court is saying.  Obviously the

4    debtor is caught in the position of needing liquidity.  I

5    think that maybe a recess makes sense.

6              THE COURT:  Well, there's -- again, not getting

7    into to, I do understand that there are at least some needs

8    for liquidity obviously going forward and there is a DIP

9    that terminates at a given time.  That said, there's only so

10   much price that the Court will allow to be paid.

11             MR. KELLEY:  I understand, Your Honor.

12             THE COURT:  And by price I don't just mean

13   economics, I mean substantive provisions, et cetera.

14             MR. KELLEY:  Yes, sir.  Well, I think a recess

15   does make sense for the parties to talk about Your Honor's

16   comments, subject to what everybody else says.

17             THE COURT:  All right.  Well, let's take a recess.

18   I'm available throughout the day, to you can obviously use

19   the courtroom and we can take five minutes or we can take

20   longer, it depends on how the parties feel.  But if you can

21   keep chambers involved -- or not involved --

22        (Laughter)

23             THE COURT:  -- informed I'd appreciate it.

24             All right, we're in recess.

25        (Recess at 10:32 a.m.)

1           THE CLERK:  All rise.

2           THE COURT:  Please be seated.

3           Mr. Collins?

4           MR. COLLINS:  Good afternoon, Your Honor.  For the

5    record Mark Collins of Richards, Layton & Finger on behalf

6    of the debtors.

7           Your Honor, we did want to come back and simply

8    report to Your Honor before the end of the day that all of

9    the parties are back at my firm in conference rooms, clients

10   are in town, which is good -- many of the clients are in

11   town -- so we are continuing to have a dialogue.

12          We certainly heard Your Honor's concerns and the

13   seriousness of those concerns with respect to the matters

14   that were before the Court this morning.

15          Certainly from the committees' -- I'm sorry --

16   from the company's perspective we're trying to move the case

17   forward, and I hope you know that we're doing everything we

18   can to move the case forward.

19          We have a lot of employees that are very important

20   and we do want to see this company emerge as a going

21   concern, and I know that certainly everyone at the company

22   is doing everything they can to make that happen.

23          We do have a call set up this afternoon I think at

24   4 o'clock with Judge Drain, we are certainly -- need his

25   help to try to maneuver through the very difficult issues we

1    have before us, and he's been a great help so far.  We had a

2    positive mediation the last time we were before him and

3    we'll certainly look for his help and guidance as we try to

4    maneuver through all of this.

5              We will be back before Your Honor on Tuesday

6    morning, we hope to have something positive to report, if

7    not, maybe we will talk about further scheduling of matters

8    -- critical matters for the company at that time.

9              But we didn't want the day to go by without being

10   back before Your Honor to let you know how we all feel about

11   what took place this morning.

12             THE COURT:  Okay.  Very, very much appreciate the

13   update.

14             Does anyone else wish to be heard?  Okay.

15             So I -- thank you for -- oh, yes, Mr. Abbot?

16             MR. ABBOTT:  Your Honor, we'll just add one thing.

17             THE COURT:  For the record?

18             MR. ABBOTT:  Derek Abbott representing Mark

19   Gendregske, Your Honor.

20             I wanted to make clear, you may have had a further

21   conversation with Judge Drain.

22             THE COURT:  I have not.

23             MR. ABBOTT:  It appears to all of us back at

24   Mr. Collins' office that there obviously was a fairly

25   substantial miscommunication, because there was initially a

1   meeting set up that was at least initially intended to be of

2   limit purpose, and it sounds like maybe some signals got

3   crossed, and obviously nobody would --

4           THE COURT:  Yeah, I --

5           MR. ABBOTT:  -- make any effort to offend anyone

6   if they knew they were going to do that, so.

7           THE COURT:  Well, like I said, I'll -- I don't

8   need to hear anymore on that issue.

9           MR. ABBOTT:  Fair enough, Your Honor.

10          THE COURT:  If appropriate I'll investigate

11  further.  All right?

12          Thank you very much.  We're adjourned.

13      (A chorus of thank you)

14      (Whereupon these proceedings were concluded at

15  1:24 PM)

16

17

18

19

20

21

22

23

24

25

```
 1                    I N D E X

 2

 3                    RULINGS

 4                                    Page      Line

 5   Motion of Debtors for Entry of an Order

 6   Authorizing Debtors to File Fee Letter

 7   Related to Proposed Postpetition Secured

 8   Replacement DIP Financing Under Seal

 9   [Docket No. 1187; filed May 23, 2013]       15         5

10

11   Motion for Order, Pursuant to Section 107(b)

12   of the Bankruptcy Code and Bankruptcy Rule

13   9018, Authorizing Yucaipa to (I) File Under

14   Seal Portions of Yucaipa American Alliance

15   Fund I, L.P.'s and Yucaipa American Alliance

16   (Parallel) Fund I, L.P.'s Omnibus Objection

17   to (I) Debtors' Motion for Authorization to

18   Obtain Postpetition Secured Replacement DIP

19   Financing and Related Relief, and (II)

20   Debtors' Motion for Approval of Bid

21   Procedures and Protections Relating to the

22   Sale of Debtors' Assets, the Asset Purchase

23   Agreement, and Related Relief, and (II) File

24   Under Seal Any Future Related Confidential

25   Documents or Materials [Docket No. 1211;
```

```
 1    filed May 29, 2013]                        15        22

 2

 3    Yucaipa American Alliance Fund I, L.P.'s and

 4    Yucaipa American Alliance (Parallel) Fund I,

 5    L.P.'s Motion for Leave to Exceed Page Limit

 6    Requirements with Respect to Yucaipa American

 7    Alliance Fund I, L.P.'s and Yucaipa American

 8    Alliance (Parallel) Fund I, L.P.'s Omnibus

 9    Objection to (I) Debtors' Motion for

10    Authorization to Obtain Postpetition Secured

11    Replacement DIP Financing and Related Relief,

12    and (II) Debtors' Motion for Approval of Bid

13    Procedures and Protections Relating to the

14    Sale of Debtors' Assets, the Asset Purchase

15    Agreement, and Related Relief [Docket No.

16    1213, filed May 29, 2013]                  15        22

17

18

19

20

21

22

23

24

25
```

1                    C E R T I F I C A T I O N

2

3    I, Dawn South, certify that the foregoing transcript is a

4    true and accurate record of the proceedings.

5

6

7

8    AAERT Certified Electronic Transcriber CET**D-408

9

10   Veritext

11   200 Old Country Road

12   Suite 580

13   Mineola, NY 1151

14   Date:  June 3, 2013

15

16

17

18

19

20

21

22

23

24

25