IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ALLIED SYSTEMS HOLDINGS, INC. | : | Case No. 12-11564 (CSS) |
| | : | |
| Debtor. | : | (Jointly Administered) |
| _____ | : | |
| THE OFFICIAL COMMITTEE OF | : | |
| UNSECURED CREDITORS OF | : | |
| ALLIED SYSTEMS HOLDING, INC. | : | |
| AND ITS AFFILIATED DEBTORS, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Adv. Proc. No.: 13-50530 (CSS) |
| | : | |
| BLACK DIAMOND OPPORTUNITY | : | |
| FUND II, LP, BLACK DIAMOND | : | |
| CLO 2005-1 LTD., AND SPECTRUM | : | |
| INVESTMENT PARTNERS, L.P., | : | |
| | : | |
| Intervenors, | : | |
| v. | : | |
| | : | |
| YUCAIPA AMERICAN ALLIANCE | : | |
| FUND I, L.P., YUCAIPA AMERICAN | : | |
| ALLIANCE (PARALLEL FUND I, L.P., | : | |
| YUCAIPA AMERICAN ALLIANCE | : | |
| FUND, II, L.P., AND YUCAIPA | : | |
| AMERICAN ALLIANCE (PARALLEL) | : | |
| FUND II, L.P., MARK J. GENDREGSKE, | : | |
| JOS OPDEWEEGH, JAMES FRANK, | : | |
| DEREX WALKER, JEFF PELLETIER, | : | |
| IRA TOCHNER, AND | : | |
| JOSEPH TOMCZAK. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**<u>OPINION</u>**

SULLIVAN HAZELTINE
ALLINSON LLP
William A. Hazeltine
901 North Market Street, Suite 1300
Wilmington, DE   19801

    -and-

SIDLEY AUSTIN LLP
Michael G. Burke
Brian J. Lohan
Dennis Kao
787 Seventh Avenue
New York, NY   10019

Counsel for the Official Committee
of Unsecured Creditors

    -and-

LANDIS RATH & COBB LLP
Adam G. Landis
Kerri K. Mumford
919 Market Street, Suite 1800
Wilmington, DE   19801

    -and-

SCHULTE ROTH & ZABEL LLP
Adam C. Harris
Robert J. Ward
919 Third Avenue
New York, NY   10022

Counsel to the Intervenors


MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
Derek C. Abbott
William M. Alleman, Jr.
1201 North Market Street
Wilmington, DE   19801

    -and-

ARNOLD & PORTER LLP
Justin Antonipillai
Ian S. Hoffman
555 Twelfth Street, NW
Washington, D.C.   20004-1206

Counsel for Defendant Mark
Gendregske


Date: January 28, 2015

Sontchi, J. _____

## INTRODUCTION

Before the Court are several motions that raise two issues:

1.    Are plaintiff's claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty against Mark Gendregske, the Debtor's Chief Executive Officer and a member of its board of directors, core proceedings under 28 U.S.C. § 157(b)?

2.    Should the Court strike Mr. Gendregske's jury demand?

For the reasons set forth below, the Court concludes that plaintiff's claims asserted against Mr. Gendregske in the Amended Complaint are non-core proceedings because they are not on the list of core proceedings in 28 U.S.C. § 157(b), and the claims do not invoke a substantive right provided by title 11, nor do the claims arise only in the context of a bankruptcy case.   In addition, the Court will deny plaintiff's motion to strike Mr. Gendregske's jury demand because the relief sought against Mr. Gendregske in the Amended Complaint is for compensatory monetary damages and is legal in nature, rather than equitable.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

### A.  Chapter 11 Proceedings

On May 17, 2012, involuntary petitions were filed in this Court by BDCM

Opportunity Fund II, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners LP (collectively, the "Petitioning Creditors") against Allied Systems Holdings, Inc. ("Allied") and its subsidiary Allied Systems, Ltd. (L.P.) ("Systems") under Chapter 11 of the Bankruptcy Code.   On June 10, 2012, the remaining debtors (together with Allied and Systems, the "Debtors") filed voluntary petitions in this Court and, in connection therewith, Allied and Systems consented to the involuntary petitions filed against them.   The Debtors' cases are being jointly administered.

The Office of the United States Trustee has appointed an official committee of unsecured creditors (the "Committee").   On February 1, 2013, the Committee, on behalf of the Debtors, commenced an adversary proceeding by filing a complaint against Mr. Gendregske, among others.   On March 21, 2013, the Court entered an order granting the Committee standing to prosecute the claims in this Adversary Proceeding.[1]   The claims against Mr. Gendregske are for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

**B.  The Committee's Claims Against Mr. Gendregske[2]**

Mr. Gendregske is the chief executive officer and a director of Allied.   In May 2007, Allied emerged from its first bankruptcy filed in the Northern District

---

[1]  The Petitioning Creditors have intervened as plaintiffs in the adversary proceeding.

[2]  The facts recited herein are drawn from the Amended Complaint [D.I. 76] and do not constitute any finding by the Court on the merits of the allegations.

of Georgia and, as a result of certain terms in the plan of reorganization, Yucaipa[3] appointed Mr. Gendregske as CEO of Allied and as a member of its board of directors.    In addition, Yucaipa converted its debt under certain unsecured notes for a supermajority of Allied's equity.

To finance its emergence, Allied obtained two credit facilities: (i) a $265 million senior secured first priority credit facility (the "First Lien Credit Facility") as evidenced by the First Lien Credit Agreement,[4] and (ii) a $50 million second lien credit facility (the "Second Lien Credit Facility").[5]    Shortly after emergence, Allied's business began faltering.    By March 2008, Allied's board was advised that it would likely default under its financial covenants, and its auditors would issue a going concern opinion causing further defaults under the First Lien Credit

---

[3] "Yucaipa" shall mean Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Yucaipa American Alliance Fund II, L.P., and Yucaipa American Alliance (Parallel) Fund II, L.P.

