# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ALLIED SYSTEMS HOLDINGS, INC. | : | Case No. 12-11564 (CSS) |
| | : | |
| Debtor. | : | (Jointly Administered) |
| | : | |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLIED SYSTEMS HOLDING, INC. AND ITS AFFILIATED DEBTORS, | : | |
| | : | |
| Plaintiffs, | : | Adv. Proc. No.: 13-50530 (CSS) |
| | : | |
| BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., AND SPECTRUM INVESTMENT PARTNERS, L.P., | : | |
| | : | |
| Intervenors, | : | |
| v. | : | |
| | : | **Related Adv. Docket No.: 350** |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND, II, L.P., AND YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK J. GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, AND JOSEPH TOMCZAK. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

Upon consideration of the *Motion of the Official Committee of Unsecured Creditors to Compel the Production of Documents Over the Yucaipa Defendant's Objections*[1] (the "Motion") filed by the Official Committee of Unsecured Creditors (the "Committee"); the *Joinder* filed by the intervenors BDCM Opportunity Fund I, LP, Black Diamond CLO 2005-1 Ltd., and Spectrum Investment Partners, L.P.[2] (collectively, "BD/S"), and the response filed by Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa") and Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner, and Joseph Tomczak[3] (collectively, the "Yucaipa Directors" and together with Yucaipa, the "Yucaipa Defendants"); as well as the reply filed by the Committee;[4] the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and (ii) notice of the Motion was sufficient under the circumstances;

IT IS HEREBY ORDERED THAT, the Motion is GRANTED as set forth herein.

**RELEVANT BACKGROUND**

**A. Procedural Background and Background of Dispute**

1.   On May 17, 2012 (the "Petition Date"), BD/S filed an involuntary bankruptcy petition against Allied Systems Holdings, Inc. ("Allied" and together with the above-captioned debtors and debtors in possession, the "Debtors").

---

[1] Adv. D.I. 350.

[2] Adv. D.I. 352.

[3] Adv. D.I. 353.

[4] Adv. D.I. 355 (redacted) and 357.

2. On June 10, 2012, Allied consented to the entry of an order for relief, and the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the Debtors' chapter 11 cases.

3. On June 20, 2012, the Committee, the plaintiff in this adversary proceeding, was appointed pursuant to Section 1102 of the Bankruptcy Code.

4. The Committee commenced this adversary proceeding on February 1, 2013. Immediately thereafter, the Committee served its *First Set of Document Requests to the Yucaipa Directors* which requested, among other things, information related to each Yucaipa Director's compensation, compensation related to the Debtors and/or Yucaipa's investments, and performance or employment reviews related to each director's employment with Yucaipa (hereinafter referred to as the "Compensation and Performance Review Requests").[5] The Yucaipa Directors did not agree to produce documents responsive to these requests.[6]

5. Thereafter, on March 14, 2013, the Committee filed its Amended Complaint against the Yucaipa Defendants.[7] The Amended Complaint alleges, among other things, claims that the Yucaipa Defendants breached (and/or aided and abetted the breach of) fiduciary duties owed to Allied in order to impermissibly benefit Yucaipa to the

---

[5] Motion, Exh. A (*Declaration of Nicholas K. Lagemann* (hereinafter the "Langemann Decl.") ¶ 2, Exh. 1).

[6] Langenmann Decl. ¶ 4, Exh. 2

[7] Adv. D.I. 76 (*The Official Committee of Unsecured Creditors' Amended Complaint for (i) Equitable Subordination, (ii) Recharacterization, (iii) Breach of Contract, (iv) Specific Performance, (v) Breaches of Fiduciary Duties, (vi) Aiding and Abetting Breach of Fiduciary Duties, (vii) Avoidance and Recovery of Avoidable Transfers, and (viii) Disallowance of Certain Claims*) (the "Amended Complaint").

detriment of Allied. A more thorough discussion of the allegations in the Amended Complaint is detailed *infra*.

6. Following the Amended Complaint, the Committee served its second set of document requests to Yucaipa requesting "personnel files of any employee who Yucaipa reasonably expects will be a witness in deposition, at trial or at any proceeding relating to the Debtors' Claims or the Amended Complaint." ("Personnel File Request" and with the Compensation and Performance Reviews Requests the "Requests at Issue").

