**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 12-11564 (KBO)<br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS<br><br>Plaintiff,<br><br>BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P.,<br><br>Intervenors,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK,<br><br>Defendants. | Adv. Proc. No. 13-50530 |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM | Adv. Pro. No. 14-50971 (KBO) |

COMMERCIAL FINANCE LLC, as co-administrative agent,

Plaintiff,

v.

YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK,

Defendants.

**MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF YUCAIPA DEFENDANTS' MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF JANUARY 16, 2020 ORDER (ADV. NO. 13-50530, DKT. 654; ADV. NO. 14-50971, DKT. 416)**

YOUNG CONAWAY
STARGATT & TAYLOR, LLP
Michael R. Nestor, Esquire (No. 3526)
Michael S. Neiburg, Esquire (No. 5275)
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Maurice M. Suh (*Pro Hac Vice*)
Robert A. Klyman (*Pro Hac Vice*)
Kahn Scolnick (*Pro Hac Vice*)
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
msuh@gibsondunn.com

*Attorneys for Defendants Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Yucaipa*

*American Alliance Fund II, L.P., Yucaipa American Alliance (Parallel) Fund II, L.P., Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner, and Joseph Tomczak*

## INTRODUCTION

The Yucaipa Defendants[1] respectfully seek clarification and/or reconsideration of footnote 14 of this Court's January 16, 2020 order (Adv. No. 13-50530, Dkt. 654; Adv. No. 14-50971, Dkt. 416), which states, in relevant part:

> The Yucaipa Defendants assert that the Court did not [strike] the affirmative defense of ratification. This affirmative defense is similar to the specifically identified affirmative defenses [of unclean hands, waiver, estoppel, consent, and laches], and also relies upon the rejected counterclaim alleging wrongful actions taken by BD/S. Accordingly, I understand the intent of Judge Sontchi's order striking the affirmative defenses to apply to all such affirmative defenses, including ratification.

(Dkt. 654-1, pp. 3-4, n.14; Dkt. 416-1, pp. 3-4, n.14.)

The above-quoted language of footnote 14 could arguably be read as a *sua sponte* order under Federal Rule of Civil Procedure 12(f) (made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b)) striking the Yucaipa Defendants' affirmative defense of ratification. Given the serious implications that such a ruling would have on the Yucaipa Defendants' substantive rights in this litigation, this Court should clarify that nothing in footnote 14 prevents the Yucaipa Defendants from pursuing a ratification defense at trial.

Alternatively, to the extent this Court *intended* footnote 14 to be a *sua sponte* order under Rule 12(f) striking the Yucaipa Defendants' affirmative defense of ratification, the Court should

---

[1] The "Yucaipa Defendants" include Yucaipa American Alliance Fund, I, LP, and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa"), along with Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner and Joseph Tomczak (collectively the "Director Defendants") and Ron Burkle. In the BD/S Action (Adv. No. 14-50971), the parties stipulated to the dismissal of Yucaipa American Alliance Fund II, L.P. and Yucaipa American Alliance (Parallel) Fund II, L.P. (together, "Yucaipa II") without prejudice, because Yucaipa II never held any Allied debt and therefore is not a proper defendant in these adversary proceedings. Yucaipa II asserts that it should similarly be dismissed from the UCC Action (Adv. No. 13-50530).

reconsider that ruling.[2] As explained below, this Court appears to have misconstrued both the legal scope and requirements of the ratification defense and the factual basis for the defense in this case.

In the specific ruling that Footnote 14 references, Judge Sontchi concluded that the five "Stricken Defenses"—unclean hands, waiver, estoppel, consent, and laches—were premised on the same factual allegations that the Court had previously rejected when dismissing Yucaipa's equitable subordination counterclaim against BD/S. Those allegations described various "bad acts" committed by BD/S against Yucaipa, which Judge Sontchi had deemed "implausible." Because of that determination, he ruled that the Stricken Defenses should be eliminated from the case. This ruling itself has prejudiced the Yucaipa Defendants, it was based on what is now clearly an inaccurate record (as revealed during discovery), and it will be the subject of an appeal in the event that the Yucaipa Defendants do not prevail at trial.

