**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al.*[1],<br><br>Debtors. | Chapter 11<br><br>Case No. 12-11564 (CSS)<br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS,<br><br>Plaintiff,<br><br>BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P.,<br><br>Intervenors,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK,<br><br>Defendants. | Adv. Proc. No. 13-50530 |

[1] The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58-0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90-0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45-5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38-2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582). The location of the Debtors' corporate headquarters and the Debtors' address for service of process is 2302 Parklake Drive, Bldg. 15, Ste. 600, Atlanta, Georgia 30345.

| | |
|---|---|
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM COMMERCIAL FINANCE LLC, as co-administrative agent,<br><br>Plaintiff,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., RONALD BURKLE, JOS OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK,<br><br>Defendants. | Adv. Proc. No. 14-50971 (CSS) |

**ASHINC LITIGATION TRUSTEE'S OPPOSITION TO THE YUCAIPA DEFENDANTS' MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF JANUARY 16, 2020, ORDER**

Catherine E. Youngman, as the Litigation Trustee for ASHINC Corporation and related debtors (the "**Trustee**"), submits this memorandum of law in opposition to the Yucaipa Defendants' motion (13-50530, D.I. 658-662; 14-50971, D.I. 422-426, the "**Motion**") for clarification and/or reconsideration of footnote 14 of this Court's January 16, 2020, Order (13-50530, D.I. 654; 14-50971, D.I. 416, the "**Discovery Order**").[2]

[2] The Yucaipa Defendants' Memorandum of Points and Authority in support of the Motion is abbreviated "**Memorandum**" or "**Mem.**" Capitalized terms not otherwise defined here are as defined in the Motion and Memorandum. Emphasis is added to, and internal quotations, brackets, ellipses, and citations omitted from quoted material, unless otherwise indicated.

## INTRODUCTION

The Yucaipa Defendants seek reconsideration of the Court's Discovery Order but do not (and cannot) identify any clear error or manifest injustice resulting from its entry. Their disagreement with the Discovery Order — as well as Chief Judge Sontchi's underlying 2017 decision to strike certain of the Yucaipa Defendants' affirmative defense (*see* 14-50971, D.I. 194, the "**Striking Order**") — provides no basis for reconsideration. After full briefing, a hearing, and a thorough review of the record, this Court concluded that the Striking Order encompasses the Yucaipa Defendants' defense that BD/S somehow "ratified" their bad acts by accepting the benefits of Yucaipa acting as Requisite Lender. This is well reasoned given that the defense is indistinguishable from the "waiver/acquiescence/laches" defense that was the subject of BD/S's 2016 Motion to Strike (14-50971, D.I. 136). There is no error and the Yucaipa Defendants have suffered no manifest injustice stemming from the Discovery Order. Reconsideration is inappropriate and the Yucaipa Defendants' Motion should be denied.

## ARGUMENT

Reconsideration is "an extraordinary means of relief in which the movant must do more than simply reargue the facts of the case or legal underpinnings." *In re Chama, Inc.*, 265 B.R. 662, 670 (Bankr. D. Del. 2000). A motion for reconsideration is "not properly grounded on a request that a court rethink a decision already made," and "may not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Taylor v. Feldman*, Civ. A. No. 07-244-JJF, 2009 WL 4111212, at *1 (D. Del. Nov. 24, 2009), *aff'd*, 388 F. App'x 115 (3d Cir. 2010). Rather, the purpose of reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence," and it may be granted only if the movant shows "(1) an intervening change in the controlling law; (2) the

availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Smith v. Meyers*, Civ. A. No. 09-814-JJF, 2009 WL 5195928, at *1 (D. Del. Dec. 30, 2009). Reconsideration motions "should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *In re Tribune Co.*, 464 B.R. 208, 213 (Bankr. D. Del. 2011), *aff'd sub nom. In re Tribune Media Co.*, 587 B.R. 606 (D. Del. 2018).

