# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS, | Adv. Proc. No. 13-50530 (CSS) |
| Plaintiff, | |
| BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P., | |
| Intervenors, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM COMMERCIAL FINANCE LLC, as co-administrative agent, | Adv. Pro. No. 14-50971 (CSS) |
| Plaintiff, | |

v.

YUCAIPA AMERICAN ALLIANCE FUND I, L.P.,
YUCAIPA AMERICAN ALLIANCE (PARALLEL)
FUND I, L.P., YUCAIPA AMERICAN ALLIANCE
FUND II, L.P., YUCAIPA AMERICAN ALLIANCE
(PARALLEL) FUND II, L.P., RONALD BURKLE,
JOS OPDEWEEGH, DEREX WALKER, JEFF
PELLETIER, IRA TOCHNER, and JOSEPH
TOMCZAK,

                    Defendants.


# LITIGATION TRUSTEE'S OPPOSITION TO THE
## MOTION FOR SUMMARY JUDGMENT BY RONALD BURKLE, JOS
## <u>OPDEWEEGH, DEREX WALKER, JEFF PELLETIER, AND IRA TOCHNER</u>

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

NATURE AND STAGE OF PROCEEDINGS ............................................ 1

SUMMARY OF ARGUMENT ........................................................... 2

    1.    The Tortious Interference Claim (Direct Lender Claim 4) Is Timely .......... 2

    2.    The Tortious Interference Claim Is Viable ................................. 3

    3.    Partial Summary Judgment on the Fiduciary Duty Claims Should Be Denied (Estate Claim 9) .................................................................. 4

SUPPLEMENTAL STATEMENT OF UNDISPUTED FACT ......................... 6

ARGUMENT .............................................................................. 6

    I.    THE TORTIOUS INTERFERENCE CLAIM IS LEGALLY AND FACTUALLY SOUND ............... 6

        A.    The Trustee's Tortious Interference Claim is Timely ........................ 6

        B.    The Individual Defendants' Scope of Agency, Justification, and Damages Arguments Do Not Preclude Summary Judgment in the Trustee's Favor ........... 9

            1.    New York Law Governs ............................................. 9

            2.    The Individual Defendants Were Outside the Scope of Their Agency ..... 10

            3.    The Individual Defendants' Interference Was Unjustified ............... 15

            4.    The Trustee's Evidence of Damages Supports All Aspects of Her Claim ........................................... 18

        C.    Summary Judgment Should Be Granted to the Trustee ...................... 20

    II.    THE FIDUCIARY DUTY CLAIMS AGAINST THE YUCAIPA DIRECTORS ARE SOUND ........ 22

        A.    Scope of Claims ................................................... 22

         B.    Summary Judgment Is Unwarranted on the Trustee's Remaining Fiduciary Duty Claims ...................... 22

            1.    Allied's Payment of Yucaipa's Unreasonable Legal Fees ............ 22

2.    Fiduciary Breaches by Obstructing Consideration of Transactions ..........25

3.    Usurpation of Corporate Opportunity is Neither Plead Nor Relevant.......25

4.    Fiduciary Breaches in Failing to Ensure Compliance with Third
      Amendment...............................................................................................25

CONCLUSION.........................................................................................................26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bank of N.Y. v. Berisford Int'l P.L.C.*,
    190 A.D.2d 622 (N.Y. App. Div. 1993) .........................................................................14

*BDCM Opportunity Fund II, LP v. Yucaipa Am. All. Fund I, LP*,
    2013 WL 1290394 (N.Y. Sup. Ct. Mar. 8, 2013),
    *aff'd*, 112 A.D.3d 509 (N.Y. App. Div. 2013),
    *leave to appeal denied*, 22 N.Y.3d 1171 (2014) .................................................16 n.14, 21

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)...........................................................................................24

*BTIG, LLC v. Palantir Techs., Inc.*,
    2020 WL 95660 (Del. Super. Ct. Jan. 3, 2020) ........................................................7 n.2

*CAE Inc. v. Gulfstream Aerospace Corp.*,
    203 F. Supp. 3d 447 (D. Del. 2016)..........................................................................10 n.4

*Certainteed Corp. v. Celotex Corp.*,
    2005 WL 217032 (Del. Ch. Jan. 24, 2005).................................................................7 n.2

*Gonnella v. SEC*,
    954 F.3d 536 (2d Cir. 2020)...........................................................................................24

*Greyhound Corp. v. Commercial Cas. Ins. Co.*,
    259 A.D. 317 (N.Y. App. Div. 1940) ......................................................................13 n.10

*Herald Hotel Assocs. v. Ramada Franchise Sys., Inc.*,
    191 A.D.2d 288 (N.Y. App. Div. 1993) .........................................................................13

*Hoag v. Chancellor, Inc.*,
    246 A.D.2d 224 (N.Y. App. Div. 1998) .........................................................................13

*In re Allied Sys. Holdings Inc*,
    556 B.R. 581, 608-09 (D. Del. 2016),
    *aff'd sub nom. In re ASHINC Corp.*, 683 F. App'x 131 (3d Cir. 2017) ...................16 n.15

*In re CVR Refining, LP Unitholder Litig.*,
    2020 WL 506680 (Del. Ch. Jan. 31, 2020)....................................................................10

*In re Fruehauf Trailer Corp.*,
    2011 WL 2838168 (Bankr. D. Del. July 15, 2011)...........................................................9

*In re Green Field Energy Servs., Inc.*,
   585 B.R. 89 (Bankr. D. Del. 2018) ................................................................9, 10, 20 n.19

*In re Our Alchemy, LLC*,
   2019 WL 4447541 (Bankr. D. Del. Sept. 16, 2019) ........................................................24

*In re USA Detergents, Inc.*,
   418 B.R. 533 (Bankr. D. Del. 2009) ....................................................................13, 14 n.11

*Kahn v. Portnoy*,
   2008 WL 5197164 (Del. Ch. Dec. 11, 2008)....................................................................14

*Kickflip, Inc., v. Facebook, Inc.*,
   2013 WL 6927147 (D. Del. Dec. 31, 2013)...................................................................7 n.2

*Mobarak v. Mowad*,
   117 A.D.3d 998 (N.Y. App. Div. 2014) ............................................................................11

*Monex Fin. Servs. Ltd. v. Dynamic Currency Conversion, Inc.*,
   2008 WL 880209 (N.Y. Sup. Ct. Mar. 26, 2008),
   *aff'd as modified*, 62 A.D.3d 675 (N.Y. App. Div. 2009) .........................................13 n.10

*Nahabedian v. Intercloud Sys., Inc.*,
   2016 WL 155084 (S.D.N.Y. Jan. 12, 2016) .....................................................................10

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ...............................................................................................25

*Romdhani v. Exxon Mobil Corp.*,
   2010 WL 4682414 (D. Del. Nov. 10, 2010) ........................................................................5

*Rossi v. Twinbogo Co.*,
   193 A.D.2d 481 (N.Y. App. Div. 1993) ............................................................................21

*Schmidt & Schmidt, Inc. v. Town of Charlton*,
   68 A.D.3d 1314 (N.Y. App. Div. 2009) ............................................................................11

*Smith v. Mattia*,
   2010 WL 412030 (Del. Ch. Feb. 1, 2010) ..........................................................................8

*WaveDivision Holdings, LLC v. Highland Capital Mgmt. L.P.*,
   2010 WL 1267126 (Del. Super. Ct. Mar. 31, 2010) ........................................................3, 7

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*,
   214 F. Supp. 3d 179 (E.D.N.Y. 2016) ..............................................................................13

The Trustee respectfully submits this memorandum of law in opposition to the motion of

Defendants Jos Opdeweegh, Derex Walker, Jeff Pelletier, Ira Tochner (together, the "**Yucaipa**

**Directors**"), and Ronald Burkle, Yucaipa's principal, for partial summary judgment on Estate

Claims 8 and 9 (breach of fiduciary duty and aiding and abetting breaches of fiduciary duty)

brought on behalf of the Allied Estate, and on Direct Lender Claim 4 (tortious interference with

contract) brought on behalf of Allied's First Lien Lenders.  (13-50530, D.I. 698; 14-50971, D.I.

