# Exhibit 111

Message

| | |
|---|---|
| From: | GLEN.COLLYER@lw.com [GLEN.COLLYER@lw.com] |
| Sent: | 3/28/2008 2:10:00 AM |
| To: | stephanie.bond@yucaipaco.com; Derex.Walker@yucaipaco.com; Blount, John AHI [john.blount@alliedholdings.com]; King, Tom AHI [tom.king@alliedholdings.com]; Robert.OShea@lw.com; Hazen.Dempster@troutmansanders.com; May.Chan@lw.com |
| Subject: | FW: Draft Allied Amendment |
| Attachments: | nyc2-724966-5.doc |

We received this amendment this afternoon. Please review and provide us with your comments.

---

**From:** Messina, Steven [mailto:Steven.Messina@skadden.com]
**Sent:** Thursday, March 27, 2008 3:02 PM
**To:** Collyer, Glen (LA)
**Cc:** Shah, Roopesh; Jacobson, Gabe; Bove, Peter; Gregory.Berube@gs.com; Neckles, Peter J (NYC); Eisner, Imri (NYC); Creaven, Patrick M (NYC)
**Subject:** Draft Allied Amendment

Glen,

Attached hereto for your review please find a draft of Amendment No. 3 to the Allied First Lien Credit Agreement. The draft amendment is intended to permit Yucaipa and its affiliates to purchase the first lien debt and contribute that debt to Allied subject to the various terms and conditions set forth in the amendment. The amendment currently includes an aggregate cap on the voting rights of Yucaipa and its affiliates. We expect that the cap on voting rights will be the subject of further discussion between our clients.

Please note that the attached remains subject in all respects to the internal review of Goldman Sachs.

Please feel free to call me with any questions.

Best regards,

Steve

Steven Messina
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
212-735-3509 (phone)
917-777-3509 (fax)

---

****************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
******************************************************
****************************************************** This email and any attachments thereto, is

intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
****************************************************
================================================================================


****************************************************************************
To comply with IRS regulations, we advise you that any discussion of Federal tax issues
in this e-mail was not intended or written to be used, and cannot be used by you, (i) to
avoid any penalties imposed under the Internal Revenue Code or (ii) to promote, market or
recommend to another party any transaction or matter addressed herein.

For more information please go to  http://www.lw.com/docs/irs.pdf
****************************************************************************

This email may contain material that is confidential, privileged and/or attorney work
product for the sole use of the intended recipient.  Any review, reliance or distribution
by others or forwarding without express permission is strictly prohibited.  If you are
not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

<u>**SASMF DRAFT 3/27/08**</u>

# AMENDMENT NO. 3 TO CREDIT AGREEMENT

This **AMENDMENT NO. 3 TO CREDIT AGREEMENT** dated as of March [__], 2008 (this **"Amendment"**), to the Amended and Restated First Lien Secured Super-Priority Debtor In Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (as amended by that certain Limited Waiver and Amendment No. 1 to Credit Agreement and Pledge and Security Agreement, dated as of May 29, 2007, and as further amended by that certain Amendment No. 2 to Credit Agreement, dated as of June 12, 2007, the **"Credit Agreement"**), by and among **ALLIED HOLDINGS, INC.** (formerly known as Allied Systems Holdings, Inc.), a Delaware Corporation ("**Holdings**"), **ALLIED SYSTEMS, LTD. (L.P.)**, a Georgia limited partnership ("**Systems**" and, together with Holdings, the "**Borrowers**") and **CERTAIN SUBSIDIARIES OF HOLDINGS**, the Lenders party hereto from time to time, **GOLDMAN SACHS CREDIT PARTNERS L.P.**, as Lead Arranger and as Syndication Agent and **THE CIT GROUP/BUSINESS CREDIT, INC.** as Administrative Agent (together with its permitted successors in such capacity, **"Administrative Agent"**) and as Collateral Agent.

