# Exhibit 116

**DRAFT**

## MINUTES OF MEETING OF THE
## SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
## ALLIED SYSTEMS HOLDINGS, INC.
## APRIL 8, 2008

A meeting of the Special Committee of the Board of Directors of Allied Systems Holdings, Inc. ("Allied" or the "Company") was held on April 8, 2008. Present were Mark Gendregske and Brian Cullen. Also in attendance by invitation of the Special Committee were John Blount and Tom King of the Company and Jim Smith, Steve Lewis and Bob Grout of Troutman Sanders. Mr. Blount acted as Secretary of the meeting.

The meeting was called to order, and Mr. Blount advised that the purpose of the meeting was to further discuss selection of the valuation firm and to receive an update on negotiations with Yucaipa with respect to the term sheet. Mr. Grout advised that American Arbitration was prepared to issue a fairness opinion that would opine on the fairness of the transaction to all shareholders, including minority shareholders. Houlihan Lokey remained concerned with the concept of providing a fairness opinion covering other shareholders. Mr. Cullen advised that in his discussions with Houlihan Lokey, he was left with the impression that Houlihan Lokey would be addressing the fairness opinion to the Company, but that the content of the opinion would opine on the fairness as to all shareholders. Troutman Sanders advised that such an opinion would be acceptable and the Committee unanimously agreed.

Mr. King then addressed the Committee, stating that from his perspective, Houlihan Lokey had two open issues: (1) conversion of the debt at par when the debt was purchased below market. He felt that Houlihan Lokey was prepared to advise that this aspect of the transaction was fair provided the Company can show financial need; (2) an opinion covering the fairness to minority shareholders is "atypical."

After a thorough discussion, the Committee unanimously agreed to go forward with Houlihan Lokey so long as that firm could first confirm that the opinion would cover the fairness of the transaction to minority shareholders. Mr. King also reported that Houlihan Lokey felt that the negotiations with Yucaipa would be an important part of the fairness appraisal.

Mr. King went on to advise the Special Committee that absent this transaction, the next best option for the Company would be to attempt to meet its covenants, which would be very tight in June of this year. Even if the Company could meet all covenants, it would still need to seek an amendment/consent/waiver from its lenders as he would expect KPMG, the Company's external auditors, to issue a qualified going concern opinion by the end of April, 2008. He advised the Special Committee that absent this transaction, making the Company's financial covenants in June would be "pathetically tight." The Committee noted that the cost and likelihood of obtaining any such waiver would be critical to the Committee in determining its

PROFESSIONALS ONLY


EXHIBIT
314

AHS00137544

negotiating leverage with Yucaipa and whether to go forward with this deal. The Committee further noted that the only leverage the Company would have in negotiating this transaction with Yucaipa would be the Company's willingness to forgo the transaction. In order to choose this option, it must be clear that foregoing the transaction would be better for the Company than the terms proposed by Yucaipa. Troutman Sanders agreed and advised the Committee that it should seek to discern the cost of obtaining a waiver/consent from the lenders on the going concern issue. Mr. King advised that he saw the going concern issue to be a *fait accompli* absent a de-levering transaction.

The Special Committee then discussed whether to obtain an investment bank to assist the Special Committee in negotiating the transaction. Troutman Sanders advised that it did not see a conflict for Houlihan Lokey to help the Special Committee to negotiate the transaction as an investment banker and then move on to issuing a fairness opinion with respect to that transaction. Troutman Sanders suggested that the Special Committee ask Houlihan Lokey to serve in both roles. The Special Committee unanimously agreed, and advised Troutman Sanders to inquire into a transaction with Houlihan Lokey in which the investment banking services would be included in the fairness opinion price but paid separately if the Company decided not to go through with the fairness opinion.

At this point, Mr. Gendregske noted that a going concern opinion could be a serious problem with the Company's customers, and Mr. King noted that this was correct and that the going concern opinion could potentially be a problem with a large numbers of areas within the Company, including a big problem with the Company's insurance program.

Troutman Sanders noted that in the latest draft of the term sheet, Yucaipa remained unwilling to commit to swap debt for stock, and noted that any transaction in which Yucaipa obtains Allied debt which is not exchanged for stock does not help the Company.

The Special Committee instructed Troutman Sanders to contact counsel for Houlihan Lokey and confirm that the fairness opinion Houlihan Lokey would issue would cover fairness of the transaction to minority shareholders. It further instructed Mr. King to inquire with Goldman Sachs as to approximately what it would cost the Company to obtain an extension of time to file its first quarter financial results.

There being no further business to be discussed, the meeting was adjourned.

Respectfully submitted,

John F. Blount, Secretary