# Exhibit 117

**DRAFT**

## MINUTES OF MEETING OF THE
## SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
## ALLIED SYSTEMS HOLDINGS, INC.
## APRIL 13, 2008

A meeting of the Special Committee of the Board of Directors of Allied Systems Holdings, Inc. ("Allied" or the "Company") was held on April 13, 2008. Present were Mark Gendregske and Brian Cullen. Also in attendance by invitation of the Special Committee were Tom King and John Blount of the Company and Steve Lewis and Bob Grout of the law firm of Troutman Sanders. Mr. Blount acted as Secretary of the meeting.

The meeting was called to order, and Mr. Blount advised the Committee that the purpose of the meeting was to discuss the latest proposed response to Yucaipa's term sheet and to provide an update on American Appraisal.

Mr. Lewis then took the Committee members through the latest draft of the term sheet, explaining the changes that had been made by the Company, and thoroughly discussed the issues associated with the term sheet. Mr. Cullen expressed concern over the breadth of the material adverse change clause inserted in the draft by Troutman Sanders. Troutman advised that the language it had proposed was significantly better than that initially proposed by Yucaipa, and that it was their impression that Yucaipa must have a broad material adverse change clause in order to conduct the transaction. Troutman also advised that it had learned that Yucaipa had agreed with the Company's lenders that Yucaipa would be committed to converting at least 50% of any debt it acquired. Mr. Cullen remained concerned and wanted Troutman Sanders to make an effort to further limit the material adverse change clause. Troutman explained that the material adverse change clause in the latest Company draft term sheet represents significant headway over the original Yucaipa language and stated that given the timing of the transaction, in which Yucaipa would need to purchase and convert the debt very rapidly in order to avoid a qualified going concern opinion for the Company, it is unlikely that Yucaipa would back out of the transaction no matter how broad the material adverse change clause was. A thorough discussion of the matter was held, and the Committee unanimously decided to attempt to further tighten Yucaipa's material adverse change clause by removing the provision that stated that the material adverse change was to be determined in the reasonable discretion of Yucaipa.

The Committee then turned its attention to a lengthy discussion regarding whether to permit other holders of at least 5% of the Company's stock to participate in a similar transaction. Under the concept, 5% or greater



EXHIBIT
315

PROFESSIONALS ONLY

AHS00137547

shareholders would be given the opportunity to purchase preferred shares identical to the shares acquired by Yucaipa in the debt/equity swap at the same conversion ratio applicable to the Yucaipa transaction. Stated differently, while the Yucaipa transaction would allow Yucaipa to swap debt for stock at the face value of the debt, the other 5% shareholders would be given the opportunity to purchase the same stock for cash. Troutman Sanders advised that it was better not to include a discussion of the 5% shareholders in the term sheet, but rather simply give them the option to buy stock after the Yucaipa transaction is completed. Troutman Sanders went on to suggest that the Special Committee include a note to Yucaipa in the next draft of the term sheet requesting that Yucaipa provide a further description of their position on how holders of 5% or more of the Company's stock should be treated. After a discussion, the Committee unanimously agreed.

Mr. Cullen asked Troutman if they felt that the Committee should be pushing back on Yucaipa regarding the conversion ratio and whether the conversion from debt to equity should be done at a discounted price rather than at the full face value of the debt. Troutman advised that the Committee should not.

The Committee then discussed the term of the transaction. Troutman Sanders advised that the term was acceptable, and Mr. Cullen inquired as to whether the fairness opinion would still cover the transaction toward the latter part of the term. Troutman Sanders advised that it would as the term would be part of the transaction upon which American Appraisal would be opining.

Troutman then advised the Committee that the transaction would be better negotiated by removing reference in the term sheet to the enterprise value of the Company and to any premium on preferred stock. Troutman stated that this advice was based in part upon discussions with Jim Dox at American Appraisal. Rather than including an enterprise value and premium for the preferred shares, the term sheet could simply include a discussion of the rate at which forgiven debt would be converted to preferred shares, and American Appraisal would then be free to impute its own assumptions with respect to enterprise value and premium for the preferred shares. Stated differently, American Appraisal would then simply decide overall whether the deal contemplated a fair price for the new securities being issued.

Next, the Committee discussed Yucaipa's request that the Company pay Yucaipa's costs in the transaction. Troutman Sanders acknowledged that it is common for a company in capital infusion transactions to pay the costs of the sponsor, but nonetheless suggested that the Special Committee push back and propose that each party pay its own legal costs. The Committee unanimously

PROFESSIONALS ONLY

AHS00137548

agreed.

The Special Committee then unanimously instructed Troutman Sanders to submit the latest draft of the term sheet to Latham & Watkins as amended per the discussions in this meeting.

Finally, the Committee discussed the draft engagement letter received from American Appraisal. The Committee instructed Troutman Sanders to attempt to place a cap on the out of pocket expenses of American Appraisal that would be reimbursed by the Company. In addition, the Committee suggested that the $75,000 non-refundable retainer proposed by American Appraisal was too high, and instructed Troutman to counter at $15,000.

There being no further business to be discussed, the meeting was adjourned.

Respectfully submitted,

John F. Blount, Secretary

PROFESSIONALS ONLY

AHS00137549