# Exhibit 118

**DRAFT**

# MINUTES OF MEETING OF THE
# SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
# ALLIED SYSTEMS HOLDINGS, INC.
# APRIL 14, 2008

A meeting of the Special Committee of the Board of Directors of Allied Systems Holdings, Inc. ("Allied" or the "Company") was held on April 14, 2008. Present were Mark Gendregske and Brian Cullen. Also in attendance by invitation of the Special Committee were Tom King and John Blount of the Company and Bob Grout, Steve Lewis and Hazen Dempster of the law firm of Troutman Sanders. Mr. Blount acted as Secretary of the meeting.

The meeting was called to order, and Mr. Blount advised the Committee that the purpose of the meeting was to update the Committee on the discussions between Latham & Watkins and Troutman Sanders regarding Yucaipa's response to the Special Committee's latest term sheet.

Troutman Sanders provided the Special Committee with an update of that conversation. With respect to the request that Yucaipa be committed to purchase and convert debt, Yucaipa advised that it was willing to commit to converting up to $25 million (provided the Company could show a need for that amount), subject to a material adverse change clause. Yucaipa would be unwilling, however, to be obligated to purchase the debt. Troutman Sanders advised that this was probably not a big issue because the purchase of the debt needed to happen essentially immediately in order for this transaction to be successful, and Yucaipa was already in the process of attempting to acquire the debt. Troutman Sanders advised that there was a good chance that the debt would already be purchased by Yucaipa by the time the deal documents are signed, making any obligation on Yucaipa's part to purchase the debt superfluous. The Committee unanimously agreed.

Troutman Sanders advised that Yucaipa was willing to accept several of the proposed changes to the material adverse change clause, but was unwilling to remove the language that provided Yucaipa complete discretion over whether a material adverse change has occurred. Troutman advised that this language was a deal stopper for Yucaipa.

The latest Special Committee version of the term sheet required that Yucaipa swap $25 million of debt for equity by April 23, 2008 or the agreement would terminate. Yucaipa responded by stating that it could not agree to this because it might be unable to acquire the debt by that time and that it may take up to 20 days to close on the purchase of the debt. Troutman advised that this


EXHIBIT 316

PROFESSIONALS ONLY

AHS00137550

20 day closing period was indeed an industry guideline, but it could be done faster provided both the buyer and seller were willing to close earlier.

The Special Committee had sought completion of the deal by April 23 in order to have the Company's debt reduced by the time its external auditors at KPMG rendered their opinion on going concern. In light of the tight time frames and the possibility that Yucaipa would be unable to close on acquisition of the debt prior to April 23, Troutman advised that the best bet for the Special Committee was to execute the transaction as quickly as possible, and to get a binding obligation on behalf of Yucaipa to execute the transaction, (albeit subject to a material adverse change clause) and submit that obligation to KPMG for the auditors to consider in rendering their opinion. Mr. King stated that he thought that Derex Walker had previously stated that he would be willing to commit to a swap once the debt was acquired.

At this point, the Committee entertained a lengthy discussion of the outstanding issues on the term sheet. During that discussion, Troutman Sanders stated that Latham & Watkins had accused the Committee of negotiating this transaction too strongly. The Committee was concerned that the presence of the material adverse change clause, as drafted, would make Yucaipa's obligation to swap debt for equity insufficiently concrete to allow KPMG to rely upon it in rendering its opinion regarding going concern. Troutman Sanders advised that the Committee needed either to get sufficient commitment from Yucaipa to satisfy KPMG that the transaction would indeed go through, or ask Yucaipa to pay the necessary fee to obtain a waiver to get the Company more time to report its first quarter financials.

The Committee then returned to Troutman Sanders' update on Yucaipa's reaction to the Company's latest draft term sheet, advising that Yucaipa now thought it would be possible but it may need to receive common rather than preferred stock in the transaction, and would be getting back to the Special Committee on that topic. With respect to other 5% shareholders, Troutman Sanders advised that Yucaipa did not care whether the opportunity of 5% shareholders to purchase preferred stock for cash was included in the term sheet. Troutman Sanders then recommended that it not be included, and stated that Yucaipa was okay with this approach and that Yucaipa had stated clearly that it was not willing to let others participate in the debt purchase aspect of the transaction. Troutman Sanders also advised that Yucaipa continued to insist that Allied pay Yucaipa's fees and would endeavor to provide the Special Committee an estimate of what those fees would be. Troutman again reported that in a normal deal, the Company would pay these fees, typically subject to a cap.

Troutman then advised the Committee that it should think some about responding and then instruct Troutman on how to respond. Their advice was that the response should be oral in order to save time in concluding the transaction. The outstanding big issues being: (1) an understanding of whether the deal can be done in time in order to avoid a going concern problem; and (2) the fees of Latham & Watkins.

The Committee then thoroughly discussed the status of the negotiations. At the conclusion of that discussion, the Committee concluded that it should present Yucaipa with three options: (1) to do what needs to be done in order to get the transaction concluded before KPMG needs to complete its going concern opinion; (2) remove the material adverse change clause if necessary to satisfy KPMG that the transaction would indeed be consummated; or (3) have the Company obtain an extension on the deadline to report its first quarter financials. If Yucaipa chooses not to do any of these three options, the Company will be left to decide whether to pay for an extension of the deadline to report its first quarter financials, or face a qualified going concern opinion. Upon advice from Troutman Sanders, the Committee unanimously agreed to approach Yucaipa with the three listed choices, with Mr. Cullen and Mr. Gendregske communicating the choices to Derex Walker and Mr. Grout and Mr. Lewis communicating the same choices to Mr. O'Shea at Latham & Watkins.

There being no further business to be discussed, the meeting was adjourned.

Respectfully submitted,

John F. Blount, Secretary

PROFESSIONALS ONLY

AHS00137552