# Exhibit 120

**DRAFT**

## MINUTES OF MEETING OF THE
## SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF
## ALLIED SYSTEMS HOLDINGS, INC.
## APRIL 15, 2008

A meeting of the Special Committee of the Board of Directors of Allied Systems Holdings, Inc. ("Allied" or the "Company") was held on April 15, 2008. Present were Mark Gendregske and Brian Cullen. Also in attendance by invitation of the Special Committee were Tom King and John Blount of the Company and Bob Grout and Steve Lewis of the law firm of Troutman Sanders. Mr. Blount acted as Secretary of the meeting.

The meeting was called to order, and Mr. Blount advised the Committee that the purpose of the meeting was to discuss the latest Yucaipa draft of the term sheet and to update the Committee on a call earlier that day between Yucaipa and the Company.

Troutman Sanders then took the Committee through the latest Yucaipa draft of the term sheet, advising that Yucaipa continued to insist on their language in a material adverse change clause, but further advising that Yucaipa had stated plainly that it would try to complete the transaction by April 23 and that if it could not complete the transaction in time, then it would commit to completing the transaction sufficiently to satisfy KPMG. Troutman Sanders advised that while Yucaipa was stating that it would take this approach, it would not commit to it in the documentation. Therefore, there remained some risk that Yucaipa would not follow through on its commitment. In light of the Company's financial need for the transaction and Yucaipa's clear desire to execute on the transaction, however, Troutman recommended going forward. Mr. King and Mr. Blount concurred with Troutman's advice, and the Committee had a thorough discussion of the issues. At the conclusion of the discussion, the Committee unanimously agreed to move forward under this approach.

Troutman Sanders then advised that Yucaipa had informed them that it may need to complete the transaction using common rather than preferred stock in the event that the lenders would not approve the deal. Troutman went on to discuss how such a transaction would work. Troutman advised that the Committee would know whether common or preferred shares were to be used by the time a binding agreement would be executed, and further advised that the Committee had heretofore been willing to undertake the transaction in exchange for preferred shares, and the same transaction using common shares would be a better financial deal for the Company. Therefore, Troutman Sanders recommended that the Committee accept a deal under either preferred or common shares, and the Committee unanimously agreed.

On the issue of Latham & Watkins' fee, Troutman advised that Yucaipa continued to demand those fees. Troutman further advised that this was typical, although it was somewhat unusual that they would not agree to a cap. Given the fact that their fees were incurred in a relatively short period, as well as the fact

PROFESSIONALS ONLY


EXHIBIT 317

AHS00137553

that any cap provided at this point would likely be meaningless, Troutman Sanders advised that the Committee should accept Yucaipa's language. After a discussion, the Committee unanimously agreed.

The Committee then discussed the appropriate price per share of stock in the transaction. Both sides were in agreement on calculating the price using an enterprise value of $300 million divided by the number of shares outstanding. The denominator in this equation remained under dispute. The Yucaipa proposal of $7.19 per share assumed a denominator of 10 million shares outstanding, which was the maximum amount authorized under the bankruptcy. Mr. King advised the Committee that he felt fewer than 10 million shares would actually be needed to resolve all outstanding bankruptcy related claims. The remaining issues, then were (1) What is the correct denominator as of today? (2) Will a true-up be necessary in the future? (3) If a true-up of the shares issued in the bankruptcy becomes necessary, should Yucaipa shares be included in that true-up, or should they simply be protected through the anti-dilution provisions in the agreement? Mr. King advised that he did not see how the parties could agree to an alternate number of outstanding shares today as some of the bankruptcy claims upon which those shares would be issued remained in litigation. Therefore, a true-up would probably be the more reasonable (albeit more complicated) approach. Troutman Sanders recommended that the Company propose a true-up approach with the number of currently outstanding shares of the current denominator in the equation, and the Committee unanimously agreed.

The Special Committee then turned its attention to American Appraisal's engagement letter. Troutman advised that there were two open issues: the amount of the non-refundable fee and the size of any extra fee in the event the fairness opinion were shared with any third party. Troutman Sanders advised the Committee that American Appraisal continued to demand 50% of the fee ($75,000) as a non-refundable deposit, arguing that much of the work was already done and having a large portion of the fee contingent upon delivery of the fairness opinion might call into question the impartiality of the opinion. American Appraisal also was requiring an additional $50,000 should the fairness opinion be shared with any third party. Troutman Sanders advised that indeed most of the American Appraisal work was done or would be completed soon, and also noted that the transaction would be very likely to go through. In addition, the tight time frame for the transaction allowed no time to obtain another provider.

Consequently, Troutman recommended that the Committee accept the 50% non-refundable fee but attempt to negotiate down the size of the additional fee for sharing the fairness opinion. Mr. Cullen noted that Houlihan, Lokey also confirmed that they would have required a large non-refundable deposit had they been retained for this transaction. Mr. Cullen agreed that the $75,000 non-refundable fee was acceptable but that the Committee should endeavor to lower the additional fee for sharing the fairness opinion. After a thorough discussion, the Committee authorized Troutman Sanders to negotiate the American Appraisal engagement letter by accepting the $75,000 non-refundable

PROFESSIONALS ONLY

AHS00137554

fee and attempting to lower the other fees as much as possible.

There being no further business to be discussed, the meeting was adjourned.

Respectfully submitted,

John F. Blount, Secretary

CONFIDENTIAL

AHS00137555