# Exhibit 122

# FORBEARANCE SUMMARY

| Borrower: | Allied Holdings | | | | | | Analyst: | R. Ehrlich |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Amendment Fee: | 9 basis points | | | | | | Date: | 9/22/08 |
| Required Consent: | 50% | | | | | | | |
| Due Date: | 9/23/08 | | | | | | | |
| | Current | Proposed | BDCM STATUS:  Public ☐ | | Private ☒ | | | |
| Corporate | B+/B2 | | | | | | | |
| Sr. Secured Rating | B1/BB- | | | | | | | |
| Jr. Secured Rating | B1/BB- | | | | | | | |

| | | | | BDCM Exposure | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Security | BDC Fin | Opp Fund I | Opp Fund II | CLO 2005-1 | CLO 2005-2 | CLO 2006-1 | Total | Current Coupon | Proposed Coupon |
| Allied 1st lien Syn. LC | | | 0.4 | 1.1 | | | 1.5 | L+400 | L+600 |
| Allied 1st lien TL | | | 1.4 | 3.9 | | | 5.3 | L+400 | L+600 |
| Total | | | 1.8 | 5.0 | | | 6.8 | | |

**Summary of Forbearance:**

Under the loan agreement, there is currently an event of default due to (a) a failure to deliver a certified report identifying the amount of term loans and 2nd lien term loans purchased by Yucaipa in June and July along with total loan held by the sponsor, (b) the Borrower failed the leverage test on 6/30/08 and (c) the Borrower failed the interest coverage test on 6/30/08. The Borrower has also indicated that it will be in default of the leverage and interest coverage covenants in the 3rd quarter as well.

The lenders will agree to forbear from exercising remedies until Oct. 15, in exchange for the following:

1) A $250,000 fee paid pro rata to the lenders ($100,000 of which will be credited against fees in a follow-on amendment)
2) The Borrower will not, during the forbearance period, make any payments to the sponsor other than their ordinary course out of pocket expenses. Yucaipa will not receive interest on the $20mm in 2nd lien term loan it owns, nor will they be paid their management fee.
3) The Borrower agrees to pay the lenders the 2% default rate.
4) The Borrower will not spend more the $7.7mm on capex during the forbearance period.
5) The Lenders get access to management and inspection rights upon reasonable notice
6) Senior management must be available for weekly or other periodic updates
7) Borrower must submit weekly 13 week cash flow forecasts with variance analysis
8) Borrower will provide evergreen retainers for CIT's counsel ($150K) and Term Loan Lender Counsel (Ropes and Gray) ($100K). They also will prepay $25,000 for Broadpoint, the financial advisor.

As a prerequisite to 1st lien forbearance, the 2nd lien lenders must forbear as well.

Additionally, Yucaipa agrees (1) to represent that it does not own any 1st lien debt and owns $20mm of 2nd lien debt, (2) that it won't purchase any 1st lien debt during the forbearance period.

**NOTE: Goldman Sachs is paid $550K as an advisor the company if an amendment is completed.**

**Performance Update:**

2Q08 EBITDA was $13.1mm (down from $15.0mm a year ago) despite the benefit of a 17% wage reduction in April and May (the wage reduction began last June). Volumes were down 13.5%, but unit revenues were up 5.6%. EBITDA per unit was essentially flat with last year at $8.00.

Sr. debt was $195.7mm and total debt was $225.7mm. Yucaipa purchased $40mm of 2nd lien debt during the quarter at 60 cents on the dollar and converted 50% of it to equity. There is also a $50mm synthetic LC facility (of which $45mm is utilized). LTM EBITDA was $40.4mm. Sr. leverage was 4.8x and total leverage was 5.6x. Including the LC, leverage increases 1.2x.

July EBITDA was up $4.7mm from a year ago to $4mm. EBITDA was $1.2mm better than plan due to (a) higher volumes (b) better performance at Axys, the company's brokerage subsidiary (c) fuel price benefit, and (d) revenue true up (money owed from prior periods). The company did not say what the benefit was from each one. The company another $16.5mm on the R/C during July bringing sr. debt to $212.2mm (262.2mm including the LC facility). Given LTM EBITDA of $45.1mm, sr. leverage was 4.7x (5.8x including LC).

August EBITDA was $6mm vs. $6.7mm a year ago, but $2mm better than their July plan. The improvement over plan was due to (a) some unexpected volumes in Canada and (b) downturn in oil prices.

Company is spending all its cash flow on interest and capex (and then some). As of last week, it had $17.4mm of cash (burning through operating cash flow and the $16.5mm it borrowed from the banks in July)

**Projection Update:**

Company still expects to hits its projected $53mm target for 2008 EBITDA. September is expected to be flat to plan ($6.7mm in EBITDA). The company expects their cash position to improve starting at the end of October and increasing through Mid December to $26mm ($9mm improvement over today). This assumes they pay the banks a 1% amendment fee and Goldman's 550K fee (totals about $3mm).

**Recommendation:**

I don't think the forbearance goes far enough to shut off payments to Yucaipa and prohibit them buying back debt. Nevertheless, I think there is sufficient lender support to get this done. I recommend we don't sign.



DEPOSITION
E X H I B I T
**360**
4/30/19   p8

**Allied Holdings**

| | 12/31/04 | 12/31/05 | 12/31/06 | 12/31/07 | LTM 6/30/08 | 3/31/06 | 6/30/06 | 9/30/06 | 12/31/06 | 3/31/07 | 6/30/07 | 9/30/07 | 12/31/07 | 3/31/08 | 6/30/08 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues | 895.2 | 892.9 | 893.8 | 822.8 | 800.5 | 240.8 | 245.1 | 202.2 | 205.5 | 192.8 | 222.5 | 196.6 | 210.9 | 189.8 | 203.2 |
| YOY Change | 3.4% | -0.3% | 0.1% | -7.9% | | 9.0% | 5.4% | -0.5% | -13.0% | -19.9% | -9.2% | -2.7% | 2.7% | -1.6% | -8.7% |
| **Operating expenses:** | | | | | | | | | | | | | | | |
| Salaries, wages and fringe benefits | 488.7 | 468.0 | 451.0 | 403.7 | 376.3 | 126.0 | 114.9 | 104.9 | 105.6 | 102.1 | 108.9 | 94.1 | 98.7 | 92.3 | 91.2 |
| Operating supplies and expenses | 162.3 | 178.5 | 183.7 | 185.0 | 192.9 | 48.7 | 50.3 | 43.2 | 41.5 | 42.1 | 44.0 | 44.1 | 50.8 | 48.4 | 49.5 |
| Purchased transportation | 111.2 | 119.3 | 115.2 | 98.5 | 100.4 | 30.9 | 32.6 | 26.1 | 25.5 | 22.9 | 26.5 | 25.3 | 23.8 | 22.7 | 28.7 |
| Insurance and claims | 40.8 | 39.4 | 41.7 | 38.4 | 36.8 | 10.3 | 10.2 | 10.0 | 10.5 | 9.0 | 10.3 | 8.9 | 10.2 | 9.4 | 8.4 |
| Operating taxes and licenses | 29.8 | 29.8 | 28.1 | 27.4 | 26.2 | 7.7 | 7.4 | 6.6 | 6.4 | 6.7 | 7.0 | 6.6 | 7.1 | 6.4 | 6.0 |
| Depreciation and amortization | 42.9 | 29.9 | 29.4 | 46.3 | 61.2 | 6.9 | 7.2 | 6.9 | 8.0 | 7.7 | 7.9 | 7.3 | 23.4 | 14.3 | 16.3 |
| Rents | 8.6 | 7.5 | 7.2 | 7.4 | 6.5 | 1.8 | 1.7 | 1.8 | 1.8 | 1.9 | 2.0 | 1.6 | 1.8 | 1.5 | 1.5 |
| Communications and utilities | 6.3 | 6.1 | 6.3 | 5.9 | 5.7 | 1.9 | 1.5 | 1.4 | 1.4 | 1.8 | 1.5 | 1.4 | 1.2 | 1.8 | 1.4 |
| Other operating expenses | 10.1 | 11.7 | 7.8 | 14.5 | 15.3 | 2.1 | 2.0 | 2.1 | 1.7 | 2.1 | 3.4 | 4.3 | 4.7 | 2.9 | 3.4 |
| Impairment of goodwill | 8.3 | 79.2 | 0.0 | | | | | | | | | | 0.0 | | 0.0 |
| (Gain) loss on asset sales | (0.8) | | (3.3) | 0.7 | 0.7 | (0.1) | (0.1) | (0.0) | (3.0) | 0.0 | 0.0 | 0.0 | 0.6 | 0.0 | 0.0 |
| Total operating expenses | 908.3 | 969.4 | 867.0 | 827.7 | 822.0 | 236.2 | 227.8 | 203.1 | 199.4 | 196.3 | 215.4 | 193.5 | 222.1 | 199.7 | 206.3 |
| Operating (loss) income | (13.0) | (76.5) | 26.8 | (4.9) | (21.5) | 4.6 | 17.3 | (1.0) | 6.1 | (3.5) | 7.1 | 3.1 | (11.6) | (9.9) | (3.1) |
| Add-back: One-Time Items | 12.1 | 85.1 | 0.0 | 0.0 | 0.0 | | | | | | | | | | |
| Adjusted Operating Income | (0.9) | 8.6 | 26.8 | (4.9) | (21.5) | 4.6 | 17.3 | (1.0) | 6.1 | (3.5) | 7.1 | 3.1 | (11.6) | (9.9) | (3.1) |
| EBIT Margin | -0.1% | 1.0% | 3.0% | -0.6% | -2.7% | 1.9% | 7.1% | -0.5% | 3.0% | -1.8% | 3.2% | 1.6% | -5.5% | -5.2% | -1.5% |
| LTM EBIT | (0.9) | 8.6 | 26.8 | (4.9) | (21.5) | 15.1 | 25.3 | 28.5 | 27.1 | 18.9 | 8.7 | 12.7 | (4.9) | (11.3) | (21.5) |
| EBITDA | 41.2 | 38.5 | 53.0 | 42.1 | 40.4 | 11.4 | 24.4 | 6.0 | 11.0 | 4.2 | 15.0 | 10.4 | 12.4 | 4.4 | 13.1 |
| EBITDA Margin | 4.6% | 4.3% | 5.9% | 5.1% | 5.1% | 4.7% | 10.0% | 2.9% | 5.4% | 2.2% | 6.8% | 5.3% | 5.9% | 2.3% | 6.5% |
| LTM EBITDA | 41.2 | 38.5 | 53.0 | 42.1 | 40.4 | 43.5 | 54.3 | 57.8 | 52.9 | 45.7 | 36.2 | 40.7 | 42.3 | 42.3 | 40.4 |
| Interest expense | (31.4) | (39.4) | (30.2) | (47.0) | (42.3) | (6.5) | (8.7) | (5.5) | (5.6) | (7.6) | (11.3) | (15.0) | (13.2) | (6.8) | (7.4) |
| Non-Cash Interest Expense | | | | 21.2 | 17.0 | | | | | 3.6 | 4.4 | 5.2 | 8.1 | | 3.7 |
| Investment income | 1.1 | 2.8 | 4.8 | 5.1 | 3.6 | 1.0 | 1.2 | 1.3 | 1.3 | 1.2 | 1.5 | 1.3 | 1.1 | 0.7 | 0.4 |
| Foreign exchange gains, net | 1.9 | 1.4 | (0.6) | 9.4 | 3.5 | (0.2) | 1.8 | 0.3 | (2.5) | 0.3 | 4.6 | 4.1 | 0.4 | (1.7) | 0.7 |
| Capex | (22.5) | (19.4) | (35.8) | (67.5) | (66.8) | (6.2) | (6.3) | (13.1) | (10.2) | (13.4) | (18.6) | (20.3) | (15.2) | (14.9) | (16.5) |
| Asset Sales | 3.0 | 2.9 | 4.5 | 5.1 | 5.1 | 0.1 | 0.7 | 0.1 | 3.6 | 0.2 | 0.1 | 0.0 | 4.8 | 0.0 | 0.3 |
| Insurance deposits | (32.1) | | (1.9) | (0.9) | (2.2) | (0.6) | (0.1) | (0.3) | (0.8) | (0.5) | (0.2) | (0.0) | (0.2) | (1.9) | (0.1) |
| Insurance deposit returned | 35.0 | | 4.5 | 1.4 | 3.3 | 1.9 | 1.0 | 0.5 | 1.1 | 0.5 | 0.6 | 0.0 | 0.3 | 2.9 | 0.1 |
| Working Capital Changes | | | 20.5 | (5.6) | (16.6) | | | | 20.5 | 8.6 | (2.6) | 1.5 | (13.1) | | (2.2) |
| FX (gains) losses | | | | (9.4) | (2.9) | | | | | (0.1) | (4.6) | (4.1) | (0.4) | (1.7) | (0.7) |
| Chg in Restricted Cash | | | | 1.5 | 29.3 | | | | | | | | 1.5 | 27.4 | 0.4 |
| Reorg Items | | | (11.7) | (22.4) | (15.0) | | (3.3) | (3.2) | (3.1) | (2.1) | (2.6) | (13.5) | (4.7) | (1.6) | 0.0 | (8.7) |
| Net Cash Flow | | | 7.1 | (66.9) | (43.6) | (2.3) | 10.7 | (14.0) | 16.4 | (5.8) | (24.5) | (21.4) | (15.1) | 9.7 | (16.8) |
| Chg in Net Debt | | | | 43.4 | 17.5 | (0.1) | (8.7) | 11.4 | 10.9 | (22.5) | 28.2 | 21.9 | 10.9 | (10.0) | (5.4) |
| Units Hauled (000s) | 8,827 | 8,275 | 7,577 | 6,857 | 6,458 | 2,076 | 2,076 | 1,673 | 1,751 | 1,700 | 1,873 | 1,586 | 1,698 | 1,554 | 1,620 |
| YOY Change | 1.3% | -6.3% | -8.4% | -9.5% | | -1.9% | -8.2% | -10.3% | -13.8% | -18.1% | -9.8% | -5.2% | -3.0% | -8.6% | -13.5% |
| Unit Revenues | 101.4 | 107.9 | 118.0 | 120.0 | 124.0 | 116.0 | 118.0 | 120.8 | 117.4 | 113.4 | 118.8 | 123.9 | 124.2 | 122.1 | 125.4 |
| YOY Change | 2.1% | 6.4% | 9.3% | 1.7% | | 11.2% | 12.4% | 11.0% | 3.2% | -2.2% | 0.6% | 2.6% | 5.9% | 7.7% | 5.6% |
| Reported Unit Revenues | | | | 114.1 | 115.7 | | | | 116.4 | 109.2 | 114.8 | 119.4 | | 117.3 | 120.7 |
| YOY Change | | | | | | | | | | | | 2.5% | | 7.5% | 5.2% |
| Cash Unit Costs | 96.7 | 103.3 | 110.5 | 114.0 | 117.8 | 110.5 | 106.2 | 117.2 | 109.3 | 111.0 | 110.8 | 117.4 | 117.3 | 119.3 | 117.3 |
| YOY Change | 5.1% | 6.8% | 7.1% | 3.1% | | 9.0% | 7.6% | 9.0% | 2.9% | 0.5% | 4.3% | 0.1% | 7.3% | 7.5% | 5.9% |
| EBITDA per Unit | 4.7 | 4.6 | 7.0 | 6.1 | 6.3 | 5.5 | 11.8 | 3.6 | 6.3 | 2.5 | 8.0 | 6.6 | 7.3 | 2.8 | 8.1 |
| YOY Change | -36.6% | -0.3% | 50.4% | -12.1% | | 83.3% | 89.6% | 174.8% | -17.9% | -54.9% | -31.8% | 85.0% | 16.2% | 14.4% | 1.2% |
| DIP/Exit RC ($35MM) | | | | 12.0 | 16.0 | | | | | 0.4 | 0.0 | 3.0 | 12.0 | 1.2 | 16.0 |
| Canadian R/C | | | | | | | | | | | | | | | 1.5 |
| DIP/Exit Synthetic LC ($50mm) | | | | 0.0 | 0.0 | | | | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 1st lien DIP/Exit TL | | | | 179.1 | 178.2 | | | | | 155.0 | 179.6 | 179.1 | 179.1 | 179.1 | 178.2 |
| **Sr. Debt (post-petition)** | | 90.1 | 99.9 | 191.1 | 194.2 | 89.0 | 80.9 | 94.7 | 99.9 | 155.4 | 179.6 | 182.1 | 191.1 | 180.3 | 195.7 |
| 2nd lien DIP/Exit TL | | | | 50.0 | 50.0 | | | | | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 |
| **Total Debt & Issued L/Cs (PostPet)** | | 190.1 | 199.9 | 241.1 | 224.2 | 189.0 | 180.9 | 194.7 | 199.9 | 205.4 | 229.6 | 232.1 | 241.1 | 230.3 | 225.7 |
| Cash | | 4.1 | 5.1 | 2.9 | 2.9 | 2.9 | 3.5 | 5.9 | 0.2 | 28.2 | 24.3 | 4.8 | 2.9 | 2.1 | 2.9 |
| Sr. Debt/EBIT | | 10.5x | 3.7x | -39.0x | -9.0x | 5.9x | 3.2x | 3.3x | 3.7x | 8.2x | 20.7x | 14.3x | -39.0x | -15.9x | -9.1x |
| Sr. Debt/EBITDA | | 2.3x | 1.9x | 4.5x | 4.8x | 2.0x | 1.5x | 1.6x | 1.9x | 3.4x | 5.0x | 4.5x | 4.5x | 4.3x | 4.8x |
| Total Debt/EBITDA | | 4.9x | 3.8x | 5.7x | 5.6x | 4.3x | 3.3x | 3.4x | 3.8x | 4.5x | 6.3x | 5.7x | 5.7x | 5.4x | 5.6x |
| Sr. Debt + Issued LCs/EBITDA | | | | 5.7x | 6.0x | | | | | 4.5x | 6.3x | 5.7x | 5.7x | 5.4x | 6.1x |
| Tot. Debt + Issued LCs/EBITDA | | | | 6.9x | 6.8x | | | | | 5.6x | 7.7x | 6.9x | 6.9x | 6.6x | 6.8x |
| Annualized Rents | | 7.5 | 7.2 | 7.4 | 6.5 | 7.0 | 7.0 | 7.4 | 7.3 | 7.6 | 7.9 | 6.6 | 7.3 | 6.1 | 6.0 |
| 8*Rents | | 60.0 | 57.3 | 58.8 | 52.2 | 56.1 | 55.6 | 58.9 | 58.4 | 60.6 | 63.2 | 52.7 | 58.7 | 49.2 | 48.2 |
| Sr. Debt+Capitalized Rents/EBITDAR | | 3.3x | 2.6x | 5.1x | 5.2x | 2.9x | 2.2x | 2.4x | 2.6x | 4.1x | 5.5x | 5.0x | 5.0x | 4.7x | 5.2x |
| Total Tractors | | | | 2,773 | | | | | | 2,834 | 3,105 | 3,099 | 2,885 | 3,001 | 2,773 |
| Total Trailers | | | | 3,403 | | | | | | 3,593 | 3,760 | 3,800 | 3,579 | 3,599 | 3,403 |
| Total Service | | | | 234 | | | | | | 229 | 237 | 254 | 246 | 241 | 234 |
| A/R | | 61.4 | 52.4 | 56.7 | 53.1 | 59.4 | 54.2 | 32.5 | 52.4 | 48.9 | 47.3 | 47.7 | 56.7 | 51.9 | 53.1 |
| Inventory | | 5.1 | 4.9 | 5.1 | 4.8 | 5.1 | 5.2 | 5.2 | 4.9 | 4.8 | 4.9 | 5.0 | 5.1 | 4.6 | 4.8 |
| Net PP&E | | 123.9 | 129.2 | 196.5 | 196.9 | 122.8 | 122.7 | 128.9 | 129.2 | 134.8 | 165.0 | 179.3 | 196.5 | 194.6 | 196.9 |