[4] The "First Lien Credit Agreement" refers to the "Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," as amended and restated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and the CIT Group Business Credit, Inc. as Administrative Agent and Collateral Agent, among others. The lenders under the First Lien Credit Agreement, the "First Lien Lenders." The "Third Amendment" refers to Amendment No. 3 to the Credit Agreement and Consent, dated April 17, 2008. "First Lien Debt" refers to obligations under the First Lien Credit Agreement held by First Lien Lenders. The "Purported Fourth Amendment" refers to "Agreement No. 4 to Credit Agreement" dated August 21, 2009, which was the subject of the litigation before Justice Ramos in the Supreme Court of the State of New York.

[5] The Second Lien Credit Facility is evidenced by the to the "Second Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement," dated as of May 15, 2007, between Allied Holdings Inc. and Allied Systems Ltd. (L.P.) as Borrowers, the Lenders from time to time party thereto, and Goldman Sachs Credit Partners L.P. as Administrative Agent and Collateral Agent, among others, and as amended from time to time (the "Second Lien Credit Agreement").

Facility.

To address these concerns, Yucaipa advised the board it would be willing to acquire certain of the debt outstanding under the First Lien Credit Facility and the Second Lien Credit Facility and to contribute that debt to Allied's capital. However, under the terms of both the First Lien Credit Agreement and the Second Lien Credit Agreement, Yucaipa as the "Sponsor" was prohibited from acquiring any of the debt or becoming a "Lender" as defined in the Agreements.   Yucaipa negotiated certain amendments to the First Lien Credit Agreement and the Second Lien Credit Agreement to permit it to acquire the debt.

The Third Amendment, while allowing Yucaipa to purchase loans, imposed restrictions on Yucaipa.   These restrictions included, among other things: (i) a cap on the amount of debt Yucaipa could acquire; (ii) a requirement that 50% of any Term Loans acquired be contributed to Allied's capital; and (iii) an absolute prohibition of Yucaipa voting that debt in respect of any matter submitted to the First Lien Lenders for a vote. Allegedly, Yucaipa never acquired any debt under the terms of the Third Amendment.

Instead, Yucaipa planned to purchase more than 50% of the debt under the First Lien Credit Facility and take control of the First Lien Credit Facility as the "Requisite Lender."[6]   Yucaipa launched a tender offer to purchase the debt

---

[6] The First Lien Credit Agreement provides that "Requisite Lenders" have the power to make certain key decisions affecting all First Lien Lenders, including, among others, the authority to declare or not declare "Events of Default" under the First Lien Credit Agreement and exercise or

from the First Lien Lenders conditioned on any selling First Lender executing a form of Fourth Amendment that would remove all of the restrictions under the Third Amendment.   The tender offer failed, and ComVest Investment Partners III, L.P. ("ComVest") acquired enough of the debt under the First Lien Credit Facility to become the Requisite Lender.

ComVest, as the Requisite Lender, insisted Yucaipa and Allied pursue a restructuring or sale of Allied.   Yucaipa and the Allied board, including Mr. Gendregske, refused.   Yucaipa, with the knowledge and approval of the Allied board, pursued ComVest to purchase its debt.   Yucaipa caused the Allied board to default on an interest payment due to the First Lien Lenders, even though Allied had sufficient liquidity to make the interest payment, to increase leverage and prompt ComVest into a sale.

Yucaipa entered into an agreement with ComVest to acquire all of ComVest's obligations.   Yucaipa caused Allied to enter into a purported Fourth Amendment with ComVest to remove all of the restrictions imposed on Yucaipa's acquisition, ownership, and voting of obligations under the First Lien Credit Agreement as amended through the Third Amendment.   This purported Fourth Amendment arguably made Yucaipa eligible to be the Requisite Lender under the First Lien Credit Agreement.   The Purported Fourth Amendment benefitted only

---

refrain from exercising rights and remedies upon an "Event of Default" under the First Lien Credit Agreement

Yucaipa, not Allied.    No First Lien Lenders, other than ComVest, consented to the Purported Fourth Amendment or were asked to consent.

Mr. Gendregske, as CEO and an independent director, approved Allied's execution of the purported Fourth Amendment.    Yucaipa impermissibly asserted that it was the Requisite Lender and prevented the administrative agent from taking any action on behalf of the First Lien Lenders to accelerate the obligations or exercise remedies.    Allied continued to default under the terms of the First Lien Credit Agreement for more than three years, including failing to pay millions of dollars of principal and interest to Allied's other First Lien Lenders.

The Committee alleges that Mr. Gendregske acted at the behest of an in concert with Yucaipa in furtherance of its scheme to take control over the financial structure of the Debtors.    He failed to take rudimentary steps necessary to protect Allied's interests as CEO and a member of the board of directors.    The Special Committee of independent directors, including Mr. Gendregske, failed to exercise appropriate control over Yucaipa's actions, failed to educate itself in reviewing proposed transactions, and failed to ever seek independent advice when it allegedly reviewed transactions involving Yucaipa.[7]    The directors, including Mr.

---

[7] At the April 9 hearing on the motion to dismiss, this Court stated: "I think it's certainly true that a special committee is not always required to hire its own counsel and advisors to make decisions that are hopefully independent of any control by another party, it depends on the -- like many things it depends on the facts and circumstances. And I think the facts as pled in the case really show a situation where independent counsel and financial advisors was required. The meetings went quickly, there were short breaks, there's no, you know, real indication of how thorough the questions were, how thorough the issues were looked at by the special committee."[Bankruptcy

Gendregske, failed to consider alternative transactions to save Allied that would potentially adversely affect the interests of Yucaipa.   Because Allied became insolvent by at least early 2008, the directors, including Mr. Gendregske owed fiduciary duties of loyalty and care not only to the company, but to its creditors.