7. Yucaipa objected to the Personnel File Request and has not agreed to produce responsive documents.[8]

### B. The Amended Complaint's Allegations

8. As mentioned *supra*, the Amended Complaint alleges that the Yucaipa Defendants breached fiduciary duties owed to Allied in order to impermissibly benefit Yucaipa to the detriment of Allied. The Amended Complaint alleges:

> 16. Allied's Board . . . failed to take anything approaching reasonable steps to avoid the obvious conflict of interests that arose from Yucaipa's control over the Debtors. For instances, while Allied nominally established a "Special Committee" (the "Special Committee") of purportedly independent board members to evaluate transactions involving Yucaipa, even if those board members could be deemed to be "independent," the Special Committee process was entirely flawed and deficient . . . . [T]he Special Committee approved most, if not all, of these transactions only after the full Board, including Yucaipa Board members, had already deliberated and received advice from the same advisors who represented the entire Board and whose retention was subject to the whims of Yucaipa and its Board members.

---

[8] Langemann Decl. ¶ 10, Exh. 7.

> 95. Yucaipa's intentions throughout this period were known to the Allied Directors. All involved understood that Yucaipa, having already succeeded in its efforts to take control over the Second Lien Facility, was seeking approval to obtain First Lien Debt in an effort to support its equity investment in Allied. Nevertheless, the Allied Directors took no measurers to stop Yucaipa, or even to ensure that any takeover by Yucaipa of the First Lien Facility would not be inimical to the interests of Allied or its creditors.
>
> 100. Unfortunately, the Allied Directors failed to even attempt to engage or direct the officers of Allied to engage in discussion or negotiations with ComVest concerning a potential voluntary restructuring of Allied's outstanding First Lien Debt. Although the precise reasons for the failure of the Allied Board to fulfill its fiduciary obligations is not known to date, given Yucaipa's control over the Board and its decision making, it is hardly surprising that Allied failed to even attempt to engage in discussions concerning a potential transaction that could have greatly enhanced the value of the Company where it would not advance Yucaipa's self-serving interests.
>
> 112. . . . The transaction was ultimately approved by Allied's Board on August 19, 2009, at the recommendation of the purportedly independent Special Committee. Despite the approval, neither Allied's Special Committee, nor the full Board, played any significant role in the negotiations of the terms of the Fourth Amendment, Instead, the Allied Directors simply went along for the ride as Yucaipa completed its backup plan to cement control over Allied.[9]

9. The Amended Complaint alleges that the Yucaipa Defendants breached their fiduciary duty of loyalty to Allied and aided and abetted each other's breach of their fiduciary duty of loyalty to Allied.[10]

---

[9] Amended Complaint, ¶¶ 16, 95, 100 and 112. *See* also Amended Complaint ¶¶ 179-193.

[10] Amended Complaint, ¶¶ 179-87 and 188-93.

5

## ANALYSIS

### A.      Parties' Arguments

10.    The Committee asserts that the Requests at Issue are relevant and discoverable.  The Committee asserts that the Compensation and Performance Reviews Requests may evidence that the Yucaipa Directors received favorable reviews and/or other financial incentives to act in Yucaipa's interests in breach of the fiduciary obligations each director owed to Allied.  The Committee further asserts that to the extent that any responsive documents contain confidential information, then such documents will be produced pursuant to and under the protections of the Agreed Protective Order entered by this Court on March 25, 2013 (the "Protective Order").  The Committee also asserts that this information is not privileged and does not reflect the advice of counsel.

11.    Yucaipa has offered an alternative to turning over the Requested Documents, including a stipulation as to the relevant facts: (i) the Yucaipa Directors did not receive compensation from Yucaipa, (ii) with two possible exceptions, the Yucaipa Directors did not receive compensation from Allied, and (iii) the Directors' Yucaipa compensation was based on longstanding arrangements that (a) pre-dated the investment in Allied, (b) did not depend on the performance of any one company, and (c) depended, in part, upon the overall performance of the Yucaipa investment portfolios, of which Allied was one component.  Yucaipa asserts that information beyond this offered stipulation is only intended to annoy, harass and embarrass the Directors and Yucaipa.