Striking the affirmative defense of ratification now, on the Court's own motion, would both compound this error and be a separate and independent mistake The ratification defense bears no relation to Yucaipa's dismissed equitable subordination counterclaim—the Yucaipa Defendants are not relying on any of the supposedly "implausible" BD/S "bad acts" allegations to support their ratification defense.

As a result, this Court would have been wrong to the extent it concluded that the ratification defense is "similar to the [Stricken] defenses" and "relies upon the rejected

---

[2] A party seeking reconsideration of a bankruptcy order may move under Federal Rule of Bankruptcy Procedure 9023. *In re Energy Future Holdings Corp.*, 575 B.R. 616, 627 (Bankr. D. Del. 2017). A motion for reconsideration under Rule 9023 may be granted when there is a need to prevent manifest injustice or to correct a clear error of fact or law. *Id.* Similarly, motions for clarification "are often evaluated under the same standard used to evaluate motions for reconsideration." *In re Maxus Energy Corp*, 571 B.R. 650, 655 (Bankr. D. Del. 2017).

counterclaim alleging wrongful actions taken by BD/S." Neither of those things are accurate; there is simply no valid legal or factual basis to strike the ratification defense. That was not Judge Sontchi's "intent" in 2017 when he struck the five other defenses. And it would be a plain legal error and a manifest injustice for this Court to do so now, on its own motion, to arbitrarily cut off the Yucaipa Defendants' due process rights and their ability to rely on an important, viable defense at trial. This Court should therefore clarify footnote 14 of its January 16, 2020 order to specify that the Yucaipa Defendants may pursue a ratification defense at trial.

## ARGUMENT

Because the ratification defense is *not* premised on any of the "bad acts" of BD/S that Judge Sontchi found to be implausible, there is no legitimate basis for striking this defense now.

### A. Judge Sontchi Concluded that the Five Stricken Defenses Were Premised on Allegations that the Court had Previously Found to be Implausible.

To understand the basis for and intent behind Judge Sontchi's January 2017 order striking the Yucaipa Defendants' Stricken Defenses of unclean hands, waiver, estoppel, consent, and laches, it is necessary to begin with the Court's prior ruling dismissing Yucaipa's counterclaim on plausibility (among other) grounds.

In February 2015, Yucaipa filed a counterclaim against BD/S for equitable subordination. (Adv. Proc. No. 14-50971 Dkt. 19.) Yucaipa alleged that BD/S had engaged in a "carefully orchestrated series of lies, payoffs and legal maneuvers designed to improperly enrich themselves at the expense of Yucaipa." (*Id.*, ¶ 1.) Yucaipa further alleged that BD/S had embarked on a four-step plan to turn their relatively modest investments in Allied debt into a windfall: (1) "[e]ncourage Yucaipa to acquire as much Allied debt as possible by providing false assurances of cooperation and support"; (2) "[p]revent Yucaipa from serving as Requisite Lender under [Allied's] First Lien Credit Agreement," including by instructing others to challenge

Yucaipa's status as the Requisite Lender; (3) "[f]ile an involuntary bankruptcy petition [supported by] false statements to the Bankruptcy Court," including a failure to disclose a "$4 million bribe" paid by Black Diamond to Spectrum, and doing so to "scuttle a potential deal between Yucaipa and Jack Cooper Transport Company Inc. ('JCT')"; and (4) "[a]ttempt to wipe out Yucaipa's First Lien Claims with an objectively baseless complaint for equitable subordination." (*Id.*, ¶¶ 8-11.)