The Yucaipa Defendants make passing reference to this high standard in a footnote (Mem. at 2 n.2), but ignore it in favor of simply "reargu[ing] the facts of the case [and its] legal underpinnings," which is insufficient here. *Chama*, 265 B.R. at 670. The Yucaipa Defendants assert that this Court should reconsider its ruling in footnote 14 of the Discovery Order because "there is no legitimate basis" or "valid justification" for striking their ratification defense (Mem. at 3, 12). These conclusory arguments provide no basis for reconsideration. *See, e.g.*, *Taylor*, 2009 WL 4111212, at *1 (A motion for reconsideration is "not properly grounded on a request that a court rethink a decision already made."). The Yucaipa Defendants also fail to establish that reconsideration is needed "to correct a clear error of law or fact or to prevent manifest injustice." *Smith*, 2009 WL 5195928, at *1.

Having failed to argue that there has been any change in controlling law, or that evidence has been discovered that would warrant reconsideration of the Discovery Order, the Yucaipa Defendants have waived these arguments. (*See* Mem. at 2 n.2 ("A motion for reconsideration . . . may be granted . . . to prevent manifest injustice or to correct a clear error of fact or law.")).[3]

[3] *See, e.g.*, *In re Catholic Diocese of Wilmington, Inc.*, 437 B.R. 488, 492 n.19 (Bankr. D. Del. 2010) (declining to consider argument raised for the first time in a reply brief); *see also Laborers' Int'l Union v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief . . . .").

## I. THE ORDER CONTAINS NO CLEAR ERROR OF FACT OR LAW

It was not error — let alone "clear error" — for the Court to interpret Chief Judge Sontchi's ruling in the Striking Order as being intended to apply to defenses "similar to" the "specifically identified affirmative defenses" of waiver, consent, unclean hands, laches, and estoppel (the "**Listed Defenses**"). (Discovery Order at 6-7 of 9 n.14). Nor was it error for the Court to conclude that ratification is sufficiently similar to those defenses to be covered by the Striking Order.

### A. The Striking Order Is Not Limited to the Listed Defenses

On its face, the Striking Order was not limited to any particular defenses. (*See* Striking Order at 2 ("IT IS HEREBY ORDERED THAT, . . . the Motion to Strike is GRANTED.")). Similarly, BD/S's Motion to Strike was not limited to the Listed Defenses. BD/S focused their motion on those defenses because the Yucaipa Defendants' Motion to Compel (to which the Motion to Strike responded) asserted that the discovery the Yucaipa Defendants sought was relevant to "the affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, among others." (14-50971, D.I. 119 at 10). However, BD/S did not limit the Motion to Strike to the Listed Defenses to the exclusion of other, similar affirmative defenses, such as ratification. BD/S's Motion to Strike asked the Court to "strike the Yucaipa Defendants' affirmative defenses that are based on implausible allegations," including the Listed Defenses. (14-50971, D.I. 136 at 16; *see also* 14-50971, D.I. 158 at 3 ("the Yucaipa Defendants have admitted that at least five of their affirmative defenses (unclean hands, estoppel, waiver, consent, and laches) assert factual allegations that have already been considered and rejected in the Cross-Claims Dismissal and Counterclaim Dismissal")). BD/S made this explicit in their reply memorandum in further support of the Motion to Strike:

> Even in the Motion to Compel, the Yucaipa Defendants apparently declined to identify all of the affirmative defenses that rely upon the rejected factual allegations. Instead, they argue that the five affirmative defenses of unclean hands, waiver, estoppel, consent, and laches, along with unidentified "others," rely upon those allegations. Although this motion is focused on the five affirmative defenses that the Yucaipa Defendants have identified, to the extent that the Yucaipa Defendants attempt to rely upon the rejected factual allegations in support of other affirmative defenses, the Court should preclude them from doing so.

(14-50971, D.I. 158 at 8 n.7). As such, Your Honor did not err in concluding that Chief Judge Sontchi's Striking Order was intended to capture the Listed Defenses along with other, similar, defenses that likewise "rel[y] upon the rejected counterclaim alleging wrongful actions taken by BD/S." (Discovery Order at 6-7 of 9 n.14).

**B. The Striking Order Applies to Ratification**

It also was not error for the Court to conclude that ratification is sufficiently similar to the Listed Defenses to fall within the ambit of the Striking Order. The Yucaipa Defendants' ratification defense is virtually indistinguishable from three of the Listed Defenses they admit are no longer available to them — laches, consent/acquiescence,[4] and waiver.