455).[1]

## NATURE AND STAGE OF PROCEEDINGS

It is undisputed that, as members of Allied's Board, the Yucaipa Directors — all partners

of Allied's controlling shareholder, Yucaipa — owed fiduciary duties to Allied.  Given Allied's

prompt descent into insolvency following its emergence from bankruptcy in 2007, the Yucaipa

Directors were required to take into consideration the best interests of Allied and its

stakeholders, including Allied's First Lien Lenders.  They did not.  Thoroughly conflicted and

working for Burkle, the Yucaipa Directors abused their positions at Allied to act for the benefit

of Yucaipa and themselves, at the expense of the Estate and its constituents.

In 2009, the Yucaipa Directors and Burkle (collectively, the "**Individual Defendants**")

caused Yucaipa to breach the First Lien Credit Agreement by purchasing a majority of Allied's

---

[1]    Abbreviations relied on and citation conventions used in the Trustee's memorandum in support of her motion for partial summary judgment (13-50530, D.I. 712; 14-50971, D.I. 463) (the "**Trustee Brief**") are used again here.  For the Court's convenience, an appendix of abbreviations is attached as **Appendix A**.  "**Indiv. Br.**" refers to the Individual Defendants' Memorandum of Law in support of their motion (13-50530, D.I. 699; 14-50971, D.I. 456), and exhibits to the Declaration of Kahn A. Scolnick (13-50530, D.I. 721; 14-50971, D.I. 457) are abbreviated "**Scolnick Ex.**"  Exhibits ("**Ex.**") are attached to the first Declaration of Gila S. Singer (13-50530, D.I. 713; 14-50971, D.I. 466) and the accompanying Second Declaration of Gila S. Singer. References to §2.7 of the Third Amendment — amending §§10.5 and 10.6 of the First Lien Credit Agreement — are used for consistency.  Section 2.7(e)(i), for example, is identical to §10.5(e)(i).

First Lien Debt and failing to make the required capital contribution to the Company.  This was the beginning of a lengthy campaign of continuing breaches by Yucaipa, which spent years masquerading as Requisite Lender and abusing that position.  The Individual Defendants also interfered with the First Lien Lenders' contractual rights — and the Yucaipa Directors breached their fiduciary duties to Allied — by causing Yucaipa to demand a premium for its debt holdings, at the expense of all other First Lien Lenders, in a proposed transaction with Allied's ardent suitor JCT.  As a result, the proposed transaction with JCT fell apart, costing Allied a pre-bankruptcy strategic transaction that would have reaped for all of its constituents far higher value than they received from the post-petition JCT 363 Sale that was consummated in late 2013.  Yucaipa's continuous breaches, caused by the Individual Defendants, and the Yucaipa Directors' fiduciary breaches, culminated in millions of dollars of harm to the First Lien Lenders.

The Trustee has asserted, *inter alia*, a claim for tortious interference with contract against the Individual Defendants (Direct Lender Claim 4), and fiduciary duty claims against the Yucaipa Directors (Estate Claim 9).  As detailed below and in the Trustee Brief, summary judgment should be granted in the Trustee's favor on the tortious interference claim because each element of that claim is met and none of the Individual Defendants' challenges to it is viable.  Additionally, none of the Individual Defendants' arguments with respect to the Trustee's fiduciary duty claims warrants the partial summary judgment they seek.  The Trustee respectfully requests that the Motion be denied.

## SUMMARY OF ARGUMENT

1.      **The Tortious Interference Claim (Direct Lender Claim 4) Is Timely.**

Contrary to the Individual Defendants' assertion, the Trustee's tortious interference claim accrued when plaintiffs suffered injury, and not at the time of the allegedly wrongful act.  *See,*

*e.g.*, *WaveDivision Holdings, LLC v. Highland Capital Mgmt. L.P.*, 2010 WL 1267126, at *5 (Del. Super. Ct. Mar. 31, 2010).  Because the Lenders did not suffer injury from Yucaipa's breaches of the Third Amendment until after November 19, 2011, the claim is timely.  (Section I.A).

      2.    **The Tortious Interference Claim Is Viable.**  None of the Individual Defendants' substantive arguments against the tortious interference claim has merit.

      ***Scope of Agency Does Not Shield the Individual Defendants.***  The Individual Defendants argue they cannot be held liable because they were acting within the scope of agency as partners of Yucaipa, citing the principle that corporate agents cannot be held personally liable for their corporation's breaches.  This does not shield the Individual Defendants because their conduct:  (1) was beyond the scope of their employment with Yucaipa, due to their innate, unavoidable conflicts of interest as both Yucaipa partners and Allied Board members, (2) was motivated by personal gain, and (3) constituted independent tortious conduct (breaches of fiduciary duty and/or aiding and abetting such breaches).  (Section I.B.2).

      ***Actions Taken by the Individual Defendants Were Unjustified.***  The Individual Defendants argue that inducing Yucaipa's breaches was justified because they relied on the validity of the Fourth Amendment, believed the Yucaipa-ComVest Transaction was needed to avoid bankruptcy and liquidation, and believed that negotiations with JCT in 2011-2012 could be mutually beneficial for Yucaipa and Allied.  None of these purported "justifications" is supported by the record, which demonstrates that (1) the Yucaipa Directors understood from the outset that the Fourth Amendment was of dubious validity and would be challenged, and (2) the Yucaipa-ComVest Transaction did not protect Allied against bankruptcy and potential liquidation, which Yucaipa *itself* was considering contemporaneously with the transaction.

Additionally, the Individual Defendants' self-serving suggestion that negotiations with JCT in 2011-2012 — when Yucaipa demanded a disproportionate share of any JCT purchase price for itself — could be mutually beneficial for Yucaipa and Allied contradicts their damages expert's affirmative position that the proposed JCT transaction would <u>not</u> have benefitted Allied or its First Lien Lenders.  (Section I.B.3).

  ***There Is No Basis to Strike Specific Allegations of Ongoing Scheme.***  The Individual Defendants admit that the Trustee has provided evidence of the First Lien Lenders' damages from the Individual Defendants' inducement of Yucaipa's breach in connection with the lost JCT deal, but they contend there is no evidence of damages from any of Yucaipa's other breaches. But there is no requirement — and Individual Defendants provide no support for their contention — that each allegation of breach must be supported by distinct and proximately caused damages. Here, each breach was part of Yucaipa's years-long campaign of ongoing and continuous breaches of the First Lien Credit Agreement, which ultimately resulted in the First Lien Lenders recovering only a fraction of their loans following consummation of the JCT 363 Sale in late 2013.  (Section I.B.4).

  ***Summary Judgment Should Be Granted to the Trustee.***  Because the Individual Defendants' arguments are meritless, and for the reasons stated in the Trustee Brief, summary judgment should be granted for the Trustee on her tortious interference claim.  (Section I.C).