## RECITALS:

**WHEREAS**, the Credit Agreement currently prohibits Borrowers and their respective Affiliates from becoming Lenders under the Credit Agreement;

**WHEREAS,** Borrowers have requested that Requisite Lenders agree to amend the Credit Agreement to permit Sponsor and its Affiliates (other than Borrowers and their Subsidiaries) to become Lenders under the Credit Agreement by purchasing and assuming the rights and obligations of one or more Lenders under the Credit Agreement; and

**WHEREAS**, Administrative Agent and Requisite Lenders have agreed to amend the Credit Agreement to permit Sponsor and its Affiliates (other than Borrowers and their Subsidiaries) to become Lenders under the Credit Agreement, in the manner, and subject to the terms and conditions, provided for herein.

**NOW, THEREFORE**, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

**SECTION 1.  DEFINITIONS**

1.1   All capitalized terms used herein (including in the introductory paragraph and Recitals set forth above) and not otherwise defined shall have the meanings assigned to such terms in the Credit Agreement.

CONFIDENTIAL                                                                                         AHS00131708

## SECTION 2. AMENDMENTS TO CREDIT AGREEMENT

    2.1    **Amendments to Section 1: Definitions**.

        (a)    Section 1.1 of the Credit Agreement is hereby amended by adding thereto the following definition of "Restricted Sponsor Affiliates" in the proper alphabetical order:

" '**Restricted Sponsor Affiliates**' means Sponsor and its Affiliates."

        (b)    Section 1.1 of the Credit Agreement is hereby further amended by deleting the definition of "Assignment Agreement" in its entirety and inserting in lieu thereof the following:

" '**Assignment Agreement**' means an Assignment and Assumption Agreement substantially in the form of Exhibit E, with such amendments or modifications as may be approved by Administrative Agent (provided, that the approval of the Requisite Lenders shall be required to amend or modify any provision of Exhibit E that relates to Restricted Sponsor Affiliates)."

        (c)    Section 1.1 of the Credit Agreement is hereby further amended by deleting the definition of "Eligible Assignee" in its entirety and inserting in lieu thereof the following:

" '**Eligible Assignee**' means (i) any Lender, any Affiliate of any Lender and any Related Fund (any two or more Related Funds being treated as a single Eligible Assignee for all purposes hereof), and (ii) any commercial bank, insurance company, investment or mutual fund or other entity that is an "accredited investor" (as defined in Regulation D under the Securities Act) and which extends credit or buys loans; provided, neither Borrowers nor any of their Subsidiaries shall be an Eligible Assignee."

        (d)    Section 1.1 of the Credit Agreement is hereby further amended by deleting the definition of "Requisite Lenders" in its entirety and inserting in lieu thereof the following:

" '**Requisite Lenders**' means one or more Lenders having or holding Term Loan Exposure, LC Exposure and/or Revolving Exposure and representing more than 50% of the sum of (i) the aggregate Term Loan Exposure of all Lenders, (ii) the aggregate LC Exposure of all Lenders and (iii) the aggregate Revolving Exposure of all Lenders. For purposes of this definition, in respect of Lenders that are Restricted Sponsor Affiliates, the aggregate amount of Term Loan Exposure, LC Exposure and/or Revolving Exposure ("**Voting Power Determinants**") shall be determined by including all Voting Power Determinants held or beneficially owned by Restricted Sponsor Affiliates so long as the aggregate Voting Power Determinants held

or beneficially owned by all Restricted Sponsor Affiliates does not exceed [__]% of all Voting Power Determinants. If the aggregate Voting Power Determinants held or beneficially owned by all Restricted Sponsor Affiliates represent in excess of [__]% of the aggregate Voting Power Determinants held or beneficially owned by all Lenders (including all Restricted Sponsor Affiliates), then, solely for purposes of this definition, (x) the aggregate Voting Power Determinants held or beneficially owned by all Restricted Sponsor Affiliates shall be ratably reduced so as to equal, in the aggregate, [__]% of the aggregate Voting Power Determinants and (y) the Voting Power Determinants held or beneficially owned by all Lenders other than Restricted Sponsor Affiliates shall be ratably increased so as to equal, in the aggregate, [__]% of the aggregate Voting Power Determinants."