BDCM0028411

**Allied Holdings**
**Monthly Numbers**

| | FYE 12/31/04 | FYE 12/31/05 | FYE 12/31/06 | FYE 12/31/06 | FYE 12/31/06 | 3/31/06 |
|---|---|---|---|---|---|---|
| Revenues | 896.2 | 892.9 | 893.8 | 822.8 | 403.7 | 384.0 |
| YOY Change | 3.4% | -0.4% | 0.1% | -7.9% | 78.0% | |
| | | | | | | |
| **Operating expenses:** | | | | | | |
| Salaries, wages, and fringe benefits | 488.7 | 468.0 | 451.0 | 403.7 | 185.0 | 191.3 |
| Operating supplies and expenses | 162.3 | 176.5 | 183.7 | 166.9 | 86.5 | 88.3 |
| Purchased transportation | 111.2 | 119.3 | 115.2 | 88.5 | 38.7 | 38.7 |
| Insurance and claims | 40.8 | 39.4 | 41.7 | 38.4 | 27.4 | 27.1 |
| Operating taxes and licenses | 29.8 | 29.8 | 28.1 | 27.4 | 48.3 | 52.9 |
| Depreciation and amortization | 42.9 | 29.9 | 29.4 | 48.3 | 7.4 | 7.0 |
| Rents | 8.6 | 7.5 | 7.2 | 7.4 | 5.9 | 5.9 |
| Communications and utilities | 6.3 | 6.1 | 6.3 | 5.9 | 14.5 | 15.2 |
| Other operating expenses | 10.1 | 11.7 | 7.8 | 14.5 | | |
| Impairment of goodwill | 8.3 | 79.2 | 0.0 | 0.0 | | |
| (Gain) loss on asset sales | (0.0) | | 0.0 | 0.7 | | |
| Total operating expenses | 936.3 | 889.4 | 887.0 | 827.7 | 403.7 | 831.1 |
| | | | | | | |
| Operating (loss) income | (13.0) | (76.5) | (28.8) | (4.9) | (11.3) | (11.3) |
| Add-back: One-Time Items | 12.1 | 85.1 | 0.0 | 0.0 | 0.0 | 0.0 |
| Adjusted Operating Income | (0.1) | 8.6 | 28.8 | (4.9) | (11.3) | (11.3) |
| EBIT Margin | -0.1% | 1.0% | 3.0% | -0.6% | -1.4% | -4.1% |
| LTM EBIT | (0.9) | 8.6 | 28.8 | (4.9) | | 9.1 |
| | | | | | | |
| EBITDA | 41.2 | 38.5 | 53.0 | 42.1 | 42.3 | 42.3 |
| EBITDA Margin | 4.6% | 4.3% | 5.9% | 5.1% | 5.0% | 5.0% |
| LTM EBITDA | 41.2 | 38.5 | 53.0 | 42.1 | | 42.3 |
| | | | | | | |
| Interest expense | (31.4) | (39.4) | (37.7) | (47.0) | (87.2) | (46.2) |
| Non-Cash Interest Expense | | | | 21.2 | | 7.7 |
| Investment Income | 1.1 | 2.8 | 4.8 | 5.1 | -4.7 | 9.1 |
| Foreign exchange gains, net | 1.9 | 1.4 | | 9.4 | | |
| | | | | | | |
| Capex | (22.5) | (19.4) | | (87.5) | (80.0) | |
| Asset Sales | 3.0 | 2.9 | 4.5 | 5.1 | | |
| Insurance deposits/Financing Repay. | (35.0) | | (1.9) | (0.8) | (2.3) | |
| Insurance deposit returned/Financing | | | 4.5 | 1.4 | 2.4 | |
| Working Capital Changes | | | 20.5 | (5.5) | (12.2) | |
| Change in Restricted Cash | | | | 1.5 | 27.4 | |
| Reorg Items | | | | (22.6) | (18.6) | |
| Net Cash Flow | | 7.1 | (17.7) | (68.8) | (54.8) | |
| Chg in Net Debt | | | | 43.0 | 50.5 | |
| | | | | | | |
| Units Hauled (000s) | | 8,827 | 7,577 | 6,857 | 6,711 | |
| | | | | | | |
| DIP/EXA RC ($35MM) | | | | | | |
| Canadian RC | | | | 12.0 | 12.0 | |
| Revolving Borrowing Base LC ($50mm) | | | | | | |
| 1st lien DIP/Exit TL | | | | 0.0 | 0.0 | |
| 2nd lien DIP/Exit TL | | | 90.1 | 178.8 | 179.1 | |
| Total Debt & Issued L/Cs (post-petition) | | | | 190.6 | 180.3 | |
| | | | | | | |
| Cash | 190.1 | 199.9 | | 240.0 | 230.3 | |
| | | | | | | |
| Sr. Debt/EBIT | 4.1 | 5.1 | | 2.9 | 2.6 | |
| | | | | | | |
| Sr. Debt/EBITDA | 10.5x | 3.7x | | -38.9x | -15.9x | |
| Total Debt/EBITDA | | | | | | |
| Sr. Debt + Issued LCs/EBITDA | 2.3x | 1.9x | | 4.5x | 4.3x | |
| Tot. Debt + Issued LCs/EBITDA | 4.9x | 3.8x | | 5.7x | 5.4x | |
| | | | | | | |
| Annualized Rents | 7.5 | 7.2 | | 7.4 | 7.0 | |
| 8*Rents | 60.0 | 57.3 | | 58.8 | 55.9 | |
| Sr. Debt+Capitalized Rents/EBITDAR | 3.3x | 2.6x | | 5.0x | 4.8x | |

*(Table continues with monthly columns 3/31/06 through subsequent periods; numeric detail illegible at available resolution.)*

Confidential – Professional's Only



# Allied Systems Holdings, Inc.
## Status Update

September 17, 2008

Broadpoint.Capital

Confidential - Professional's Only

CONFIDENTIAL | FOR DISCUSSION PURPOSES ONLY

ALLIED SYSTEMS HOLDINGS, INC. | STATUS UPDATE

## Interaction with the Company

* **Discussed the current cash management system with Scott Macaulay, Treasurer**
  * Structure of US and Canadian accounts
  * Operating procedures and flow of funds
  * August 31st and August average account balances
* **Conducted on-site due diligence in Atlanta**
  * Met with finance executives and Regional VP responsible for fixed assets
  * Stephanie Bond of Yucaipa attended all sessions
  * Primary topics included industry/competitive assessment, liquidity, fixed assets, union relations and 5 year business plan review
* **Broadpoint sent over a follow up due diligence request to Allied**
* **Conducted a financial model working session with Kent Peters, Financial Planning & Analysis on September 12th**
  * Discussed key revenue and cost drivers
  * Collaborated on modeling concepts
* **Discussed the preliminary 13 Week Cash Forecast draft with management**
  * Provided substantive changes to the format and requested additional details
  * Reviewed key drivers and assumptions
  * Agreed on process and timing – Management to provide variance reporting and Roll-forward Budget every Tuesday by 12:00pm
* **Broadpoint has established a good working relationships with the Allied management team**
  * Allied has responded to a number of ad-hoc requests and questions
  * Management has been accessible and responsive via phone and email

Broadpoint Capital

BDCM0028414

CONFIDENTIAL FOR DISCUSSION PURPOSES ONLY

ALLIED SYSTEMS HOLDINGS, INC.  |  STATUS UPDATE

# New Information Requested and Received

| | Category | Information Requested | Status |
|---|---|---|---|
| 1 | External communications | Board of Directors Packages and meeting minutes – last 2 years | Received |
| | External communications | EBITDA bridge from forecast presentations | Received |
| | External communications | Axis business overview presentation | Received |
| | External communications | Terminal profitability analysis LIBOR assumptions in the July 5 year forecast | In Process |
| 2 | Financial Information | Cash forecast | Received |
| | Financial Information | Current 13 week forecast | Received |
| | Financial Information | Prior 13 week forecast and actual | Received |
| | Financial Information | Cash diagrams and account numbers | Received |
| | Financial Information | 13 week cash forecast backup models | Received |
| | Financial Obligations | Allied actuarial report | Received |
| | Financial Obligations | Detailed restricted cash & other LT liabilities - Hauled Insurance | Received |
| | Financial Obligations | Total/Direct miles, fuel surcharge, haulway rev, non-haulway rev, by customer by terminal | Received |
| | Financial Obligations | August Global Insight Forecast - unit volume | Received |
| | Financial Information | Most recent daily cash worksheet | Received |
| | Financial Information | Pension contributions – last 3 years and next 3 years projections | In Process |
| | Financial Information | Valuation analyses presented by debtor and creditor FA during the 2007 Chapter 11 | In Process |
| | Financial Information | Liquidation analyses presented by debtor and creditor FA during the 2007 Chapter 11 | In Process |
| 3 | Customers | Summary of customer contracts including expiration date | Received |
| | Customers | Last Toyota contract proposal | Received |
| | Customers | Summary of volumes and platforms by plant – last 3 years | In Process |
| 4 | Financial Obligations | Goldman Sachs engagement letter with respect to the amendment discussions | Received |
| 5 | Fixed Assets | List of tractors and trailers by terminal (year, status, approx. OLV, approx FMV) | Received |
| | Fixed Assets | List of vehicle models served by each terminal | Received |
| 6 | Labor | Summary of current collective bargaining agreements | Received |
| | Labor | Detailed employee census | In Process |
| | Labor | Summary of work rules | In Process |
| | Labor | IBT concession agreement | Received |
| | Labor | Training expense summary (drivers, mechanics, others) | In Process |
| | Labor | Pension underfunded status by plan | In Process |
| 7 | Organization / Management | Organization chart | Received |
| | Organization / Management | Current management incentive plan including targets | Received |
| | Organization / Management | M&A target list | In Process |
| | Organization / Management | Map of terminal facilities | Received |
| | Organization / Management | List of active employees receiving HWP contributions for the same time period | In Process |
| 8 | Litigation and Administrative Proceedings | Summary (schedule) of litigation proceedings | Received |

Broadpoint Capital

BDCM0028415

ALLIED SYSTEMS HOLDINGS, INC. | STATUS UPDATE    CONFIDENTIAL - FOR DISCUSSION PURPOSES ONLY

# Preliminary 13 Week Cash Forecast

**Allied Systems Holdings, Inc. & Subsidiaries**
Based on Allied Systems Holdings, Inc. Plan (July 08 - 5 YR PLAN)

| | Week Ended 21-Sep | Week Ended 28-Sep | Week Ended 5-Oct | Week Ended 12-Oct | Week Ended 19-Oct | Week Ended 26-Oct | Week Ended 2-Nov | Week Ended 9-Nov | Week Ended 16-Nov | Week Ended 23-Nov | Week Ended 30-Nov | Week Ended 7-Dec | Week Ended 14-Dec | 13 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assumptions:** | | | | | | | | | | | | | | |
| Sales Revenue | $16,567 | 16,667 | 16,553 | 16,544 | 16,544 | 16,544 | 16,544 | 16,067 | 15,067 | 15,067 | 15,028 | 14,447 | 14,447 | $204,987 |
| Hauled Units | 113,930 | 113,930 | 119,175 | 122,672 | 122,672 | 122,672 | 122,672 | 111,528 | 111,528 | 111,528 | 111,528 | 109,801 | 109,801 | 1,503,637 |
| Days Sales Outstanding (DSO) | 21 | 21 | 20 | 20 | 20 | 20 | 21 | 21 | 21 | 21 | 21 | 24 | 24 | |
| Days Payable Outstanding (DPO) | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | |
| DPO excluding Wages & Fringe Benefits | 20 | 20 | 20 | 21 | 21 | 21 | 23 | 23 | 23 | 23 | 23 | 22 | 22 | |
| Capital Expenditures based on monthly 2008 Capital Spending Plan as of July 2008 (1) | | | | | | | | | | | | | | |
| **Receipts:** | | | | | | | | | | | | | | |
| A/R Receipts | $16,476 | 16,445 | 17,355 | 17,950 | 17,571 | 17,373 | 17,249 | 18,463 | 17,122 | 16,046 | 15,405 | 10,701 | 11,329 | $209,484 |
| Non-AR Receipts | — | — | — | — | — | — | — | — | — | — | — | — | — | — |
| **Total Receipts** | $16,476 | 16,445 | 17,355 | 17,950 | 17,571 | 17,373 | 17,249 | 18,463 | 17,122 | 16,046 | 15,405 | 10,701 | 11,329 | $209,484 |
| **Operating Disbursements:** | | | | | | | | | | | | | | |
| Payroll & Payroll Taxes(2) | $6,735 | 4,980 | 6,840 | 5,084 | 6,840 | 5,189 | 6,425 | 5,176 | 4,857 | 4,126 | 4,126 | 4,385 | 4,385 | $68,849 |
| Central States Health Welfare and Pension(3) | 3,919 | — | — | — | 4,446 | — | — | — | — | 4,653 | — | — | — | 13,018 |
| Fuel | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 2,704 | 35,156 |
| Insurance | — | — | 2,291 | — | — | — | 2,291 | — | — | — | — | 358 | — | 4,940 |
| Other Disbursements | 4,116 | 4,564 | 3,895 | 4,748 | 2,895 | 4,799 | 2,814 | 6,536 | 3,983 | 5,810 | 5,585 | 5,774 | 2,975 | 58,491 |
| **Total Operating Disbursements** | $17,474 | 12,249 | 15,730 | 12,535 | 16,884 | 12,692 | 14,234 | 14,416 | 11,344 | 17,293 | 12,415 | 13,221 | 10,064 | $180,553 |
| **Total Operating Cash Flow** | $(998) | 4,196 | 1,625 | 5,415 | 686 | 4,681 | 3,015 | 4,046 | 5,777 | (1,247) | 2,990 | (2,520) | 1,264 | $28,931 |
| **Capital Expenditures** | 2,964 | 2,964 | 1,597 | 1,097 | 1,097 | 1,097 | 279 | 279 | 279 | 279 | 279 | 380 | 380 | 12,969 |
| **Total Operating Cash Flow less Capex** | $(3,963) | 1,232 | 28 | 4,318 | (410) | 3,584 | 2,737 | 3,768 | 5,499 | (1,526) | 2,711 | (2,901) | 884 | $15,962 |
| **Financing Disbursements:** | | | | | | | | | | | | | | |
| Interest | 950 | — | — | — | 1,856 | — | 921 | — | 1,928 | — | — | — | 1,854 | 7,509 |
| Principal | — | — | 450 | — | — | — | — | — | — | — | — | — | — | 450 |
| Amendment Fees(4) | — | 3,178 | — | — | — | — | — | — | — | — | — | — | — | 3,178 |
| **Total Financing Disbursements** | 950 | 3,178 | 450 | — | 1,856 | — | 921 | — | 1,928 | — | — | — | 1,854 | 11,137 |
| Non-recurring Cash Disbursements(5) | — | — | — | — | — | — | — | — | — | — | — | — | — | — |
| **Net Increase/(Decrease) in Cash** | $(4,913) | (1,946) | (422) | 4,318 | (2,266) | 3,584 | 1,816 | 3,768 | 3,571 | (1,526) | 2,711 | (2,901) | (970) | $4,825 |

(1) Receipts and disbursements based on the monthly 2008 Forecast as of July 2008. Monthly forecast evenly distributed by week

**Broadpoint.Capital**

ALLIED SYSTEMS HOLDINGS, INC. | STATUS UPDATE

CONFIDENTIAL FOR DISCUSSION PURPOSES ONLY

# Preliminary 13 Week Cash Forecast (continued)

**Allied Systems Holdings, Inc. & Subsidiaries**
Based on Allied Systems Holdings, Inc. Plan (July 08 - 5 YR PLAN)

| | Week Ended 21-Sep | Week Ended 28-Sep | Week Ended 5-Oct | Week Ended 12-Oct | Week Ended 19-Oct | Week Ended 26-Oct | Week Ended 2-Nov | Week Ended 9-Nov | Week Ended 16-Nov | Week Ended 23-Nov | Week Ended 30-Nov | Week Ended 7-Dec | Week Ended 14-Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Unrestricted Cash** | | | | | | | | | | | | | |
| Beginning Balance | 21,089 | 16,187 | 14,240 | 2,700 | 3,499 | 3,499 | 3,498 | 2,059 | 3,504 | 3,495 | 3,501 | 2,057 | 3,504 |
| Revolver Borrowings / (Repayments) | 0 | 0 | (11,119) | (3,519) | 2,266 | (3,586) | (3,255) | (2,323) | (3,580) | 1,532 | (4,156) | 4,348 | 970 |
| Net Increase / (decrease) in Cash | (4,913) | (1,946) | (422) | 4,318 | (2,266) | 3,584 | 1,816 | 3,768 | 3,571 | (1,526) | 2,711 | (2,901) | (970) |
| **Ending Balance** | 16,187 | 14,240 | 2,700 | 3,499 | 3,499 | 3,498 | 2,059 | 3,504 | 3,495 | 3,501 | 2,057 | 3,504 | 3,505 |
| **Revolver** | | | | | | | | | | | | | |
| Beginning Balance | 34,500 | 34,500 | 34,500 | 23,381 | 19,862 | 22,128 | 18,543 | 15,288 | 12,965 | 9,385 | 10,918 | 6,762 | 11,110 |
| Borrowings / (Repayments) | 0 | (0) | (11,119) | (3,519) | 2,266 | (3,586) | (3,255) | (2,323) | (3,580) | 1,532 | (4,156) | 4,348 | 970 |
| **Ending Balance** | 34,500 | 34,500 | 23,381 | 19,862 | 22,128 | 18,543 | 15,288 | 12,965 | 9,385 | 10,918 | 6,762 | 11,110 | 12,080 |
| **Revolver Availability** | | | | | | | | | | | | | |
| Commitment | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| Less Borrowings | (34,500) | (34,500) | (23,381) | (19,862) | (22,128) | (18,543) | (15,288) | (12,965) | (9,385) | (10,918) | (6,762) | (11,110) | (12,080) |
| **Total Availability** | 500 | 500 | 11,619 | 15,138 | 12,872 | 16,457 | 19,712 | 22,035 | 25,615 | 24,082 | 28,238 | 23,890 | 22,920 |
| **Liquidity** | | | | | | | | | | | | | |
| Revolver Availability | 500 | 500 | 11,619 | 15,138 | 12,872 | 16,457 | 19,712 | 22,035 | 25,615 | 24,082 | 28,238 | 23,890 | 22,920 |
| Unrestricted Cash on Hand | 16,187 | 14,240 | 2,700 | 3,499 | 3,499 | 3,498 | 2,059 | 3,504 | 3,495 | 3,501 | 2,057 | 3,504 | 3,505 |
| **Total Forecasted Liquidity** | 16,687 | 14,740 | 14,319 | 18,637 | 16,371 | 19,955 | 21,771 | 25,539 | 29,110 | 27,584 | 30,295 | 27,394 | 26,424 |

(1) Other key drivers include the following initiatives:
 - Price Increases - Contractually negotiated increases reflected during 13 week period (Chrysler 10/1 - 2%). Current ongoing negotiation price increase assumptions (Toyota 2.2%)
 - Former PTS business served by Allied - Forecast reflects GM, Toyota and Ford volume currently served by Allied since Jun-08. Annual volume is approximately 380K units and $45M.
 - Ongoing IBT contract negotiations - Allied operating under expired contract with U.S. IBT since 5/31/08. Forecast reflects HWP increase and work rule concessions that were accepted by IBT negotiating committee but subsequently rejected by membership vote.
   - Ongoing IBT contract negotiations - HWP increase - $4M/year one cost work rule concessions - $2.8M/year one benefit
 - MPH Dial-back initiative - By electronically reducing top speed of rigs from 65 to 62, fuel efficiency is increased by 4 mpg. At projected volume and fuel prices, annual benefit approaches $3.5M.
 - MPH Dial-back initiative - Initial implementation date of 9/1/08 delayed to allow for resolution of IBT negotiations, but can be accomplished within a couple of weeks.
   - Corporate/terminal headcount reductions - $3M cost saving initiative implemented beginning of Aug-08.
 - IBM IT Outsourcing - Forecast reflects negotiated savings of approximately $60K per month for balance of 2008 based on lower level of activity.
(2) Includes hourly and salaried employees and brokers.
(3) Payments to the largest IBT multi-employer pension. Represents approximately 20% of monthly obligations. The remaining 20% of obligations are included in Other Disbursements
(4) Includes 1.0% fee on 1st Lien Exposure and $650,000 for estimated fees and expenses
(5) Includes restructuring expenses, professional fees and other



**Broadpoint Capital**

BDCM0028417

CONFIDENTIAL | FOR DISCUSSION PURPOSES ONLY

ALLIED SYSTEMS HOLDINGS, INC.  |  **STATUS UPDATE**

## Next Steps

* Implement 13 Week Cash Forecast, variance reporting and roll-forward forecasting processes

* Broadpoint will continue to analyze and follow-up with the Company to prepare our financial assessment for the bank group

  ※ Broadpoint will continue to evaluate the data received to date

  ※ Financial model in process

  ※ Business plan assessment and sensitivity analysis will be driven by the model

**Broadpoint Capital**

ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
PROJECTED CONSOLIDATED INCOME STATEMENTS
For The Periods Ended
($in 000's)

**AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN)**

| ($ in thousands) | Forecast 2008 | Forecast 2009 | Forecast 2010 | Forecast 2011 | Forecast 2012 |
|---|---|---|---|---|---|
| UNITS HAULED | 6,134,877 | 6,110,432 | 6,176,762 | 6,234,671 | 6,376,752 |
| TOTAL REVENUE | $ 784,365 | $ 797,673 | $ 834,437 | $ 863,995 | $ 900,128 |
| **OPERATING EXPENSES** | | | | | |
| Salaries & Wages | 357,090 | 350,639 | 365,310 | 379,407 | 395,541 |
| Operating Supplies & Expenses | 191,645 | 190,835 | 195,611 | 199,852 | 206,445 |
| Purchased Transportation | 99,028 | 7,043 | 11,317 | 10,108 | 8,009 |
| Rents | 6,121 | 6,249 | 6,318 | 6,434 | 6,554 |
| Insurance & Claims | 35,722 | 37,580 | 38,413 | 39,375 | 40,789 |
| Operating Taxes & Licenses | 24,940 | 23,486 | 24,019 | 24,485 | 24,996 |
| Depreciation & Amortization | 59,383 | 50,449 | 40,470 | 38,161 | 36,801 |
| Communications & Utilities | 6,586 | 7,137 | 7,301 | 7,472 | 7,648 |
| Other Operating Expenses | 10,064 | 4,002 | 2,624 | 2,694 | 2,727 |
| **Total Operating Expenses** | 790,579 | 772,122 | 786,594 | 808,949 | 838,364 |
| **OPERATING INCOME (LOSS)** | (6,214) | 25,551 | 47,843 | 55,046 | 61,765 |
| **OTHER (INCOME) EXPENSE** | - | | | | |
| Interest (Income) | (1,952) | (1,288) | (1,420) | (1,897) | (2,152) |
| Interest Expense | 29,682 | 34,968 | 35,522 | 34,622 | 33,345 |
| Unrealized loss (gain) on swap agreements | 582 | - | - | - | - |
| Loss (Gain) on Sale of Assets | 52 | - | - | - | - |
| Loss (Gain) on Currency Exchange | 91 | - | - | - | - |
| **Total Other (Income) Expense** | 28,455 | 33,681 | 34,102 | 32,725 | 31,194 |
| **TOTAL INCOME (LOSS) BEFORE INCOME TAXES** | (34,669) | (8,130) | 13,741 | 22,321 | 30,571 |
| **INCOME TAX PROVISION (BENEFIT)** | (34) | (406) | 5,497 | 8,928 | 12,228 |
| **NET INCOME (LOSS)** | $ (34,635) | $ (7,723) | $ 8,245 | $ 13,392 | $ 18,343 |
| DEPRECIATION | 59,383 | 50,449 | 40,470 | 38,161 | 36,801 |
| OTHER INCOME (EXPENSE) | 28,455 | 33,681 | 34,102 | 32,725 | 31,194 |
| INCOME TAXES | (34) | (406) | 5,497 | 8,928 | 12,228 |
| **BOOK EBITDA** | 53,170 | 76,001 | 88,312 | 93,207 | 98,566 |
| REORGANIZATION RELATED ITEMS | 2,465 | - | - | - | - |
| OTHER | 396 | - | - | - | - |
| **ADJUSTED EBITDA** | 56,031 | 76,001 | 88,312 | 93,207 | 98,566 |
| INTEREST INCOME | 1,952 | 1,288 | 1,420 | 1,897 | 2,152 |
| ADDITIONAL TAXES | 368 | 358 | 358 | 358 | 358 |
| MANAGEMENT FEES | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| REORGANIZATION AND OTHER RELATED ITEMS NOT ALLO | (1,864) | - | - | - | - |
| **COVENANT EBITDA** | $ 57,987 | $ 79,146 | $ 91,591 | $ 96,962 | $ 102,576 |