## PROCEDURAL HISTORY

On March 21, 2013, Mr. Gendregske filed the Motion Of Defendant Mark J. Gendregske To Dismiss The Claims Asserted Against Him In The Official Committee Of Unsecured Creditors Amended Complaint For (i) Equitable Subordination, (ii) Recharacterization, (iii) Breach Of Contract, (iv) Specific Performance, (v) Breaches Of Fiduciary Duties, (vi) Aiding And Abetting Breaches Of Fiduciary Duties, (vii) Avoidance And Recovery Of Avoidable Transfers, And (viii) Disallowance Of Certain Claims [D.I. 81] ("Motion to Dismiss").

On April 8, 2013, Mr. Gendregske filed the Motion for Withdrawal of Reference [D.I. 111]; the Motion of Defendant Mark Gendregske for Determination that the Claims Asserted Against Him Constitute Non-Core Proceedings [D.I. 113] ("Core/Non-Core Motion"); and a Demand for Jury Trial [D.I. 114].

On April 9, 2013, the Court conducted a hearing on the Motion to Dismiss and ruled from the bench that the motion would be denied.   Later on April 9th, the Court entered an Order [D.I. 115] denying the Motion to Dismiss.   The Order

---

Case D.I. 1094 Hrg. Tr. 4/9/13, 72:1-10].

contained the following statements: "The Court having found that . . . (ii) this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) . . . and (iv) the Court has judicial power to enter a final order."   On April 16, 2013, Mr. Gendregske filed the Motion of Defendant Mark Gendregske Pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59(e) to Amend the Order Denying Motion to Dismiss [D.I. 121] (the "Rule 59(e) Motion") requesting the Court amend its April 9th Order to remove the statements that the claims against Mr. Gendregske are core proceedings and the Court has the judicial power to enter a final order in connection with those claims.

On April 29, 2013, the Committee and the Petitioning Creditors filed the Motion to Strike Mark Gendregske's Jury Demand [D.I. 133] (the "Motion to Strike").

This is the Court's decision on the Core/Non-Core Motion, the Rule 59(e) Motion and the Motion to Strike.

## ANALYSIS

### A. Core and Non-Core Proceedings

#### 1. Core Proceedings Under the Statute

In analyzing whether a matter is a core proceeding under section 157(b)(2) there are two related issues at play: jurisdiction and judicial power.   As to jurisdiction, district courts have "original and exclusive jurisdiction of all cases

under title 11."[8]  Proceedings in cases under title 11 (over which the district courts have original but not exclusive jurisdiction) are further divided into three parts: those that (i) "aris[e] under title 11"; (ii) "aris[e] in" a title 11 case; and (iii) are "related to a case under title 11."[9]

As to judicial power, district courts may refer any or all such proceedings to the bankruptcy judges of their district.[10]  Bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11."[11]  "'Core proceedings include, but are not limited to' 16 different types of matters, including 'counterclaims by [a debtor's] estate against persons filing claims against the estate.'"[12]  The bankruptcy judge's power over non-core proceedings is limited to issuing proposed findings of fact and conclusions of law that are subject to *de novo* review by the district court.[13]

In considering the extent of the bankruptcy courts' judicial authority under the statute, the Supreme Court has held that there are two distinct possible outcomes.   The first is that the district court has jurisdiction over a matter because it "arises under" or "arises in" title 11.   Further the "arising under" and "arising

---

[8]  28 U.S.C. §1334(a).

[9]  28 U.S.C. §157(a).

[10]  *Id.*

[11]  28 U.S.C. §157(b)(1).

[12]  *Stern v. Marshall*, 131 S.Ct. 2594, 2604 (2011) (quoting 28 U.S.C. §157(b)(2)(C)).

[13]  *Id.* at 2604.

in" matters are, *by definition*, core proceedings in which the bankruptcy courts may enter final orders.    The second possibility is that the district court has jurisdiction because a matter is "related to" a case under title 11.    "Related to" matters are, *by definition*, non-core proceedings in which the bankruptcy courts may only issue proposed finding of fact and conclusions of law.    There is no middle ground.    A core proceeding may not be "related to" a case under title 11; and a non-core proceeding may not "arise in" or "arise under "title 11. Thus, the terms "core proceedings" on the one hand and matters "arising in" or "arising under" on the other are, in effect, interchangeable.    The existence of one presupposes the existence of the other.[14]

> Put simply: If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment.[15]

### 2. The Claims Against Mr. Gendregske Are Non-Core Proceedings

Section 157(b)(2) sets forth a non-exclusive list of core proceedings.    The Third Circuit has adopted a two-step process to determine whether a claim is a core proceeding. "First, 'a court must consult §157(b)' to determine if the claim at issue fits within that provision's 'illustrative list of proceedings that may be

---

[14] *Id.* at 2604–05.

[15] *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 134 S.Ct. 2165, 2172 (2014).

considered 'core.'"[16]   If so, "a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."[17]   The two-part second element of the test must be met for a proceeding to be core, regardless of whether it is enumerated in section 157(b)(2).   "The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'"[18]   "It is important, however, that a court 'not simply apply the terms of the statute but rather analyze the nature of the underlying claim to determine whether, given constitutional constraints on bankruptcy jurisdiction . . ., that claim should be considered a core proceeding.'"[19]

This second element of the Third Circuit's test has probably been overturned by *Stern*, at least with regard to enumerated core proceedings. Nonetheless, this Court has continued to apply the test because it serves well as the standard for determining whether a proceeding that is *not* enumerated is, nonetheless, core.   Thus, a matter may be core even if it is not enumerated as such "[1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."[20]   The

---

[16] *Shubert v. Lucent Techs. (In re Winstar Communs., Inc.)*, 554 F.3d 382, 405 (3d Cir. 2009) (quoting *Halper v. Halper*, 164 F3d 830, 836 (3d Cir. 1999)).