12. Yucaipa further states that there are no Performance Reviews or Personnel Files containing anything beyond the total dollar amounts of the Yucaipa's Directors' compensation.  Yucaipa further argues that there was not any Allied-based compensation for any of the Yucaipa Directors other than possibly some payments to Joseph Tomczak and/or Jos Opdeweegh (and the Committee could obtain this information more readily from the Debtors).  Yucaipa further asserts that the only documents that exist reflect the specific dollar amount of the Directors' compensation.  Yucaipa continues that Yucaipa did not perform formal, regular employment reviews and no such responsive documents exist in any form.  Yucaipa continues that to the extent that the Committee is seeking informal assessment or evaluations of the Yucaipa Directors' performance, the request is unduly broad, burdensome, and unlikely to lead to the discovery of admissible evidence.  Yucaipa provides examples such as e-mail stating "nice job during the meeting" or "nice" as being overly broad responsive documents and unnecessary.

13. Yucaipa claims that the only information available is the total compensation figures showing the specific dollar amounts that the Yucaipa Directors received from Yucaipa.  Yucaipa argues that the Committee has failed to articulate how those figures, standing alone, could possibly support their allegations concerning the Directors' purported conflicting loyalties, misplaced incentives, or anything else.

14. The Committee replies that Yucaipa has tried to rationalize whether the responsive documents would support the Committee's claims.  The Committee asserts that it is not up to counsel for the Yucaipa Defendants to characterize what information

is sought by the Requests at Issue. The Committee argues that Yucaipa makes statements that "many" of the documents do not exist and never represent that "none" of the documents exist. As such, the Committee argues that Yucaipa should produce responsive documents to the extent they exist. As to Yucaipa's argument that informal communication is unduly burdensome, the Committee disagrees because an e-mail stating "nice job during the meeting" related to a substantive Board meeting is responsive to what type of decisions were being complimented; or similarly, an e-mailed "nice!" in regarding a Board decision such as formalizing the Fourth Amendment would be responsive and relevant.

15. The Committee argues that the proffered stipulation is inadequate and that Yucaipa's claim that the compensation information would "only serve to annoy, harass, and embarrass the Directors and Yucaipa" are arguments that would directly relate to admissibility and not discovery. As to the stipulated points, the Committee is aware of "travel reimbursements" to Derex Walker during the six months leading to Allied's bankruptcy filing; furthermore, not all the Yucaipa Directors' compensation was based on longstanding arrangements that pre-dated the investment in Allied because Defendant Tomczak joined Yucaipa in 2007 and Defendant Opdeweegh joined Yucaipa in February 2008, long after Yucaipa made its investments in Allied.

16. The Committee also argued that it is not obligated to show that relevant information it seeks to discover "standing alone" supports its claims; rather the Committee asserts that "parties can obtain discovery on any nonprivileged matters

relevant to any party's claim or defense which is reasonably calculated to lead to the discovery of admissible evidence."

**B.    Legal Discussion**

17.    Rule 26(b)(1) of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedures, states that parties can obtain discovery on any nonpriviledged matters "relevant to any party's claim or defense," which is "reasonably calculated to lead to the discovery of admissible evidence."[11]

> Construed as a broad standard, discovery is ordinarily allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.  Yet while a plaintiff can adduce evidence in support of cognizable claims set out in the complaint, a plaintiff is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim not yet made.[12]

Personnel files are discoverable; although such discovery may be limited given that such files contain confidential information.[13]

18.    In this case, the Committee has the initial burden of proving the relevance of the requested information;[14] however, "[o]nce that initial burden is met, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating

---

[11] Fed. R. Civ. P. 26(b)(1); *see also Miller v. American Capital, Ltd (In re NewStarcom Holdings, Inc.)*, 514 B.R. 394, 399 (Bankr. D. Del. 2014).

[12] *NewStarcom Holdings, Inc.*, 514 B.R. at 399-400 (internal quotation marks, modifications and footnotes omitted).

[13] *Harris v. Harley-Davidson Motor Co. Operations*, No. 1:09-CV-1449, 2010 WL 4683776, at *5 (M.D. Pa. Nov. 10, 2010) (citation omitted).