Judge Sontchi granted BD/S's motion to dismiss Yucaipa's counterclaim in August 2015. (Adv. Proc. No. 14-50971, Dkt. 82-1.) Among other grounds for dismissal, the Court found that "Yucaipa's story does not hold together under examination and its counterclaim does not meet the standard for plausibility." (*Id.* at p. 3.) Judge Sontchi deemed it "not plausible" that BD/S would have been "lying in wait" to equitably subordinate Yucaipa's debt (*id.* at pp. 63-64); that they "negotiat[ed] for a year with JCT only to scuttle the deal" (*id.* at p. 64); or that they would have embarked on a risky strategy that required them to successfully usurp Requisite Lender status from Yucaipa, prevail on their equitable subordination claims, and then "hop[e] that the Allied assets they recovered would increase in value" such that the amount they recovered in the bankruptcy would exceed what they could have obtained from JCT in a consensual deal. (*Id.*)

A little more than a year later, the Yucaipa Defendants moved to compel the production certain documents from BD/S on the basis that the documents were relevant to, among other things, Yucaipa's affirmative defenses of unclean hands, waiver, estoppel, consent, and laches. (Adv. Proc. No. 14-50971, Dkt. 119, pp. 10-13.) In response, BD/S moved to strike those five defenses based primarily on Judge Sontchi's August 2015 ruling dismissing Yucaipa's counterclaim. (Adv. Proc. No. 14-50971, Dkt. 136.)

Judge Sontchi granted BD/S's motion in January 2017. (Adv. Proc. No. 14-50971, Dkt. 194.) As this Court is aware, Judge Sontchi's order on the Stricken Defenses did not contain any reasoning; Judge Sontchi also said nothing substantive during the oral argument on BD/S's motion that would reveal the basis for his ruling. As a result, the only evidence of Judge Sontchi's "intent" in striking the five Stricken Defenses is found in the arguments advanced by BD/S, which Judge Sontchi adopted.

BD/S asked Judge Sontchi to strike the five Stricken Defenses because, according to BD/S, "those affirmative defenses are [based on] the implausible allegations that 'BD/S orchestrated a carefully timed series of lies, payoffs, and legal maneuvers designed to wrongfully enrich themselves at Yucaipa's expense." (Adv. Proc. No. 14-50971, Dkt. 136, p. 31.) More specifically, BD/S argued that all five Stricken Defenses relied on the following "implausible" allegations that had also appeared in Yucaipa's dismissed counterclaim: (a) "[t]hat BD/S was secretly plotting to equitably subordinate Yucaipa as far back as 2009, before Yucaipa had even acquired first lien debt"; (b) "[t]hat BD/S 'encouraged' Yucaipa to acquire first lien debt"; (c) "[t]hat BD/S surreptitiously instructed CIT not to recognize Yucaipa as the Requisite Lender"; (d) "[t]hat BD/S engaged in an 'illegal claims trade' and/or bribe to induce Spectrum to file an involuntary petition"; (e) "[t]hat BD/S was 'lying in wait' for the optimal time to file involuntary bankruptcy petitions"; (f) "[t]hat BD/S engaged in 'sham' negotiations with Jack Cooper Transport ('JCT') intending all along to later 'scuttle' the potential deal"; and (g) "[t]hat BD/S filed an 'objectively baseless' equitable subordination claim against Yucaipa." (Adv. Proc. No. 14-50971, Dkt. 158, pp. 3, 11.)

BD/S also emphasized that the five Stricken Defenses were "founded entirely not on defenses, but claims that Yucaipa is making at this point in the case, against [BD/S]; claims --

aggressive claims, not defenses, that Your Honor has dismissed." (Jan. 9, 2017 Hr'g Tr., at 22:25-23.) BD/S's overarching theme was that Yucaipa should not be allowed to pursue defenses that were premised on the same "bad acts by Black Diamond and Spectrum" that the Court had deemed implausible. (*Id.* at 24:18; *see also* Adv. Proc. No. 14-50971, Dkt. 158 at p. 15 ["the facts upon which the Yucaipa Defendants based their [stricken] affirmative defenses are really meant to show bad acts by BD/S, not the absence of bad acts by Yucaipa. In that regard, the factual allegations at issue are not actually affirmative 'defenses' but instead are affirmative *claims*, which have already been dismissed."]; *id.* at pp. 16-17 ["the Yucaipa Defendants seek to show that BD/S engaged in wrongful behavior, but the facts underlying those claims have been rejected"].)