Delaware courts have long acknowledged that "[a]quiescence and ratification are closely related," and "[t]he terms are oftentimes loosely used." *Frank v. Wilson & Co.*, 32 A.2d 277, 283 (Del. 1943) ("When the late Chancellor observed . . . that a complaining stockholder was barred by 'the estoppel of his acquiescence', . . . it is equivalent to saying that by his conduct the complainant has ratified the matter in dispute."). *See also, e.g.*, *TR Inv'rs, LLC v. Genger*, Civ. A. No. 3994-VCS, 2010 WL 2901704, at *15 (Del. Ch. July 23, 2010) ("The defense of ratification is perhaps best understood by reference to its closest cousin, the doctrine of

[4] The Yucaipa Defendants listed this affirmative defense as "consent" in their Answer (14-50971, D.I. 19 ¶¶159-60) but identified it as "acquiescence" in their Motion to Compel (14-50971, D.I. 119 at 13).

acquiescence. Acquiescence occurs when a party has knowledge of an improper act by another, yet stands by without objection and allows the other party to act in a manner inconsistent with the claimant's property rights. Ratification differs primarily in timing: acquiescence properly speaks of assent by words or conduct *during the progress* of a transaction, while ratification suggests an assent *after the fact.*") (emphasis in original), *aff'd*, 26 A.3d 180 (Del. 2011). Both of these "closely related" doctrines "prevent one who accepts the benefits of a transaction from thereafter attacking it." *Giammalvo v. Sunshine Mining Co.*, Civ. A. No. 12842, 1994 WL 30547, at *10 (Del. Ch. Jan. 31, 1994), *aff'd*, 651 A.2d 787 (Del. 1994).

In the Memorandum, the Yucaipa Defendants explain that their ratification defense is predicated on BD/S's acceptance of the supposed benefits of Yucaipa's actions as Requisite Lender, which they argue ratified their conduct and, thus, precludes BD/S from now challenging any of Yucaipa's conduct as Requisite Lender. (Mem. at 7-10). This is exactly the same defense the Yucaipa Defendants described over three years ago in their Motion to Compel as the now-stricken "waiver/acquiescence/laches" defense: "that Black Diamond acquiesced in Yucaipa's first lien debt purchase, and thus, waived any right to complain or at least waited too long to complain (and in the meantime BD/S readily accepted the benefits of Yucaipa's actions as the requisite lender)." (14-50971, D.I. 119 at 13). Given Chief Judge Sontchi's decision — following full briefings and oral argument — to strike the "waiver/ acquiescence/laches" defense, it was certainly reasonable for the Court to conclude that Yucaipa Defendants' "closely related," and virtually identical, ratification defense is also stricken under the Striking Order.[5]

The Yucaipa Defendants' contention that the Third Circuit "acknowledged the potential

[5] To the extent the Yucaipa Defendants seek reconsideration of Chief Judge Sontchi's Order striking their consent/acquiescence defense, and/or the other Listed Defenses (*see* Mem. at 7 n.3), such relief is untimely, and should be denied. *See* FED. R. BANKR. P. 9023 (motion must be brought "no later than 14 days" after entry).

applicability of a ratification defense in this case" mischaracterizes that decision. (Mem. at 10) (citing *In re ASHINC Corp.*, 683 F. App'x 131, 138 n.4 (3d Cir. 2017)). The Third Circuit did not recognize a defense that BD/S "ratified the non-applicability of the Third Amendment to Yucaipa once it acquired First Lien Debt" by failing to object to Yucaipa's actions as Requisite Lender (Mem. at 10). Rather, the Third Circuit was addressing Yucaipa's now-rejected argument that, like the Fourth Amendment, the Third Amendment was similarly invalid for lack of unanimous lender consent. The Court reasoned that if the lenders who did not consent waived that lack of consent, or otherwise ratified the validity of the Third Amendment, based on "subsequent actions by the Lenders [that] were consistent with the existence of the Third Amendment," Yucaipa's argument would fail. *In re ASHINC Corp.*, 683 F. App'x at 138 n.4. Contrary to the Yucaipa Defendants' suggestion, no Court has ever 'acknowledged the applicability' of the ratification defense articulated in the Memorandum.