  3.  **Partial Summary Judgment on the Fiduciary Duty Claims Should Be Denied (Estate Claim 9).**  The Yucaipa Directors' Motion — with the exception of certain allegations the Trustee is not pursuing (Section II.A) — seeks partial summary judgment on the breach of fiduciary duty claims only to the extent they are based on: (1) Allied's payment of Yucaipa's legal fees; (2) the Yucaipa Directors' failure to act in connection with the JCT negotiations in

2011-2012; and (3) the Yucaipa Directors' failure to ensure compliance with the Third Amendment.  The Motion is devoid of merit.

   ***Allied Was Not Contractually Required to Pay Yucaipa's Legal Fees.***  The Yucaipa Directors argue, incorrectly, that Allied was contractually required to pay the legal fees Yucaipa incurred in the Yucaipa-ComVest Transaction and litigation over the Fourth Amendment's validity and, therefore, they are not liable for breach of fiduciary duty in causing Allied to make those payments.  This argument is based on a mischaracterization of the provisions of the agreements they point to.  Additionally, their argument that the fiduciary duty claim, to the extent based on Allied's payment of Yucaipa's legal fees, duplicates the Trustee's fraudulent transfer and preference claims against Yucaipa finds no support in the case law.  Nor can the Yucaipa Directors avoid liability by asserting their reliance on Troutman's statements that payment of these fees was somehow "common."  (Section II.B.1).

   ***The Yucaipa Directors' Excuses for the Lost JCT Deal Allegations Fail.***  The Yucaipa Directors seek summary judgment on the fiduciary duty claim based on their failure to ensure that negotiations with JCT in 2011-2012 would provide equal and ratable treatment for the Lenders on terms that would have been more favorable to Allied and its constituents than the JCT 363 Sale.  Their first argument is that the Estate Complaint does not specifically reference the JCT negotiations.  This does not shield them from liability.  *See, e.g.*, *Romdhani v. Exxon Mobil Corp.*, 2010 WL 4682414, at *5 (D. Del. Nov. 10, 2010) (plaintiff "not required to plead every factual allegation supporting their claims," and facts not directly discussed in a complaint can be raised at summary judgment and trial if they "directly relate to and support the initial claims" in the complaint).  (Section II.B.2).  The Yucaipa Directors further argue that (1) the Trustee's claims boil down to an argument that Yucaipa usurped Allied's corporate opportunity,

which cannot stand because the Trustee's expert opined that the JCT negotiations were not a corporate opportunity, and (2) in any event, a management agreement between Allied and Yucaipa waives liability for a Yucaipa failure to present corporate opportunities to Allied.  These arguments are infirm.  *First*, the Trustee's damages expert, who is not a lawyer, testified that he could <u>not</u> give an opinion on whether the JCT negotiations were a corporate opportunity, and the Trustee's corporate governance expert opined that it was not a corporate opportunity.  *Second*, even if the JCT transaction could somehow be construed as a corporate opportunity (it cannot), Allied's contractual waiver cannot override the fiduciary duty of loyalty and good faith owed by Yucaipa and the Yucaipa Directors.  (Section II.B.3).

**Fiduciary Duty and Contract Claims Are Not Duplicative.**  The Yucaipa Directors argue that the fiduciary duty claim is duplicative of the Estate's breach of contract claim (Estate Claim 5).  It is not.  Under Delaware law, fiduciary duty and contract claims are not duplicative if they are not "substantially identical" and involve different remedies.   (Section II.B.4).

## SUPPLEMENTAL STATEMENT OF UNDISPUTED FACT

The Trustee incorporates the Statement of Undisputed Fact set forth in the Trustee Brief (Trustee Br. at 5-20), including the exhibits to the first Singer Declaration (13-50530, D.I. 713; 14-50971, D.I. 466), as well as the facts identified in the Trustee's opposition to Yucaipa's motion for summary judgment, which is being filed concurrently ("**Entities Opposition**" or "**Entities Opp.**").  Certain supplemental facts are included in the Argument section below when relevant to rebut arguments raised by the Individual Defendants.

## ARGUMENT

### I.   THE TORTIOUS INTERFERENCE CLAIM IS LEGALLY AND FACTUALLY SOUND

#### A.   The Trustee's Tortious Interference Claim is Timely

The Individual Defendants cite no caselaw addressing the timeliness of a tortious

interference claim to support their unfounded assertion that the three-year statute of limitations accrues at the time of the wrongful act.  (Indiv. Br. at 7-9).  It does not.  A claim for tortious interference with contract accrues <u>at the time of the injury</u>.  *See, e.g.*, *WaveDivision Holdings, LLC*, 2010 WL 1267126, at *5 ("[I]n a claim where injury is a required element, such as tortious interference, the plaintiff could not file suit until the injury occurred.  The wrongful acts are not yet actionable, as no cause of action could be sustained.  <u>Because of this, the statute of limitations does not begin to run until the date the plaintiff suffered injury.</u>").[2]

The First Lien Lenders suffered injury long after the Yucaipa-ComVest transaction closed on August 21, 2009.  As explained more fully in the Entities Opposition (at 19-22), Yucaipa's breaches of the First Lien Credit Agreement — caused and implemented by the Individual Defendants — were serial breaches of a continuous contract.  The First Lien Credit Agreement provided for reoccurring and continual contractual rights to First Lien Lenders for a 5-year period, including:  (1) reoccurring principal and interest payments (Ex. 9 at §2); (2) reoccurring provision of Company financial information and reasonable access to management (*id.* at §§5.6, 5.7); (3) the right to direct the Agent to exercise certain remedies in an Event of Default (*id.* at §§9.8, 10.5(a)); (4) Company receipt of capital contributions in the amount of 50% of any Term Loans acquired by Yucaipa (Ex. 20 at §2.7(e)); and (5) Yucaipa never acting as Requisite Lender or asserting any claims against them in any way relating to the First Lien Credit Agreement (*id.*).  These contractual rights were designed to ensure that the

---

[2]     *See also BTIG, LLC v. Palantir Techs., Inc.*, 2020 WL 95660, at *3 & n.40 (Del. Super. Ct. Jan. 3, 2020) (tortious interference with contract claims accrue "<u>at the time of injury</u>") (citing *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *7 (Del. Ch. Jan. 24, 2005)); *Kickflip, Inc., v. Facebook, Inc.*, 2013 WL 6927147 (D. Del. Dec. 31, 2013) (applying Delaware law) ("Causes of action for torts, including interference with contract…, <u>accrue at the time the plaintiff is injured</u>.").

Lenders would be repaid the principal amount of their loans (with interest) over the duration of the agreement.  This is the essence of a "continuous contract."  *See, e.g.*, *Smith v. Mattia*, 2010 WL 412030, at *4 (Del. Ch. Feb. 1, 2010).

The Individual Defendants essentially admit this in arguing that Yucaipa's breaches of the Third Amendment — by "(a) allowing Allied not to make interest or principal payments; (b) precluding a restructuring; (c) bringing or defending litigation regarding the validity of Requisite Lender status; or (d) … demanding beneficial and favorable terms for itself, compared with other Lenders" from JCT based on their supposed Requisite Lenders status — were "not themselves" breaches but only "purported harmful effects of Yucaipa us[ing] its status as purported Requisite Lender."  (Indiv. Br. at 8).  In other words, Yucaipa's August 21, 2009, breach was the initial trigger enabling it to *continuously* breach the First Lien Credit Agreement over the coming years.[3]  But Yucaipa's execution of the Fourth Amendment and arrogation of Requisite Lender status did not cause the later breaches — they simply afforded Yucaipa the opportunity to commit them.