2.2     **Amendments to Section 2: Loans and Letters of Credit**.

(a)     Section 2.7 of the Credit Agreement is hereby amended by deleting the parenthetical in the second sentence of clause (b) in its entirety and inserting in lieu thereof the following:

"(with respect to any entry relating to such Lender's Commitments, Loans or LC Deposits and any entry relating to any Restricted Sponsor Affiliate's Commitments, Loans or LC Deposits)"

(b)     Section 2.17 of the Credit Agreement is hereby amended by deleting the reference to "Section 2.14(e) or Section 2.22" in the first sentence thereof and inserting in lieu thereof "Section 2.14(e), Section 2.22, Section 10.6(j) or Section 10.6(k)".

2.3     **Amendments to Section 9: Agents**.

(a)     Section 9.3 of the Credit Agreement is hereby amended by inserting a new clause (d) at the end thereof as follows:

"(d)     Restricted Sponsor Affiliates. Notwithstanding anything to the contrary contained in this Agreement, Administrative Agent may in its discretion and, upon the direction of the Requisite Lenders, shall (i) exclude Restricted Sponsor Affiliates from receiving any document, instrument or other communication (written, verbal or otherwise) that the Restricted Sponsor Affiliates would otherwise have been entitled to receive under the terms of this Agreement in their capacity as Lenders and (ii) preclude the Restricted Sponsor Affiliates from participating in conference calls with, and attending meetings of, the Lenders (including with respect to the exercise of rights and remedies under any Loan Document). None of Lenders, Agents or any of their respective officers, partners, directors, employees or agents shall be liable to any Restricted Sponsor Affiliate (in its capacity as a Lender or otherwise) for any such action taken under this Section 9.3(d)."

4

CONFIDENTIAL                                                                                              AHS00131710

2.4    **Amendments to Section 10: Miscellaneous**.

(a)    Section 10.5 of the Credit Agreement is hereby amended by inserting a new clause (e) at the end thereof as follows:

"(e)    Restricted Sponsor Affiliate Consents.  No amendment, modification, termination or waiver of any provision of the Credit Documents, or consent to any departure by any Credit Party therefrom, shall amend, modify, terminate or waive any provision of Section 2.17, 9.3(d), Section 10.6(h)(i), Section 10.6(j), Section 10.6(k), the definition of "Assignment Agreement", the definition of "Requisite Lenders" or the form of Exhibit E (in each case to the extent related to Restricted Sponsor Affiliates), this Section 10.5(e), the definition of "Restricted Sponsor Affiliate" or the definition of "Eligible Assignee", in each case without the written consent of Lenders holding more than 50% of the sum of (i) the aggregate Term Loan Exposure of all Lenders, (ii) the aggregate LC Exposure of all Lenders and (iii) the aggregate Revolving Exposure of all Lenders (in each case, without regard or giving effect to Lenders that are Restricted Sponsor Affiliates)."

(b)    Section 10.6(c) of the Credit Agreement is hereby amended by inserting the following at the end of the first sentence of clause (ii) thereof:

"; provided further, that assignments by or to a Restricted Sponsor Affiliate shall be further subject to Section 10.6(j)."

(c)    Section 10.6(h) of the Credit Agreement is hereby amended by deleting clause (i) thereof in its entirety and inserting the following in lieu thereof:

"(i) Each Lender shall have the right at any time to sell one or more participations to any Person (other than Holdings, any of its Subsidiaries or any of its Affiliates (including, without limitation, Restricted Sponsor Affiliates)) in all or any part of its Commitments, Loans or in any other Obligation."