ASSUMES EFFECT OF THE COST OF THE PROPOSED AMENDMENT

Confidential - Professional's Only

BDCM0028419

ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
PROJECTED CONSOLIDATED BALANCE SHEETS
For The Periods Ended
($ in 000's)

AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN)

| ($ in thousands) | Forecast 12/31/08 | Forecast 12/31/09 | Forecast 12/31/10 | Forecast 12/31/11 | Forecast 12/31/12 |
|---|---|---|---|---|---|
| **CURRENT ASSETS:** | | | | | |
| Cash-Unrestricted | $ 2,054 | $ 2,093 | $ 2,093 | $ 2,087 | $ 2,089 |
| Cash-Restricted | 18,326 | 13,930 | 18,136 | 21,402 | 24,673 |
| **Cash & Cash Equivalents** | **20,380** | **16,023** | **20,229** | **23,489** | **26,763** |
| Receivables, net | 54,380 | 57,679 | 55,210 | 59,990 | 59,085 |
| Inventories | 4,760 | 4,761 | 4,757 | 4,759 | 4,172 |
| Deferred Tax Asset | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 |
| Prepayment and Other Current Assets | 33,224 | 37,444 | 38,350 | 40,314 | 42,280 |
| **Total Current Assets** | **118,784** | **121,947** | **124,586** | **134,592** | **138,339** |
| | | | | | |
| **PROPERTY AND EQUIPMENT, NET** | **195,927** | **209,837** | **225,378** | **236,728** | **246,730** |
| | | | | | |
| **OTHER ASSETS:** | | | | | |
| Goodwill & SW, Net | 101,531 | 100,859 | 100,187 | 99,515 | 98,843 |
| Restricted cash and cash equivalents | 50,750 | 42,794 | 50,868 | 57,519 | 64,170 |
| Other | 43,914 | 43,685 | 43,456 | 43,227 | 43,481 |
| **Total Other Assets** | **196,195** | **187,338** | **194,511** | **200,261** | **206,494** |
| | | | | | |
| **TOTAL ASSETS** | **$ 510,906** | **$ 519,121** | **$ 544,474** | **$ 571,581** | **$ 591,564** |
| | | | | | |
| **CURRENT LIABILITIES:** | | | | | |
| Current Maturities of LTD | $ 2,797 | $ 2,318 | $ 8,661 | $ 6,229 | $ 3,106 |
| Borrowings under revolving credit facility | 20,769 | 19,496 | 14,813 | 10,488 | 6,783 |
| Trade Accounts Payable | 23,980 | 28,392 | 29,426 | 29,331 | 29,512 |
| Accrued liabilities | 79,803 | 84,798 | 89,583 | 97,806 | 97,955 |
| **Total Current Liabilities** | **127,349** | **135,004** | **142,483** | **143,855** | **137,357** |
| | | | | | |
| **LONG TERM DEBT AND OTHER LIABILITIES** | | | | | |
| Long Term Debt (Less Current Maturities) | 215,219 | 228,029 | 223,465 | 223,377 | 225,019 |
| Post Retirement Benefits | 12,615 | 12,435 | 12,255 | 12,075 | 11,885 |
| Deferred Tax Liability | 13,877 | 12,604 | 16,825 | 21,635 | 27,792 |
| Other Long Term Liabilities | 84,555 | 80,510 | 89,690 | 96,518 | 96,582 |
| **Total LTD and Other Liabilities** | **326,266** | **333,577** | **342,235** | **353,605** | **361,288** |
| | | | | | |
| **Total Liabilities** | **453,616** | **468,582** | **484,718** | **497,460** | **498,644** |
| | | | | | |
| **STOCKHOLDERS' EQUITY:** | | | | | |
| Common Stock | 100 | 100 | 100 | 100 | 100 |
| Additional PIC | 118,569 | 119,541 | 120,513 | 121,485 | 121,941 |
| Retained Earnings | (24,021) | (58,656) | (66,379) | (58,134) | (44,741) |
| Income (YTD) | (34,635) | (7,723) | 8,245 | 13,392 | 18,343 |
| Foreign Currency Translation & Other | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) |
| Unearned Compensation | 13 | 13 | 13 | 13 | 13 |
| **Total Stockholders' Equity** | **57,291** | **50,539** | **59,756** | **74,121** | **92,919** |
| | | | | | |
| **TOTAL LIABILITIES & STOCKHOLDERS' EQUITY** | **$ 510,906** | **$ 519,121** | **$ 544,474** | **$ 571,581** | **$ 591,564** |

ASSUMES EFFECT OF THE COST OF THE PROPOSED AMENDMENT

2 of 18

ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
PROJECTED CONSOLIDATED STATEMENT OF CASH FLOWS
For The Periods Ended
($ in 000's)

**AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN)**

| ($ in thousands) | Forecast 2008 | Forecast 2009 | Forecast 2010 | Forecast 2011 | Forecast 2012 |
|---|---:|---:|---:|---:|---:|
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | |
| Net Income (Loss) | $ (34,635) | $ (7,723) | $ 8,245 | $ 13,392 | $ 18,343 |
| Adjustments to Reconcile Net Income (Loss) to Net | | | | | |
| **Cash Provided by Operating Activities:** | | | | | |
| Depreciation & Amortization | 59,383 | 50,449 | 40,470 | 38,161 | 36,801 |
| Loss (Gain) on Sale of Property & Equipment | 52 | - | - | - | - |
| Compensation Expense Related to Stock Options & Grants | 972 | 972 | 972 | 972 | 456 |
| Changes in Operating Assets: | | | | | |
| Accounts Receivable - Trade | (2,373) | (4,351) | 1,617 | (5,232) | 453 |
| Accounts Receivable - Other | 4,648 | 1,052 | 852 | 452 | 452 |
| Inventories | 339 | (1) | 3 | (2) | 587 |
| Prepayment and Other Current Assets | (10,513) | (4,220) | (906) | (1,965) | (1,966) |
| Trade Accounts Payable | (978) | 4,412 | 1,034 | (95) | 181 |
| Deferred Income Taxes / Tax Assets / Liabilities | (2,811) | (1,273) | 4,220 | 4,810 | 6,157 |
| Accrued Wages & Benefits | (3,087) | (343) | 109 | 1,883 | 996 |
| Accrued General Taxes | 1,271 | 1,276 | 1,204 | 1,261 | 1,234 |
| Accrued Claims and Insurance Reserves | (3,123) | (1,079) | 2,957 | 2,489 | (399) |
| Other Accrued Liabilities | 3,464 | 701 | 1,142 | 1,300 | (754) |
| Other Long Term Liabilities | (5,277) | (4,046) | 9,180 | 6,828 | 64 |
| Other Assets (includes Note Receivables) | 1,712 | 229 | 229 | 229 | (255) |
| **Total Adjustments** | 43,679 | 43,780 | 63,083 | 51,092 | 44,009 |
| **Net Cash Provided by Operating Activities** | 9,044 | 36,057 | 71,328 | 64,485 | 62,352 |
| **CASH FLOW FROM INVESTING ACTIVITIES** | | | | | |
| Net (Purchase) of Property & Equipment - Cap Ex | (58,136) | (63,687) | (55,338) | (48,840) | (46,132) |
| Proceeds From Sale of Property & Equipment | (52) | - | - | - | - |
| Increase in Cash Surrender Value of Life Insurance | 2,792 | - | - | - | - |
| **Net Cash Used in Investing Activities** | (55,396) | (63,687) | (55,338) | (48,840) | (46,132) |
| **CASH FLOW FROM FINANCING ACTIVITIES** | | | | | |
| Net Issuance (Repayment) of LTD | (1,874) | 11,058 | (2,904) | (6,844) | (5,187) |
| Premium Financing | 41 | 4,439 | (627) | 1,290 | (928) |
| Other | 19,270 | (180) | (180) | (180) | (180) |
| **Net Cash Provided (Used) by Financing Activities** | 17,437 | 15,317 | (3,710) | (5,734) | (6,296) |
| **EFFECT OF EXCHANGE RATE ON CASH** | 325 | - | - | - | - |
| **NET INCREASE (DECREASE) IN CASH** | (28,589) | (12,313) | 12,280 | 9,911 | 9,925 |
| **CASH - BEGINNING OF PERIOD** | 99,719 | 71,130 | 58,817 | 71,097 | 81,008 |
| **CASH - END OF PERIOD** | $ 71,130 | $ 58,817 | $ 71,097 | $ 81,008 | $ 90,932 |

ASSUMES EFFECT OF THE COST OF THE PROPOSED AMENDMENT

3 of 18

Confidential - Professional's Only

BDCM0028421

**ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES**
**ACTUAL AND PROJECTED CONSOLIDATED INCOME STATEMENTS**
**For The Periods Ended**
**($ in 000's)**

AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN)

| ($ in thousands) | Actual Jan-08 | Actual Feb-08 | Actual Mar-08 | Actual Apr-08 | Actual May-08 | Forecast Jun-08 | Forecast Jul-08 | Forecast Aug-08 | Forecast Sep-08 | Forecast Oct-08 | Forecast Nov-08 | Forecast Dec-08 | Forecast 2008 | Forecast Jan-09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UNITS HAULED | 462,696 | 526,205 | 564,688 | 541,207 | 534,550 | 541,315 | 473,885 | 473,121 | 501,253 | 554,290 | 446,112 | 505,545 | 6,134,877 | 439,604 |
| **TOTAL REVENUE** | $ 57,237 | $ 63,112 | $ 69,407 | $ 66,134 | $ 67,096 | $ 69,662 | $ 64,232 | $ 63,292 | $ 69,886 | $ 72,809 | $ 57,416 | $ 64,113 | $ 784,365 | $ 55,649 |
| **OPERATING EXPENSES** | | | | | | | | | | | | | | |
| Salaries & Wages | 29,341 | 31,469 | 31,520 | 29,565 | 28,625 | 31,821 | 29,512 | 28,817 | 30,588 | 31,890 | 25,398 | 28,544 | 357,090 | 26,036 |
| Operating Supplies & Expenses | 15,088 | 16,223 | 17,114 | 15,874 | 16,327 | 17,490 | 15,975 | 15,248 | 17,374 | 17,239 | 13,228 | 14,464 | 191,646 | 14,586 |
| Purchased Transportation | 6,994 | 7,056 | 8,606 | 9,546 | 9,212 | 9,218 | 9,040 | 9,047 | 8,336 | 8,321 | 6,477 | 7,175 | 99,028 | 6,928 |
| Rents | 515 | 482 | 541 | 537 | 507 | 474 | 510 | 510 | 512 | 511 | 511 | 511 | 6,123 | 511 |
| Insurance & Claims | 2,582 | 2,914 | 3,854 | 3,146 | 3,469 | 3,369 | 2,406 | 2,501 | 3,341 | 3,341 | 2,615 | 3,115 | 35,722 | 2,663 |
| Operating Taxes & Licenses | 2,860 | 2,850 | 2,650 | 2,017 | 2,417 | 2,087 | 2,087 | 2,045 | 2,155 | 2,221 | 1,880 | 2,004 | 24,940 | 1,780 |
| Depreciation & Amortization | 4,484 | 4,718 | 5,080 | 5,799 | 5,521 | 4,669 | 4,719 | 4,768 | 4,798 | 4,848 | 4,898 | 5,081 | 59,383 | 4,946 |
| Communications & Utilities | 586 | 603 | 603 | 531 | 528 | 495 | 532 | 539 | 525 | 533 | 530 | 528 | 6,586 | 747 |
| Other Operating Expenses | 866 | 968 | 1,026 | 1,464 | 1,277 | 962 | 1,168 | 634 | 459 | 417 | 407 | 415 | 10,064 | 437 |
| Total Operating Expenses | 62,535 | 66,588 | 70,506 | 68,458 | 66,513 | 70,836 | 65,949 | 64,109 | 67,980 | 69,321 | 55,945 | 61,838 | 790,579 | 58,644 |
| **OPERATING INCOME (LOSS)** | (6,298) | (3,476) | (1,099) | (2,324) | 583 | (1,184) | (1,717) | (817) | 1,885 | 3,489 | 1,471 | 2,275 | (6,214) | (2,995) |
| **OTHER (INCOME) EXPENSE** | | | | | | | | | | | | | | |
| Interest (income) | (348) | (235) | (162) | (137) | (136) | (147) | (150) | (143) | (122) | (125) | (121) | (125) | (1,962) | (125) |
| Interest Expense | 2,265 | 2,085 | 2,432 | 2,202 | 2,665 | 1,957 | 1,997 | 2,555 | 2,824 | 2,945 | 2,870 | 2,885 | 29,682 | 2,937 |
| Unrealized loss (gain) on swap agreements | 4,021 | 1,633 | (31) | (3,260) | (1,781) | - | - | - | - | - | - | - | 582 | 582 |
| Loss (Gain) on Sale of Assets | (9) | (13) | 70 | 4 | (4) | - | - | - | - | - | - | - | 52 | 52 |
| Loss (Gain) on Currency Exchange | 630 | (910) | 1,971 | (505) | (1,094) | - | - | - | - | - | - | - | 91 | 91 |
| Total Other (Income) Expense | 6,558 | 2,559 | 4,279 | (1,700) | (343) | 1,810 | 1,848 | 2,412 | 2,703 | 2,820 | 2,749 | 2,760 | 28,455 | 2,812 |
| **TOTAL INCOME (LOSS) BEFORE INCOME TAXES** | (11,857) | (6,035) | (6,378) | (624) | 925 | (2,995) | (3,565) | (3,229) | (817) | 669 | (1,278) | (485) | (34,669) | (5,808) |
| INCOME TAX PROVISION (BENEFIT) | 37 | 33 | 414 | 33 | 35 | (178) | (161) | (41) | (41) | 33 | (64) | (24) | (34) | (290) |
| **NET INCOME (LOSS)** | $ (11,894) | $ (6,068) | $ (6,791) | $ (657) | $ 891 | $ (2,845) | $ (3,386) | $ (3,068) | $ (776) | $ 635 | $ (1,215) | $ (461) | $ (34,635) | $ (5,517) |
| DEPRECIATION | 4,484 | 4,718 | 5,080 | 5,799 | 5,521 | 4,669 | 4,719 | 4,768 | 4,798 | 4,848 | 4,898 | 5,081 | 59,383 | 4,946 |
| OTHER INCOME (EXPENSE) | 6,558 | 2,559 | 4,279 | (1,700) | (343) | 1,810 | 1,848 | 2,412 | 2,703 | 2,820 | 2,749 | 2,760 | 28,455 | 2,812 |
| INCOME TAXES | 37 | 33 | 414 | 33 | 35 | (178) | (161) | (41) | (41) | 33 | (64) | (24) | (34) | (290) |
| **BOOK EBITDA** | $ (815) | $ 1,242 | $ 3,981 | $ 3,475 | $ 6,104 | $ 3,485 | $ 3,002 | $ 3,951 | $ 6,684 | $ 8,337 | $ 6,368 | $ 7,355 | $ 53,170 | $ 1,950 |
| REORGANIZATION RELATED ITEMS | 833 | 666 | 360 | 311 | 136 | 355 | - | - | - | - | - | - | 2,455 | - |
| OTHER | 50 | 24 | 89 | 288 | 16 | - | - | - | - | - | - | - | 406 | - |
| **ADJUSTED EBITDA** | 68 | 1,908 | 4,365 | 3,874 | 6,262 | 3,866 | 3,002 | 3,951 | 6,684 | 8,337 | 6,368 | 7,355 | 56,031 | 1,950 |
| INTEREST INCOME | 348 | 235 | 162 | 137 | 136 | 147 | 150 | 143 | 122 | 125 | 121 | 125 | 1,952 | 125 |
| ADDITIONAL TAXES | 27 | 23 | 25 | 23 | 62 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 368 | 30 |
| MANAGEMENT FEES | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,500 | 125 |
| REORGANIZATION AND OTHER RELATED ITEMS NOT ALLOW | (148) | (401) | (386) | (398) | (160) | (371) | - | - | - | - | - | - | (1,364) | - |
| **COVENANT EBITDA** | $ 421 | $ 1,890 | $ 4,291 | $ 3,761 | $ 6,424 | $ 3,786 | $ 3,306 | $ 4,249 | $ 6,960 | $ 8,617 | $ 6,645 | $ 7,635 | $ 57,987 | $ 2,230 |

Confidential - Professional's Only

BDCM0028422

## ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
## ACTUAL AND PROJECTED CONSOLIDATED INCOME STATEMENTS
### For The Periods Ended
($ in 000's)

AHI Consolidated Allied Systems Holdings, Inc. Plan June 08 - 5

| ($ in thousands) | Forecast Feb-09 | Forecast Mar-09 | Forecast Apr-09 | Forecast May-09 | Forecast Jun-09 | Forecast Jul-09 | Forecast Aug-09 | Forecast Sep-09 | Forecast Oct-09 | Forecast Nov-09 | Forecast Dec-09 | Forecast 2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| UNITS HAULED | 488,890 | 548,720 | 571,381 | 500,891 | 573,737 | 417,277 | 469,787 | 564,456 | 538,028 | 470,851 | 530,841 | 6,110,432 |
| TOTAL REVENUE | $ 60,011 | $ 70,121 | $ 73,071 | $ 66,131 | $ 74,248 | $ 54,729 | $ 63,034 | $ 76,248 | $ 71,807 | $ 62,503 | $ 70,123 | $ 797,673 |
| **OPERATING EXPENSES** | | | | | | | | | | | | |
| Salaries & Wages | 27,286 | 29,884 | 30,460 | 26,829 | 33,104 | 25,955 | 28,179 | 32,963 | 31,363 | 27,587 | 30,995 | 350,639 |
| Operating Supplies & Expenses | 15,216 | 16,425 | 17,058 | 15,580 | 18,201 | 14,097 | 14,844 | 18,121 | 16,818 | 14,217 | 15,673 | 190,835 |
| Purchased Transportation | 7,043 | 8,838 | 11,317 | 9,679 | 10,108 | 8,100 | 8,009 | 8,684 | 8,081 | 7,062 | 7,892 | 101,742 |
| Rents | 524 | 524 | 549 | 478 | 521 | 521 | 521 | 521 | 521 | 521 | 521 | 6,249 |
| Insurance & Claims | 2,983 | 3,481 | 3,432 | 3,046 | 3,578 | 2,507 | 2,863 | 3,566 | 3,262 | 2,829 | 3,371 | 37,580 |
| Operating Taxes & Licenses | 1,853 | 2,038 | 2,109 | 1,958 | 2,142 | 1,817 | 1,875 | 2,065 | 2,016 | 1,854 | 1,970 | 23,486 |
| Depreciation & Amortization | 4,990 | 5,038 | 5,085 | 5,131 | 3,468 | 3,514 | 3,559 | 3,606 | 3,652 | 3,702 | 3,759 | 50,449 |
| Communications & Utilities | 751 | 745 | 548 | 543 | 543 | 541 | 545 | 546 | 545 | 543 | 543 | 7,137 |
| Other Operating Expenses | 399 | 314 | 347 | 347 | 426 | 428 | 437 | 217 | 217 | 217 | 217 | 4,002 |
| Total Operating Expenses | 61,044 | 67,286 | 70,905 | 63,647 | 72,046 | 57,478 | 60,833 | 70,288 | 66,475 | 58,533 | 64,942 | 772,122 |
| OPERATING INCOME (LOSS) | (1,033) | 2,834 | 2,165 | 2,484 | 2,202 | (2,749) | 2,200 | 5,959 | 5,332 | 3,970 | 5,181 | 25,551 |
| **OTHER (INCOME) EXPENSE** | | | | | | | | | | | | |
| Interest (Income) | | | | | | | | | | | | |
| Interest Expense | (113) | (125) | (104) | (107) | (104) | (99) | (102) | (101) | (104) | (106) | (99) | (1,288) |
| Unrealized loss (gain) on swap agreements | 2,722 | 2,968 | 2,835 | 2,986 | 2,874 | 2,979 | 2,971 | 2,875 | 2,982 | 2,857 | 2,962 | 34,968 |
| Loss (Gain) on Sale of Assets | | | | | | | | | | | | |
| Loss (Gain) on Currency Exchange | | | | | | | | | | | | |
| Total Other (Income) Expense | 2,609 | 2,863 | 2,730 | 2,879 | 2,769 | 2,880 | 2,869 | 2,775 | 2,879 | 2,751 | 2,864 | 33,681 |
| TOTAL INCOME (LOSS) BEFORE INCOME TAXES | (3,641) | (29) | (565) | (395) | (568) | (5,630) | (669) | 3,185 | 2,453 | 1,219 | 2,318 | (8,130) |
| INCOME TAX PROVISION (BENEFIT) | (182) | (1) | (28) | (20) | (28) | (281) | (33) | 159 | 123 | 61 | 116 | (406) |
| NET INCOME (LOSS) | $ (3,459) | $ (27) | $ (537) | $ (375) | $ (539) | $ (5,348) | $ (635) | $ 3,025 | $ 2,331 | $ 1,158 | $ 2,202 | $ (7,723) |
| DEPRECIATION | 4,990 | 5,038 | 5,085 | 5,131 | 3,468 | 3,514 | 3,559 | 3,606 | 3,652 | 3,702 | 3,759 | 50,449 |
| OTHER INCOME (EXPENSE) | 2,609 | 2,863 | 2,730 | 2,879 | 2,789 | 2,880 | 2,889 | 2,775 | 2,879 | 2,751 | 2,864 | 33,681 |
| INCOME TAXES | (182) | (1) | (28) | (20) | (28) | (281) | (33) | 159 | 123 | 61 | 116 | 358 |
| BOOK EBITDA | $ 3,957 | $ 7,872 | $ 7,250 | $ 7,615 | $ 5,670 | $ 765 | $ 5,760 | $ 9,665 | $ 8,984 | $ 7,672 | $ 8,841 | $ 76,001 |
| REORGANIZATION RELATED ITEMS | | | | | | | | | | | | |
| OTHER | | | | | | | | | | | | |
| ADJUSTED EBITDA | 3,957 | 7,872 | 7,250 | 7,615 | 5,670 | 766 | 5,760 | 9,665 | 8,984 | 7,672 | 8,941 | 76,001 |
| INTEREST INCOME | 113 | 125 | 104 | 107 | 104 | 99 | 102 | 101 | 104 | 106 | 89 | 1,288 |
| ADDITIONAL TAXES | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 358 |
| MANAGEMENT FEES | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,500 |
| REORGANIZATION AND OTHER RELATED ITEMS NOT ALLOW... | | | | | | | | | | | | |
| COVENANT EBITDA | $ 4,225 | $ 8,162 | $ 7,509 | $ 7,877 | $ 5,929 | $ 1,018 | $ 6,016 | $ 9,821 | $ 9,242 | $ 7,933 | $ 9,194 | $ 79,146 |