[17] *Id.*

[18] *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) (citing *In re Best Reception Sys., Inc.*, 220 B.R. 932, 947 (Bankr. E.D. Tenn. 1998).

[19] *Id.* (quoting *Meadowlands Commc'n, Inc. v. Banker's Trust Co.*, 79 B.R. 198 (D. N.J. 1987)).

[20] *Winstar*, 554 F.3d at 405.

breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims in this case fail to satisfy both elements.

In response to the Core/Non-Core Motion, the Committee argues that the counts against Mr. Gendregske for breach of fiduciary duty and aiding and abetting breach of fiduciary duty should be treated as core proceedings because "they are inextricably intertwined with the equitable subordination claim" against Yucaipa.[21]   Mr. Gendregske argues that the law cited by the Committee is not controlling, and the Committee fails to consider the Third Circuit's two-part test for determining core proceedings.

The Court concludes that the claims against Mr. Gendregske for breach of fiduciary duty and aiding and abetting breach of fiduciary duty constitute non-core, related-to proceedings over which the Court may submit proposed findings of fact and conclusions of law.   First, claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty do not appear on the list of core proceedings in section 157(b).   Second, these claims are not core because they do not invoke a substantive right provided by title 11, nor do the claims arise only in the context of a bankruptcy case.   Indeed, the overwhelming majority of courts in this district and other districts conclude that breach of fiduciary claims do not

---

[21] Response of the Official Committee of Unsecured Creditors and the Intervenors to Defendant Mark Gendregske's Motions (i) for Determination that the Claims Asserted Against Him Constitute Non-Core Proceedings and (ii) to Amend the Motion to Dismiss [D.I. 131] ("Core/Non-Core Opposition") at ¶¶ 29-30 (quoting CDX Liquidating Trust v. Venrock Assoc., 2005 WL 395895, at *2 (N.D. Ill. Aug. 10, 2005).

involve the application of bankruptcy law, are ordinary state law causes of action, and could proceed outside the bankruptcy court.[22]

The Committee's argument that the Court should treat the claims as core because they are intertwined with the equitable subordination claim against Yucaipa is not persuasive.   The Committee relies on *CDX Liquidating Trust v. Venrock Assocs.*, 2005 WL 3953895 (N.D. Ill. Aug. 10, 2005) to support its position. In that case, the trustee filed a complaint against members of the debtor's board of directors, among others, for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.   The *CDX Liquidating Trust* court noted that breach of fiduciary duty claims are generally deemed not to be core matters, but the court still considered the claims core because they were "enmeshed with the equitable subordination claim."[23]

*CDX Liquidating Trust* is distinguishable from the present matter and

---

[22] *See, e.g., In re Wash. Mut., Inc.*, 2012 WL 4755209, at *2 (Bankr. D. Del. Oct. 4, 2012) ("[The] breach of fiduciary duty claims are ordinary state law causes of action of the type that are brought in state courts across the country with no connection to the Bankruptcy Code or a bankruptcy case."); *Official Comm. of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615, 618 (Bankr. D. Del. 2003) ("The allegations of breach of fiduciary duty and waste of corporate assets are quintessential state law causes of action."); *Mellon v. Delaware & Hudson Ry. Co. (In re Delaware & Hudson Ry. Co.)*, 122 B.R. 887, 894–95 (D.Del.1991) (holding that alleged declaration of unlawful dividends, waste and breach of fiduciary duty against shareholders and directors are not core); *TTS, Inc. v. Stackfleth*, 142 B.R. 96, 99 (Bankr. D. Del. 1992) (concluding that allegations of fraud, mismanagement, waste, diversion, misappropriation, self-dealing and breach of fiduciary duty are not core).

[23] *CDX Liquidating Trust*, 2005 WL 3953895, at *2 (N.D. Ill. Aug. 10, 2005) ("[A] non-core claim will be considered core if it 'arises out of the same transaction as the creditor's proofs of claim . . . or . . . [its] adjudication . . . would require consideration of issues raised by the proofs of claim . . . such that the two claims are logically related.'" (quoting *In re Iridium Operating LLC*, 285 B.R. 822, 832 (S.D.N.Y. 2002)).

inconsistent with established Third Circuit law.   First, *CDX Liquidating Trust* involved a complaint against the debtor's directors—who had filed proofs of claim against the estate—for equitable subordination of those filed claims as well as breach of fiduciary duty and aiding and abetting breach of fiduciary duty.   Here, Mr. Gendregske has not filed a proof of claim against the estate.   Second, in *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008), the Third Circuit advised that "[e]ach claim within the same cause of action must be analyzed claim by claim and each alone must satisfy [the two-part] test in order to be considered a core proceeding. A single cause of action may include both core and non-core claims.   The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'"[24]   The *Exide* court considered and overruled the intertwinement argument finding that it was "legally unsound" and reasoned that "non-core claims do not become core simply by virtue of being pursued in the same litigation as core claims."[25]

The Court has "related to" jurisdiction over the non-core claims if their resolution could conceivably have an effect on the estate.[26]   The Committee argues that the claims against Mr. Gendregske are related to the Debtors' cases

---

[24] *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008).

[25] *Id.* at 220.   The *Exide* Court provided that "judicial economy and efficiency" do not, by themselves, justify federal jurisdiction.   *Id.* at 220 n.16 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

[26] *Pacor*, 743 F.2d at 994.

because, if the claims are successful, "'additional funds will be available to pay creditors of the estate.'"[27]   The Court agrees – if the Committee is successful on its claims, it could conceivably increase the size of the estate.[28]

## B.  The Motion to Strike Mr. Gendregske's Jury Demand

"[T]he bankruptcy court is an appropriate tribunal for determining whether there is a right to a trial by jury of issues for which a jury trial is demanded."[29] The Seventh Amendment of the U.S. Constitution preserves the right to a jury trial in a civil case: "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."[30]   The Supreme Court has interpreted "suits at common law" to mean "'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable rights alone were administered.'"[31]   Whether a suit is legal or equitable is a question of federal

---

[27] Core/Non-Core Opposition at ¶ 31 (quoting *Matter of Total Technical Servs., Inc.*, 142 B.R. 96, 99 (D. Del. 1992).