[14] *Smith v. Donate*, No. 4:10-CV-2133, 2011 WL 5593160, at *3 (M.D. Pa. Nov. 17, 2011) (citation omitted).

that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b) (1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[15]

**C.  Analysis**

19.  In general, personnel files are discoverable as long as the request is reasonably calculated to reveal evidence pertaining to the allegations in the complaint.[16] However, limitations on production can be made if such discovery is burdensome.[17]

20.  The Court finds that the proffered stipulation by Yucaipa is inadequate. The Court agrees with the Committee that the proffered stipulation contains inaccuracies considering some of the Yucaipa Directors were hired after Yucaipa's initial investment in Allied.  In addition, the Committee should be able to explore the "longstanding compensation arrangements" between Yucaipa and the Yucaipa Directors, including the total amount of compensation and any formulaic attributes of the Yucaipa Directors' compensation.  Yucaipa may be correct that the "only information that could be discovered would be the total compensation figured showing specific dollar amounts

---

[15] *Id.* at *3 (citations and internal quotation marks omitted).

[16] *Hicks v. Big Bros./Big Sisters of Am.*, 168 F.R.D. 528, 529 (E.D. Pa. 1996).

[17] *Callaham v. Mataloni*, No. CIV.4:CV-06-1109, 2009 WL 1363368, at *3 (M.D. Pa. May 14, 2009) (citations omitted) ("Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information."); *see, e.g., Hicks v. Big Bros./Big Sisters of Am.*, 168 F.R.D. 528, 529-30 (E.D. Pa. 1996) ("Further, this document production should *530 place very little burden on Defendant as its extent will be quite minimal.").

that Yucaipa Directors received from Yucaipa." Although a total dollar figure may not be probative into conflicting loyalties, misplaced incentives, or other Committee allegations, the Committee should be able to explore the compensation amounts and compensation structures of the Yucaipa Directors.

21.     Yucaipa also argues that the total compensation amounts for the Yucaipa Directors will only serve to "harass, embarrass, and/or annoy Yucaipa and the Yucaipa Directors." The Court disagrees. First, such information will be produced per the Protective Order.[18] Second, such information is probative of the claims the Committee has made against the Yucaipa Directors. "[P]arties can obtain discovery on any nonprivileged matters relevant to any party's claim or defense which is reasonably calculated to lead to the discovery of admissible evidence. . . . [D]iscovery is ordinarily allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action."[19] Here, the Compensation and Performance Review Requests are clearly related to the Committee's allegations of conflicting loyalties and misplaced incentives.

22.     Although Yucaipa cannot produce documents that do not exist,[20] Yucaipa must produce existing documents that are responsive to the Committee's Personnel File Request. Yucaipa has argued that informal documents related to a Directors'

---

[18] Adv. Case No. 12-50947; Adv. D.I. 171.

[19] *NewStarcom Holdings, Inc.*, 514 B.R. at 399-400 (internal quotation marks and citation omitted).

[20] *Am. Fed'n of State Cnty. & Mun. Employees, Dist. Council 47 Health & Welfare Fund v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 08-CV-5904, 2010 WL 5186088, at *4 (E.D. Pa. Dec. 21, 2010) (citation and footnote omitted).

performance would be burdensome. Again, the Court agrees with the Committee that such informal documentation, including e-mails, may be relevant to the Yucaipa Directors' performance as it relates to the relationship between Allied and Yucaipa. For example, an e-mail complimenting one of the Yucaipa Directors for their handling of the negotiations with ComVest or related to approval of the Fourth Amendment, is, in fact, relevant to the Committee's inquiry concerning the Yucaipa's Directors' good faith and fair dealings with Allied. Feedback related to the Yucaipa Directors' performance is relevant to the allegations made by the Committee, thus, formal and informal performance reviews should be produced.

## CONCLUSION

23.   Thus, the Court herein grants the Committee's Motion and overrules the Yucaipa Defendants' objection. The Yucaipa Defendants must produce all documents, if any, responsive to the Requests at Issue.

BY THE COURT:

_____
Christopher S. Sontchi
United States Bankruptcy Court

Dated: November 9, 2015