At the same time, BD/S also made crystal clear that "the motion to strike would only dismiss those affirmative defenses that rely upon the counterclaim or crossclaim that have already been dismissed. *They won't impact at all the affirmative defenses that are not based on those allegations*." (Jan. 9, 2017 Hr'g. Tr. at 23:12-16 (emphasis added).) In other words, according to BD/S, Yucaipa would remain free to pursue "*any* affirmative defense" other than those "based upon facts that have already been rejected by this Court." (Adv. Proc. No. 14-50971, Dkt. 158 at p. 16.)

Accordingly, when Judge Sontchi adopted BD/S's arguments and struck the five affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, he necessarily agreed with BD/S that those Stricken Defenses were an improper repackaging of the same allegations and theories that the Court had already rejected as implausible—namely, the allegations of misconduct by BD/S. By the same token, however, Judge Sontchi did not intend,

and could not have intended, to strike any other affirmative defenses that were *not* premised on the purportedly implausible "bad acts" carried out by BD/S.[3]

**B. Ratification is Fundamentally Different from the Stricken Defenses Because It Does Not Depend on any of the "BD/S Bad Acts" Allegations.**

The Yucaipa Defendants' affirmative defense of ratification is materially different from the Stricken Defenses as Judge Sontchi interpreted them. Critically, ratification does not depend upon Yucaipa establishing any of the various "bad acts" by BD/S that Judge Sontchi deemed implausible.

"Ratification is an equitable defense that precludes a party 'who [has] accept[ed] the benefits of a transaction from thereafter attacking it.'" *Genger v. TR Investors, LLC*, 26 A.3d 180, 195 (Del. 2011); *see also Trounstine v. Remington Rand*, 194 A. 95, 99 (Del. Ch. 1937) ("[E]quity will not hear a complainant stultify himself by complaining against acts in which he participated or of which he has demonstrated his approval by sharing in their benefits.").

"Ratification may be either express or implied through a party's conduct . . . . Implied ratification occurs '[w]here the conduct of a complainant, subsequent to the transaction objected

---

[3] The Yucaipa Defendants continue to vigorously disagree with the August 2015 order dismissing Yucaipa's counterclaim, as well as the January 2017 order striking their five Stricken Defenses. The Yucaipa Defendants continue to maintain that these rulings were reversible error. As the Yucaipa Defendants have explained, several of the allegations that Judge Sontchi found to be "implausible" at the pleading stage in 2015 turned out to be *true* after conducting extensive discovery. (*See* Adv. Proc. No. 13-50530, Dkt. 605 [Letter dated Aug. 8, 2019], pp. 8-10.) Moreover, the affirmative defenses of waiver, estoppel, consent, and laches—that is, the defenses *other than* "unclean hands"—have nothing to do with the purportedly implausible "bad acts" done by BD/S. For instance, the laches defense is premised on BD/S's awareness of facts that gave rise to their claims (i.e., the supposed "bad acts" committed *by Yucaipa*) and BD/S's unreasonable delay in bringing suit notwithstanding that awareness. *See Whittington v. Dragon Grp,*, 991 A.2d 1, 8 (Del. 2009). Nonetheless, even assuming for argument's sake that Judge Sontchi properly struck the five Stricken Defenses, there is still no basis to extend that ruling to wipe out the additional affirmative defense of ratification, as explained below.

to, is such as reasonably to warrant the conclusion that he has accepted or adopted it, [and] his ratification is implied through his acquiescence.'" *Genger*, 26 A.3d at 195; *see also Dannley v. Murray*, 1980 WL 268061, at *4 (Del. Ch. July 3, 1980) ("The 'affirmance' required to create ratification ... may arise by the retention of benefits with knowledge of the unauthorized acts.") (citations omitted). "Ratification of an unauthorized act may be found from conduct 'which can be rationally explained only if there were an election to treat a supposedly unauthorized act as in fact authorized.' Ratification may also be found where a party 'receives and retains the benefit of [that transaction] without objection, … thereby ratify[ing] the unauthorized act and estop[ping] itself from repudiating it...." *Genger*, 26 A.3d at 195.