### C. <u>The Discovery Order was Reasoned and Contains No Clear Error</u>

Finally, the Court's Discovery Order was not made "arbitrarily," as the Yucaipa Defendants claim (Mem. at 3). On the contrary, the record reflects that it was well reasoned and reached *after* full briefing and a hearing where the Yucaipa Defendants had a full opportunity to present their case in support of their various affirmative defenses. The Yucaipa Defendants now repeat those same arguments in the Memorandum. (*Compare* Mem. at 9, third bullet (arguing that BD/S internally expressed a "belief that Yucaipa was operating in good faith to add value to the company") *with* 14-50971, D.I. 377 at 19:7-25 ("If [BD/S] believe that what Yucaipa and the individual defendants are doing is in fact in the best interest of the company at that point, that is certainly relevant to liability."), D.I. 380 at 9-11 ("The Yucaipa Defendants already have obtained admissions from Spectrum that it contemporaneously believed many of the Yucaipa

Defendants' actions were in good faith and in the best interests of Allied, in stark contrast to the allegations in the UCC Complaint."); *compare also* Mem. at 9-10, fourth and sixth bullets (arguing that BD/S acquired First Lien Debt "after many of the events and transactions" at issue) *with* 14-50971, D.I. 377 at 23:1-24:5 ("Black Diamond was buying the majority of its debt after the conduct that it's complaining about now, after Yucaipa became requisite lender, it bought up a bunch of debt."), D.I. 380 at 19-20 ("Black Diamond bought the majority of its Allied debt *after* Yucaipa became Requisite Lender in August 2009 . . . .")). A reconsideration motion is not an opportunity for a party to simply rehash arguments the Court has already considered and rejected. *See, e.g.*, *Taylor*, 2009 WL 4111212, at *1 (motions for reconsideration are "not properly grounded on a request that a court rethink a decision already made.").

As Your Honor explained at the August 22, 2019, hearing on the discovery dispute raised by the Yucaipa Defendants, the Court reviewed all relevant court filings in an effort to determine which affirmative defenses remained after entry of the Striking Order:

> [W]e've spent a lot of time pouring over the record in this case and trying to match, you know, reading the complaints, reading all the opinions that have been issued in this case, reading every answer that's been filed, <u>thinking about what defenses that you could raise that are separate, not contingent on the so-called seven-step scheme that Judge Sontchi summarized in his motion to dismiss</u>.

(14-50971, D.I. 377 at 17:15-24). The Discovery Order followed that thorough review. The Yucaipa Defendants cannot point to any clear error in the Court's well-reasoned Discovery Order determining that the Striking Order encompasses the ratification defense, and their Motion for reconsideration should be dismissed.[6]

---

[6] Even if reconsideration were appropriate (it is not), the ratification defense presented in the Memorandum is baseless. The Yucaipa Defendants assert that BD/S somehow ratified the transactions by which Yucaipa became and acted as Requisite Lender by benefitting from an action taken by CIT as Agent, pursuant to a settlement agreement to which BD/S was not party. (Mem. at 9, second bullet). This cannot support a ratification defense. Similarly, the Yucaipa

## II. THE YUCAIPA DEFENDANTS CANNOT DEMONSTRATE MANIFEST INJUSTICE

No manifest injustice will result from the Court's ruling in the Discovery Order that Chief Judge Sontchi's ruling in the Striking Order includes the defense of ratification. Manifest injustice "encompasses direct, obvious, and observable error." *Jones Lang Lasalle Ams. Inc. v. Int'l Bhd. of Elec. Workers*, Civ. A. No. 16-190, 2017 WL 6417631, at *3 n.3 (D. Del. Dec. 15, 2017). "In order for a court to reconsider a decision due to manifest injustice, the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it." *Id.* (quoting *Teri Woods Publ'g, L.L.C. v. Williams*, Civ. A. No. 12- 04854, 2013 WL 6388560, at *2 (E.D. Pa. Dec. 6, 2013)). The Yucaipa Defendants do not come close to satisfying this stringent standard.