That explains why the First Lien Lenders' injury from Yucaipa's continuing breach of the First Lien Credit Agreement was not ascertainable at the time of Yucaipa's initial breach in August 2009.  (*See generally* Entities Opp. at 21-22).  The First Lien Credit Agreement provided that the Lenders were entitled to have their loans repaid, with interest, by the May 2012 Maturity Date.  Their monetary damages, if any, caused by Yucaipa's continuous breaches of that

---

[3]    The Individual Defendants' "effects" argument depends on the false notion that Yucaipa actually acquired Requisite Lenders status (*see* Indiv. Br. at 8).  The Individual Defendants ignore that every court to consider the issue has definitively ruled that the Fourth Amendment was *void ab initio*, and Yucaipa was not (and never was) Requisite Lender.  The First Lien Credit Agreement has always expressly *prohibited* Yucaipa from becoming — and, logically, *acting* as — Requisite Lenders (*see* Ex. 9 at p. 17; Ex. 20 at §2.1(c), (e)).  Each instance of Yucaipa acting as Requisite Lenders, to the First Lien Lenders' detriment, is its own breach of the First Lien Credit Agreement.

Agreement would be a function of whether such repayment ever occurred.  It did not.

Accordingly, as the Trustee's damages expert Jeffrey Risius explained in his report, the First

Lien Lenders' damages were not ascertainable until the completion of the JCT 363 Sale.  At that

point, JCT purchased substantially all of Allied's assets for $135 million, ███████████

████████████████████████████████████████████████████████

██████████████████

Because the plaintiffs did not suffer ascertainable injury until long after November 19,

2011, the Trustee's tortious interference claim did not accrue before then and is timely asserted.

### B.       The Individual Defendants' Scope of Agency, Justification, and Damages Arguments Do Not Preclude Summary Judgment in the Trustee's Favor

#### 1.       *New York Law Governs*

The Individual Defendants assert — without support — that the Trustee's tortious

interference claim is "unquestionably" subject to Delaware substantive law.  (Indiv. Br. at 6 n.3,

15 n.7).  This ignores multiple cases in this Court applying the law of a state specified in a

contract's choice of law provision to a claim for tortious interference with that contract.  *See In

re Green Field Energy Servs., Inc.*, 585 B.R. 89, 110-11 (Bankr. D. Del. 2018) (applying New

York law to tortious interference claim where contract "expressly state[d] New York law

governs, and the causes of action arise out of the rights, duties, and obligations created by the

Agreement"); *In re Fruehauf Trailer Corp.*, 2011 WL 2838168, at *7 (Bankr. D. Del. July 15,

2011) (applying law of state specified in contract's choice of law provision to tortious

interference with contract claim "[b]ecause the causes of action all arise out of rights, duties, and

obligations created by" it).  Under this precedent, New York law applies to the Trustee's tortious

interference claim because the First Lien Credit Agreement specifies that New York law governs

"this agreement and the rights and obligations of the parties hereunder."  (Ex. 9 at §10.14).  The

Individual Defendants acknowledge that there is no substantive difference between New York and Delaware law with respect to the elements of the claim (Indiv. Br. at 15 n.7), which also weighs in favor of the application of New York law.[4]

Under New York and Delaware law, the elements of a tortious interference claim are: "(1) a valid contract; (2) defendant[']s knowledge of the contract; (3) defendant's intentional interference with the contract and a resulting breach; and (4) damages." *Green Field*, 585 B.R. at 113. Each element of the claim is satisfied here (Trustee Br. at 37-40; *infra* at 20-21). The Individual Defendants' arguments do not raise any triable issue of fact. Summary judgment should, therefore, be denied to the Individual Defendants and granted in the Trustee's favor.

## 2.    *The Individual Defendants Were Outside the Scope of Their Agency*

The Individual Defendants contend they are shielded from liability because agents "of a contracting corporation cannot be held personally liable for inducing a breach of contract by their corporations when they act within their given role." (Indiv. Br. at 10) (quoting *In re CVR Refining, LP Unitholder Litig.*, 2020 WL 506680, at *17 (Del. Ch. Jan. 31, 2020)). Under New York law, however, corporate officers *cannot* escape liability where, as here, their acts "were beyond the scope of their employment or, if not, were motivated by their personal gain, as distinguished from gain for the corporation." *Nahabedian v. Intercloud Sys., Inc.*, 2016 WL 155084, at *6 (S.D.N.Y. Jan. 12, 2016) (applying New York law). If "an agent is alleged to have induced its principal to breach a contract, the agent cannot be found liable unless it does not act in good faith and commits independent torts or predatory acts directed at another for personal

---

[4]    *See CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447, 456 (D. Del. 2016) (applying Georgia law where one party "expressly [sought] application of Georgia law" and other party "argue[d] for application of Delaware law, [but] also contend[ed] that there is no difference between Delaware law and Georgia law").

pecuniary gain." *Schmidt & Schmidt, Inc. v. Town of Charlton*, 68 A.D.3d 1314, 1316 (N.Y. App. Div. 2009); *Mobarak v. Mowad*, 117 A.D.3d 998, 1000-01 (N.Y. App. Div. 2014) ("a corporate director may not be held personally liable for damages [for tortious interference with corporation's contract] absent proof of commission of independent tortious acts").

Here, the Individual Defendants' conduct was beyond the scope of their employment, motivated by personal gain, and constituted independent tortious conduct.

**Beyond Scope of Employment.**  As discussed in the Trustee Brief, the Yucaipa Directors — Opdeweegh, Pelletier, Walker, and Tochner — were at all relevant times acting outside the scope of their employment with Yucaipa by virtue of their inherently conflicted position as both Yucaipa employees and Allied Directors.[5]  Among other things, with respect to the 2011-2012 JCT negotiations, Walker, Tochner, and Pelletier (the Yucaipa Directors on the Board at the time) and Burkle were clearly not acting within the scope of their employment when they caused Yucaipa to breach its independent fiduciary duties, as controlling shareholder, by, *inter alia*, parading as Requisite Lender and demanding a premium price for its debt.  Burkle's uncontradicted testimony is that he instructed his employees to agree to a *pari passu* allocation, which he understood to be "fair."  (*See* Scolnick Ex. 12 (Burkle Dep.) 173:8-175:20; *see also id.* at 174:2-175:20).  The Yucaipa Directors disregarded that instruction, and thus were acting outside the scope of their employment in continuing to insist on Yucaipa's receiving a premium from JCT, at the expense of other Lenders, ultimately leading to the collapse of negotiations and

---

5

Allied's second bankruptcy.[6]

**Motivated by Personal Gain.** The Individual Defendants claim that the only benefit they received as a result of Yucaipa's breaches was indirect — namely, improved performance by Yucaipa, which paid their salaries — and, therefore, they could not be acting outside the scope of their employment by inducing those breaches (Indiv. Br. at 11-12). The Individual Defendants omit that they each had a ***direct*** pecuniary interest in the performance of the two Yucaipa funds motivating their inducement of Yucaipa's breaches. Each of the Individual Defendants received, as Yucaipa partners, a percentage of certain profits for these funds.[7] ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████ This

*directly* impacted payments to the Individual Defendants on account of the fund returns.[9]

The Individual Defendants mistakenly argue that they are subject to liability only if they were "acting *solely* to advance [their] *own personal financial interest*, rather than that of the



6 ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

7 ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

8   *See* Exs. 130; 131; 133; 134; 136; 137; 138; 142; 143.