(d)    Section 10.6 of the Credit Agreement is hereby amended by inserting a new clause (j) as follows:

"(j)    Restricted Sponsor Affiliates.  The Restricted Sponsor Affiliates, from time to time, intend to become Lenders and, from time to time, to sell, assign or transfer all or a portion of their rights and obligations as Lenders under this Agreement to Eligible Assignees.  Each Agent and Lender hereby acknowledges that a Restricted Sponsor Affiliate (i) may be a Lender (provided such Restricted Sponsor Affiliate otherwise satisfies the criteria of the definition of the term of "Eligible Assignee") and (ii) may sell, assign or transfer all or a portion of its rights and obligations as a Lender under this

5

CONFIDENTIAL                                                                                              AHS00131711

Agreement to Eligible Assignees. Each Lender that is a Restricted Sponsor Affiliate, upon succeeding to an interest in the Commitments, LC Deposits, and Loans:

(i) represents and warrants as of each applicable Assignment Effective Date that it is not in possession of any information with respect to Borrowers, their Affiliates or the Obligations that (x) has not been disclosed by or on behalf of Borrowers to Lenders generally or otherwise been posted to that portion of the Platform designated for "private-side" Lenders and (y) could have a Material Adverse Effect or otherwise be material to a decision by a Person to sell the Commitments, LC Deposits or Loans or a participation interest therein; and

(ii) agrees that (w) notwithstanding anything in this Agreement to the contrary other than as provided in Section 10.6(k), it shall not sell, assign, contribute, transfer or otherwise convey all or a portion of its rights and obligations as a Lender to Borrowers or their Subsidiaries, (x) notwithstanding anything in this Agreement to the contrary (including, without limitation, Section 5.7), it shall not attend or otherwise participate in any conference calls or meetings between Agents and/or Lenders, on the one hand, and Borrowers or any Affiliate of Borrowers, on the other hand, unless consented to by Administrative Agent or Requisite Lenders, (y) it shall not disclose any information it receives in its capacity as a Lender with Borrowers or with any Affiliate of Borrowers, and (z) Lenders, Agents and any of their respective officers, partners, directors, employees or agents shall not be liable to such Restricted Sponsor Affiliate (in its capacity as a Lender or otherwise) for any action taken or omitted by any Lender or Agent under or in connection with any of the Credit Documents.

To the extent permitted by applicable law, no Restricted Sponsor Affiliate shall assert, and each Restricted Sponsor Affiliate hereby waives, any claim or cause of action against each Lender, each Agent and their respective Affiliates, directors, employees, attorneys, agents or sub-agents (whether or not the claim therefor is based on contract, tort or duty imposed by any applicable legal requirement) arising out of, in connection with, as a result of, or in any way related to, this Agreement or any Credit Document or any agreement or instrument contemplated hereby or thereby or referred to herein or therein, the transactions contemplated hereby or thereby, any Loan or the use of the proceeds thereof or any act or omission or event occurring in connection therewith, and each Restricted Sponsor Affiliate hereby waives, releases and agrees not to sue upon any such claim or any such damages, whether or not accrued and whether or not known or suspected to exist in its favor."

(e) Section 10.6 of the Credit Agreement is hereby amended by inserting a new clause (k) as follows:

6

CONFIDENTIAL    AHS00131712

"(k) <u>Contribution of Commitments, LC Deposits and Loans to Borrowers; Cancellation of Debt</u>.

(i) The Restricted Sponsor Affiliates, from time to time, intend to make capital contributions of their Commitments, LC Deposits and Loans to Borrowers.

(ii) Notwithstanding anything to the contrary herein, a Restricted Sponsor Affiliate may at any time make a capital contribution of its Commitments, LC Deposits and Loans to Borrowers upon no less than five Business Days' prior written notice to Administrative Agent and Lenders. Such Restricted Sponsor Affiliate and Borrowers shall promptly provide all information and data reasonably requested by Administrative Agent in connection with such capital contribution.