Confidential - Professional's Only

ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
ACTUAL AND PROJECTED CONSOLIDATED BALANCE SHEETS
For The Periods Ended
($ in 000's)

AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN)

| ($ in thousands) | Actual 01/31/08 | Actual 02/29/08 | Actual 03/31/08 | Actual 04/30/08 | Actual 05/31/08 | Forecast 06/30/08 | Forecast 07/31/08 | Forecast 08/31/08 | Forecast 09/30/08 | Forecast 10/31/08 | Forecast 11/30/08 | Forecast 12/31/08 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS:** | | | | | | | | | | | | |
| Cash–Unrestricted | $ 2,123 | $ 2,615 | $ 2,112 | $ 3,516 | $ 2,187 | $ 2,863 | $ 13,884 | $ 15,902 | $ 2,052 | $ 2,059 | $ 2,057 | $ 2,054 |
| Cash–Restricted | 27,684 | 24,534 | 18,725 | 18,738 | 18,771 | 18,742 | 18,558 | 18,563 | 18,570 | 18,490 | 18,406 | 18,326 |
| Cash & Cash Equivalents | 29,808 | 27,149 | 20,837 | 22,254 | 20,957 | 21,605 | 32,442 | 34,465 | 20,621 | 20,549 | 20,463 | 20,380 |
| Receivables, net | 49,067 | 51,452 | 51,859 | 63,617 | 52,546 | 53,125 | 53,861 | 53,776 | 53,027 | 50,167 | 43,344 | 54,380 |
| Inventories | 4,832 | 4,794 | 4,590 | 4,884 | 4,931 | 4,784 | 5,064 | 4,959 | 5,035 | 5,017 | 4,792 | 4,760 |
| Deferred Tax Asset | 6,039 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 |
| Prepayment and Other Current Assets | 28,334 | 29,904 | 26,943 | 26,152 | 25,510 | 22,773 | 22,713 | 24,787 | 23,486 | 29,835 | 28,585 | 33,224 |
| **Total Current Assets** | 118,079 | 119,339 | 110,270 | 122,958 | 109,985 | 108,328 | 120,120 | 124,028 | 108,210 | 111,608 | 103,224 | 118,784 |
| **PROPERTY AND EQUIPMENT, NET** | 196,944 | 199,294 | 194,574 | 194,200 | 199,119 | 196,945 | 197,563 | 198,170 | 203,284 | 202,878 | 199,430 | 195,927 |
| **OTHER ASSETS:** | | | | | | | | | | | | |
| Goodwill & SW, Net | 102,311 | 102,205 | 102,077 | 102,017 | 101,923 | 101,787 | 101,811 | 101,755 | 101,699 | 101,643 | 101,587 | 101,531 |
| Restricted cash and cash equivalents | 67,779 | 60,086 | 50,626 | 50,662 | 50,750 | 50,674 | 50,750 | 50,750 | 50,750 | 50,750 | 50,750 | 50,750 |
| Other | 48,222 | 48,260 | 48,326 | 48,426 | 48,476 | 48,515 | 45,764 | 44,032 | 44,002 | 43,973 | 43,943 | 43,914 |
| **Total Other Assets** | 218,312 | 210,551 | 201,028 | 201,106 | 201,150 | 200,976 | 198,325 | 196,537 | 196,452 | 196,366 | 196,281 | 196,195 |
| **TOTAL ASSETS** | $ 533,335 | $ 529,184 | $ 505,872 | $ 518,263 | $ 510,253 | $ 506,249 | $ 516,008 | $ 518,735 | $ 507,945 | $ 510,853 | $ 498,935 | $ 510,906 |

6 of 18

Confidential - Professional's Only

BDCM0028424

ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
ACTUAL AND PROJECTED CONSOLIDATED BALANCE SHEETS
For The Periods Ended
($ in 000's)

AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN)

($ in thousands)

| | Actual 01/31/08 | Actual 02/29/08 | Actual 03/31/08 | Actual 04/30/08 | Actual 05/31/08 | Forecast 06/30/08 | Forecast 07/31/08 | Forecast 08/31/08 | Forecast 09/30/08 | Forecast 10/31/08 | Forecast 11/30/08 | Forecast 12/31/08 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT LIABILITIES:** | | | | | | | | | | | | |
| Current Maturities of LTD | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | $ 1,800 | $ 2,181 | $ 2,569 | $ 2,686 | $ 2,797 |
| Borrowings under revolving credit facility | 18,000 | 16,727 | 2,100 | 23,451 | 14,621 | 17,500 | 34,500 | 37,344 | 23,086 | 16,639 | 8,114 | 20,769 |
| Trade Accounts Payable | 24,235 | 26,658 | 21,829 | 19,554 | 25,017 | 23,794 | 24,970 | 26,568 | 24,945 | 24,891 | 23,284 | 23,980 |
| Accrued liabilities | 79,368 | 82,615 | 80,632 | 80,375 | 76,991 | 74,831 | 71,459 | 73,317 | 75,788 | 81,595 | 79,970 | 79,803 |
| Total Current Liabilities | 123,403 | 128,100 | 106,360 | 125,181 | 118,430 | 117,925 | 132,729 | 139,029 | 126,000 | 125,694 | 114,054 | 127,349 |
| **LONG TERM DEBT AND OTHER LIABILITIES** | | | | | | | | | | | | |
| Long Term Debt (Less Current Maturities) | 226,417 | 226,426 | 226,433 | 225,992 | 206,000 | 206,007 | 205,564 | 205,571 | 209,301 | 212,602 | 213,941 | 215,219 |
| Post Retirement Benefits | 12,587 | 12,604 | 12,568 | 12,541 | 12,720 | 12,730 | 12,680 | 12,675 | 12,660 | 12,645 | 12,630 | 12,615 |
| Deferred Tax Liability | 16,689 | 16,703 | 16,848 | 16,875 | 16,892 | 15,295 | 14,634 | 14,468 | 14,175 | 14,204 | 14,135 | 13,877 |
| Other Long Term Liabilities | 94,833 | 91,859 | 95,751 | 90,140 | 88,372 | 89,216 | 88,621 | 88,209 | 87,722 | 86,903 | 86,505 | 84,555 |
| Total LTD and Other Liabilities | 350,526 | 347,592 | 351,600 | 345,548 | 323,984 | 323,249 | 321,510 | 320,923 | 323,858 | 326,354 | 327,211 | 326,266 |
| Total Liabilities | 473,929 | 475,692 | 457,961 | 470,729 | 442,414 | 441,174 | 454,239 | 459,952 | 449,858 | 452,049 | 441,265 | 453,616 |
| **STOCKHOLDERS' EQUITY:** | | | | | | | | | | | | |
| Common Stock | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Additional PIC | 98,393 | 98,459 | 98,525 | 98,591 | 118,002 | 118,083 | 118,164 | 118,245 | 118,326 | 118,407 | 118,488 | 118,569 |
| Retained Earnings | (24,021) | (24,021) | (24,021) | (24,021) | (24,021) | (24,021) | (24,021) | (24,021) | (24,021) | (24,021) | (24,021) | (24,021) |
| Income (YTD) | (11,894) | (17,962) | (24,410) | (24,410) | (23,519) | (26,364) | (29,751) | (32,819) | (33,595) | (32,960) | (34,174) | (34,635) |
| Foreign Currency Translation & Other | (3,175) | (3,090) | (2,948) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) |
| Unearned Compensation | 5 | 8 | 8 | 10 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 |
| Total Stockholders' Equity | 59,406 | 53,492 | 47,911 | 47,535 | 67,839 | 65,075 | 61,770 | 58,783 | 58,087 | 58,804 | 57,670 | 57,291 |
| TOTAL LIABILITIES & STOCKHOLDERS' EQUITY | $ 533,335 | $ 529,184 | $ 505,872 | $ 518,263 | $ 510,253 | $ 506,249 | $ 516,008 | $ 518,735 | $ 507,945 | $ 510,853 | $ 498,935 | $ 510,906 |

7 of 18

BDCM0028425

ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
ACTUAL AND PROJECTED CONSOLIDATED BALANCE SHEETS
For The Periods Ended
($ in 000's)

AHI Consolidated Allied Systems Holdings, Inc. Plan (

($ in thousands)

| | Forecast 01/31/09 | Forecast 02/28/09 | Forecast 03/31/09 | Forecast 04/30/09 | Forecast 05/31/09 | Forecast 06/30/09 | Forecast 07/31/09 | Forecast 08/31/09 | Forecast 09/30/09 | Forecast 10/31/09 | Forecast 11/30/09 | Forecast 12/31/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT ASSETS:** | | | | | | | | | | | | |
| Cash-Unrestricted | $ 2,091 | $ 2,090 | $ 2,092 | $ 2,087 | $ 2,093 | $ 2,089 | $ 2,093 | $ 2,088 | $ 2,092 | $ 2,091 | $ 2,088 | $ 2,093 |
| Cash-Restricted | 18,321 | 18,324 | 14,753 | 14,752 | 14,754 | 12,945 | 12,939 | 12,935 | 12,930 | 12,929 | 12,929 | 13,930 |
| Cash & Cash Equivalents | 20,412 | 20,414 | 16,844 | 16,839 | 16,847 | 15,035 | 15,032 | 15,023 | 15,022 | 15,019 | 15,017 | 16,023 |
| Receivables, net | 44,628 | 47,969 | 49,802 | 54,632 | 47,945 | 56,619 | 45,197 | 44,707 | 56,696 | 50,277 | 48,244 | 57,679 |
| Inventories | 4,730 | 4,776 | 5,016 | 5,091 | 5,120 | 5,053 | 5,063 | 4,961 | 5,039 | 5,020 | 4,795 | 4,761 |
| Deferred Tax Asset | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 | 6,040 |
| Prepayment and Other Current Assets | 34,142 | 32,541 | 31,590 | 29,730 | 28,274 | 26,624 | 24,771 | 26,505 | 24,851 | 30,886 | 29,264 | 37,444 |
| Total Current Assets | 109,952 | 111,740 | 109,292 | 112,331 | 104,226 | 109,372 | 96,103 | 97,236 | 107,048 | 107,223 | 103,360 | 121,947 |
| PROPERTY AND EQUIPMENT, NET | 200,697 | 202,143 | 203,541 | 204,892 | 206,196 | 204,610 | 204,105 | 204,796 | 205,442 | 206,041 | 208,176 | 209,837 |
| **OTHER ASSETS:** | | | | | | | | | | | | |
| Goodwill & S/W, Net | 101,475 | 101,419 | 101,363 | 101,307 | 101,251 | 101,195 | 101,139 | 101,083 | 101,027 | 100,971 | 100,915 | 100,859 |
| Restricted cash and cash equivalents | 50,750 | 50,750 | 44,137 | 44,137 | 44,137 | 40,830 | 40,830 | 40,830 | 40,830 | 40,830 | 40,830 | 42,794 |
| Other | 43,884 | 43,855 | 43,950 | 43,921 | 43,891 | 43,862 | 43,832 | 43,803 | 43,773 | 43,744 | 43,714 | 43,685 |
| Total Other Assets | 196,110 | 196,024 | 189,460 | 189,365 | 189,279 | 185,887 | 185,801 | 185,716 | 185,630 | 185,545 | 185,459 | 187,338 |
| TOTAL ASSETS | $ 506,759 | $ 509,906 | $ 502,283 | $ 506,588 | $ 499,701 | $ 499,869 | $ 486,009 | $ 487,748 | $ 498,120 | $ 498,808 | $ 496,996 | $ 519,121 |

8 of 18

Confidential - Professional's Only

BDCM0028426

ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
ACTUAL AND PROJECTED CONSOLIDATED BALANCE SHEETS
For The Periods Ended
($ in 000's)

**AHI Consolidated Allied Systems Holdings, Inc. Plan 6**

($ in thousands)

| | Forecast 01/31/09 | Forecast 02/28/09 | Forecast 03/31/09 | Forecast 04/30/09 | Forecast 05/31/09 | Forecast 06/30/09 | Forecast 07/31/09 | Forecast 08/31/09 | Forecast 09/30/09 | Forecast 10/31/09 | Forecast 11/30/09 | Forecast 12/31/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CURRENT LIABILITIES:** | | | | | | | | | | | | |
| Current Maturities of LTD | $ 3,584 | $ 3,909 | $ 3,927 | $ 3,945 | $ 3,963 | $ 3,981 | $ 4,000 | $ 4,019 | $ 4,037 | $ 4,056 | $ 4,075 | $ 2,318 |
| Borrowings under revolving credit facility | 12,896 | 13,867 | 3,316 | 12,999 | 8,495 | 11,513 | 10,405 | 8,556 | 11,796 | 6,273 | 9,177 | 19,496 |
| Trade Accounts Payable | 24,248 | 25,756 | 28,858 | 28,142 | 27,026 | 28,511 | 23,876 | 24,729 | 27,470 | 25,553 | 23,228 | 28,392 |
| Accrued liabilities | 81,353 | 82,729 | 82,668 | 79,053 | 78,252 | 75,137 | 71,753 | 75,077 | 76,521 | 82,975 | 79,279 | 84,798 |
| **Total Current Liabilities** | 122,081 | 126,261 | 118,769 | 124,139 | 117,736 | 119,143 | 110,034 | 112,380 | 119,824 | 118,858 | 115,759 | 135,004 |
| **LONG TERM DEBT AND OTHER LIABILITIES** | | | | | | | | | | | | |
| Long Term Debt (Less Current Maturities) | 221,910 | 224,839 | 225,105 | 224,929 | 225,206 | 225,460 | 225,309 | 225,593 | 225,868 | 225,697 | 225,973 | 228,029 |
| Post Retirement Benefits | 12,600 | 12,585 | 12,570 | 12,555 | 12,540 | 12,525 | 12,510 | 12,495 | 12,480 | 12,465 | 12,450 | 12,435 |
| Deferred Tax Liability | 13,582 | 13,395 | 13,388 | 13,258 | 13,234 | 12,975 | 12,689 | 12,652 | 12,572 | 12,690 | 12,746 | 12,604 |
| Other Long Term Liabilities | 84,732 | 84,351 | 83,922 | 83,633 | 83,205 | 82,425 | 83,413 | 83,129 | 82,770 | 82,081 | 81,810 | 80,510 |
| **Total LTD and Other Liabilities** | 332,823 | 335,170 | 334,985 | 334,375 | 334,186 | 333,405 | 333,921 | 333,868 | 333,690 | 332,932 | 332,980 | 333,577 |
| **Total Liabilities** | 454,905 | 461,431 | 453,754 | 458,514 | 451,922 | 452,547 | 443,955 | 446,249 | 453,514 | 451,790 | 448,739 | 468,582 |
| **STOCKHOLDERS' EQUITY:** | | | | | | | | | | | | |
| Common Stock | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Additional PIC | 118,650 | 118,731 | 118,812 | 118,893 | 118,974 | 119,055 | 119,136 | 119,217 | 119,298 | 119,379 | 119,460 | 119,541 |
| Retained Earnings | (58,656) | (58,656) | (58,656) | (58,656) | (58,656) | (58,656) | (58,656) | (58,656) | (58,656) | (58,656) | (58,656) | (58,656) |
| Income (YTD) | (5,517) | (8,977) | (9,004) | (9,541) | (9,916) | (10,455) | (15,803) | (16,439) | (13,413) | (11,083) | (9,925) | (7,723) |
| Foreign Currency Translation & Other | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) | (2,736) |
| Unearned Compensation | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 |
| **Total Stockholders' Equity** | 51,854 | 48,476 | 48,529 | 48,073 | 47,780 | 47,321 | 42,054 | 41,500 | 44,606 | 47,018 | 48,257 | 50,539 |
| **TOTAL LIABILITIES & STOCKHOLDERS' EQUITY** | $ 506,759 | $ 509,906 | $ 502,283 | $ 506,588 | $ 499,701 | $ 499,869 | $ 486,009 | $ 487,748 | $ 498,120 | $ 498,808 | $ 496,996 | $ 519,121 |

BDCM0028427

**ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES**
**ACTUAL AND PROJECTED CONSOLIDATED STATEMENTS OF CASH FLOWS**
**For The Periods Ended**
($ in 000's)

**AHI Consolidated Allied Systems Holdings, Inc. Plan (4-08 – 5 YR PLAN)**

*($ in thousands)*

| | Actual 01/31/08 | Actual 02/29/08 | Forecast 03/31/08 | Forecast 04/30/08 | Forecast 05/31/08 | Forecast 06/30/08 | Forecast 07/31/08 | Forecast 08/31/08 | Forecast 09/30/08 | Forecast 10/31/08 | Forecast 11/30/08 | Forecast 12/31/08 | Forecast 2008 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Net Income (Loss) | $ (11,884) | $ (6,088) | $ (6,791) | $ (657) | $ 891 | $ (2,845) | $ (3,386) | $ (3,089) | $ (776) | $ 635 | $ (1,215) | $ (461) | $ (34,635) |
| Adjustments to Reconcile Net Income (Loss) to Net Cash Provided by Operating Activities: | | | | | | | | | | | | | |
| Depreciation & Amortization | 4,484 | 4,718 | 5,080 | 5,799 | 5,521 | 4,669 | 4,719 | 4,768 | 4,786 | 4,848 | 4,898 | 5,081 | 59,383 |
| Loss (Gain) on Sale of Property & Equipment | (9) | (13) | 70 | | 4 | | | | | | | | 52 |
| Compensation Expense Related to Stock Options & Grants | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 972 |
| Changes in Operating Assets: | | | | | | | | | | | | | |
| Accounts Receivable - Trade | 7,608 | (2,381) | (89) | (13,101) | 10,662 | (2,104) | (980) | (1,692) | 884 | 3,203 | 6,606 | (10,660) | (2,373) |
| Accounts Receivable - Other | (16) | (4) | (318) | 1,343 | 408 | 1,526 | 244 | 2,077 | 65 | (344) | 17 | (347) | 4,648 |
| Inventories | 267 | 36 | 204 | (304) | (37) | 147 | (280) | 105 | (76) | 19 | 225 | | 339 |
| Prepayment and Other Current Assets | (5,623) | (1,571) | 2,861 | 791 | 642 | 2,737 | (960) | (2,073) | 1,301 | (6,349) | 1,250 | (4,639) | (10,513) |
| Trade Accounts Payable | (723) | 2,723 | (5,129) | (2,274) | 5,463 | (1,223) | 1,176 | 1,598 | (1,623) | (54) | (1,507) | 696 | (978) |
| Deferred Income Taxes / Tax Assets / Liabilities | 2 | 13 | 146 | 28 | 18 | (1,841) | (1,597) | (160) | (293) | 29 | (69) | (258) | (2,811) |
| Accrued Wages & Benefits | (282) | 91 | 1,192 | (554) | 48 | (1,670) | (1,670) | (3,490) | 2,189 | 1,763 | (585) | 698 | (3,087) |
| Accrued General Taxes | 789 | 1,637 | (564) | (2,030) | 934 | (376) | 518 | (495) | 199 | 599 | (487) | 539 | 1,271 |
| Accrued Claims and Insurance Reserves | (1,781) | 3,723 | (3,350) | 1,188 | (1,257) | (170) | (181) | (168) | (177) | (182) | (175) | (594) | (3,123) |
| Other Accrued Liabilities | 473 | (1,540) | 1,383 | 1,202 | (555) | 368 | 306 | 789 | 260 | 83 | 24 | 660 | 3,464 |
| Other Long Term Liabilities | 6,000 | (2,973) | 3,892 | (5,611) | (1,768) | 844 | (595) | (413) | (487) | (519) | (338) | (1,950) | (5,277) |
| Other Assets (Includes Note Receivable) | 578 | (927) | 1,824 | (695) | (925) | 1,388 | (1,448) | 1,732 | 29 | 29 | 29 | 29 | 1,712 |
| Total Adjustments | 10,865 | 3,616 | 7,402 | (13,448) | 17,347 | 4,599 | (631) | 8,100 | 6,851 | 2,905 | 10,000 | (14,128) | 43,679 |
| Net Cash Provided by Operating Activities | (1,027) | (2,451) | 1,611 | (14,105) | 18,237 | 1,754 | (3,917) | 5,032 | 6,175 | 3,541 | 8,786 | (14,589) | 9,044 |
| | | | | | | | | | | | | | |
| **CASH FLOW FROM INVESTING ACTIVITIES** | | | | | | | | | | | | | |
| Net (Purchases) of Property & Equipment - Cap Ex | (5,416) | (6,094) | (2,102) | (4,860) | (9,486) | (3,766) | (3,954) | (5,319) | (9,856) | (4,386) | (1,364) | (1,522) | (58,196) |
| Proceeds From Sale of Property & Equipment | 9 | 13 | (70) | (4) | 9 | | | | | | | | (52) |
| Increase in Cash Surrender Value of Life Insurance | | | | | | | 2,792 | | | | | | 2,792 |
| Net Cash Used in Investing Activities | (5,407) | (6,081) | (2,172) | (4,860) | (9,477) | (3,766) | (1,162) | (5,319) | (9,856) | (4,386) | (1,364) | (1,522) | (55,396) |
| | | | | | | | | | | | | | |
| **CASH FLOW FROM FINANCING ACTIVITIES** | | | | | | | | | | | | | |
| Net Issuance (Repayment) of LTD | 5,659 | (1,264) | (14,820) | 20,910 | (28,822) | 2,986 | 16,557 | 2,851 | (10,147) | (2,757) | (7,070) | 14,044 | (1,874) |
| Premium Financing | (1,090) | (865) | (866) | (655) | (865) | (311) | (625) | (625) | (625) | 3,545 | (393) | 1,998 | 41 |
| Other | (153) | (56) | 353 | (49) | 19,520 | 10 | (40) | (15) | (15) | (15) | (15) | (14) | 19,270 |
| Net Cash Provided (Used) by Financing Activities | 4,416 | (1,825) | (15,333) | 20,206 | (9,675) | 2,685 | 15,892 | 2,311 | (10,162) | 773 | (7,478) | 16,028 | 17,437 |
| | | | | | | | | | | | | | |
| EFFECT OF EXCHANGE RATE ON CASH | (114) | 85 | 142 | 213 | | | | | | | | | 325 |
| | | | | | | | | | | | | | |
| NET INCREASE (DECREASE) IN CASH | (2,132) | (10,372) | (15,752) | 1,453 | (1,209) | 572 | 10,912 | 2,024 | (13,844) | (73) | (85) | (83) | (28,589) |
| | | | | | | | | | | | | | |
| CASH – BEGINNING OF PERIOD | 99,719 | 97,587 | 87,215 | 71,463 | 72,916 | 71,708 | 72,280 | 83,192 | 85,216 | 71,372 | 71,299 | 71,214 | 99,719 |
| CASH – END OF PERIOD | $ 97,587 | $ 87,215 | $ 71,463 | $ 72,916 | $ 71,708 | $ 72,280 | $ 83,192 | $ 85,216 | $ 71,372 | $ 71,299 | $ 71,214 | $ 71,130 | $ 71,130 |