[28] Because the claims in the Amended Complaint are not *Stern* claims, i.e., "proceedings that are defined as 'core' under [section] 157(b) but may not, as a constitutional matter, be adjudicated as such (at least in the absence of consent)," the Court has constitutional authority to submit proposed findings of fact and conclusions of law pursuant to section 157(c)(1).   *Exec. Benefits*, 134 S.Ct. at 2172.

[29] *OHC Liquidation Trust v. Credit Suisse* (*In re Oakwood Homes Corp.*), 378 B.R. 59, 64 (Bankr. D. Del. 2007) (quoting *Official Comm. Of Unsecured Creditors v. TSG Equity Fund L.P. (In re Envisionet Computer Serv*s.), 276 B.R. 1, 6–7 (D. Me. 2002)).

[30] U.S. Const. amend. VII.

[31] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40-41 (1989) (emphasis in original) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830))

law.[32]

The Supreme Court in *Granfianciera* provided factors courts must balance

when deciding whether there is a right to a jury trial:

> First, we compare the statutory action to 18th-century actions
> brought in the courts of England prior to the merger of the courts of
> law and equity. Second, we examine the remedy sought and
> determine whether it is legal or equitable in nature. The second stage
> of this analysis is more important than the first. If, on balance, these
> two factors indicate that a party is entitled to a jury trial under the
> Seventh Amendment, we must decide whether Congress may assign
> and has assigned resolution of the relevant claim to a non-Article III
> adjudicative body that does not use a jury as fact finder.[33]

### 1.  First: Legal or Equitable Claims

The first step of the analysis requires the Court to determine whether the

Committee's claims against Mr. Gendregske for breach of fiduciary duty and

aiding and abetting breach of fiduciary duty would have been considered legal or

equitable in 18th century English courts.   "Actions for breach of fiduciary duty,

historically speaking, are almost uniformly actions 'in equity'—carrying with

them no right to trial by jury."[34]   The Committee contends, and Mr. Gendregske

---

[32] *Cantor v. Perelman*, 2005 WL 318666, at *4 (D. Del. Feb. 10, 2006) (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)).

[33] *Granfinanciera*, 492 U.S. at 43.   This final step – deciding whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body – is inapplicable here because Mr. Gendregske has not filed a proof of claim against the Debtors' estates.   *See Hechinger*, 327 B.R. at 543-44.

[34] *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 544 (D. Del. 2005) (quoting *In re Evangelist*, 760 F.2d 27, 29, 31 (1st Cir. 1985) (Breyer, J.)); *see, e.g.*, *OHC Liquidation Trust*, 378 B.R. at 66; *Pereira v. Farace*, 413 F.3d 330, 338 (2d Cir.2005), cert denied, 547 U.S. 1147 (2006); *In re Hutchinson*, 5 F.3d 750, 757 (4th Cir. 1993); *Cantor*, 2006 WL 318666, at *6 ("[T]he legal or equitable nature of the aiding and abetting claim appears to be indistinguishable from that of the underlying claim for breach . . . .").

does not appear to dispute,[35] that the claims are historically equitable, which weighs against Mr. Gendregske's right to a jury.   Therefore, the claims against Mr. Gendregske for breach of fiduciary duty and aiding and abetting breach of fiduciary duty would have been considered equitable in 18th century English courts.

### 2.   Second: Legal or Equitable Relief

The second factor in the *Granfianciera* analysis requires the Court to characterize the relief sought.   This factor is more important than the first.[36]   The Committee contends the relief it seeks is equitable and notes that "Delaware law 'permits broad, discretionary, and equitable remedies' in cases 'involving a breach of the duty of loyalty.'"[37]   The Committee argues that the Amended Complaint does not limit itself to legal remedies by seeking "damages . . . in an amount to be proven at trial,"[38] because it also seeks "other or further relief as is just, proper and equitable." [39]   The Committee further asserts that, should this Court

---

[35] Mr. Gendregske provides that, for purposes of the Motion to Strike Mark Gendregske's Jury Demand [D.I. 133] ("Motion to Strike"), "a claim for breach of fiduciary duty would be equitable in nature." Amended Opposition of Defendant Mark Gendregske to the Official Committee of Unsecured Creditors and Intervenors' Motion to Strike Defendant Mark Gendregske's Jury Demand [D.I. 150] ("Motion to Strike Opposition") at ¶ 7.

[36] *Granfinanciera*, 492 U.S. at 42.

[37] Motion to Strike at ¶ 15 (quoting *CFLP v. Cantor*, 2003 WL 21488707 (Del Ch. June 19, 2003)); *see also Bomarki, Inc. v. Int'l Telecharge, Inc.,* 794 A.2d 1161, 1184 (Del. Ch. 1999) ("[S]ignificant discretion is given to the [c]ourt in fashioning an appropriate remedy" for breach of loyalty), *aff'd,* 766. A.2d 437 (Del. 2000).

[38] Amended Complaint at ¶ 187.