Consequently, the factual basis for a "ratification" defense is that after an allegedly improper transaction occurs, the plaintiff challenging that transaction does something—including but not limited to retaining the benefits of the transaction—to indicate that the plaintiff has accepted or adopted the results of the transaction. But it is not necessary that the plaintiff itself commit any misconduct for ratification to apply.

Here, the Yucaipa Defendants will seek to establish at trial that BD/S ratified various transactions and conduct that now form the basis for their claims. The facts supporting ratification *have already been established in discovery*. Thus, in contrast to Judge Sontchi's decision to strike, at the pleading stage, the *allegations* that the Yucaipa Defendants hoped to prove in discovery, the facts supporting ratification are now currently in the record and supported by sworn testimony or documents produced by the Trustee (or its predecessors at BD/S) after long and determined efforts to shield those facts being discovered. For example:

- BD/S's core theory is that Yucaipa unlawfully acquired the status of Requisite Lender under Allied's First Lien Credit Agreement in August 2009. [redacted]

[redacted] (*See* Scolnick Decl., Exs. A (BDCM0021717), B (BDCM0014771), C (BDCM0001689).) [redacted] (*See id.*, Ex. D (BDCM0001659).)

- BD/S and other lenders accepted other benefits flowing from Yucaipa serving as Requisite Lender—[redacted]

- BD/S assert that Yucaipa and the Director Defendants generally failed to pursue various opportunities for Allied in the 2008-2012 timeframe and otherwise acted against the interest of Allied and its creditors, in order to benefit Yucaipa. Yet during this same period, [redacted] (*See, e.g.*, Scolnick Decl., Ex. E (YUCAIPA081764: [redacted]); Ex. F (BDCM0006152 [redacted]; Ex. I (SPEC001927) ([redacted]").)

- Black Diamond acquired [redacted] between September 2011 and June 2012. (Scolnick Decl., Ex. G (LIT-TRUSTEE_000011).) This was *years* after many of the events and transactions about which Black Diamond now complains, such as Yucaipa's acquisition of First Lien Debt and its exercise of Requisite Lender status beginning in August 2009, the non-payment of interest to lenders and the payment of Yucaipa's legal fees during this same period, and the Georgia litigation brought by Allied and Yucaipa against CIT.

- In 2011 and 2012, JCT was pursuing a transaction with Allied's lenders to acquire their Allied debt and then credit bid that debt in a 363 Sale. BD/S now complain that Yucaipa and the Director Defendants committed misconduct by failing to insist that JCT pursue a transaction directly with Allied during this period. But at the same time, [redacted] (Scolnick Decl., Ex. H (BDCM0000031).) This strongly suggests that BD/S had accepted or adopted the very structure for a potential deal that they now contend was inherently improper.

- Black Diamond asserts that Yucaipa improperly demanded a premium for its debt when negotiating with JCT in 2011 and early 2012. Yet Black Diamond acquired the bulk of its debt *during* these negotiations, with full knowledge of Yucaipa's negotiating position, and Black Diamond even acquired some of its debt *after* the negotiations had concluded.

Significantly, none of the above arguments or theories for the "ratification" defense depend in any way on BD/S undertaking the "bad acts" that Judge Sontchi deemed implausible.

Even the Third Circuit Court of Appeals has acknowledged the potential applicability of a ratification defense in this case. In March 2017 (two months after Judge Sontchi struck the five Stricken Defenses), the Third Circuit issued a decision affirming the grant of summary judgment as to the validity of the Third Amendment to Allied's First Lien Credit Agreement. *In re ASHINC Corp.*, 683 F. App'x 131 (3d Cir. 2017). Yet the court specifically noted that "[n]either party addressed a possible waiver or ratification issue in its brief, but it may be relevant to the applicability of the Third Amendment." *Id.* at 138, n.4. Thus, to the extent the Trustee contends that Yucaipa breached the Third Amendment by, among other things, becoming Requisite Lender or failing to contribute a specific percentage of its First Lien Debt to equity in Allied—even though the Trustee's predecessors at BD/S never objected to these things or demanded performance of any of the Third Amendment's provisions before filing suit years later—then Yucaipa must be permitted to argue that BD/S and others ratified the non-applicability of the Third Amendment to Yucaipa once it acquired First Lien Debt, for the reasons described above.