*First*, as discussed in Section I above, the Court did not make any "direct, obvious, and observable error" in its interpretation of Chief Judge Sontchi's Striking Order. *Jones*, 2017 WL 6417631, at *3 n.3.

*Second*, the Yucaipa Defendants cannot establish any "patent unfairness" in the Discovery Order. *Id.*; *see also In re Joy Glob., Inc.*, Civ. A. No. 01-039-LPS, 2008 WL 686650, at *1 (D. Del. Mar. 11, 2008) (argument that reconsideration should be granted in the interests of "fairness and efficiency" rejected as "nothing more than a disagreement with the Court's assessment," which "is not a basis for reconsideration"). They assert that the Discovery Order

---

Defendants' claim that BD/S ratified their conduct with respect to a potential transaction with JCT by attempting to negotiate with JCT themselves misconstrues the Trustee's claims in this case. The Yucaipa Defendants' insistence on being paid a premium over par, at the expense of Allied's other creditors, including BD/S, resulted in the JCT transaction falling apart, and damaged Allied and its stakeholders. BD/S's negotiation with JCT was done in an effort to ensure equal and ratable treatment, and as soon as it became clear that the Yucaipa Defendants were not willing to agree to pro rata treatment, BD/S raised the issue with Allied's Board and the Yucaipa Defendants, and ultimately initiated the involuntary filing. Nothing about BD/S's negotiations with JCT reflects ratification of the Yucaipa Defendants' misconduct.

"cut[s] off . . . their ability to rely on an important, viable defense at trial" (Mem. at 3; *see also id.* at 11-12), but this does not suffice for a showing of manifest injustice. *See Jones*, 2017 WL 6417631, at *3 n.3 (denying reconsideration because defendants failed to establish manifest injustice even where the ruling in question might leave them with no remedy). The Discovery Order does not take away any defenses the Yucaipa Defendants had not already lost upon entry of the Striking Order in 2017. The consequence of the Striking Order was that the Yucaipa Defendants may not assert any affirmative defense based on the theories espoused in their rejected counterclaim. The Discovery Order simply explains (correctly) that the Yucaipa Defendants' ratification defense — as presented to the Court at the hearing and in the briefings on the discovery dispute — is one of the defenses no longer available to the Yucaipa Defendants under Chief Judge Sontchi's reasoning in the Striking Order.

Moreover, the Yucaipa Defendants are not left defenseless. Both Orders make clear, as did BD/S in their Motion to Strike, that the Yucaipa Defendants may present at trial any affirmative defense that does not "rel[y] upon the rejected counterclaim alleging wrongful actions taken by BD/S." (Discovery Order at 6-7 of 9 n.14; *see also* 14-50971, D.I. 158 at 16 ("Further, Yucaipa is not correct that it is being prevented from asserting *any* affirmative defenses. A number of Yucaipa's affirmative defenses are not at issue in this motion, in particular the affirmative defenses of justification, business judgment rule, good faith, exculpation, and failure to mitigate."); 14-50971, D.I. 192 at 24:3-14 (the Yucaipa Defendants have "additional affirmative defenses . . . such as justification, the business judgment rule, good faith, exculpation, and failure to mitigate")).[7] The Yucaipa Defendants have suffered no manifest injustice as a result of the Discovery Order and their Motion should be denied.

[7] Counsel for BD/S never identified ratification as one of the affirmative defenses unaffected by the Motion to Strike in their briefings or at argument on the motion.

## CONCLUSION

"[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). The Trustee respectfully requests that the Court deny the Motion.

Dated: February 21, 2020

**FOX ROTHSCHILD LLP**

By: *\/s/ Seth A. Niederman*
Seth A. Niederman (No. 4588)
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 654-7444
Email: sniederman@foxrothschild.com

-and-

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Douglas J. Pepe
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY 10017
Tel: (212) 407-1200
gjoseph@jha.com

-and-

**ZAIGER LLC**
Jeffrey H. Zaiger
432 Park Avenue, Suite 19A
New York, NY 10022
Telephone: (917) 572-7701

*Attorneys for Litigation Trustee*

825416