9 ████████████████████████████████████████████
████████████████████████████

corporation itself." (Indiv. Br. at 11-12). New York courts recognize that a corporate agent may be held liable for tortious interference with the corporation's contract even if he "acts with a mixed motive, that is, partially for self-interest and partially in the corporation's interests." *See Hoag v. Chancellor, Inc.*, 246 A.D.2d 224, 229 (N.Y. App. Div. 1998) (citing *Herald Hotel Assocs. v. Ramada Franchise Sys., Inc.*, 191 A.D.2d 288, 288 (N.Y. App. Div. 1993) (corporate officer can be "held accountable, regardless of whether he acted in furtherance of the interests of [the] corporation" in part because he acted "in his own best interests")).

**Individual Defendants Interfered with Yucaipa's Contracts.** Employees like the Individual Directors each "remain individually liable, notwithstanding the … rule … excus[ing] them from liability for interference with their own company's contracts" where, as here, "their actions constitute independent tortious conduct."[10] Here, the Individual Defendants' actions separately breached their fiduciary duties the Company. *See also cf. XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 186-87 (E.D.N.Y. 2016) (applying New York law) ("independent tort" in context of claim for tortious interference with prospective business relations "includes fraud, threats, and breach of fiduciary duty.").

As detailed in the expert reports submitted by the Trustee's corporate governance expert (Professor Jonathan Macey of Yale), the Yucaipa Directors' conduct violated basic norms of corporate governance and ethics, and strongly signals abdication of their director duties. (*See generally* Exs. 104, 106). *See also, e.g.*, *In re USA Detergents, Inc.*, 418 B.R. 533, 545 (Bankr. D. Del. 2009) (breach of duty of loyalty and good faith established by showing that director "intentionally acts with a purpose other than that of advancing the best interests of the

---

[10]    *Monex Fin. Servs. Ltd. v. Dynamic Currency Conversion, Inc.*, 2008 WL 880209, at *5 (N.Y. Sup. Ct. Mar. 26, 2008), *aff'd as modified*, 62 A.D.3d 675 (N.Y. App. Div. 2009) (citing *Greyhound Corp. v. Commercial Cas. Ins. Co.*, 259 A.D. 317, 321 (N.Y. App. Div. 1940)).

corporation"); *Kahn v. Portnoy*, 2008 WL 5197164, at *7 (Del. Ch. Dec. 11, 2008) (breach of duty of loyalty and good faith established "when [a director or officer] is acting for the benefit of a related person at the expense of the company").

The Individual Defendants' conduct by causing and inducing Yucaipa's contractual breaches — including, among other things, approving the illegal Fourth Amendment (benefitting only themselves and Yucaipa), and allowing Yucaipa to demand a premium from JCT by masquerading as Requisite Lender while preventing equal and ratable treatment for all First Lien Lenders — separately constituted breaches of their fiduciary duties. These breaches harmed the Company and its stakeholders. Accordingly, the Individual Defendants cannot escape liability by hiding behind the shield of their employment by Yucaipa. *See, e.g.*, *Bank of N.Y. v. Berisford Int'l P.L.C.*, 190 A.D.2d 622, 622 (N.Y. App. Div. 1993) (defendant "not immune from liability [on tortious interference claim] on the ground that he was the general partner of the entity that allegedly breached the contract, as it is alleged that he was not acting in good faith and committed wholly independent torts directed at plaintiff for personal pecuniary gain").[11]

---

[11]    The evidence reveals that Burkle, who was never a member of Allied's Board, aided and abetted fiduciary breaches by the Yucaipa Directors and Gendregske by routinely exercising control over their actions.

Such acts support the independent tort of aiding and abetting breaches of fiduciary duty. *See e.g.*, *In re USA Detergents, Inc.*, 418 B.R. at 546 (allegations that managing member of Debtor's controlling shareholder gave orders directly to Debtor's Chief Restructuring Officer and "pressured the Director Defendants to focus on minimizing losses for [controlling shareholder] rather than the Debtor" stated cause of action for aiding and abetting breaches of fiduciary duty by officers and directors).

### 3.    *The Individual Defendants' Interference Was Unjustified*

The Individual Defendants erroneously claim there is no dispute that their actions in "caus[ing] Yucaipa to acquire ComVest's First Lien Debt or caus[ing] Yucaipa to hijack the JCT [N]egotiations" were justified, and therefore that they are not subject to liability for tortious interference with contract (Indiv. Br.at 12-15).  The Individual Defendants' claimed "justifications" for their actions are unsupported by the facts.

**Claimed Reliance on Validity of Fourth Amendment Is Not Justified.**  The Individual Defendants argue that they were justified in relying on their belief that the Fourth Amendment was valid.  (*See id.* at 13).  This assertion is baseless.  It was clear to Yucaipa and the Individual Defendants that the validity of the Fourth Amendment was dubious from the outset.  Further, the 10-page opinion letter from Troutman — which the Individual Defendants claim reflected the Fourth Amendment's validity — contained 8 full pages of caveats and ultimately opined only that the Fourth Amendment would be binding on the Company.  (*See* Scolnick Ex. 76).

After Yucaipa hired another bank (Imperial) as Administrative Agent (Scolnick Ex. 56) and launched the Tender Offer (Ex. 31), CIT unequivocally notified the Board that it would not consent to the proposed Fourth Amendment.[12]

---

[12]

Yucaipa forced the issue notwithstanding these red flags. 

The Individual Defendants were well aware
that they had no solid ground to rely on with respect to the Fourth Amendment's validity, and
cannot now use it to claim that their tortious actions were justified.  The Individual Defendants
misrepresent the holdings of the New York Court and this Court when they claim that they were
entitled to rely on the validity of the Fourth Amendment because it "was not deemed invalid by a
New York Court until years later." (Indiv. Br. at 13).  The New York court did not invalidate the
Fourth Amendment after the fact, but held that it *had never come into effect*.[14]  This Court upheld
this holding (13-50530, D.I. 297 at 123-24), as did the Delaware District Court and the Third
Circuit.[15]

**The Claimed Concern about Liquidation Is Not Justified.**  The Individual Defendants
argue that they were justified in inducing Yucaipa's breach in purchasing ComVest's majority of
the First Lien Debt because "there is no genuine dispute" that they believed it was necessary to
avoid bankruptcy and assuage customer concerns.  (Indiv. Br. at 13-14).  There is a serious

---

[13]

[14]    *BDCM Opportunity Fund II, LP v. Yucaipa Am. All. Fund I, LP*, 2013 WL 1290394, at *5-6 (N.Y. Sup. Ct. Mar. 8, 2013) (Fourth Amendment "is not, and never was, effective"), *aff'd*, 112 A.D.3d 509 (N.Y. App. Div. 2013), *leave to appeal denied*, 22 N.Y.3d 1171 (2014).

[15]    *See In re Allied Sys. Holdings Inc*, 556 B.R. 581, 608-09 (D. Del. 2016), *aff'd sub nom. In re ASHINC Corp.*, 683 F. App'x 131, 141-42 (3d Cir. 2017).

dispute about this meritless "justification." Ample evidence shows that the Yucaipa-ComVest Transaction was undertaken to maximize Yucaipa's control over, and ability to milk, the Company, not to prevent an Allied bankruptcy or liquidation.[16] Critically, the void Fourth Amendment did not cure any of the Company's defaults or reset any covenants, nor did it include any protection against a bankruptcy or liquidation. It merely removed restrictions on Yucaipa's ability to purchase debt and claim Requisite Lender status. (*See* Ex. 44).

Similarly, a month prior to the Yucaipa-ComVest Transaction, Tochner forwarded Walker an email exchange with Burkle discussing a plan for Yucaipa to take control of the debt and force the other debtholders to agree to a prepackaged bankruptcy.[17]

**Claimed Mutual Benefit from JCT Negotiations Is Not Justification.** The Individual Defendants maintain that their actions in connection with the 2011-2012 JCT negotiations were justified because "[t]here is no genuine dispute" that they believed that those negotiations "could be mutually beneficial for Yucaipa and Allied." (Indiv. Br. at 14).