(iii) Immediately upon a Borrower's acquisition of Commitments, LC Deposits or Loans from a Restricted Sponsor Affiliate, (x) such Commitments, LC Deposits and Loans and all rights and obligations as a Lender related thereto shall for all purposes (including under this Agreement, the other Credit Documents and otherwise) be deemed to be irrevocably prepaid, terminated, extinguished, cancelled and of no further force and effect and such Borrower shall neither obtain nor have any rights as a Lender hereunder or under the other Credit Documents by virtue of such capital contribution and (y) such Borrower shall deliver to Administrative Agent a written acknowledgement and agreement executed by an Authorized Officer and in form and substance reasonably acceptable to Administrative Agent acknowledging the irrevocable prepayment, termination, extinguishment and cancellation of such Commitments, LC Deposits or Loans and agreeing that such Borrower has no rights as a Lender under the Credit Documents or otherwise.

(iv) As soon as practicable after a Borrower's acquisition of Commitments, LC Deposits or Loans from a Restricted Sponsor Affiliate in accordance with this Section 10.6(k), such Borrower shall take all actions necessary to cause such Commitments, LC Deposits or Loans to be extinguished or otherwise cancelled in its books and records in accordance with GAAP.

(v) To the extent permitted by applicable law, no Borrower shall assert, and each Borrower hereby waives, any claim or cause of action against each Lender, each Agent and their respective Affiliates, directors, employees, attorneys, agents or sub-agents (whether or not the claim therefor is based on contract, tort or duty imposed by any applicable legal requirement) arising out of, in connection with, as a result of, or in any way related to, any capital contribution of Commitments, LC Deposits and Loans made by a Restricted Sponsor Affiliate to such Borrower or any act or omission or event occurring in connection therewith, and each Restricted

7

Sponsor Affiliate hereby waives, releases and agrees not to sue upon any such claim or any such damages, whether or not accrued and whether or not known or suspected to exist in its favor."

2.5    **Amendments to Exhibits**.

(a)    Exhibit E to the Credit Agreement (Assignment and Assumption Agreement) is hereby amended by deleting the heading of Section 1 in its entirety and inserting in lieu thereof the following:

"1.    Representations and Warranties; Covenants."

(b)    Exhibit E to the Credit Agreement (Assignment and Assumption Agreement) is hereby further amended by deleting Section 1.1 of the Standard Terms and Conditions for Assignment and Assumption Agreement in its entirety and inserting in lieu thereof the following:

"1.1    Assignor.  The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim[,][ and] (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby [and it is not in possession of any information with respect to Borrowers, their Affiliates or the Obligations that (A) has not been disclosed by or on behalf of Borrowers to the Lenders generally or otherwise been posted to that portion of the Platform designated for "private-side" Lenders and (B) could have a Material Adverse Effect or otherwise be material to a decision by a Person to purchase the Loans or a participation interest therein][1]; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with any Credit Document, (ii) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement or any other instrument or document delivered pursuant thereto, other than this Assignment (herein collectively the "**Credit Documents**"), or any collateral thereunder, (iii) the financial condition of the Borrower, any of its Subsidiaries or Affiliates or any other Person obligated in respect of any Credit Document or (iv) the performance or observance by the Borrower, any of its Subsidiaries or Affiliates or any other Person of any of their respective obligations under any Credit Document."

(c)    Exhibit E to the Credit Agreement (Assignment and Assumption Agreement) is hereby further amended by deleting Section 1.2 of the Standard Terms and Conditions for Assignment and Assumption Agreement in its entirety and inserting in lieu thereof the following:

---

[1] To be added only if Assignor is a Restricted Sponsor Affiliate.