Confidential - Professional's Only

BDCM0028428

**ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES**
**ACTUAL AND PROJECTED CONSOLIDATED STATEMENTS OF CASH FLOWS**
**For The Periods Ended**
**($ in 000's)**

AHI Consolidated Allied Systems Holdings, Inc. Plan (/

($ in thousands)

| | Forecast 01/31/09 | Forecast 02/28/09 | Forecast 03/31/09 | Forecast 04/30/09 | Forecast 05/31/09 | Forecast 06/30/09 | Forecast 07/31/09 | Forecast 08/31/09 | Forecast 09/30/09 | Forecast 10/31/09 | Forecast 11/30/09 | Forecast 12/31/09 | Forecast 2009 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH FLOW FROM OPERATING ACTIVITIES** | | | | | | | | | | | | | |
| Net Income (Loss) | (6,517) | (3,459) | (27) | (537) | (375) | (539) | (6,349) | (635) | 3,025 | 2,331 | 1,159 | 2,202 | (7,723) |
| Adjustments to Reconcile Net Income (Loss) to Net Cash Provided by Operating Activities: | | | | | | | | | | | | | |
| Depreciation & Amortization | 4,946 | 4,950 | 5,038 | 5,085 | 5,131 | 3,468 | 3,514 | 3,559 | 3,606 | 3,852 | 3,702 | 3,759 | 50,449 |
| Loss (Gain) on Sale of Property & Equipment | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 81 | 972 |
| Compensation Expense Related to Stock Options & Grants | | | | | | | | | | | | | |
| Changes in Operating Assets: | | | | | | | | | | | | | |
| Accounts Receivable - Trade | 9,660 | (3,221) | (1,433) | (5,038) | 6,341 | (9,888) | 11,178 | 413 | (11,453) | 6,163 | 2,015 | (9,088) | (4,351) |
| Accounts Receivable - Other | 92 | (119) | (400) | 207 | 347 | 1,213 | 244 | 77 | 65 | (344) | 17 | (347) | 1,052 |
| Inventories | 30 | (46) | (240) | (74) | (30) | (10) | (10) | 102 | (78) | 19 | 228 | 34 | (1) |
| Prepayment and Other Current Assets | (918) | 1,601 | 951 | 1,860 | 1,456 | 1,649 | 1,854 | (1,734) | 1,654 | (6,015) | 1,602 | (8,179) | (4,220) |
| Trade Accounts Payable | 288 | 1,508 | 3,102 | (716) | (1,116) | 1,485 | (4,635) | 832 | 2,741 | (1,916) | (2,326) | 5,164 | 4,412 |
| Deferred Income Taxes / Tax Assets / Liabilities | (295) | (187) | (7) | (120) | (24) | (256) | (236) | (30) | (60) | 118 | 67 | (142) | (1,273) |
| Accrued Wages & Benefits | 214 | 1,724 | 862 | (1,008) | (572) | (2,348) | (3,536) | 3,455 | 1,488 | 2,247 | (2,797) | (799) | (343) |
| Accrued General Taxes | 1,477 | 855 | (783) | (1,196) | 118 | (161) | (73) | (95) | 47 | (110) | (355) | 475 | 1,276 |
| Accrued Claims and Insurance Reserves | (32) | (51) | (74) | (84) | (98) | (97) | (108) | 382 | (165) | 701 | (103) | (142) | (1,079) |
| Other Accrued Liabilities | 284 | (228) | 659 | (562) | 468 | (36) | 368 | 136 | 14 | 70 | (48) | (122) | 701 |
| Other Long Term Liabilities | 176 | (381) | (429) | (289) | (427) | (731) | 989 | (284) | (385) | (650) | (270) | (452) | (4,046) |
| Other Assets (includes Note Receivables) | 29 | 29 | 96 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 229 |
| Total Adjustments | 16,012 | 6,365 | 7,241 | (1,864) | 11,721 | (5,316) | 10,108 | 6,915 | (2,350) | 4,006 | 1,831 | (10,887) | 43,780 |
| Net Cash Provided by Operating Activities | 10,484 | 2,906 | 7,213 | (2,401) | 11,346 | (5,855) | 4,759 | 6,280 | 675 | 6,336 | 2,989 | (8,685) | 36,057 |
| | | | | | | | | | | | | | |
| **CASH FLOW FROM INVESTING ACTIVITIES** | | | | | | | | | | | | | |
| Net (Purchase) of Property & Equipment - Cap Ex | (9,660) | (6,380) | (6,380) | (6,380) | (6,380) | (1,826) | (2,953) | (4,195) | (4,195) | (4,195) | (5,782) | (5,364) | (63,687) |
| Proceeds From Sale of Property & Equipment | | | | | | | | | | | | | |
| Increase in Cash Surrender Value of Life Insurance | | | | | | | | | | | | | |
| Net Cash Used in Investing Activities | (9,660) | (6,380) | (6,380) | (6,380) | (6,380) | (1,826) | (2,953) | (4,195) | (4,195) | (4,195) | (5,782) | (5,364) | (63,687) |
| | | | | | | | | | | | | | |
| **CASH FLOW FROM FINANCING ACTIVITIES** | | | | | | | | | | | | | |
| Net Issuance (Repayment) of LTD | (395) | 4,226 | (10,267) | 9,524 | (4,208) | 3,311 | (1,262) | (1,546) | 3,534 | (5,674) | 3,198 | 10,617 | 11,058 |
| Premium Financing | (393) | (734) | (734) | (734) | (734) | (734) | (532) | (532) | (393) | (393) | (393) | 6,417 | 4,439 |
| Other | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (180) |
| Net Cash Provided (Used) by Financing Activities | (803) | 3,476 | (11,017) | 8,776 | (4,959) | 2,661 | (1,809) | (2,093) | 3,519 | (2,144) | 2,790 | 17,019 | 15,317 |
| | | | | | | | | | | | | | |
| **EFFECT OF EXCHANGE RATE ON CASH** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **NET INCREASE (DECREASE) IN CASH** | 32 | 2 | (10,183) | (6) | 8 | (5,119) | (3) | (8) | (1) | (3) | (2) | 2,970 | (12,313) |
| **CASH - BEGINNING OF PERIOD** | 71,130 | 71,162 | 71,164 | 60,981 | 60,976 | 60,984 | 55,865 | 55,862 | 55,853 | 55,852 | 55,850 | 55,847 | 71,130 |
| **CASH - END OF PERIOD** | 71,162 | 71,164 | 60,981 | 60,976 | 60,984 | 55,865 | 55,862 | 55,853 | 55,852 | 55,850 | 55,847 | 59,817 | 58,817 |

Confidential - Professional's Only

**ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES**
**ACTUAL AND PROJECTED COVENANT CALCULATIONS**
For The Periods Ended
($ in 000's)

| AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN) | Forecast 1/31/08 | Forecast 2/29/08 | Forecast 3/31/08 | Forecast 4/30/08 | Forecast 5/31/08 | Forecast 6/30/08 | Forecast 7/31/08 | Forecast 8/31/08 | Forecast 9/30/08 | Forecast 10/31/08 | Forecast 11/30/08 | Forecast 12/31/08 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Minimum Consolidated EBITDA (Section 6.7(c))** | | | | | | | | | | | | |
| Net Income as per GAAP | (11,894) | (6,068) | (5,791) | (657) | 891 | (2,846) | (3,386) | (3,068) | (776) | 635 | (1,215) | (481) |
| (a) Less: Income or (deficit) of a joint interest of any Person(other than a Sub) except for dividends or distributions actually paid | | | | | | | | | | | | |
| (b) Less: Income or (deficit) of any other Person accrued prior to becoming a Subsidiary | | | | | | | | | | | | |
| (c) Less: Income of any subsidiary whose dividends, distributions not permitted | | | | | | | | | | | | |
| (d) Less: After-tax gains or (losses) attributable to Asset Sales or returned surplus from any Pension Plan | 9 | 13 | (70) | | (4) | | | | | | | |
| (e) Less: Any net extraordinary gains or losses not included in (a) through (d) | | | | | | | | | | | | |
| **Consolidated Net Income** | (11,903) | (6,081) | (5,721) | (657) | 895 | (2,845) | (3,386) | (3,068) | (776) | 635 | (1,215) | (461) |
| **Permitted Adjustments to Net Income(to extent deducted from Net Income)** | | | | | | | | | | | | |
| (a) Add: Interest Expense and amortized debt discount | 6,286 | 3,718 | 2,401 | (1,059) | 883 | 1,957 | 1,997 | 2,555 | 2,824 | 2,845 | 2,870 | 2,885 |
| (b) Add: Consolidated Income, single business, franchise, unitary or gross receipt tax expense | 64 | 55 | 438 | 56 | 96 | (120) | (146) | (132) | (11) | 63 | (34) | 6 |
| (c) Add: Depreciation | 4,484 | 4,718 | 5,080 | 5,800 | 5,521 | 4,669 | 4,719 | 4,788 | 4,798 | 4,848 | 4,898 | 5,081 |
| (d) Add: Amortization | | | | | | | | | | | | |
| (e) Add: Cumulative Effect of change in Accounting Principles | | | | | | | | | | | | |
| (f) Add: Management Fees per Management Agreement | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| (g) Add: Transaction Costs(fees, costs, expenses on or before closing date associated with Credit Docs) | | | | | | | | | | | | |
| (h) Add: Administrative expenses for Professional Fees related to Cases(Limited) | (0) | (0) | 0 | (0) | (0) | | | | | | | |
| (i) Add: Cure Payments in connection with assumptions of executory contracts | | (0) | 0 | (0) | | | | | | | | |
| (j) Add: Unusual or infrequent fees and charges(Limited) | 735 | 265 | | | | | | | | | | |
| (k) Add: Non recurring Fees and Charges in 2007 related to effectiveness of the plan(Limited) | | | | | | | | | | | | |
| (l) Add: Other Non Cash charges(excluding items that may be cash in future or are amort of prepay) | 630 | | 1,969 | | | | | | | | | |
| (m) Add: Substantial Contribution claim by Sponsor | | | | | | | | | | | | |
| (n) Less: other Non Cash gains(excluding any non cash gain to the extent it represents the reversal of an accrual or reserve for potential Cash gain in any prior period.) | | (910) | | (504) | (1,095) | | | | | | | |
| **Total Adjustments to Net Income** | 12,324 | 7,971 | 10,013 | 4,419 | 5,530 | 6,631 | 6,693 | 7,317 | 7,737 | 7,982 | 7,859 | 8,096 |
| **Consolidated EBITDA** | 421 | 1,890 | 4,291 | 3,761 | 6,424 | 3,786 | 3,306 | 4,249 | 6,960 | 8,617 | 6,645 | 7,635 |
| Rolling 12 Consolidated EBITDA | 56,098 | 57,434 | 54,057 | 53,354 | 55,761 | 52,576 | 55,089 | 51,327 | 53,051 | 52,561 | 51,887 | 57,987 |
| QTRLY Consolidated Adjusted EBITDA | | | 6,602 | | | 13,972 | | | 14,516 | | | 22,897 |
| Four Qtr Consolidated Adjusted EBITDA | | | 54,057 | | | 52,576 | | | 53,051 | | | 57,987 |

Confidential - Professional's Only

BDCM0028430

## ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
## ACTUAL AND PROJECTED COVENANT CALCULATIONS
### For The Periods Ended
### ($ in 000's)

| AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN) | Forecast 1/31/08 | Forecast 2/29/08 | Forecast 3/31/08 | Forecast 4/30/08 | Forecast 5/31/08 | Forecast 6/30/08 | Forecast 7/31/08 | Forecast 8/31/08 | Forecast 9/30/08 | Forecast 10/31/08 | Forecast 11/30/08 | Forecast 12/31/08 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Leverage Ratio(Section 6.7(b))** | | | | | | | | | | | | |
| Revolver Debt | 18,000 | 16,001 | 2,100 | 23,451 | 14,621 | 17,500 | 34,500 | 37,344 | 23,086 | 16,639 | 8,114 | 20,769 |
| First Lien | 178,650 | 178,650 | 178,650 | 178,200 | 178,200 | 178,200 | 177,750 | 177,750 | 177,896 | 177,597 | 177,743 | 177,894 |
| Second Lien | 50,000 | 50,000 | 50,000 | 50,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,167 | 30,340 | 30,510 | 30,686 |
| LOC Facility | - | - | - | - | - | - | - | - | 125 | 250 | 376 | 502 |
| Capital Leases | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,666 | 7,348 | 8,356 | 9,285 |
| Total | 246,650 | 244,651 | 230,750 | 251,652 | 222,821 | 225,700 | 242,250 | 245,094 | 234,940 | 232,176 | 225,089 | 239,136 |
| Rolling 12 Months EBITDA | 56,098 | 57,434 | 54,057 | 53,354 | 55,781 | 52,576 | 55,089 | 51,327 | 53,051 | 52,581 | 51,887 | 57,987 |
| Four QTR EBITDA | | | 54,057 | | | 52,576 | | | 53,051 | | | 57,987 |
| Leverage | | | 4.27 | | | 4.29 | | | 4.43 | | | 4.12 |
| Maximum Leverage Permitted | | | 4.50 | | | 3.50 | | | 3.50 | | | 3.50 |
| **Test** | | | Pass | | | Fail | | | Fail | | | Fail |
| **Leverage Cushion** | | | 12,507 | | | (41,683) | | | (49,263) | | | (36,182) |
| **EBITDA Cushion** | | | 2,779 | | | (11,909) | | | (14,075) | | | (10,338) |
| **Capital Expenditure Limits(Section 6.7(d))** | | | | | | | | | | | | |
| Actual/Projected Cap Ex | 5,416 | 6,094 | 2,102 | 4,860 | 9,488 | 3,766 | 3,954 | 5,319 | 9,856 | 4,386 | 1,384 | 1,522 |
| Current Year Cumulative Cap Ex | 5,416 | 11,509 | 13,611 | 18,471 | 27,939 | 31,705 | 35,659 | 40,978 | 50,835 | 55,221 | 56,615 | 58,136 |
| Less: Spent Committed Cap Ex from prior Year | (220) | (220) | (220) | (220) | (220) | (220) | (220) | (220) | (220) | (220) | (220) | (220) |
| Covenant Actual Consolidated Capital Expenditures | 5,195 | 11,289 | 13,391 | 18,251 | 27,718 | 31,485 | 35,439 | 40,758 | 50,614 | 55,001 | 56,394 | 57,916 |
| **Maximum Allowable Cap Ex** | | | | | | | | | | | | |
| Base Maximum Cap Ex | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| Plus: Capital Contribution/Equity Interest Cap Ex | | | | | | | | | | | | |
| Plus: Spent Committed Capital Expenditures | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Plus: Permitted Carry Forward Amount(greater of (i) or (ii)): | | | | | | | | | | | | |
| (i) 50% of Excess Cash Flow from Prior year not required to prepay | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) |
| (ii) Prior Year Base Maximum Cap Ex | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 | 67,000 |
| Less: Prior Year Actual Consolidated Cap Ex, Plus | 82,257 | 82,257 | 82,257 | 82,257 | 82,257 | 82,257 | 82,257 | 82,257 | 82,257 | 82,257 | 82,257 | 82,257 |
| Prior Year Spent Committed Cap Ex | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 | 220 |
| Total for (ii) | (15,477) | (15,477) | (15,477) | (15,477) | (15,477) | (15,477) | (15,477) | (15,477) | (15,477) | (15,477) | (15,477) | (15,477) |
| Greater of (i) or (ii) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) | (12,931) |
| **Total Maximum Allowable Cap Ex** | 77,500 | 77,500 | 77,500 | 77,500 | 77,500 | 77,500 | 77,500 | 77,500 | 77,500 | 77,500 | 77,500 | 77,500 |
| **Test** | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass |
| **Cushion** | 72,305 | 66,211 | 64,109 | 59,249 | 49,782 | 46,015 | 42,061 | 36,742 | 26,886 | 22,499 | 21,106 | 19,584 |

Confidential - Professional's Only

**ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES**
**ACTUAL AND PROJECTED COVENANT CALCULATIONS**
**For The Periods Ended**
**($ in 000's)**

| AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN) | Forecast 1/31/08 | Forecast 2/29/08 | Forecast 3/31/08 | Forecast 4/30/08 | Forecast 5/31/08 | Forecast 6/30/08 | Forecast 7/31/08 | Forecast 8/31/08 | Forecast 9/30/08 | Forecast 10/31/08 | Forecast 11/30/08 | Forecast 12/31/08 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INTEREST COVERAGE RATIO(Section 6.7(a))** | | | | | | | | | | | | |
| Interest Expense per P&L | 6,286 | 3,718 | 2,401 | 2,202 | 2,665 | 1,957 | 1,997 | 2,555 | 2,824 | 2,945 | 2,870 | 2,885 |
| Less: Upfront Fees , ancillary costs and amortization thereof | (4,030) | (1,653) | (196) | (151) | (459) | (10) | (10) | (79) | (517) | (529) | (521) | (533) |
| Net Interest Expense | 2,256 | 2,065 | 2,204 | 2,050 | 2,205 | 1,947 | 1,987 | 2,476 | 2,307 | 2,416 | 2,350 | 2,352 |
| Capitalized Interest Expense | | | | | | | | | | | | |
| Total Interest Expense | 2,256 | 2,065 | 2,204 | 2,050 | 2,205 | 1,947 | 1,987 | 2,476 | 2,307 | 2,416 | 2,350 | 2,352 |
| Actual Rolling Twelve Interest Expense | 27,797 | 28,070 | 28,597 | 26,750 | 26,714 | 26,419 | 26,086 | 26,242 | 26,271 | 26,449 | 26,638 | 26,615 |
| QTRLY Interest Expense | | | 6,525 | | | 6,203 | | | 6,770 | | | 7,117 |
| Four QTR Interest Expense(Proforma prior to 4/1/2008) | | | 28,597 | | | 26,419 | | | 26,271 | | | 26,615 |
| Four QTR EBITDA | | | 54,057 | | | 52,576 | | | 53,051 | | | 57,987 |
| Four QTR Interest Coverage Ratio | | | 2.03 | | | 1.99 | | | 2.02 | | | 2.18 |
| Four Qtr. Interest Coverage Ratio Permitted | | | 2.00 | | | 2.25 | | | 2.50 | | | 2.50 |
| Test | | | Pass | | | FAIL | | | FAIL | | | FAIL |
| Interest Expense Cushion | | | 431 | | | (3,052) | | | (5,051) | | | (3,420) |
| EBITDA Cushion | | | 863 | | | (6,867) | | | (12,627) | | | (8,551) |

Confidential - Professional's Only

## ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
### ACTUAL AND PROJECTED COVENANT CALCULATIONS
### For The Periods Ended
($ in 000's)