[39] *Id.* at p. 61.

characterize the relief sought as a mix of legal and equitable relief, this in itself tips the scale in favor of striking the jury demand.[40]   The Committee argues that it may seek to recover all benefits Mr. Gendregske has received in connection with breaching his fiduciary duties, including his position as CEO, his salary, and bonuses.[41]

Mr. Gendregske argues that the relief sought is a legal remedy because it is for compensatory damages allegedly incurred by Allied.[42]   Mr. Gendregske argues that the Amended Complaint does not allege that he obtained any personal benefit, financial or otherwise, from approving any of the amendments to the credit agreements or from any of his other alleged actions or inactions that underlie the Committee's claims.[43]   The Amended Complaint fails to seek restitution and fails to allege that Mr. Gendregske is in possession of any particular funds that belonged to Allied.[44]

"Damages 'are considered to be equitable relief if they are restitutionary in nature—that is, they would restore the status quo and return a sum rightfully belonging to another."[45]   Mr. Gendregske predominantly relies on the Second

---

[40] Motion to Strike at ¶ 23.

[41] *Id.* at ¶ 21.

[42] Motion to Strike Opposition at ¶ 15.

[43] Motion to Strike Opposition at ¶ 19.

[44] *Id.* at ¶ 19.

[45] *Hechinger*, 327 B.R. at 544-45 (quoting *Alexander v. Primerica Holdings, Inc.*, 819 F.Supp. 1296, 1309 (D. N.J. 1993)).

Circuit's opinion in *Pereira v. Farace*.[46]    In *Pereira*, a chapter 7 trustee filed an amended complaint suing the debtor's officers and directors for breach of fiduciary duty under Delaware state law arising from their roles in the debtor's financial demise.[47]    The defendants argued that they were entitled to a jury trial because the trustee sought the legal remedy of compensatory damages, not equitable restitution.[48]    The district court rejected this argument and determined that the trustee had "limited his relief to restitution" and "the fact that the officers and directors never personally possessed any of the disputed funds [does] not militate that the relief [is] not equitable." [49]    The Second Circuit reversed concluding that "[the trustee's] claim is for compensatory damages—a legal claim."[50]    In making this determination, the *Pereira* court looked to the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*[51] for guidance, which defined "equitable relief" as remedies that "restore to the plaintiff particular funds or property *in the defendant's possession*" and not those remedies that "impose personal liability on the defendant."[52]    The *Pereira* court concluded that the relief sought by the trustee was legal in nature because the remedy "was not for money

---

[46] *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005).

[47] *Id.* at 333.

[48] *Id.* at 339.

[49] *Id.*

[50] *Id.* at 340.

[51] *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).

[52] *Id.* (quoting *Great-West*, 534 U.S. at 214).

that was unjustly possessed by defendants, but was instead a measure of the harm to the corporation."[53]

In *Cantor v. Perelman*, the district court had "some reason to doubt whether the Second Circuit's conclusion [in Pereira was] correct."[54]   The *Cantor* court did "not decide . . . whether *Pereira* was correctly decided," but did suggest that the Supreme Court's definition of "equitable relief" was limited to its definition as found in section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA").[55]   In support, the *Cantor* court noted that the Supreme Court's analysis began with the statement that, "because ERISA is a 'comprehensive and reticulated statute,' the Court has been 'especially reluctant to tamper with the enforcement scheme . . . by extending remedies not specifically authorized by its text."[56]   The *Cantor* court noted that the Supreme Court expressly held that trust remedies did not apply to "define the reach of [section] 502(a)(3)."[57]

The plaintiffs in *Cantor* sought to recover "the benefits obtained by defendants as a result of their breaches of fiduciary duty or participation in breaches of fiduciary duty, in an amount to be determined at trial, but believed to

---

[53] *Cantor v. Perelman,* 2006 WL318666 at *8 (D. Del. Feb. 10, 2006) (citing *Pereira*, 413 F.3d at 340).

[54] *Id.*

[55] *Id.*

[56] *Id.* (quoting *Great-West*, 534 U.S. at 209).

[57] *Id.* (quoting *Great-West*, 534 U.S. at 219).

be no less than \$553.5 million."[58]    The court concluded that these claims are directly analogous to claims against a trustee by a beneficiary and held that the plaintiffs' claims were for equitable relief.[59]    The court reasoned that the second *Granfinanciera* factor leads to a mixed result in that the claims sought both legal and equitable relief, and that the "long history of treating breach of fiduciary duty claims as equitable . . . [tips the scales] in favor of [the plaintiffs'] claims being judged equitable."[60]

The *Cantor* court's proffered limitation of the Supreme Court's holding in *Great-West* is not without its own flaws.    In *Sereboff v. Mid Atlantic Med. Servs., Inc.*, the Supreme Court noted that "[t]he kind of relief Great–West sought . . . was 'not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that [Great–West] conferred upon [Knudson].'    We accordingly determined that the suit could not proceed under § 502(a)(3)."[61]    Thus, the Supreme Court's holding did not interpret the meaning of "equitable relief" within the definitional confines of ERISA, but rather determined whether the relief sought by Knudson was

---

[58] *Id.* at *9.

[59] *Id.*

[60] *Id.*

[61] *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 362 (2006) (quoting *Great-West*, 534 U.S. at 214).    The Court denied relief to Great–West because the Knudsons' settlement proceeds were not in their possession, but had been distributed to attorneys, a Special Needs Trust, and other parties. *See Great-West*, 534 U.S. at 214.

actually equitable in nature so that Knudson could even bring a claim under ERISA.   Additionally, several courts have held that *Great-West* is not limited by the fact that *Great-West* involved only non-fiduciary defendants.[62]

Indeed, former Judge Walsh applied the *Granfinanciera* factors in one case where a jury demand for breach of fiduciary duty claims was made, and relied on *Great-West*'s reasoning to determine whether the relief sought was equitable or legal in one of these cases.   In *OHC Liquidation Trust*,[63] decided after *Cantor*, the plaintiff requested "recovery of all fees and other remuneration paid to [d]efendants, and actual and consequential damages" for the defendants' alleged breach of fiduciary duty, negligence, and breach of implied contract claims.[64] Judge Walsh applied *Great-West* and held that the relief the plaintiff sought was for compensatory money damages, which is "'the classic form of legal relief."[65] Judge Walsh reasoned that the plaintiff sought to impose personal liability on the defendants for the damage they caused, not to recover any particular fund that the defendants had in their possession.[66]   In *Hechinger*, the district court concluded

---

[62] *See Callery v. U.S. Life Ins. Co. in City of New York*, 392 F.3d 401, 409 (10th Cir. 2005) ("While the arguments . . . that we should look to the common law of trusts and award monetary damages pursuant to an equitable breach of trust by a fiduciary may have been compelling before *Great–West*, they are not so now."); *McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376, 378 (9th Cir. 1996) ("[T]he status of the defendant, whether fiduciary or nonfiduciary, does not affect the question of whether damages constitute 'appropriate equitable relief.'").