### C. Striking the Affirmative Defense of Ratification Would Violate Due Process and Fundamental Fairness

As set forth above, the Yucaipa Defendants' affirmative defense of ratification is fundamentally different—legally and factually—from the Stricken Defenses as Judge Sontchi interpreted them, because ratification does not depend on any alleged misconduct by BD/S. Indeed, BD/S have argued that "the Bankruptcy Court has only dismissed claims masquerading

as affirmative defenses that allege that BD/S perpetrated a fraud on Yucaipa; the Bankruptcy Court has not dismissed any defenses where Yucaipa alleges that Yucaipa itself did not act inequitably. Yucaipa is still free to raise any affirmative defenses that rely on *any* theory the Bankruptcy Court has not already rejected." (Adv. No. 14-50971, Dkt. 202, pp. 22.) This would include the affirmative defense of ratification, which remains viable and is not premised on the allegations underlying Yucaipa's dismissed counterclaim.

"Due process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *Am. Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932)). Although Rule 12(f) authorizes courts to "strike from a pleading an insufficient defense," this district court *in this case* has explained that:

> "motions to strike under Rule 12(f) are disfavored." *Fesnak and Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010). "[E]ven where the challenged material is 'redundant, immaterial, impertinent, or scandalous,' a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *See Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 359 (D. Del. 2009) (internal citations omitted); *see also Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (motion to strike will be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.").

*In re ASHINC Corp.*, D. Del. Misc. No. 17-40-SLR, 2017 WL 2774736, *4 (D. Del. June 27, 2017). Accordingly, a court should not strike a defense unless the insufficiency of that defense is "clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986), *rev'd in part on other grounds*, 505 U.S. 504 (1992) (citations omitted); *see also Symbol Techs.*, 609 F. Supp. 2d at 356 n.1 (noting criticism of motions to strike for insufficiency because determination of disputed legal questions should be made after discovery and a hearing on the merits).

Striking an affirmative defense has a dramatic and dispositive impact on a defendant's substantive rights. To the extent the Court intended to take such a significant step in footnote 14

of its January 16, 2020 order, it gave no prior notice to the Yucaipa Defendants that it might do so.[4] And as described above, Judge Sontchi did not "intend" to strike *any* defenses, including ratification, that did not depend on the allegations of BD/S committing "bad acts" that the Court previously rejected as implausible. Nor is there any other valid justification for striking the ratification defense now, on the Court's own motion or otherwise.

**CONCLUSION**

For these reasons, the Court should clarify and/or reconsider footnote 14 of its January 16, 2020 order, to specify that the Yucaipa Defendants may pursue a ratification defense at trial.

Dated: January 30, 2020

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: /s/ *Michael S. Neiburg*
Michael R. Nestor (No. 3526)
Michael S. Neiburg (No. 5275)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mnestor@ycst.com

-and-

[4] *Cf. Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004) (court generally may enter summary judgment *sua sponte* only if it first places "the adversarial party on notice that the court is considering a *sua sponte* summary judgment motion"); *see also Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007) (generally a court may *sua sponte* dismiss a complaint under Rule 12(b)(6) only after providing "notice and an opportunity to respond").

GIBSON, DUNN & CRUTCHER LLP
Robert A. Klyman
Maurice M. Suh
Kahn Scolnick
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
RKlyman@gibsondunn.com
MSuh@gibsondunn.com
KScolnick@gibsondunn.com

*Attorneys for Defendants Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Yucaipa American Alliance Fund II, L.P., Yucaipa American Alliance (Parallel) Fund II, L.P., Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner, and Joseph Tomczak*