---

[16]

[17]

██████████████████████████████████████████

████████████████    The assertion is incredible given that the damages expert for Yucaipa

and the Individual Defendants takes the affirmative position that the proposed transaction with

JCT would not have benefitted Allied or the First Lien Lenders.  (*See* Ex. 105 (Fischel Rebuttal

Report) at ¶¶19-20).

      **4.**      ***The Trustee's Evidence of Damages Supports All Aspects of Her Claim***

The Individual Defendants do not deny that the Trustee has proffered evidence of

damages on her claim that Yucaipa's "insist[ence] on a disproportionate share of the

consideration JCT was willing to pay for the sale of Allied's assets, which prevented Allied from

consummating a sale, caus[ed] Allied and the lenders to incur unnecessary legal costs."  (Indiv.

Br. at 16).  They argue, however, that partial summary judgment should be granted "on all

aspects of the Tortious Interference Claim *other than* the JCT-related allegations."  (*Id.* at 17).

These include allegations that the Individual Defendants induced Yucaipa's breaches of the First

Lien Credit Agreement by:  (1) acquiring first lien debt in violation of the First Lien Credit

Agreement; (2) improperly declaring itself Requisite Lender; (3) allowing Allied to ignore

provisions of the First Lien Credit Agreement requiring it to pay the First Lien Lenders principal

and interest; (4) protecting its investment by precluding a restructuring of Allied; and (5) causing

the First Lien Lenders to incur unnecessary legal costs to challenge Yucaipa's Requisite Lender

status and the validity of the Fourth Amendment.  As set forth in the Entities Opposition (at 29-

32), the Individual Defendants' argument is meritless.

The Individual Defendants take the position that each alleged breach of a contract must

be separately supported by distinct and proximate resulting damages, but provide no support for

this assertion.[18]  They ignore that each identified breach is part of Yucaipa's years of ongoing

and continuous breaches of the First Lien Credit Agreement, which culminated in the First Lien

Lenders not receiving payment at maturity and recovering only a fraction of their loans upon

consummation of the JCT 363 Sale in late 2013.  (*See* above at 7-9; Entities Opp. at 19-22).  For

this reason, the Trustee's damages expert, Jeffrey Risius, calculates damages to the First Lien

Lenders from Yucaipa's contractual breaches by comparing (i) what they would have recovered

but for Yucaipa's breaches, culminating in the unraveling of the JCT negotiations, with (ii) their

actual recovery following the later JCT 363 Sale.  (*See* Ex. 103 (Risius Report) at ¶¶109-133).

As explained above (at 7-9), the First Lien Lenders' damages became ascertainable only upon

the sale of the Company.

The Individual Defendants seek to bolster their argument by mischaracterizing testimony

of the Trustee's 30(b)(6) witness on damages, Stephen Deckoff, claiming that he "was unable to,

or refused to, point to any evidence of damages resulting from Yucaipa's alleged breaches…,

instead specifically referencing that all damages opinions and testimony would be provided by

the Trustee's damages expert."  (Indiv. Br. at 16-17).  This is false.  Mr. Deckoff gave

substantive responses with respect to the Lenders' damages from each of Yucaipa's breaches,

and deferred to the Trustee's damages expert only when asked for a *quantification* of the injury

suffered.  ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████  As demonstrated in the Entities

---

[18]    The cases the Individual Defendants cite (Indiv. Br. at 15-16) stand only for the uncontroversial proposition that proof of damages is a necessary element of a cause of action for tortious interference with contract and that, as a general rule, damages must be more than speculative.  None holds that each discrete allegation of breach must be supported by proof of a separate and distinct resulting injury.

Opposition (at p. 32 n.33 and accompanying text), seeking damages calculations from a 30(b)(6) witness is inappropriate and cannot support the grant of partial summary judgment sought, and, for that reason, the Trustee objected to such questioning in advance of Mr. Deckoff's deposition. (*See* 13-50530, D.I. 583 at, *e.g.*, 9).

### C.    Summary Judgment Should Be Granted to the Trustee

The Individual Defendants do not dispute two key elements of the Trustee's tortious interference claim — that (1) the Third Amendment was at all relevant times operative and binding on Yucaipa, and (2) the Individual Defendants were aware of it.[19]  For the reasons set forth in the Trustee Brief (at 37-40), summary judgment should be granted to the Trustee on her tortious interference claim because the undisputed facts demonstrate that the Individual Defendants intentionally caused Yucaipa to breach the Third Amendment, and the First Lien Lenders were severely damaged.

Burkle, Walker, and Tochner assumed total control over negotiations with ComVest, thwarting ComVest's attempts to meet and engage with Allied's management,[20] thereby enabling Yucaipa to take over all negotiations with ComVest and use them, and ComVest, to seize control over the First Lien Facility, in breach of the Third Amendment.[21]  Allied's Board — including

---

[19]    As discussed above, the elements of a tortious interference with contract claim are: "(1) a valid contract; (2) defendant['s] knowledge of the contract; (3) defendant's intentional interference with the contract and a resulting breach; and (4) damages." *Green Field*, 585 B.R. at 113.

[20]    Ex. 92 (ComVest 30(b)(6) Dep.) 194:23-203:11 (ComVest's attempts to gain access to Allied's management were thwarted by Yucaipa and, specifically, Ron Burkle).

[21]

Walker, Tochner, and Opdeweegh at the time (Ex. 89 at 14-15) — then pressed through the invalid Fourth Amendment (Ex. 42), so that Yucaipa could "seiz[e] control of the Lenders' rights and remedies." *See BDCM Opportunity Fund II*, 2013 WL 1290394, at *5.

The Individual Defendants also interfered with the Lenders' contractual rights by causing Yucaipa to assert its purported Requisite Lender status in negotiations with JCT and demand a premium price for its debt.[22] █████████████████████████████████████████████

████████████████████████████████████ The Allied Board — including Walker, Tochner, and Pelletier (Ex. 89 at 14-15) — as well as Burkle, Walker, and Tochner in their capacities as Yucaipa representatives, ignored BD/S's request that the Board negotiate a deal including ratable treatment for all First Lien Lenders and on terms that would have been far more favorable to Allied and its stakeholders than the post-bankruptcy JCT 363 Sale. The improper inaction of the Yucaipa Directors — and the improper actions of Burkle, Walker, and Tochner as Yucaipa representatives — left BD/S with no feasible alternative but to file the involuntary petition to protect their rights.

Because each element of the claim for tortious interference with contract is met, summary judgment should be granted in the Trustee's favor. *See, e.g.*, *Rossi v. Twinbogo Co.*, 193 A.D.2d 481, 484 (N.Y. App. Div. 1993).

---

22  ████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████

II.   **THE FIDUCIARY DUTY CLAIMS AGAINST THE YUCAIPA DIRECTORS ARE SOUND**

    A.    <u>Scope of Claims</u>

Nearly 10 pages of the Individual Defendants' brief is devoted to arguing that partial summary judgment should be granted in favor of each Yucaipa Director on the Trustee's breach of fiduciary duty claim to the extent it is based on events that took place when he did not serve on the Board[24] and that summary judgment should be granted in their favor on the claim for aiding and abetting breach of fiduciary duty.[25]  Had Yucaipa conferred on these points — as it did with respect to aiding and abetting breach of fiduciary duty claim asserted against Walker that the Trustee agreed to dismiss (*see* 13-50530, D.I. 694) — their counsel could have spared some ink.  The Trustee is not pursuing these claims.