8

CONFIDENTIAL                                                                                      AHS00131714

"1.2     Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Lender under the Credit Agreement, (ii) it meets all requirements of an Eligible Assignee under the Credit Agreement, (iii) from and after the Effective Date, it shall be bound by the provisions of the Credit Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Lender thereunder, (iv) it has received a copy of the Credit Agreement and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision[,][ and] (v) if it is a Non-US Lender, attached to the Assignment is any documentation required to be delivered by it pursuant to the terms of the Credit Agreement, duly completed and executed by the Assignee [and (vi) it is not in possession of any information with respect to Borrowers, their Affiliates or the Obligations that (A) has not been disclosed by or on behalf of Borrowers to the Lenders generally or otherwise been posted to that portion of the Platform designated for "private-side" Lenders and (B) could have a Material Adverse Effect or otherwise be material to a decision by a Person to sell the Loans or a participation interest therein]$^2$; and (b) agrees that (i) it will, independently and without reliance on the Administrative Agent, the Assignor or any other Lender, and based on such documents and information as it shall deem appropriate at that time, continue to make its own credit decisions in taking or not taking action under the Credit Documents, [and] (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Credit Documents are required to be performed by it as a Lender[.][ and (iii) (w) notwithstanding anything in the Credit Agreement to the contrary other than Section 10.6(k) of the Credit Agreement, it shall not sell, assign, contribute, transfer or otherwise convey all or a portion of its rights and obligations as a Lender to Borrowers or their Subsidiaries, (x) notwithstanding anything in the Credit Agreement to the contrary (including, without limitation, Section 5.7 of the Credit Agreement), it shall not attend or otherwise participate in any conference calls or meetings between Agents and/or Lenders, on the one hand, and Borrowers or any Affiliate of Borrowers, on the other hand, unless consented to by Administrative Agent or Requisite Lenders, (y) it shall not disclose any information it receives in its capacity as a Lender with Borrowers or with any Affiliate of Borrowers, and (z) Lenders, Agents and any of their respective officers, partners, directors, employees or agents shall not be liable to such Restricted Sponsor Affiliate (in its capacity as a Lender or otherwise) for any action taken or omitted by any Lender or Agent under or in connection with any of the Credit Documents.]"

**SECTION 3. CONDITIONS PRECEDENT TO EFFECTIVENESS**

---

$^2$ To be added only if Assignee is a Restricted Sponsor Affiliate.

9

CONFIDENTIAL                                                                                                              AHS00131715

The effectiveness of the amendment set forth in this Amendment is subject to the satisfaction, or waiver, of the following conditions on or before the date hereof (the "**Amendment Effective Date**"):

(a) Borrowers, the other Credit Parties, Requisite Lenders and Administrative Agent shall have indicated their consent by the execution and delivery of the signature pages hereof to the Administrative Agent;

(b) Administrative Agent shall have received a certificate from an officer of Holdings stating that as of the Amendment Effective Date (i) the representations and warranties contained in Section 4 herein and in the other Credit Documents are true, correct and complete in all respects on and as of the Amendment Effective Date to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case such representations and warranties are true, correct and complete in all respects on and as of such earlier date and (ii) no event has occurred and is continuing or will result from the consummation of the transactions contemplated by this Amendment that would constitute an Event of Default or a Default; and

(c) Borrowers shall have paid Agents and Arranger for all reasonable out-of-pocket expenses incurred by them on or prior to the date hereof in connection with the negotiation and preparation of this Amendment, including the reasonable fees, charges and disbursements of counsel for the Agents and Arranger.

**SECTION 4. REPRESENTATIONS AND WARRANTIES**

4.1 <u>Corporate Power and Authority</u>. Each Credit Party has all requisite corporate, limited liability company or partnership (as applicable) power and authority to enter into this Amendment and to carry out the transactions contemplated by, and perform its obligations under, the Credit Agreement, as amended by this Amendment (the "**Amended Credit Agreement**").

4.2 <u>Authorization of Amendments</u>. The execution and delivery of this Amendment have been duly authorized by all necessary corporate, limited liability company or partnership (as applicable) action on the part of each Credit Party.