15 of 18

**AHI Consolidated Allied Systems Holdings, Inc. Plan (June 09 - 5 YR PLAN)**

**Minimum Consolidated EBITDA (Section 6.7(c))**

| | Forecast 1/31/09 | Forecast 2/28/09 | Forecast 3/31/09 | Forecast 4/30/09 | Forecast 5/31/09 | Forecast 6/30/09 | Forecast 7/31/09 | Forecast 8/31/09 | Forecast 9/30/09 | Forecast 10/31/09 | Forecast 11/30/09 | Forecast 12/31/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Net Income as per GAAP | (5,517) | (3,459) | (27) | (537) | (375) | (539) | (5,348) | (635) | 3,025 | 2,331 | 1,158 | 2,202 |
| (a) Less: Income or (deficit) of a joint interest of any Person(other than a Sub) except for dividends or distributions actually paid | | | | | | | | | | | | |
| (b) Less: Income or (deficit) of any other Person accrued prior to becoming a Subsidiary | | | | | | | | | | | | |
| (c) Less: Income of any subsidiary whose dividends, distributions not permitted | | | | | | | | | | | | |
| (d) Less: After-tax gains or (losses) attributable to Asset Sales or returned surplus from any Pension Plan | | | | | | | | | | | | |
| (e) Less: Any net extraordinary gains or losses not included in (a) through (d) | | | | | | | | | | | | |
| **Consolidated Net Income** | (5,517) | (3,459) | (27) | (537) | (375) | (539) | (5,348) | (635) | 3,025 | 2,331 | 1,158 | 2,202 |
| **Permitted Adjustments to Net Income(to extent deducted from Net Income)** | | | | | | | | | | | | |
| (a) Add: Interest Expense and amortized debt discount | 2,937 | 2,722 | 2,988 | 2,835 | 2,986 | 2,874 | 2,979 | 2,971 | 2,875 | 2,982 | 2,857 | 2,962 |
| (b) Add: Consolidated Income, single business, franchise, unitary or gross receipt tax expense | (261) | (152) | 28 | 2 | 10 | 1 | (252) | (4) | 189 | 152 | 91 | 146 |
| (c) Add: Depreciation | 4,946 | 4,990 | 5,038 | 5,065 | 5,131 | 3,468 | 3,514 | 3,559 | 3,606 | 3,652 | 3,702 | 3,759 |
| (d) Add: Amortization | | | | | | | | | | | | |
| (e) Add: Cumulative Effect of change in Accounting Principles | | | | | | | | | | | | |
| (f) Add: Management Fees per Management Agreement | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 |
| (g) Add: Transaction Costs(fees, costs, expenses on or before closing date associated with Credit Docs) | | | | | | | | | | | | |
| (h) Add: Administrative expenses for Professional Fees related to Cases(Limited) | | | | | | | | | | | | |
| (i) Add: Cure Payments in connection with assumptions of executory contracts | | | | | | | | | | | | |
| (j) Add: Unusual or Infrequent fees and charges(Limited) | | | | | | | | | | | | |
| (k) Add: Non recurring Fees and Charges in 2007 related to effectiveness of the plan(Limited) | | | | | | | | | | | | |
| (l) Add: Other Non Cash charges(excluding items that may be cash in future or are amort of prepay) | | | | | | | | | | | | |
| (m) Add: Substantial Contribution claim by Sponsor | | | | | | | | | | | | |
| (n) Less: other Non Cash gains(excluding any non cash gain to the extent it represents the reversal of an accrual or reserve for potential Cash gain in any prior period) | | | | | | | | | | | | |
| **Total Adjustments to Net Income** | 7,748 | 7,685 | 8,179 | 8,046 | 8,252 | 6,468 | 6,367 | 6,652 | 6,795 | 6,912 | 6,775 | 6,992 |
| **Consolidated EBITDA** | 2,230 | 4,225 | 8,152 | 7,509 | 7,877 | 5,929 | 1,018 | 6,016 | 9,821 | 9,242 | 7,933 | 9,194 |
| Rolling 12 Consolidated EBITDA | 59,796 | 62,132 | 65,992 | 69,739 | 71,192 | 73,334 | 71,047 | 72,814 | 75,674 | 76,299 | 77,588 | 79,146 |
| QTRLY Consolidated Adjusted EBITDA | | | 14,607 | | | 21,315 | | | 16,855 | | | 26,369 |
| Four Qtr Consolidated Adjusted EBITDA | | | 65,992 | | | 73,334 | | | 75,674 | | | 79,146 |

Confidential - Professional's Only

**ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES**
**ACTUAL AND PROJECTED COVENANT CALCULATIONS**
**For The Periods Ended**
**($ in 000's)**

| AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN) | Forecast 1/31/09 | Forecast 2/28/09 | Forecast 3/31/09 | Forecast 4/30/09 | Forecast 5/31/09 | Forecast 6/30/09 | Forecast 7/31/09 | Forecast 8/31/09 | Forecast 9/30/09 | Forecast 10/31/09 | Forecast 11/30/09 | Forecast 12/31/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Leverage Ratio(Section 6.7(b))** | | | | | | | | | | | | |
| Revolver Debt | 12,896 | 13,867 | 3,316 | 12,999 | 8,495 | 11,513 | 10,405 | 8,556 | 11,796 | 6,273 | 9,177 | 19,496 |
| First Lien | 177,595 | 177,731 | 177,882 | 177,578 | 177,729 | 177,875 | 177,576 | 177,727 | 177,873 | 177,574 | 177,720 | 177,871 |
| Second Lien | 30,863 | 31,043 | 31,206 | 31,389 | 31,567 | 31,763 | 31,934 | 32,123 | 32,313 | 32,499 | 32,693 | 32,882 |
| LOC Facility | 628 | 755 | 882 | 1,009 | 1,136 | 1,264 | 1,392 | 1,521 | 1,650 | 1,779 | 1,908 | 2,038 |
| Capital Leases | 16,752 | 19,557 | 19,392 | 19,220 | 19,053 | 18,878 | 18,708 | 18,536 | 18,357 | 18,183 | 18,001 | 17,823 |
| **Total** | 238,734 | 242,953 | 232,678 | 242,195 | 237,981 | 241,284 | 240,015 | 238,462 | 241,989 | 236,308 | 239,500 | 250,110 |
| Rolling 12 Months EBITDA | 59,796 | 62,132 | 65,992 | 69,739 | 71,192 | 73,334 | 71,047 | 72,814 | 75,674 | 76,299 | 77,588 | 79,146 |
| Four QTR EBITDA | | | 65,992 | | | 73,334 | | | 75,674 | | | 79,146 |
| Leverage | | | 3.53 | | | 3.29 | | | 3.20 | | | 3.16 |
| Maximum Leverage Permitted | | | 3.25 | | | 3.25 | | | 3.25 | | | 3.25 |
| **Test** | | | Fail | | | Fail | | | Pass | | | Pass |
| Leverage Cushion | | | (18,204) | | | (2,947) | | | 3,951 | | | 7,115 |
| EBITDA Cushion | | | (5,601) | | | (907) | | | 1,216 | | | 2,189 |
| **Capital Expenditure Limits (Section 6.7(d))** | | | | | | | | | | | | |
| Actual/Projected Cap Ex | 9,660 | 6,380 | 6,380 | 6,380 | 6,380 | 1,826 | 2,953 | 4,195 | 4,195 | 4,195 | 5,782 | 5,384 |
| Current Year Cumulative Cap Ex | 9,660 | 16,039 | 22,419 | 28,798 | 35,178 | 37,004 | 39,957 | 44,152 | 48,346 | 52,541 | 58,323 | 63,687 |
| Less: Spent Committed Cap Ex from prior Year | (7,500) | (7,500) | (7,500) | (7,500) | (7,500) | (7,500) | (7,500) | (7,500) | (7,500) | (7,500) | (7,500) | (7,500) |
| Covenant Actual Consolidated Capital Expenditures | 2,160 | 8,539 | 14,919 | 21,298 | 27,678 | 29,504 | 32,457 | 36,652 | 40,846 | 45,041 | 50,823 | 56,187 |
| **Maximum Allowable Cap Ex** | | | | | | | | | | | | |
| Base Maximum Cap Ex | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| Plus: Capital Contribution/Equity Interest Cap Ex | | | | | | | | | | | | |
| Plus: Spent Committed Capital Expenditures | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Plus: Permitted Carry Forward Amount(greater of (i) or (ii)): | (5,765) | (5,765) | (5,765) | (5,765) | (5,765) | (5,765) | (5,765) | (5,765) | (5,765) | (5,765) | (5,765) | (5,765) |
| (i) 50% of Excess Cash Flow from Prior year not required to prepay | | | | | | | | | | | | |
| (ii) Prior Year Base Maximum Cap Ex | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| Less: Prior Year Actual Consolidated Cap Ex Plus: | 58,136 | 58,136 | 58,136 | 58,136 | 58,136 | 58,136 | 58,136 | 58,136 | 58,136 | 58,136 | 58,136 | 58,136 |
| Prior Year Spent Committed Cap Ex Ex | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Total for (i) or (ii) | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 |
| Greater of (i) or (ii) | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 | 4,364 |
| Total Maximum Allowable Cap Ex | 81,864 | 81,864 | 81,864 | 81,864 | 81,864 | 81,864 | 81,864 | 81,864 | 81,864 | 81,864 | 81,864 | 81,864 |
| **Test** | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass | Pass |
| Cushion | 79,704 | 73,325 | 66,945 | 60,565 | 54,186 | 52,360 | 49,407 | 45,212 | 41,017 | 36,822 | 31,040 | 25,677 |

BDCM0028434

ALLIED SYSTEMS HOLDINGS, INC. AND SUBSIDIARIES
ACTUAL AND PROJECTED COVENANT CALCULATIONS
For The Periods Ended
($ in 000's)

| AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN) | Forecast 1/31/09 | Forecast 2/28/09 | Forecast 3/31/09 | Forecast 4/30/09 | Forecast 5/31/09 | Forecast 6/30/09 | Forecast 7/31/09 | Forecast 8/31/09 | Forecast 9/30/09 | Forecast 10/31/09 | Forecast 11/30/09 | Forecast 12/31/09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INTEREST COVERAGE RATIO(Section 6.7(a))** | | | | | | | | | | | | |
| Interest Expense per P&L | 2,937 | 2,722 | 2,988 | 2,835 | 2,986 | 2,874 | 2,979 | 2,971 | 2,875 | 2,982 | 2,857 | 2,962 |
| Less: Upfront Fees, ancillary costs and amortization thereof | (533) | (522) | (521) | (535) | (536) | (539) | (540) | (548) | (545) | (545) | (549) | (549) |
| Net Interest Expense | 2,404 | 2,200 | 2,467 | 2,299 | 2,450 | 2,334 | 2,439 | 2,423 | 2,330 | 2,437 | 2,308 | 2,413 |
| Capitalized Interest Expense | | | | | | | | | | | | |
| Total Interest Expense | 2,404 | 2,200 | 2,467 | 2,299 | 2,450 | 2,334 | 2,439 | 2,423 | 2,330 | 2,437 | 2,308 | 2,413 |
| Actual Rolling Twelve Interest Expense | 26,764 | 26,899 | 27,161 | 27,410 | 27,655 | 28,042 | 28,484 | 28,442 | 28,465 | 28,486 | 28,445 | 28,506 |
| QTRLY Interest Expense | | | 7,071 | | | 7,084 | | | 7,193 | | | 7,158 |
| Four QTR Interest Expense(Proforma prior to 4/1/2008) | | | 27,161 | | | 28,042 | | | 28,465 | | | 28,506 |
| Four QTR EBITDA | | | 65,992 | | | 73,334 | | | 75,674 | | | 79,146 |
| Four QTR Interest Coverage Ratio | | | 2.43 | | | 2.62 | | | 2.66 | | | 2.78 |
| Four Qtr. Interest Coverage Ratio Permitted | | | 2.75 | | | 2.75 | | | 2.75 | | | 2.75 |
| Test | | | FAIL | | | FAIL | | | FAIL | | | Pass |
| Interest Expense Cushion | | | (3,164) | | | (1,375) | | | (947) | | | 275 |
| EBITDA Cushion | | | (8,702) | | | (3,782) | | | (2,605) | | | 755 |

Confidential - Professional's Only

AHI Consolidated Allied Systems Holdings, Inc. Plan (June 08 - 5 YR PLAN)
EXCESS CASH FLOW

|  |  |  | 12/31/2008 | 12/21/2008 |
|---|---|---|---:|---:|
| (i) | (a) | Consolidated Adjusted EBITDA | 57,987 | 79,146 |
| Plus: | (b) | Consolidated Working Capital Adjustement |  |  |
|  |  | Current Assets (Less Cash and Cash Equiv) Beginning of Period | 90,506 | 98,404 |
|  |  | Current Liabilities (Excluding current portion of LT Debt) Beginning of Period | 106,196 | 103,783 |
|  |  | Consolidated Working Capital Beginning of Year | (15,690) | (5,379) |
|  |  |  | - | - |
|  |  | Current Assets (Less Cash and Cash Equiv) End of Period | 98,404 | 105,923 |
|  |  | Current Liabilities (Excluding current portion of LT Debt) Beginning of Period | 103,783 | 113,190 |
|  |  | Consolidated Working Capital End of Year | (5,379) | (7,267) |
|  |  | Net Consolidated Working Capital Adjustment | (10,311) | 1,888 |
| (ii) | Less: |  |  |  |
|  | (a) | Scheduled Repayments of Indebtedness(Excluding Revolving and Swing Line except Perm) | (1,800) | (1,800) |
|  | (b) | Consolidated Capital Expenditures | 0 | 0 |
|  |  | Capital Expenditures | (58,136) | (63,687) |
| Add: |  | Spent Committed Capital Expenditures | 220 | 7,500 |
| Less: |  | Proceeds of financing for Capital Expenditures | - | - |
|  |  | Sales of Assets used to finance | - | - |
|  |  | Spent Committed Capital Expenditures deducted in prior year | - | - |
|  |  | Total Consolidated Capital Expenditures | (57,916) | (56,187) |
|  | (c) | Consolidated Cash Interest Expense |  |  |
|  |  | Consolidated Interest Expense (This is net as used in interest Coverage Ratio) | (26,615) | (28,506) |
|  |  | Less: Any amount not payable in Cash | - | - |
|  |  | Less: Any am Any amounts referred to in Section 2.11(f) | - | - |
|  | (d) | Limited to 2007, any amounts referred to in Section 2.11(f) | - | - |
|  | (e) | consolidated income, single business, etc. taxes | 34 | 406 |
|  | (f) | management fees pursuant to the Management Agreement | - | - |
|  | (g) | For 2007, Transaction Costs paid in Cash | - | - |
|  | (h) | For 2007, costs and expenses resulting from admin expenses related to cases paid in Cash | - | - |
|  | (i) | Cure payments | - | - |
|  | (j) | Unusual or infrequent Cash Payments (Limited to $1.0 M per year $3.0 M aggregate) | - | - |
|  | (k) | For 2007 non-recurring costs and expenses paid in Cash during 2007 related to the Plan | - | - |
|  | (l) | Spent Committed Capital Expenditures paid in Cash within ninety days after year end | (7,500) | (7,500) |
| Equals: |  | Excess Cash Flow | (46,121) | (12,553) |
|  |  | 75% of Excess Cash Flow | (34,591) | (9,415) |
|  |  | Remainder of Excess Cash Flow | (11,530) | (3,138) |
|  |  | Eligible Excess cash flow for Capital Expenditures (50% of Remainder) | (5,765) | (1,569) |

ASSUMES EFFECT OF THE COST OF THE PROPOSED AMENDMENT

Confidential - Professional's Only

BDCM0028436

DRAFT 9/21/08

## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "Forbearance Agreement") is made and entered into as of this ___ day of September, 2008, by and among Allied Systems Holdings, Inc. (formerly known as Allied Holdings, Inc.), a Delaware corporation ("Holdings"), Allied Systems, Ltd. (L.P.), a Georgia limited partnership ("Systems" and, together with Holdings, the "Borrowers" and individually a "Borrower"), The CIT Group/Business Credit, Inc. ("CIT"), as Administrative Agent and Collateral Agent (collectively the "Agent"), and the Lenders party hereto. Certain direct and indirect subsidiaries of Holdings (including the Guarantors under the Credit Agreement (as defined below)) have joined in the execution hereof to acknowledge and consent to the terms and conditions of this Forbearance Agreement.

## RECITALS:

WHEREAS, Borrowers, the Administrative Agent, certain subsidiaries of Holdings, the Lenders party thereto, Goldman Sachs Credit Partners L.P., as Lead Arranger and as Syndication Agent, and the Guarantors named therein, entered into that certain Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (as amended, the "Credit Agreement"; capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed thereto in the Credit Agreement); and

WHEREAS, simultaneously with the execution and delivery of this Forbearance Agreement, Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP (collectively, the "Sponsors") and the Administrative Agent, on behalf of and at the direction of the Requisite Lenders, have entered into that certain Sponsor side Agreement substantially in the form attached hereto as Exhibit A (the "Sponsor Agreement"); and

WHEREAS, (i) the Borrowers have failed to timely comply with their obligation to deliver a certified written report identifying the amount of Term Loans and Second Lien Term Loans purchased by the Restricted Sponsor Affiliates in the months of June and July and the total aggregate amount of Term Loans and Second Lien Terms Loans held by the Restricted Sponsor Affiliates as of the end of such months as required by Section 5.1(a) of the Credit Agreement, which failure to comply as of August 30, 2008 has resulted in an Event of Default under Section 8.1(c) of the Credit Agreement and (ii) the Borrowers, on or about August 29, 2008, delivered to the Administrative Agent certain financial statements and other materials described in and required by Section 5.1(b) and (d) of the Credit Agreement (collectively "Financial Reports") for and in respect of the Fiscal Month and the Fiscal Quarter ended as of June 30, 2008 (collectively the "June Financial Statements"). The June Financial Statements, including without limitation the Compliance Certificate for and with respect to the other June Financial Statements, disclose that the Borrowers breached Sections 6.7(a) and 6.7(b) of the Credit Agreement by failing to comply, as of June 30, 2008, with the financial covenants set forth in such sections (the "Financial Covenant Events of Default"), which failures to comply constitute Events of Default under Section 8.1(c) of the Credit Agreement (the defaults described in clauses (i) and (ii), collectively, the "Specified Existing Events of Default"); and

64534.000030 EMF_US 26205555v8

BDCM0028437

WHEREAS, the Financial Covenant Events of Default were set forth and described in that certain Notice of Default and Reservation of Rights from the Agent to Holdings, dated as of September 3, 2008, pursuant to which the Borrowers were notified that the Financial Covenant Events of Default had occurred and, among other matters, that the Agent and the Lenders had reserved and would continue to reserve all of their respective rights and remedies under the Credit Documents and pursuant to applicable law; and

WHEREAS, by reason of the Specified Existing Events of Default, Agent, on behalf of the Lenders, is authorized to exercise all remedies available to it under the Credit Documents, including, but not limited to, the right to repossess and foreclose upon the Collateral; and

WHEREAS, the Borrowers anticipate that they will not be in compliance with Sections 6.7(a) and 6.7(b) of the Credit Agreement for the fiscal quarter ending September 30, 2008 (the "Specified Anticipated Events of Default"; the Specified Existing Events of Default and the Specified Anticipated Events of Default are hereinafter referred to collectively as the "Specified Events of Default"); and

WHEREAS, despite the Specified Events of Default, Borrowers desire that the Agent and Lenders forbear from exercising remedies of suit, repossession and foreclosure otherwise available to the Agent, on behalf of the Lenders, under the Credit Documents in respect of the Specified Events of Default, and make other concessions, as set forth herein; and

WHEREAS, Agent and Lenders are willing to forbear from pursuing their remedies in connection with the Specified Events of Default, and make other concessions to the Credit Parties (collectively the "Credit Parties' Benefits"), all on the terms and conditions contained herein, each of which term and condition, individually and in the aggregate, and including the performance thereof by Credit Parties, and the performance by the Sponsors of the Sponsor Agreement, constitute the consideration to the Agent and Lenders for entering into this Forbearance Agreement, and in the absence of any of which Agent and Lenders would not have entered into this Forbearance Agreement or otherwise extended to Borrowers the Credit Parties' Benefits; and

WHEREAS, Borrowers acknowledge and agree that the Credit Parties' Benefits hereunder are of immediate and material benefit, financial and otherwise, to Borrowers, and that neither Agent nor Lenders were or are under any obligation to extend to Borrowers the Credit Parties' Benefits provided hereunder.

NOW, THEREFORE, in consideration of the foregoing premises, and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    Acknowledgments by Borrowers.

(a)    Claims and Liens. Borrowers hereby acknowledge and agree that (i) as of the close of business on September 17, 2008, (A) the outstanding aggregate respective principal balances of (1) the Revolving Loans totaled $34,500,000 and (2) the Term Loans totaled $177,750,000, in each case exclusive of accrued interest, costs and attorney's fees

2

Confidential - Professional's Only

BDCM0028438

chargeable to Borrowers under the Credit Documents, and (B) the LC Usage totaled $45,278,376; and (ii) all Obligations of Borrowers to the Agent and the Lenders are secured by validly perfected first priority security interests in substantially all assets of the Borrowers, except to the extent that the Credit Documents expressly permit that such assets are not required to be so secured or perfected.

(b)    Specified Events of Default.    Borrowers hereby further acknowledge and agree that (i) the Specified Existing Events of Default have occurred, as set forth in the Recitals, (ii) the Specified Existing Events of Default are continuing and have not been cured by Borrowers or waived, released, extinguished or compromised by Agent or any of the Lenders; and (iii) as a result of the Specified Existing Events of Default, all of the Obligations under the Credit Documents, at the election of the Lenders, could be declared absolutely and immediately due and owing by Borrowers, and Agent, on behalf of the Lenders, would have full legal right to exercise any and all of its rights and remedies under the Credit Documents or otherwise available at law and in equity with respect thereto.

(c)    Additional Events of Default.    The parties hereto acknowledge, confirm and agree that (i) the failure of Borrowers to comply with the covenants, conditions and agreements contained in this Forbearance Agreement and (ii) the failure of the Sponsors to comply with the covenants, conditions and agreements contained in the Sponsor Agreement, shall each individually constitute an immediate Event of Default under the Credit Agreement and the other Credit Documents, and that no such Event of Default shall be subject to any cure or grace period (except as otherwise expressly set forth herein).

(d)    No Waiver, Etc.    Borrowers acknowledge and agree that, notwithstanding the agreement of Agent and Lenders herein to conditionally forbear from exercising their remedies under the Credit Documents or pursuant to this Forbearance Agreement in respect of the Specified Events of Default, in no event shall such actions by Agent or Lenders (including without limitation the execution and delivery by the Administrative Agent of the Sponsor Agreement) be deemed a waiver, release, extinguishment, compromise or cure of the Specified Events of Default or of any other current or future Default or Event of Default.