[63] *OHC Liquidation Trust*, 378 B.R. at 64.

[64] *Id.* at 64.

[65] *Id.* at 68.

[66] *Id.*

that the relief for a breach of fiduciary duty claim was equitable in nature because the plaintiff alleged that certain director-defendants ensured "the removal of at least $127 million of value of Hechinger by cashing out themselves . . . The plaintiff alleged that the director-defendants' 'deprived' Hechinger . . . of at least the value of the amounts paid to Hechinger's shareholders."[67]

Still, the Supreme Court has never "go[ne][so] far as to say that any award of monetary relief must necessarily be 'legal' relief."[68]    "First, a monetary award may be an equitable remedy if the award is 'restitutionary' in nature, 'such as in actions for disgorgement of improper profits.'"[69]    In *Great-West*, Justice Scalia conceded that the Supreme Court's "cases have not previously drawn this fine distinction between restitution at law and restitution in equity," but went on to note that "neither have they involved an issue to which the distinction was relevant."[70]

Here, the Committee alleges that "Yucaipa's actions caused Allied to pay millions of dollars for services of agents and advisors whose services solely benefitted Yucaipa."[71]    The Committee further alleges that "Yucaipa's efforts

---

[67] *Hechinger*, 327 B.R. at 544.

[68] *Curtis v. Loether*, 415 U.S. 189,    196 (1974).

[69] *Hopkins v. Saunders*, 199 F.3d 968, 977 (8th Cir. 1999) (quoting *Chauffers, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990)).

[70] *Great-West*, 534 U.S. at 214-15.

[71] Amended Complaint at ¶ 13.

were also aided and enabled by the members of Allied's Board . . . .[72]  "Yucaipa . . . engaged in inequitable conduct through its control of the board of directors of Allied[] by causing the directors to fail to even consider potential transactions that could have benefitted Allied if such transactions held even the potential of harming Yucaipa's equity interests."[73]  "In derogation of their duties to benefit [Allied], not Yucaipa, the Allied Directors failed to even engage in negotiations with lenders concerning potential restructuring alternatives that could have benefitted [Allied] and its balance sheet, if such transactions were not likely beneficial to Yucaipa."[74]

The Committee contends that these breaches of fiduciary duty resulted in the "payment of millions of dollars in purported fees paid to or on behalf of Yucaipa."[75]  "The Allied Directors failed to ensure that Allied received any of the benefit from the millions of dollars that were scheduled to be paid to or on behalf of Yucaipa were necessary and appropriate."[76]  "The Debtors have suffered damages in an amount to be proved at trial as a result of the Allied Directors' breach of fiduciary duties."[77]  "[T]he creditors of Allied have been damaged in an

---

[72] *Id.* at ¶ 15.

[73] *Id.* at ¶ 177.

[74] *Id.* at ¶ 183.

[75] *Id.* at ¶ 185.

[76] *Id.*

[77] *Id.* at ¶ 187.

amount to be proved at trial in this action.    At a minimum, the damages suffered

by [Allied] . . . include fees and interest paid to and on behalf of Yucaipa . . . ."[78]

And finally, the last prayer for relief requests that the Court "grant[] such other or

further relief as is just, proper and equitable."[79]

The Committee's Reply argues that the Amended Complaint seeks

restitution of at least $1.6 million in bonuses paid to Mr. Gendregske by Yucaipa

from Allied's coffers.[80]    The Committee contends that the demand for relief "was

necessarily somewhat general because discovery had not yet begun when the

complaint was filed . . . ."[81]    The Committee provides that it only recently received

documents regarding the payment of Mr. Gendregske's bonuses.[82]

Despite these new allegations in the Committee's Reply, the relief sought in

the Amended Complaint is similar to that in other circumstances in which courts

concluded the relief sought for breach of fiduciary duty constitutes money

damages and is not equitable relief.    In *Pereira,* the plaintiff sought "compensatory

damages" in his prayer for relief, which the Second Circuit noted is the classic form

---

[78] *Id.* at ¶ 193.

[79] *Id.* at p. 61.

[80] Reply in Support of Plaintiff and Intervenors' Motion to Strike Defendant Mark Gendregske's Jury Demand [D.I. 171] at ¶ 2.    Mr. Gendregske's bonus amounts were incentivized, at least in part, by meeting performance targets with respect to Allied's EBITDA. *See id*. at ¶ 27.    In 2009 and 2010, the Allied board amended Mr. Gendregske's employment agreement so that the EBITDA target would no longer be used to determine his bonus, rather his annual bonus would be in an amount determined by Allied's board. *See id*. at ¶ 28.