    B.    **Summary Judgment Is Unwarranted on the Trustee's Remaining Fiduciary Duty Claims**

The remainder of the Motion seeks partial summary judgment on the Trustee's fiduciary duty claims to the extent based on: (1) Allied's payment of Yucaipa's legal fees;[26] (2) the Yucaipa Directors' failure to act in connection with the JCT negotiations in 2011-2012;[27] and (3) the Yucaipa Directors' failure to ensure compliance with the Third Amendment.[28]  As discussed below and in the Entities Opposition, there is no basis to grant summary judgment to the Yucaipa Directors on any of these aspects of the Trustee's claims.

    1.    *<u>Allied's Payment of Yucaipa's Unreasonable Legal Fees</u>*

The Yucaipa Directors argue that no breach of fiduciary duty claim can be based on

---

[24]    *See* Indiv. Br. at 19-20 (Opdeweegh), 22-23 (Pelletier), 25-26 (Tochner).

[25]    *See id.* at 20-21 (Opdeweegh), 24-25 (Pelletier), 26-27 (Tochner).

[26]    *Id.* at 19-20 (Opdeweegh), 23-24 (Pelletier), 26 (Tochner), 27 (Walker).

[27]    *Id.* at 23 (Pelletier), 26 (Tochner), 26-27 (Walker).

[28]    *Id.* at 20 (Opdeweegh), 24 (Pelletier), 26 (Tochner), 27 (Walker).

Allied's payment of Yucaipa's legal fees — in connection with the Yucaipa-ComVest

Transaction and litigation over the validity of the Fourth Amendment — because Allied was

contractually required to reimburse Yucaipa for those fees.  As discussed in the Entities

Opposition (at 46-48), the Yucaipa Directors mischaracterize the contractual requirements they

rely on.

      **Fees for Yucaipa-ComVest Transaction.**  *See* Entities Opposition at 46-47, which is

incorporated by reference.

      **Fees for Georgia Action.**  *See* Entities Opposition at 47-48, which is incorporated by

reference.

      **Fiduciary Duty Fee Claims Are Not Duplicative Or Precluded by Troutman's**

**Advice.**  The Yucaipa Directors argue that the Lenders' fiduciary duty claim, to the extent based

on Allied's payment of Yucaipa's legal fees, is duplicative of Estate Claims 10, 11, and 12

(fraudulent transfer and preferences claims) (Indiv. Br. at 20 n.10).  They further argue that the

Yucaipa Directors relied on the advice of Troutman in approving the payment of those fees, and

that "undisputed expert testimony establishes that it is a common market practice for borrowers

(such as Allied) to reimburse their Lenders' legal fees (Yucaipa and ComVest) in connection

with amendments to credit agreements."  (*Id.*) (citing Section III of Defendant Mark

Gendregske's memorandum of law in support of his motion for summary judgment (13-50530,

D.I. 708) ("**Gendregske Br.**")).

      *First*, the Trustee's fiduciary duty claim against the Yucaipa Directors is not duplicative

of the fraudulent transfer and preference claims against Yucaipa.  Neither the Yucaipa Directors

nor Gendregske offer any case law holding that a fiduciary duty claim against a director for

approving a fraudulent transfer is duplicative of a fraudulent transfer or preference claim

(Gendregske Br. at 18-19), and this Court has upheld as stating a *prima facie* claim a Trustee's claim that a board member breached his fiduciary duties by approving a fraudulent transfer.  *See In re Our Alchemy, LLC*, 2019 WL 4447541, at *11-12 (Bankr. D. Del. Sept. 16, 2019).[29]

*Second*, the Yucaipa Directors assert that it is "undisputed" that they properly relied on Troutman's advice that Allied's reimbursement of Yucaipa and ComVest's legal fees was appropriate because this was "common market practice."  (Indiv. Br. at 20 n.10; Gendregske Br. at 19-20).  It is not.  ███████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████  █    ████████████████████████████████████

███    *First*, the mere fact that something may be a "common" practice does not constitute legal advice that a practice is consistent with directors' fiduciary duties, and is not a defense to a claim for breach of fiduciary duty.  *Second*, even "common" practices are not categorically permissible under all circumstances (*id.* at ¶¶45-48).  It is well-settled, for example, that "the fact that behavior is common does not mean it is not fraud."  *Gonnella v. SEC*, 954 F.3d 536, 549 (2d Cir. 2020).  *Accord Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 219 (3d Cir. 2006) ("[E]ven a universal industry practice may still be fraudulent….").  The Yucaipa Directors failed to inquire into whether the so-called "common" payments Troutman referred to were comparable or

---

[29]    The cases Gendregske cites (at 18-19) stand only for the irrelevant proposition that Delaware does not recognize a cause of action for aiding and abetting fraudulent transfers.

[30]    ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

analogous to the payments demanded by Yucaipa.  The Individual Defendants cannot blindly

claim their reliance on Troutman was justified (Ex. 106 (Macey Rebuttal) ¶47).

### 2.      *Fiduciary Breaches by Obstructing Consideration of Transactions*

Like the Yucaipa Entities, the Yucaipa Directors argue that they are entitled to summary

judgment on the Trustee's breach of fiduciary duty claim to the extent based on their "fail[ure] to

consider potential transactions" for Allied (*e.g.*, Indiv. Br. at 23) because the 2011-2012

negotiations for a potential transaction with JCT are not specifically referenced in the Estate

Complaint.  For the reasons stated in the Entities Opposition (at 40-41; *see also id.* at 35-40), the

Yucaipa Directors cannot escape liability on this basis.

### 3.      *Usurpation of Corporate Opportunity is Neither Plead Nor Relevant*

Like the Yucaipa Entities, the Yucaipa Directors assert that "the Trustee's damages from

the JCT Negotiations are rooted in the assumption that Yucaipa 'wrongfully usurp[ed] Allied's

corporate opportunity,'" and that the claim therefore fails because (1) "the JCT Negotiations

were *not* a corporate opportunity," and (2) the "MMSA expressly waives liability for not

presenting corporate opportunities to Allied."  (*E.g.*, Indiv. Br. at 23).  This is groundless, for the

reasons stated in the Entities Opposition at 42-45.

### 4.      *Fiduciary Breaches in Failing to*
### *Ensure Compliance with Third Amendment*

The Yucaipa Directors contend that they are entitled to summary judgment on the breach

of fiduciary duty claim with respect to the allegation that they failed to "ensure compliance" with

the Third Amendment (*e.g.*, Indiv. Br. at 20), because this allegation "arises out of the same

underlying facts as the Estate Complaint's breach of contract claim against Yucaipa," and is

"foreclosed as superfluous."  (*Id.*) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010)).

The Estate's fiduciary duty claims against Yucaipa arise out of precisely the same

conduct as the Estate's fiduciary duty claims against the Yucaipa Directors.  The Yucaipa

Directors, acting for Yucaipa's benefit, were the amanuenses through which the Yucaipa

breaches were committed.  Consequently, for the reasons stated in the Entities Opposition (at 33-

35), the Trustee's allegations of the Yucaipa Directors' breaches of fiduciary duty do not

duplicate the Estate's contract claim.  The Yucaipa Directors argue — by reference to the

memorandum in support of Yucaipa's motion for summary judgment (13-50530, D.I. 697; 14-

50971, D.I. 454) at Section V.C.3.a — that the fiduciary duty claims alleged against them

duplicate the Trustee's contract claim with respect to the Yucaipa-ComVest Transaction.  But,

for the reasons set forth in the Entities Opposition at 33-35, these claims are not duplicative

because they are not substantially identical and seek distinct remedies.[31]

## CONCLUSION

For the foregoing reasons, the Individual Defendants' Motion should be denied.