4.3 <u>No Conflict</u>. The execution and delivery by each Credit Party of this Amendment and the performance by each Credit Party of the Amended Credit Agreement do not and will not (i) violate any provision of any law or any governmental rule or regulation applicable to any Credit Party, the certificate or articles of incorporation or bylaws (or other organizational documents) of any Credit Party or any order, judgment or decree of any court or other agency of government binding on any Credit Party, (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material indenture, mortgage, deed to secure debt, deed of trust, lease, agreement or other instrument to which any Credit Party is a party or by which any Credit Party or any of its property is bound (any of the foregoing, a "**Contractual Obligation**"), (iii) result in or require the

10

CONFIDENTIAL                                                                                              AHS00131716

creation or imposition of any Lien upon any of the properties or assets of a Credit Party other than those in favor of the Collateral Agent, on behalf of itself and the Secured Parties, pursuant to the Credit Documents or those in favor of the Second Lien Collateral Agent on a second priority basis pursuant to the Second Lien Credit Documents, or (iv) require any approval of stockholders or any approval or consent of any Person under any Contractual Obligation of any Credit Party other than those that have been made or obtained.

    4.4  Governmental Consents. No action, consent or approval of, registration or filing with or any other action by any Governmental Authority is required in connection with the execution and delivery by each Credit Party of this Amendment or the performance by the Credit Parties of the Amended Credit Agreement.

    4.5  Binding Obligation. This Amendment has been duly executed and delivered by each Credit Party and this Amendment and the Amended Credit Agreement constitute the legal, valid and binding obligation of each Credit Party enforceable against each Credit Party in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, moratorium, reorganization or other similar laws affecting creditors' rights generally and except as enforceability may be limited by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

    4.6  Incorporation of Representations and Warranties From Credit Documents. The representations and warranties contained in the Credit Documents are and will be true, correct and complete in all material respects on and as of the Amendment Effective Date to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case they were true, correct and complete in all material respects on and as of such earlier date.

    4.7  Absence of Default. After giving effect to the amendment set forth herein, no event has occurred and is continuing or will result from the consummation of the transactions contemplated by this Amendment that would constitute an Event of Default or a Default.

**SECTION 5. ACKNOWLEDGEMENT AND CONSENT**

  Each Guarantor hereby consents to the terms of this Amendment and further hereby confirms and agrees that, notwithstanding the effectiveness of this Amendment, the obligations of such Guarantor under each of the Credit Documents to which such Guarantor is a party shall not be impaired and each of the Credit Documents to which such Guarantor is a party are, and shall continue to be, in full force and effect and are hereby confirmed and ratified in all respects.

  Each Guarantor hereby acknowledges and agrees that (i) notwithstanding the conditions to effectiveness set forth in this Amendment, such Guarantor is not

11

CONFIDENTIAL                                              AHS00131717

required by the terms of the Credit Agreement or any other Credit Document to consent to the amendment to the Credit Agreement effected pursuant to this Amendment and (ii) nothing in the Credit Agreement, this Amendment or any other Credit Document shall be deemed to require the consent of such Guarantor to any future amendments to the Credit Agreement.

**SECTION 6.  MISCELLANEOUS**

    6.1    <u>Binding Effect</u>.  This Amendment shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties hereto and the successors and assigns of Lenders.

    6.2    <u>Severability</u>.  In case any provision in or obligation hereunder shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.

    6.3    <u>Effect on Credit Agreement</u>.  Except as expressly set forth herein, Administrative Agent and Lenders agrees to no amendment with respect to the Credit Agreement or any other Credit Document, and the Credit Agreement and the other Credit Documents remain in full force in accordance with their respective terms. Administrative Agent's and Requisite Lender's agreeing to the amendment contained herein does not and shall not create (nor shall any Credit Party rely upon the existence of or claim or assert that there exists) any obligation of Administrative Agent or any Lender to consider or to agree to any further amendment to any Credit Document.  In the event that Administrative Agent or Lenders subsequently agree to consider any further amendment to any Credit Document, neither the amendment contained herein nor any other conduct of Administrative Agent or Lenders shall be of any force or effect on Administrative Agent's or Lenders' consideration or decision with respect to any such amendment, and the Administrative Agent and Lenders shall have no further obligation whatsoever to consider or to agree to any such amendment. Administrative Agent, on behalf of the Lenders, expressly reserves the right to require strict compliance with the terms of the Credit Agreement and the other Credit Documents in all respects.  The amendment agreed to herein shall not constitute a course of dealing at variance with the Credit Agreement so as to require further notice by Administrative Agent or Lenders to require strict compliance with the terms of the Credit Agreement and the other Credit Documents in the future.  The parties hereto acknowledge and agree that this Amendment shall be deemed to be a Credit Document.  On and after the Amendment Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof", "herein" or words of like import referring to the Credit Agreement, and each reference in the other Credit Documents to the "Credit Agreement", "thereunder", "thereof", "therein" or words of like import referring to the Credit Agreement shall mean and be a reference to the Amended Credit Agreement.