2.    Forbearance.

(a)    Forbearance.    Subject to compliance by Borrowers and, to the extent applicable, the Sponsor, with the respective Forbearance Conditions (as defined in Section 2(b) below), during the period commencing on the date hereof and ending on the earliest to occur of (w) October 15, 2008, or (x) the occurrence of an Event of Default under the Credit Agreement (other than the Specified Events of Default), or (y) the date that any default with respect to, or other failure of, the Forbearance Conditions (as defined in Section 2(b) below), or (z) any termination of the forbearance under the Second Lien Forbearance Agreement (as defined in Section 6(d) below) or any modification of such Second Lien Forbearance Agreement (other than such modifications that are not adverse to the Borrowers, Agent or the Lenders and of which the Lenders and the Administrative Agent have received written notice) occurs (such

3

Confidential - Professional's Only

BDCM0028439

period of time, the "Forbearance Period"), Agent and Lenders agree that they will not, but only in respect of the Specified Events of Default:

        (i)      exercise any remedy available to them under the Credit Documents or under any applicable law to enforce collection from Borrowers of any Obligations or foreclose upon their security interest(s) in any of the Collateral; or

        (ii)     accelerate the maturity date of any of the Obligations; or

        (iii)   institute suit against Borrowers or any of their respective assets.

        (b)     <u>Conditions to Forbearance</u>.  Each of the following conditions shall constitute a forbearance condition ("Forbearance Condition"), the continuing satisfaction of each and every one of which shall be a continuing condition to the agreement of Agent and Lenders to forbear as set forth above in <u>Section 2(a)</u>:

        (i)      Each Credit Party shall duly observe and perform each and every obligation and covenant on its part to be performed under the Credit Documents (it being understood and agreed that the Borrowers do not hereby undertake to cure or otherwise remedy or modify any of the specific acts or omissions that gave rise to or may give rise to any of the Specified Events of Default), this Forbearance Agreement and any agreement, instrument or document executed in connection with this Forbearance Agreement including, without limitation, Borrowers' obligations to pay to Agent, on behalf of the Lenders, all installments of principal, interest, fees, charges, expenses and premiums, as and when the same are due and payable pursuant to the Credit Agreement (whether due at stated maturity, upon acceleration or otherwise); and

        (ii)     Each of the Sponsors shall duly observe and perform each and every obligation and covenant on its part to be performed under the Sponsor Agreement; and

        (iii)   No Default or Event of Default shall exist or shall have occurred under any of the terms, conditions, provisions or covenants of the Credit Documents, including this Forbearance Agreement and the Sponsor Agreement, except the Specified Events of Default; and

        (iv)   Except in respect of the Specified Events of Default, the representations and warranties contained in the Credit Documents, including this Forbearance Agreement and any agreement, instrument or document executed in connection herewith or pursuant hereto shall be true and correct in all material respects as of the date of this Forbearance Agreement and shall continue to be true and correct in all material respects at all times hereafter (except to the extent that any such representation or warranty, by its express terms, relates to a prior specific date or period); and

        (v)     Borrowers agree to provide to the Agent copies or, in the case of verbal notices, information in respect of, any and all notices and correspondence of any kind whatsoever from any equipment or inventory vendor or any other trade creditor with respect to

4

Confidential - Professional's Only

any default in payment of amounts due such vendor or trade creditor in excess of $10,000, within three (3) Business Days of the receipt of any such notice or correspondence; and

(vi)    Neither of the Borrowers nor any of their respective Subsidiaries shall, during the Forbearance Period, pay to or for the benefit of any Restricted Sponsor Affiliate any interest (other than any interest that is paid in kind by adding to the principal balance of the Second Lien Term Loans) on or principal with respect to any of the Loans or any of the Second Lien Term Loans; provided, that, for the avoidance of doubt, the amount of principal and interest otherwise due and owing any Restricted Sponsor Affiliate under the terms of the Second Lien Credit Agreement shall continue to accrue from and after the date hereof in accordance with the terms of the Second Lien Credit Agreement notwithstanding the provisions set forth herein; and

(vii)    Neither of the Borrowers nor any of their respective Subsidiaries shall, during the Forbearance Period, make any payments (other than reasonable and documented ordinary course out-of-pocket expenses) to or for the benefit of any Restricted Sponsor Affiliate, pursuant to any Management Agreement or otherwise; provided, that, for the avoidance of doubt, the amount of (other than reasonable and documented ordinary course out-of-pocket expenses) management fees otherwise due and owing any Restricted Sponsor Affiliate under the terms of the Management Agreement shall continue to accrue from and after the date hereof in accordance with the terms of the Management Agreement notwithstanding the provisions set forth herein; and

(viii)    No termination of the Credit Agreement or this Forbearance Agreement or any provisions thereof or hereof, or any of the other Credit Documents, shall relieve or discharge the Credit Parties of their respective duties, covenants and obligations under the Credit Agreement and the other Credit Documents until all Obligations, together with all interest accrued thereon and the amount of any applicable premium, have been indefeasibly paid and satisfied in full in immediately available funds on terms and conditions acceptable to the Lenders. Each Credit Party hereby expressly waives any right to receive notification under Section 9-611 of the UCC or otherwise of any disposition of any Collateral by the Lenders or their designees, and waives any rights under Sections 9-620(e) and 9-623 of the UCC.

(c)    <u>Payment of the Obligations; Default Rate; Modifications to Credit Agreement</u>. So long as the Specified Events of Default are continuing, and notwithstanding anything to the contrary set forth in the Credit Agreement or any other Credit Document (i) the principal amount of all Loans and Swing Line Loans outstanding as of and after August 29, 2008 shall bear interest, from and after August 29, 2008, at a rate that is 2% per annum in excess of the rate that is otherwise payable under the Credit Agreement with respect to such Loans and Swing Line Loans; provided, in the case of Eurodollar Rate Loans, upon the expiration of the Interest Period in effect at the time any such increase in interest rate is effective such Eurodollar Rate Loans shall thereupon become Base Rate Loans and shall thereafter bear interest payable upon demand at a rate which is 2% per annum in excess of the interest rate otherwise payable under the Credit Agreement for Base Rate Loans, (ii) any un-reimbursed amount paid by the Issuing Bank in respect of any LC Disbursement as of and after August 29, 2008 shall bear interest, from and after August 29, 2008, at a rate that is 2% per annum in excess of the rate that is otherwise payable under the Credit Agreement with respect to each such LC Disbursement,

5

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028441

(iii) the Borrowers shall not be entitled to request or receive any further Revolving Loans, Swing Line Loans or Letters of Credit, (iv) representatives of the Agent or any Lender may, at any time during business hours and, with advance notice that is reasonable under the circumstances, outside of business hours, visit and inspect any of the Borrowers' facilities or locations, and be granted access to and have the ability to ask questions of and receive responses from employees of either of the Borrowers, (v) the Borrowers shall make their respective senior management personnel available for weekly or other periodic conference calls with the Agent and the Lenders to discuss the Borrowers' financial results and other matters specified by the Agent or any Lender, (vi) not later than September 23, 2008, and on a weekly basis thereafter, the Borrowers shall deliver to the Agent a rolling thirteen-week cash flow forecast, together with a variance analysis of the variances between projections and actual results for the prior week, in each case in form and substance acceptable to the Agent and the Lenders, and (vii) the Borrowers shall not make any Consolidated Capital Expenditures; provided that, the Borrowers may make the Consolidated Capital Expenditures set forth in Schedule 2(c) hereof during the Forbearance Period so long as (x) the aggregate amount of all Consolidated Capital Expenditures made by the Borrowers during the Forbearance Period does not exceed $7,684,250 and (y) the Borrowers timely comply with each of their obligations under the Credit Documents concerning the creation and perfection of the Agent's security interest in the assets of the Grantors, including but not limited to, the vehicles. From and after the date on which any of the Forbearance Conditions shall cease to be satisfied, the Obligations, at the election of the Agent or the Requisite Lenders, may be collected by whatever means are authorized by the Credit Documents and by applicable law. The obligations of the Borrowers under clauses (i)-(vi) of this Section 2(c) shall survive the expiration or other termination of the Forbearance Agreement.

(d)    <u>Effect and Construction of Forbearance</u>:    Except as otherwise expressly provided herein, the Credit Agreement and the other Credit Documents shall remain in full force and effect in accordance with their respective terms, and neither this Forbearance Agreement nor the making of any Loans simultaneously herewith or subsequent hereto shall be construed to: (i) impair the validity, perfection or priority of any lien or security interest securing the Obligations; (ii) waive or impair any rights, powers or remedies of Agent or Lenders under the Credit Agreement and the other Credit Documents upon termination of the Forbearance Period, with respect to the Specified Events of Default or otherwise; (iii) constitute an agreement by Agent or Lenders or require Agent or Lenders to extend the Forbearance Period or grant additional forbearance periods, extend the term of the Credit Agreement or the time for payment of any of the Obligations; (iv) require Agent or Lenders to make any Loans or other extensions of credit to Borrowers after termination of the Forbearance Period, other than in Agent's or Lender's sole and absolute discretion; or (v) constitute a waiver of any right of Agent or Lenders to insist on strict compliance by the Credit Parties with each and every term, condition and covenant of this Forbearance Agreement and the Credit Documents, except as expressly otherwise provided herein.

(e)    <u>No Course of Dealing or Performance</u>:    Borrowers acknowledge and agree that the agreement of Agent and Lenders to forbear from exercising their rights and remedies under the Credit Documents with respect to the Specified Events of Default pursuant to and as reflected in this Forbearance Agreement does not and shall not create (nor shall Borrowers rely upon the existence of or claim or assert that there exists) any obligation of Agent

6

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

or Lenders to consider or agree to any waiver or any further forbearance and, in the event that Agent or Lenders subsequently agrees to consider any waiver or any further forbearance, neither the existence of any prior forbearance, nor this Forbearance Agreement, nor any other conduct of the Agent or Lenders, or any of them, shall be of any force or effect on consideration or decision with respect to any such requested waiver or forbearance, and neither Agent nor any Lender shall have any obligation whatsoever to consider or agree to further forbear or to waive any Default or Event of Default.   In addition, neither (w) the execution and delivery of this Forbearance Agreement or the Sponsor Agreement, (x) the actions of Agent or Lenders in obtaining or analyzing any information from Borrowers or Sponsors, whether or not related to consideration of any waiver, modification, forbearance or alteration of the Credit Agreement or any other Credit Document, any Default or Event of Default thereunder, or otherwise, including, without limitation, any discussions or negotiations (heretofore or, if any, hereafter) between Agent or Lenders and Borrowers or Sponsors regarding any potential waiver, modification, forbearance or amendment related to the Credit Agreement, (y) any failure of Agent or Lenders to exercise any of their rights under, pursuant or with respect to the Credit Agreement or any other Credit Document, nor (z) any action, inaction, waiver, forbearance, amendment or other modification of or with respect to the Credit Agreement or any other Credit Document, shall, except to the extent otherwise expressly provided herein or unless evidenced by a subsequent written agreement (and then only to the extent provided by the express provisions thereof):

(i)      constitute a waiver by Agent or any Lender of, or an agreement by Agent or any Lender to forbear from the exercise of remedies with respect to, any Default or Event of Default under the Credit Agreement or any other Credit Document;

(ii)      constitute a waiver by or estoppel of Agent or any Lender as to the satisfaction or lack of satisfaction of any covenant, term or condition set forth in the Credit Agreement or any other Credit Document; or

(iii)      constitute an amendment to or modification of, or an agreement on the part of Agent or any Lender to enter into any amendment to or modification of, or an agreement to negotiate or continue to negotiate with respect to, the Credit Agreement or any other Credit Document.

3.      Representations, Warranties, Covenants and Acknowledgments;.      To induce the Lenders and the Agent to enter into this Forbearance Agreement:

(a)      Borrowers represent and warrant that, upon and after giving effect to this Forbearance Agreement, (i) except for the Specified Events of Default, each of the representations and warranties made by it and the other Credit Parties under the Credit Documents, other than representations and warranties that speak as of an earlier date, is true and correct in all material respects with respect to it, (ii) it has the power and authority and is duly authorized to enter into, deliver and perform this Forbearance Agreement, (iii) this Forbearance Agreement, the Credit Agreement and each of the other Credit Documents to which it is a party is the legal, valid and binding obligation thereof, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency,

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028443

reorganization or other similar laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in equity or in law), and (iv) the execution, delivery and performance of this Forbearance Agreement in accordance with its terms do not and will not, with the passage of time, the giving of notice or otherwise: (A) require approval from a Governmental Authority or violate any law or any governmental rule or regulation relating thereto; (B) conflict with, result in a breach of or constitute a default under (1) the organizational and other governing documents thereof; (2) any indenture, material agreement or other material instrument to which it is a party or by which any of its properties may be bound, or (3) any approval by a Governmental Authority relating thereto; or (C) result in or require the creation or imposition of any Lien upon or with respect to any property now owned or hereafter acquired by it other than Liens permitted under <u>Section 6.2</u> of the Credit Agreement;

(b)     [Intentionally Omitted];

(c)     the Credit Parties agree that this Forbearance Agreement is not intended to be, and is not, a novation, nor, except as modified herein, an amendment of any of the Credit Documents or any of the Obligations thereunder, and each of the Credit Parties does hereby reaffirm each of the agreements, covenants, and undertakings made by it under the Credit Agreement and each and every other Credit Document executed by it in connection therewith or pursuant thereto, in each case, as modified by this Forbearance Agreement, as if each Credit Party were making said agreements, covenants and undertakings on the effective date hereof, except with respect to such agreements, covenants and undertakings which, by their express terms, are applicable only to the Closing Date or another prior date; and

(d)     Borrowers do hereby acknowledge and agree that, as of the date hereof, no known right of offset, defense, counterclaim, claim, causes of action or objection in favor of any Credit Party or Sponsor against the Lenders or the Agent exists arising out of or with respect to (i) the Obligations, this Forbearance Agreement, the Credit Agreement or any of the other Credit Documents, (ii) any other documents evidencing, securing or in any way relating to the foregoing, or (iii) the administration or funding of the Loans or the Obligations.

4.     <u>Release by Borrowers</u>.

(a)     As a material inducement to Agent and Lenders to enter into this Forbearance Agreement, to forbear from the exercise of remedies in respect of the Specified Events of Default for the Forbearance Period, and to provide the Credit Parties' Benefits during the Forbearance Period, all in accordance with and subject to the terms and conditions of this Forbearance Agreement and the Credit Agreement, and all of which are to the direct advantage and benefit of Borrowers, each Credit Party, for itself and its respective successors and assigns, (i) does hereby remise, release, waive, relinquish, acquit, satisfy and forever discharge Agent and each Lender, and all of the respective past, present and future officers, directors, employees, agents, attorneys, representatives, participants, heirs, successors and assigns of Agent and each Lender (collectively the "<u>Discharged Parties</u>" and each a "<u>Discharged Party</u>"), from any and all manner of debts, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, actions, suits, claims, counterclaims, demands, defenses, setoffs, objections and causes of action

8

Confidential - Professional's Only

BDCM0028444

of any nature whatsoever, whether at law or in equity, either now accrued or hereafter maturing and whether known or unknown, including, but not limited to, any and all claims which may be based on allegations of breach of contract, failure to lend, fraud, promissory estoppel, libel, slander, usury, negligence, misrepresentation, breach of fiduciary duty, bad faith, lender malpractice, undue influence, duress, tortious interference with contractual relations, interference with management, or misuse of control which any Credit Party now has or hereafter can, shall or may have by reason of any matter, cause, thing or event occurring on or prior the date of this Forbearance Agreement arising out of, in connection with or relating to (i) the Obligations, including, but not limited to, the administration or funding thereof, (ii) any of the Credit Documents or the indebtedness evidenced and secured thereby, and (iii) any other agreement or transaction between any Credit Party and any Discharged Party relating to or in connection with the Credit Documents or the transactions contemplated therein; and (b) does hereby covenant and agree never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any Discharged Party, by reason of or in connection with any of the foregoing matters, claims or causes of action, provided, however, that the foregoing release and covenant not to sue shall not apply to any claims first arising after the date of this Forbearance Agreement with respect to acts, occurrences or events after the date of this Forbearance Agreement.

(b)     Each Credit Party understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(c)     Each Credit Party agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the release set forth above.

(d)     Each Credit Party represents and warrants that each such Person is the sole and lawful owner of all right, title and interest in and to all of the claims released hereby and each such Person has not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person any such claim or any portion thereof.

5.     <u>Acknowledgement And Consent</u>.

(a)     Each Guarantor hereby consents to the terms of this Forbearance Agreement, further hereby confirms and agrees that, notwithstanding the effectiveness of this Forbearance Agreement, the obligations of such Guarantor under each of the Credit Documents to which such Guarantor is a party shall not be impaired and each of the Credit Documents to which such Guarantor is a party are, and shall continue to be, in full force and effect and are hereby confirmed and ratified in all respects.

(b)     Each Guarantor hereby acknowledges and agrees that (i) notwithstanding the conditions to effectiveness set forth in this Forbearance Agreement, such Guarantor is not required by the terms of the Credit Agreement or any other Credit Document to consent to this Forbearance Agreement and the amendment to the Credit Agreement effected

9

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028445

pursuant to this Forbearance Agreement and (ii) nothing in the Credit Agreement, this Forbearance Agreement or any other Credit Document shall be deemed to require the consent of such Guarantor to any future amendments to the Credit Agreement.

6.    Closing; Conditions Precedent.    The effectiveness of this Forbearance Agreement is subject to the following conditions precedent:

(a)    Delivery of Documents.    On or prior to the date hereof, the Agent shall have received the following documents, all in form and substance acceptable to Agent in its sole discretion:

(i)    originals of this Forbearance Agreement duly executed by each Borrower, each Guarantor and Requisite Lenders;

(ii)    a copy of the resolutions adopted by or on behalf of the Borrowers, duly authorizing the execution, delivery and performance of this Forbearance Agreement and all transactions and documents contemplated hereby; and

(iii)    such other documents and instruments as the Agent may reasonably request;

(b)    Forbearance Fee and Expenses.    The Borrowers shall have paid to the Agent, for the benefit of the Agent and the Lenders, the Forbearance Fee and, to the Agent and the respective professionals identified hereunder in Section 6, the Expenses (to the extent incurred and invoiced or otherwise known as to amount as of the date hereof), in each case, as defined and referred to in Section 8 hereof;

(c)    Evergreen Retainers.    The Borrowers shall have paid to (i) Hunton & Williams LLP, counsel to the Agent, an "evergreen" retainer in the amount of $150,000, and (ii) Ropes & Gray LLP, counsel to certain Term Lenders, an "evergreen" retainer in the amount of $100,000, in each case to be held for application to future amounts owing und Section 10.2 of the Credit Agreement or this Forbearance Agreement.    Each Borrower acknowledges that its obligation to pay amounts billed subsequent to the date hereof by such counsel shall be payable in accordance with Section 8(b) upon receipt by any Borrower of a written invoice so that such retainers are maintained in an amount equal to, in the case of Hunton & Williams LLP, $150,000 and in the case of Ropes & Gray, $100,000.    The Borrowers shall have paid to Broadpoint a deposit in the amount of $25,000 to be held for application to future amounts owing und Section 10.2 of the Credit Agreement or this Forbearance Agreement.

(d)    No Events of Default.    After giving effect to this Forbearance Agreement, no Default or Event of Default, other than the Specified Events of Default, shall have occurred and be continuing under the Credit Agreement or any other Credit Document;

(e)    Second Lien Loan Forbearance.    The Agent shall have received a fully executed copy of a forbearance agreement with respect to the Second Lien Term Loans in form and substance satisfactory to the Agent and the Requisite Lenders (the "Second Lien

10

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028446

Forbearance Agreement"), and shall have confirmed, to its satisfaction that such forbearance agreement is in full force and effect, or will take effect upon the effectiveness of this Forbearance Agreement.

       (f)    <u>Borrowers Indemnity</u>. The Borrowers and Broadpoint Capital, Inc. ("<u>Broadpoint</u>") shall have entered into an agreement mutually acceptable to each party, the Agent and the Requisite Lenders pursuant to which the Borrowers agree to indemnify Broadpoint in connection with certain advisory services being provided by Broadpoint to Ropes & Gray, acting on behalf of the Steering Committee (the "<u>Steering Committee</u>") of certain Lenders holding Term Loan and having LC Exposure under the Credit Agreement; and

       (g)    <u>Sponsor Agreement Executed By Sponsor</u>. On or prior to the date hereof, the Administrative Agent shall have received from the Sponsors a copy of the Sponsor Agreement, in substantially the form set forth on Exhibit A hereto, duly executed by each of the parties thereto.

       7.    <u>Additional Acknowledgments and Agreements</u>.   Each Credit Party expressly acknowledges and agrees that the waivers, estoppels and releases in favor of Agent and each Lender contained in this Forbearance Agreement shall not be construed as an admission of any wrongdoing, liability or culpability on the part of Agent or any such Lender, or as an admission by Agent or any such Lender of the existence of any claims by such Credit Party or the Sponsor against Agent or any such Lender.  Each Credit Party further acknowledges and agrees that, to the extent that any such claims exist, they are of a speculative nature so as to be incapable of objective valuation and that, to the extent that any such claims may exist and may have value, such value would constitute primarily "nuisance" value or "leverage" value in adversarial proceedings between such Credit Party and Agent or any such Lender.  In any event, each Credit Party acknowledges and agrees that the value to such Credit Party of the covenants and agreements on the part of Agent and each Lender contained in this Forbearance Agreement substantially and materially exceeds any and all value of any kind or nature whatsoever of any claims or other liabilities waived or released by such Credit Party hereunder.

       8.    <u>Forbearance Fee and Expenses</u>.

       (a)    In consideration of the forbearances of the Agent and Lenders hereunder, and in further consideration of the provision to the Borrowers of the Credit Parties' Benefits, the Borrowers agree to pay to the Agent for the benefit of the Lenders a fee in the amount of $250,000 (the "<u>Forbearance Fee</u>") to be divided among the Lenders in proportion to the respective Pro Rata Share of each Lender ; provided that the Agent and the Lenders agree that $100,000 of the Forbearance Fee shall be credited toward any fee payable in connection with an amendment to the Credit Agreement that may be entered into to waive or otherwise address the Specified Events of Default.  Payment in full of the Forbearance Fee shall be a condition precedent to the effectiveness of this Forbearance Agreement.