[81] *Id.*

[82] *Id.* at ¶ 20.

of legal relief.[83]   In *OHC Liquidation Trust*, "the thrust of [the plaintiff's] case [was] on remedying the alleged harm incurred by the [d]ebtors, rather than on merely recovering illicit gains," and the court held that the relief sought was legal in nature because the plaintiff sought monetary damages and improperly transferred fees, which is compensatory monetary damages.[84]   In *Sergent v. McKinstry*, the court held that the plaintiff's breach of fiduciary duty claim was for legal relief because the plaintiff sought "compensatory damages for the losses . . . sustained . . . ."[85]   In *CDX Liquidating Trust v. Venrock Assocs.*, the court held that the relief sought for a breach of fiduciary duty claim was legal in nature because the plaintiff sought money damages.[86]   In *Gecker v. Marathon Financial Ins. Co. (In re Automotive Professional, Inc.)*, the court concluded the plaintiff's claim for unjust enrichment for which she sought a money judgment in her prayer for relief was legal in nature because she sought money damages.[87]

 *Cantor* provides the Committee with its best hope for striking the jury demand, however, the *Cantor* case is not the proper comparison.   In *Cantor*, the plaintiffs sought to recover "the *benefits obtained by defendants* as a result of their

---

[83]  413 F.3d at 339.

[84]  378 B.R. at 68.

[85]  *Sergent v. McKinstry*, 472 B.R. 387, 406 (E.D. Ky. 2012).

[86]  *CDX Liquidating Trust v. Venrock Assocs.*, 2005 WL 3953895 at *3 (N.D. Ill. Aug. 10, 2005).

[87]  *Gecker v. Marathon Financial Ins. Co. (In re Automotive Professional, Inc.)*, 389 B.R. 621, 626-27 (Bankr. N.D. Ill. 2008); *see also K&R Express Sys., Inc.*, 382 B.R. 443 (N.D. Ill. 2007).

breaches of fiduciary duty or participation in breaches of fiduciary duty, in an amount to be determined at trial, but believed to be no less than $553.5 million."[88] The Committee's allegations that "[t]he Debtors have suffered damages in an amount to be proved at trial as a result of the Allied Directors' breach of fiduciary duties"[89] and "the creditors of Allied have been damaged in an amount to be proved at trial in this action.   At a minimum, the damages suffered by [Allied] . . . include fees and interest paid to and on behalf of Yucaipa"[90] seek to impose personal liability on Mr. Gendregske, rather than restore to Allied particular funds or property in Mr. Gendregske's possession.[91]   The Amended Complaint does not allege or seek a remedy that is equitable in nature, e.g., restitution in the form of a constructive trust or an equitable lien.[92]   The claims seek compensatory damages, which are legal in nature.

Here, the Amended Complaint contains no allegations that Mr. Gendregske is in possession of particular funds or property to restore to Allied, or even that Mr. Gendregske obtained benefits as a result of the alleged breaches.   Indeed, the

---

[88] 2006 WL 318666, *9 (emphasis added).

[89] Amended Complaint at ¶ 187.

[90] *Id.* at ¶ 193.

[91] *Pereira*, 413 F.3d at 340 (citing *Great-West*, 534 U.S. at 214).

[92] *See Great-West*, 534 U.S. at 213 ("[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."); *see* 1 Dobbs § 4.3(1), at 587–588; Restatement of Restitution, § 160, Comment a, at 641–642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978).

final subparagraph in the Committee's prayer for relief seeks "such other or further relief as is just, proper and equitable."[93]    This subparagraph is not directed toward any specific claim or allegation in the Amended Complaint and does not allege that Mr. Gendregske is in possession of funds or property that could restore Allied to the status quo.[94]    Therefore, the Court concludes that the Committee seeks legal relief with respect to the claims against Mr. Gendregske for breach of fiduciary duty and aiding and abetting breach of fiduciary duty because application of the second *Granfinanciera* factor – the more important factor – weighs toward treating the claims as equitable.

## C.  The Rule 59(e) Motion

In the Rule 59(e) Motion, Mr. Gendregske requests that the Court amend its April 9th Order denying the Motion to Dismiss to remove the statements that the claims against Mr. Gendregske are core proceedings and the Court has the judicial power to enter a final order in connection with those claims.    Federal Rule of Civil Procedure 59(e), made applicable to this adversary proceeding by Rule 9023 of the Federal Rules of Bankruptcy Procedure, governs motions for reconsideration.    A motion for reconsideration may be granted where (i) there has been an intervening

---

[93] Amended Complaint at p. 61.

[94] *See Great-West*, 534 U.S. at 213. "In cases in which the plaintiff 'could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him,' the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit." *Id.* (quoting 1 Dobbs § 4.2(1), at 571).

change in controlling law; (ii) new evidence has become available; or (iii) there is a need to prevent manifest injustice or to correct a clear error of law or fact.[95]   Mr. Gendregske argues that the Court committed a clear error of law or fact in making the following statements in the Order denying the Motion to Dismiss: "The Court having found that . . . (ii) this is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) . . . and (iv) the Court has judicial power to enter a final order."   The Court agrees.

None of the briefing in connection with the Motion to Dismiss addressed the issue of whether the claims asserted against Mr. Gendregske are core or non-core proceedings.   None of the parties' arguments nor the Court's ruling on the Motion to Dismiss address whether the claims are core proceedings.   Moreover, the day before the hearing on the Motion to Dismiss, Mr. Gendregske filed the Core/Non-Core Motion.

The issue of whether the claims asserted against Mr. Gendregske are core or non-core proceedings was not before the Court in connection with the Motion to Dismiss and, indeed, had already been challenged by Mr. Gendregske at the time the Court entered its Order.   As discussed above in detail, the Court has now determined that those claims are not core proceedings.   Thus, the Court will amend its April 9th Order to remove the statements at issue.

---

[95] *In re W.R. Grace & Co.*, 398 B.R. 368, 373 (D. Del. 2008) (citing *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

**CONCLUSION**

For the reasons set forth above the Court will (i) grant the Motion of Defendant Mark Gendregske for Determination that the Claims Asserted Against Him Constitute Non-Core Proceedings; (ii) grant the Motion of Defendant Mark Gendregske Pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59(e) to Amend the Order Denying Motion to Dismiss; and (iii) deny the Motion to Strike Mark Gendregske's Jury Demand.   An order will be issued.