---

[31]     The Estate Claim for breach of contract (Claim 5) relates only to Yucaipa's breach of
§2.7(e) of the Third Amendment in failing to make the mandatory capital contribution.  (*See* Ex.
1 at ¶¶159-65).  The fiduciary duty claim against the Yucaipa Directors (Claim 8) is based on their
breach of the duty of loyalty in causing the Company to enter into an illegal Fourth Amendment
that "served no valid corporate purpose to Allied" but afforded "significant benefits to Yucaipa.

Dated: August 21, 2020

**FOX ROTHSCHILD LLP**

By:        */s/ Seth A. Niederman*
        Seth A. Niederman (DE Bar No. 4588)
        Citizens Bank Center
        919 N. Market Street, Suite 300
        Wilmington, DE 19801
        Tel.: (302) 654-7444
        Fax: (302) 656-8920
        sniederman@foxrothschild.com

-and-

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Douglas J. Pepe
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY 10017
Telephone: (212) 407-1200
gjoseph@jha.com

-and-

**ZAIGER LLC**
Jeffrey H. Zaiger
432 Park Avenue, Suite 19A
New York, NY 10022
Telephone: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for the Litigation Trustee and Plan Administrator*

828439 / 4814-5764-4480

**Appendix A**

**Abbreviations and Defined Terms**

| | |
|---|---|
| **13-50530** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Adv. Proc. No. 13-50530 (Bankr. D. Del.) |
| **14-50971** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Adv. Proc. No. 14-50971 (Bankr. D. Del.) |
| **2005 Bankruptcy** | *In re Allied Holdings, Inc., et al.*, Case Nos. 05-12515 through 05-12526 and 05-12528 through 05-12537 (Bankr. N.D. Ga.) |
| **Active** | Active Carhaul |
| **Allied Adversary Proceeding** | *ASHINC Corp. v. AMMC VIII, Ltd. et al.*, Adv. Proc. No. 12-50947-CSS (Bankr. D. Del) |
| **Allied** or the **Company** | ASHINC Corp.(formerly known as Allied Systems Holdings, Inc.) and related Debtors |
| **Amended Plan** | Debtors' Modified First Amended Joint Chapter 11 Plan of Reorganization dated December 3, 2015 (Case No. 12-11564, D.I. 3360-1) |
| **BD/S** | Black Diamond and Spectrum |
| **Black Diamond** | BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd. |
| **Board** | Allied's Board of Directors |
| **Burkle** | Defendant Ronald Burkle |
| **CIT** | CIT Group/Business Credit, Inc. |
| **ComVest** | ComVest Investment III, L.P. |
| **Credit Agreements** | Allied's First Lien Credit Agreement and Second Lien Credit Agreement |
| **D. Del. Compl.** | *Yucaipa Am. All. Fund I, L.P. et al. v. Richard A. Ehrlich et al.*, No. 15-cv-373 (D. Del. May 8, 2015), ECF No. 1 |
| **Direct Lender Claims** | Claims brought on behalf of the lenders under Allied's first lien credit facility asserted in Adv. Proc. No. 14-50971 |
| **Entities Opposition** or **Entities Opp.** | Litigation Trustee's Opposition to the Motion for Summary Judgment by Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP, dated July 17, 2020 |
| **Estate Claims** | Claims brought on behalf of the Allied Estates asserted in Adv. Proc. No. 13-50530 |
| **Ex.** | Exhibits to the first Declaration of Gila S. Singer, dated May 1, 2020 (13-50530, D.I. 713; 14-50971, D.I. 466) and the accompanying Second Declaration of Gila S. Singer |
| **First Lien Credit Agreement** | Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (Ex. 9) |
| **Gendregske Br.** | Defendant Mark Gendregske's Opening Brief in Support of his Motion for Summary Judgment, dated May 1, 2020 (13-50530, D.I. 708) |

1

| Georgia Action | *Allied Systems Holdings, Inc., et al. v. The CIT Group/Business Credit, Inc.*, Civil Action No. 2009-CV-177574 (Super. Ct. Fulton Cnty.) |
|---|---|
| Indiv. Br. | Memorandum of Points and Authorities in Support of Motion for Summary Judgment by Defendants Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner (13-50530, D.I. 699; 14-50971, D.I. 456) |
| Individual Defendants | Defendants Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner |
| Jack Cooper or JCT | Jack Cooper Transport |
| JCT 363 Sale | Purchase by JCT of substantially all of Allied's assets for $135 million following an auction for Debtors' assets under 11 U.S.C. §363, which closed on December 27, 2013 |
| Joint Procedural History | Joint Procedural History, dated July 25, 2019 (13-50530, D.I. 599; 14-50971, D.I. 365) |
| Kasowitz | Kasowitz Benson Torres LLP |
| Latham | Latham & Watkins LLP |
| LPA | Loan Purchase Agreement between Yucaipa and ComVest, dated August 21, 2009 (Ex. 43) |
| MMSA | Monitoring and Management Services Agreement, dated May 29, 2007 (Scolnick Ex. 32) |
| NY Action | *BDCM Opportunity Fund II, LP, et al. v. Yucaipa American Alliance Fund I, L.P., et al.*, Index No. 650150/2012 (N.Y. Sup. Ct. N.Y. Cnty.) |
| Plan | Second Amended Joint Plan of Reorganization, *In re Allied Holdings, Inc.*, No. 05-12515 (CRM) (Bankr. N.D. Ga.), D.I. 2802 (Ex. 11) |
| Requisite Lenders | As defined in Allied's First Lien Credit Agreement (Ex. 9 at 41) |
| Scolnick Ex. | Exhibits to the Declaration of Kahn A. Scolnick, dated May 1, 2020 (13-50530, D.I. 721; 14-50971, D.I. 457) |
| SDNY Compl. | *Yucaipa Am. All. Fund I, L.P. et al. v. Richard A. Ehrlich et al.*, No. 15-cv-916 (S.D.N.Y. Feb. 6, 2015), ECF No. 1 |
| Second Lien Credit Agreement | Second Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 |
| Spectrum | Spectrum Investment Partners, L.P. |
| Tender Offer | February 4, 2009 tender offer by Yucaipa for Allied first lien debt (Ex. 30) |
| Third Amendment | Amendment No. 3 to First Lien Credit Agreement and Consent, dated as of April 17, 2008 |
| Troutman | Troutman Sanders LLP |
| Trustee | Plaintiff Catherine E. Youngman, as Litigation Trustee for ASHINC Corp. (formerly known as Allied Systems Holdings, Inc.) and related Debtors |

| **Trustee Brief** | Litigation Trustee's Memorandum in Support of Motion for Partial Summary Judgment, dated May 1, 2020 (13-50530, D.I. 706; 14-50971 D.I. 463) |
|---|---|
| **UVTA** | Uniform Voidable Transactions Act |
| **Yucaipa** | Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. |
| **Yucaipa Br.** | Memorandum of Points and Authorities in Support of Motion for Summary Judgment by Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P., dated May 1, 2020 (13-50530, D.I. 697; 14-50971, D.I. 454) |
| **Yucaipa Directors** | Defendants Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner |
| **Yucaipa-ComVest Transaction** | Yucaipa's August 21, 2009 purchase of ComVest's $145.1 million (principal face amount) of Allied First Lien Debt for approximately $43 million pursuant to the LPA |