CONFIDENTIAL    AHS00131718

6.4     Fees and Expenses.  The Credit Parties acknowledge that all costs, fees and expenses as described in Section 10.2 and Section 10.3 of the Credit Agreement incurred by Administrative Agent, Collateral Agent and Arranger and their respective counsel with respect to this Amendment and the documents and transactions contemplated hereby shall be for the account of Borrowers.

6.5     Headings.  Section headings herein are included herein for convenience of reference only and shall not constitute a part hereof for any other purpose or be given any substantive effect.

6.6     APPLICABLE LAW.  **THIS AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF (OTHER THAN SECTION 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW).**

6.7     Counterparts.  This Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.  As set forth herein, this Amendment shall become effective upon the execution of a counterpart hereof by each of the parties hereto and receipt by Administrative Agent of written or telephonic notification of such execution and authorization of delivery thereof.

*[The remainder of this page is intentionally left blank.]*

CONFIDENTIAL                                                                                                                AHS00131719

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.

**BORROWERS:**  **ALLIED HOLDINGS, INC.**

By: _____
Thomas H. King
Executive Vice President
and Chief Financial Officer

**ALLIED SYSTEMS, LTD. (L.P.)**

By:   Allied Automotive Group, Inc.,
      its Managing General Partner

By: _____
Thomas H. King
Executive Vice President
and Assistant Treasurer

**ACKNOWLEDGED AND AGREED:**

**ACE OPERATIONS, LLC**
**AXIS NETHERLANDS, LLC**

By:   AXIS Group, Inc.,
      its Sole Member and Manager

By: _____
Thomas H. King
Executive Vice President
and Assistant Treasurer

*Amendment No. 3 Signature Page*

CONFIDENTIAL                                                                                            AHS00131720

**AH INDUSTRIES INC.**
**ALLIED AUTOMOTIVE GROUP, INC.**
**ALLIED FREIGHT BROKER LLC**
**ALLIED SYSTEMS (CANADA) COMPANY**
**AXIS CANADA COMPANY**
**AXIS GROUP, INC.**
**COMMERCIAL CARRIERS, INC.**
**CORDIN TRANSPORT LLC**
**C T SERVICES, INC.**
**F.J. BOUTELL DRIVEAWAY LLC**
**GACS INCORPORATED**
**QAT, INC.**
**RMX LLC**
**TERMINAL SERVICES LLC**
**TRANSPORT SUPPORT LLC**

By: _____
Thomas H. King
Executive Vice President and
Assistant Treasurer

**AXIS ARETA, LLC**
**LOGISTIC SYSTEMS, LLC**
**LOGISTIC TECHNOLOGY, LLC**

By:   AX International Limited,
      its Sole Member and Manager

By: _____
Thomas H. King
Executive Vice President
and Assistant Treasurer

*Amendment No. 3 Signature Page*

CONFIDENTIAL                                                                                              AHS00131721

**ADMINISTRATIVE AGENT:**     **THE CIT GROUP/BUSINESS CREDIT, INC.,**

By: _____
    Name:
    Title:

*Amendment No. 3 Signature Page*

CONFIDENTIAL      AHS00131722

THIRD AMENDMENT TO THE
CREDIT AGREEMENT

To approve the Third Amendment:

Name of Institution:

_____

By: _____
    Name:
    Title:

*Amendment No. 3 Signature Page*

CONFIDENTIAL                                                                                          AHS00131723