       (b)    Without limiting the generality of <u>Section 10.2</u> of the Credit Agreement, the Borrowers agree to pay promptly upon receipt by any Borrower of a written invoice, but in no event later than five Business Days following such receipt, without

11

Confidential - Professional's Only

BDCM0028447

duplication, all of the documented reasonable and actual costs and expenses (collectively the "Expenses"), and whether incurred prior or subsequent to the date hereof:

      (i)    of Hunton & Williams LLP, in its capacity as counsel to the Agent;

      (ii)    of Ropes & Gray LLP, in its capacity as counsel to the Steering Committee; and

      (iii)    of Broadpoint Capital, Inc., as the financial advisor to Ropes & Gray, on behalf of the Steering Committee.

The obligations of the Borrowers under this Section 8(b) shall constitute "Obligations" under the Credit Agreement and shall survive the expiration or other termination of the Forbearance Period.

      9.    Authorization of Lenders.  The Lenders party hereto constituting Requisite Lenders hereby authorize the Administrative Agent to execute and deliver the Sponsor Agreement on behalf of the Lenders.

      10.    Miscellaneous.

      (a)    Each Borrower agrees to take such further action as the Agent shall reasonably request in connection herewith to evidence the agreements herein contained. Nothing in this Forbearance Agreement shall be construed to alter the debtor-creditor relationship between Borrowers, on the one hand, and the Lenders and the Agents, on the other. This Forbearance Agreement does not constitute an amendment of, but instead is a supplement to, the Credit Documents, and embodies the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements, understandings and inducements, whether express or implied, oral or written, in respect of the matters which are the subject of this Forbearance Agreement.

      (b)    Any provision of this Forbearance Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Forbearance Agreement and the effect thereof shall be confined to the provision so held to be invalid or unenforceable.

      (c)    This Forbearance Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same instrument.  This Forbearance Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of the parties hereto.  This Forbearance Agreement and the Sponsor Agreement shall each be a Credit Document for all purposes hereunder and under the other Credit Documents. This Forbearance Agreement is solely for the benefit of the Agent, the Lenders and each of the other parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Forbearance Agreement. This

12

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028448

Forbearance Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York. This Forbearance Agreement may not be modified, altered or amended except by agreement in writing signed by each of the Credit Parties, the Agent and Requisite Lenders. Each party hereto acknowledges that it has consulted with counsel and with such other expert advisors as it deemed necessary in connection with the negotiation, execution and delivery of this Forbearance Agreement. This Forbearance Agreement shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Forbearance Agreement or any part hereof to be drafted. This Forbearance Agreement is not intended as, nor shall it be construed to create, a partnership or joint venture relationship between or among any of the parties.

      (d)    <u>Mutual Waiver of Right of Jury Trial</u>. THE AGENT, LENDERS, THE BORROWERS AND GUARANTORS EACH HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO: (A) THIS FORBEARANCE AGREEMENT OR ANY OF THE AGREEMENTS, INSTRUMENTS OR DOCUMENTS REFERRED TO HEREIN; OR (B) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN OR AMONG THEM; (C) ANY CONDUCT, ACTS OR OMISSIONS OF THE AGENT, LENDERS, BORROWERS OR GUARANTORS OR ANY OF THEIR DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSONS AFFILIATED WITH THEM; IN EACH OF THE FOREGOING CASES, WHETHER IN CONTRACT OR TORT OR OTHERWISE.

**[the balance of this page is intentionally left blank]**

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028449

DRAFT 9/21/08

**IN WITNESS WHEREOF,** the Borrowers, the Agent and the Lenders have caused this Forbearance Agreement to be duly executed and sealed as of the date first above written by their respective duly authorized officers or other representatives.

**ALLIED SYSTEMS HOLDINGS, INC.**

By:_____
Name:
Title:

**ALLIED SYSTEMS, LTD. (L.P.)**

By:_____
Name:
Title:

**THE CIT GROUP/BUSINESS CREDIT, INC., as ADMINISTRATIVE AGENT AND COLLATERAL AGENT**

By:_____
Name:
Title:

S-1

Confidential - Professional's Only

BDCM0028450

FORBEARANCE AGREEMENT

To approve the Forbearance Agreement

Name of Institution:

_____

By:_____
Name:
Title:

S-2

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028451

The Foregoing Forbearance Agreement is Hereby
Agreed to and Accepted
as of the Date First Written Above:

**ACE OPERATIONS, LLC**
**AXIS NETHERLANDS, LLC**

By:      AXIS Group, Inc.,
           its Sole Member and Manager


By: _____


**AH INDUSTRIES INC.**
**ALLIED AUTOMOTIVE GROUP, INC.**
**ALLIED FREIGHT BROKER LLC**
**ALLIED SYSTEMS (CANADA) COMPANY**
**AXIS CANADA COMPANY**
**AXIS GROUP, INC.**
**COMMERCIAL CARRIERS, INC.**
**CORDIN TRANSPORT LLC**
**C T SERVICES, INC.**
**F.J. BOUTELL DRIVEAWAY LLC**
**GACS INCORPORATED**
**QAT, INC.**
**RMX LLC**
**TERMINAL SERVICES LLC**
**TRANSPORT SUPPORT LLC**


By: _____


**AXIS ARETA, LLC**
**LOGISTIC SYSTEMS, LLC**
**LOGISTIC TECHNOLOGY, LLC**

By:      AX International Limited,
           its Sole Member and Manager


By: _____


S-3

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028452

**DRAFT 9/21/08**

**EXHIBIT A**

**FORM OF SPONSOR AGREEMENT**

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028453

<u>Schedule 2(c)</u>

<u>Permitted Consolidated Capital Expenditures</u>

**Allied Systems Holdings, Inc.**
**Cash Capital Expenditures**
**Due by 10/15/2008**

| | | |
|---|---|---|
| Engines | 11 | $217,110 |
| Remanufactured Units | 16 | $1,144,640 |
| New Tractors | 18 | $1,822,500 |
| New Trailers | 0 | $ - |
| New Headracks | 0 | $ - |
| Used PTS Rigs in Canada | 90 | $4,500,000 |
| | | |
| Total | | $7,684,250 |

S-2

64534.000030 EMF_US 26205555v8

Confidential - Professional's Only

BDCM0028454

**Draft**
**09/21/08**

### SPONSOR SIDE AGREEMENT

This SPONSOR SIDE AGREEMENT (this "Agreement") is made and entered into as of this __ day of September, 2008, by and among The CIT Group/Business Credit, Inc. ("CIT"), in its capacity as Administrative Agent and Collateral Agent for the Lenders (as defined below) (in such capacity, the "Agent"), Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP (collectively the "Sponsors", and individually a "Sponsor").

### RECITALS:

WHEREAS, Allied Systems Holdings, Inc. (formerly known as Allied Holdings, Inc.), a Delaware corporation ("Holdings"), Allied Systems, Ltd. (L.P.), a Georgia limited partnership ("Systems" and, together with Holdings, the "Borrowers" and individually a "Borrower"), the Agent, certain subsidiaries of Holdings, the Lenders party thereto, Goldman Sachs Credit Partners L.P., as Lead Arranger and as Syndication Agent, and the Guarantors named therein, entered into that certain Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (as amended, the "Credit Agreement"; capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed thereto in the Credit Agreement);

WHEREAS, the Borrowers, the Agent and the lenders have entered into that certain Forbearance Agreement (as amended, the "Forbearance Agreement") made and entered into as of the date hereof, by and among Holdings, Systems, the Agent and the Lenders party thereto;

WHEREAS, as a condition to the effectiveness of the Forbearance Agreement, the Agent and the Lenders have required that the Sponsors enter into this Agreement; and

WHEREAS, in consideration of the benefits to the Sponsors of the Credit Party Benefits (as defined in the Forbearance Agreement), the Sponsors are willing to agree to certain financial and other agreements and commitments set forth in this agreement; and

WHEREAS, the Sponsors acknowledge and agree that the Credit Party Benefits are of material benefit to Sponsors, and that neither Agent nor Lenders were or are under any obligation to extend to Credit Parties the Credit Party Benefits.

NOW, THEREFORE, in consideration of the foregoing premises, and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1.    Representations, Warranties, Covenants and Acknowledgments.

(a)    Each Sponsor represents and warrants that: (i) it has the power and authority and is duly authorized to enter into, deliver and perform this Agreement; (ii) this Agreement is the legal, valid and binding obligations of such Sponsor, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization or other similar laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in equity or in

LA\1901618.2

Confidential - Professional's Only

law); and (iii) the execution, delivery and performance of this Agreement in accordance with its terms do not and will not, with the passage of time, the giving of notice or otherwise: (A) require approval from a Governmental Authority or violate any law or any governmental rule or regulation relating thereto; (B) conflict with, result in a breach of or constitute a default under (1) the organizational and other governing documents of such Sponsor; (2) any indenture, material agreement or other material instrument to which it is a party or by which any of its properties may be bound, or (3) any approval by a Governmental Authority relating thereto; or (C) result in or require the creation or imposition of any Lien upon or with respect to any property now owned or hereafter acquired by.

(b)     The Sponsors do hereby acknowledge and agree that, as of the date hereof, no known right of offset, defense, counterclaim, claim, causes of action or objection in favor of a Sponsor against the Lenders or the Agent exists arising out of or with respect to any of the Credit Documents.

2.     Release of Sponsors.

(a)     As a material inducement to Agent and Lenders to enter into the Forbearance Agreement and this Agreement each of the Sponsors, for itself and each its respective successors and assigns, (i) does hereby remise, release, waive, relinquish, acquit, satisfy and forever discharge Agent and each Lender, and all of the respective past, present and future officers, directors, employees, agents, attorneys, representatives, participants, heirs, successors and assigns of Agent and each Lender (collectively the "Discharged Parties" and each a "Discharged Party"), from any and all manner of debts, accountings, bonds, warranties, representations, covenants, promises, contracts, controversies, agreements, liabilities, obligations, expenses, damages, judgments, executions, actions, suits, claims, counterclaims, demands, defenses, setoffs, objections and causes of action of any nature whatsoever, whether at law or in equity, either now accrued or hereafter maturing and whether known or unknown, including, but not limited to, any and all claims which may be based on allegations of breach of contract, failure to lend, fraud, promissory estoppel, libel, slander, usury, negligence, misrepresentation, breach of fiduciary duty, bad faith, lender malpractice, undue influence, duress, tortious interference with contractual relations, interference with management, or misuse of control which either of the Sponsors now has or hereafter can, shall or may have by reason of any matter, cause, thing or event occurring on or prior to the date of this Agreement arising out of, in connection with or relating to (i) the Obligations, including, but not limited to, the administration or funding thereof, (ii) any of the Credit Documents or the indebtedness evidenced and secured thereby, and (iii) any other agreement or transaction between the Sponsors and any Discharged Party relating to or in connection with the Credit Documents or the transactions contemplated therein; and (b) does hereby covenant and agree never to institute or cause to be instituted or continue prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against any Discharged Party, by reason of or in connection with any of the foregoing matters, claims or causes of action, provided, however, that the foregoing release and covenant not to sue shall not apply to any claims first arising after the date of this Agreement with respect to acts, occurrences or events after the date of this Agreement.

(b)     Each of the Sponsors understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis

2

LA\1901618.2

Confidential - Professional's Only

for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(c)    Each of the Sponsors agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the release set forth above.

(d)    Each of the Sponsors represents and warrants that each such Person is the sole and lawful owner of all right, title and interest in and to all of the claims released hereby and each such Person has not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person any such claim or any portion thereof.

(e)    WAIVER OF CALIFORNIA CIVIL CODE SECTION 1542 AND SIMILAR LAWS. WITHOUT DEROGATING FROM THE NEW YORK CHOICE OF LAW PROVISION SET FORTH HEREIN, THE PARTIES HERETO ACKNOWLEDGE THAT THEY ARE FAMILIAR WITH THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES AS FOLLOWS:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

THE PARTIES BEING AWARE OF SAID CODE SECTION, AND HAVING THE OPPORTUNITY TO CONSULT LEGAL COUNSEL, HEREBY EXPRESSLY WAIVE ANY RIGHTS THEY MAY HAVE THEREUNDER, AS WELL AS UNDER ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF SIMILAR EFFECT. THE PARTIES ACKNOWLEDGE AND AGREE THAT THIS WAIVER IS AN ESSENTIAL AND MATERIAL TERM OF THIS RELEASE, AND THAT WITHOUT SUCH WAIVER, THIS RELEASE WOULD NOT HAVE BEEN ENTERED INTO BY THEM. EACH PARTY HERETO UNDERSTANDS THAT THE FACTS IN RESPECT OF WHICH THE RELEASES AND COVENANTS NOT TO SUE MADE IN THIS RELEASE ARE GIVEN MAY HEREAFTER TURN OUT TO BE OTHER THAN OR DIFFERENT FROM THE FACTS IN THAT CONNECTION NOW KNOWN OR BELIEVED BY IT OR HIM TO BE TRUE AND THAT IT OR HE MAY DISCOVER FACTS DIFFERENT, OR IN ADDITION TO, THOSE FACTS WHICH THEY NOW BELIEVE TO BE TRUE, AND EACH PARTY HERETO HEREBY, ON BEHALF OF ITSELF OR HIMSELF AND ITS OR HIS AFFILIATES, ACCEPTS AND ASSUMES THE RISK OF THE DISCOVERY OF NEW FACTS AND THE FACTS TURNING OUT TO BE DIFFERENT AND AGREES NO PARTY HERETO OR ANY OTHER RELEASEE IN ANY CAPACITY HAS ANY DUTY TO DISCLOSE ANY FACTS (WHETHER MATERIAL OR IMMATERIAL, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED) TO IT OR HIM OR ANY OTHER RELEASOR AND THAT THIS RELEASE SHALL BE AND REMAIN IN ALL RESPECTS EFFECTIVE AND NOT SUBJECT TO TERMINATION OR RESCISSION BY VIRTUE OF ANY SUCH DIFFERENCE IN FACTS OF THE DISCOVERY OF NEW FACTS, EVEN IF ANY FACTS WERE NOT DISCLOSED (WHETHER INTENTIONALLY, UNINTENTIONALLY OR OTHERWISE) BY ANY RELEASEE TO ANY RELEASOR, WHICH FACTS, IF KNOWN BY SUCH RELEASOR, MIGHT HAVE CAUSED ANY PARTY HERETO TO WHICH

3

LA\1901618.2

Confidential - Professional's Only

BDCM0028457

SUCH RELEASOR IS AFFILIATED NOT TO EXECUTE AND DELIVER THIS RELEASE. THE PARTIES INTENTIONALLY WAIVE AND RELINQUISH ALL RIGHTS AND BENEFITS UNDER ANY LAW OF ANY JURISDICTION PROVIDING TO THE CONTRARY, OR ANY PUBLIC POLICY THAT WOULD LIMIT OR RENDER VOID, VOIDABLE OR UNENFORCEABLE ANY PROVISION OF THE RELEASE CONTAINED IN THIS RELEASE. THE PARTIES HAVE INCLUDED THIS WAIVER OF CALIFORNIA CIVIL CODE SECTION 1542 IN THIS RELEASE IN ORDER TO PROCURE CERTAINTY IN THEIR AFFAIRS.

EACH OF THE PARTIES HERETO HEREBY ACKNOWLEDGES AND AGREES, ON BEHALF OF ITSELF AND ITS AFFILIATES, THAT NOTHING CONTAINED IN SECTION 2 OF THIS AGREEMENT SHALL RELEASE OR DISCHARGE ANY OF THEM FROM THE LIABILITIES, DUTIES AND OBLIGATIONS UNDERTAKEN OR ASSUMED UNDER THIS RELEASE, OR FROM ANY OTHER CLAIMS OTHER THAN THE RELEASED CLAIMS.

3.    <u>Additional Acknowledgments and Agreements</u>.  Each of the Sponsors expressly acknowledges and agrees that the waivers, estoppels and releases in favor of Agent and each Lender contained in this Agreement shall not be construed as an admission of any wrongdoing, liability or culpability on the part of Agent or any such Lender, or as an admission by Agent or any such Lender of the existence of any claims by any Credit Party or the Sponsors against Agent or any such Lender.  Each of the Sponsors further acknowledges and agrees that, to the extent that any such claims exist, they are of a speculative nature so as to be incapable of objective valuation and that, to the extent that any such claims may exist and may have value, such value would constitute primarily "nuisance" value or "leverage" value in adversarial proceedings between such Agent or any such Lender.  In any event, each of the Sponsors acknowledges and agrees that the value to such Sponsor of the covenants and agreements on the part of Agent and each Lender contained in this Agreement substantially and materially exceeds any and all value of any kind or nature whatsoever of any claims or other liabilities waived or released by such Sponsor hereunder.

4.    <u>Sponsor Agreements</u>.  Each of the Sponsors hereby represents, warrants, covenants to and for the benefit of, and agrees with, the Agent and the Lenders that:

(a)    none of the Restricted Sponsor Affiliates, directly or indirectly, hold any Obligation whether as a Lender or otherwise or have any voting rights (including the power to vote or direct voting) in respect of any Obligation or under the Credit Documents, nor have any such entities entered into, nor will any of the same during the Forbearance Period enter into either directly or indirectly, any contract, option, arrangement, understanding, relationship or otherwise which may result in any such Restricted Sponsor Affiliate directly or indirectly, either during the Forbearance Period or after the termination of the Forbearance Period:

(i)    holding any Obligation or becoming a Lender, or

(ii)    having any voting rights (including the power to vote or direct voting) under the Credit Documents, and

4

LA\1901618.2

Confidential - Professional's Only

BDCM0028458

(b)    the Restricted Sponsor Affiliates shall not, during the Forbearance Period, directly or indirectly demand, accept or receive any of the following:

(i)    any interest (other than interest paid in kind by adding to the principal balance of the Second Lien Term Loans) on or principal with respect to any of the Loans or any of the Second Lien Term Loans, or

(ii)    any payment or other distribution from either of the Borrowers or any of their respective Subsidiaries (other than the reasonable and documented ordinary course out-of-pocket expenses of the Sponsors), pursuant to any Management Agreement or otherwise.

(c)    (i)    as of the date hereof, the Sponsors are the only Restricted Sponsor Affiliates that hold any portion of a Second Lien Term Loan as of the date hereof and (ii) as of the date hereof, the Sponsors hold Second Lien Term Loans in the aggregate principal amount of $20,000,000.

5.    <u>Miscellaneous</u>.

(a)    The Sponsors agree to take such further action as the Agent shall reasonably request in connection herewith to evidence the agreements herein contained. This Agreement embodies the entire understanding and agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements, understandings and inducements, whether express or implied, oral or written, in respect of the matters which are the subject of this Agreement.

(b)    Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement and the effect thereof shall be confined to the provision so held to be invalid or unenforceable.

(c)    This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same instrument. This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of the parties hereto. This Agreement is solely for the benefit of the Agent, the Lenders and each of the other parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement. This Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York. This Agreement may not be modified, altered or amended except by agreement in writing signed by all of the parties hereto. Each party hereto acknowledges that it has consulted with counsel and with such other expert advisors as it deemed necessary in connection with the negotiation, execution and delivery of this Agreement. This Agreement shall be construed without regard to any presumption or rule requiring that it be construed against the party causing this Agreement or any part hereof to be drafted. This Agreement is not intended as, nor shall it be construed to create, a partnership or joint venture relationship between or among any of the parties.

5

LA\1901618.2

Confidential - Professional's Only

BDCM0028459

(d)     CONSENT TO JURISDICTION.  ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST ANY SPONSOR ARISING OUT OF OR RELATING HERETO MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE, COUNTY AND CITY OF NEW YORK.  BY EXECUTING AND DELIVERING THIS AGREEMENT, EACH SPONSOR, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY (A) ACCEPTS GENERALLY AND UNCONDITIONALLY THE NONEXCLUSIVE JURISDICTION AND VENUE OF SUCH COURTS; (B) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (C) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE APPLICABLE SPONSOR AT THE FOLLOWING ADDRESS:  C/O THE YUCAIPA COMPANIES, LLC, 9130 WEST SUNSET BOULEVARD, LOS ANGELES, CALIFORNIA 90069; (D) AGREES THAT SERVICE AS PROVIDED IN CLAUSE (C) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE APPLICABLE SPONSOR IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT; AND (E) AGREES THAT AGENT AND LENDERS RETAIN THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO BRING PROCEEDINGS AGAINST ANY SPONSOR IN THE COURTS OF ANY OTHER JURISDICTION.

(e)     MUTUAL WAIVER OF RIGHT OF JURY TRIAL.  THE AGENT AND SPONSORS EACH HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO: (A) THIS AGREEMENT OR ANY OF THE AGREEMENTS, INSTRUMENTS OR DOCUMENTS REFERRED TO HEREIN; OR (B) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN OR AMONG THEM; (C) ANY CONDUCT, ACTS OR OMISSIONS OF THE AGENT, LENDERS OR SPONSORS OR ANY OF THEIR DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSONS AFFILIATED WITH THEM; IN EACH OF THE FOREGOING CASES, WHETHER IN CONTRACT OR TORT OR OTHERWISE.

**[the balance of this page is intentionally left blank]**

6

LA\1901618.2

Confidential - Professional's Only

BDCM0028460

**IN WITNESS WHEREOF**, the Agent and the Sponsors have caused this Agreement to be duly executed and sealed as of the date first above written by their respective duly authorized officers or other representatives.

**THE CIT GROUP/BUSINESS CREDIT, INC.,**
**as ADMINISTRATIVE AGENT AND**
**COLLATERAL AGENT**

By:_____
Name:
Title:

**YUCAIPA AMERICAN ALLIANCE FUND I, LP**

By:_____
Name:
Title:

**YUCAIPA AMERICAN ALLIANCE (PARALLEL)**
**FUND I, LP**

By:_____
Name:
Title:

7

LA\1901618.2
64534.000030 EMF_US 26249694v4

Confidential - Professional's Only

BDCM0028461