# Exhibit 135

| | |
|---|---|
| **From:** | T. Mike Riggs [tmriggs@iequitypartners.com] |
| **Sent:** | Tuesday, July 20, 2010 7:24 PM |
| **To:** | Derex Walker; Mark J Gendregske - Allied Systems Holdings |
| **Cc:** | 'Theo Ciupitu'; 'Bob Griffin'; 'Mike Testman'; 'Greg May'; 'Bond, Wayne - Womble'; 'Austin, Jesse'; 'Jeff Zolkin' |
| **Subject:** | CONFIDENTIAL - Letter of Intent from Jack Cooper for the Acquisition of Allied Systems Holdings, Inc.  7-21-10 |
| **Attachments:** | Allied LOI from Jack Cooper 7-20-10.doc; Allied Settlement Agrmt 7-20-10.doc |

Derex and Mark:

As requested by the Teamsters, I have attached an LOI for your review. Given the pending litigation between our companies, we are not willing to share the details and names of our financing sources until after we have executed a mutually acceptable LOI and settlement agreement. However, I believe your firm has experience with Global Hunter Securities and Jeff Zolkin (who is copied here). They can vouch for the high confidence level regarding our ability to raise the necessary financing in a short time frame.

As always, feel free to call me directly at any time.

Mike Riggs
Chairman
Jack Cooper Holdings
*Always striving to be the best...*
Cell  262-496-5440
Email  mriggs@jackcooper.com
Website  www.jackcooper.com
Fax  770-200-2672



Confidential                                                                                                                          YUCAIPA709758

**Jack Cooper Holdings LLC**
2345 Grand Boulevard, Suite 400
Kansas City, Missouri 64108

*Formatted: Font color: Black, Highlight*

July 20, 2010

**CONFIDENTIAL**

Mr. Mark J. Gendregske
CEO and President
Allied Systems Holdings, Inc.
2302 Parklake Drive, Building 15, Suite 600
Atlanta, Georgia 30345

Mr. Derex Walker
Chairman
The Yucaipa Companies, LLC
9130 West Sunset Boulevard
Los Angeles, California 90069

  Re:  **Letter of Intent**

Gentlemen:

  We at Jack Cooper Holdings LLC, a Delaware limited liability company ("**Jack Cooper**"), subject to the provisions of this Letter of Intent ("**LOI**"), are interested in acquiring substantially all of the assets of Allied Systems Holdings, Inc., a Delaware corporation ("**Allied Systems**"), and its direct and indirect subsidiaries (together with Allied Systems, "**Allied**" or "**Seller**"). The purpose of this LOI is to set forth certain nonbinding understandings and binding agreements between Jack Cooper, on behalf of itself and one or more entities to be formed (collectively, "**Buyer**"), and Seller with respect to Buyer's possible purchase (the "**Transaction**") of substantially all of the assets of Allied through a sale under Section 363 of Title 11 of the United States Code (the "**Bankruptcy Code**").

  We believe we have the appropriate financing and operational plans to restore Allied to profitability. For the last five (5) months, we have been working with Global Hunter Securities, LLC ("**GHS**") on recapitalizing our own company and are nearing completion of this process. Consequently, the timing of this Transaction is almost perfect because we expect to be able to complete a tack-on financing to our recapitalization financing to consummate the Transaction in a fairly short order. Furthermore, our operational expertise has proven effective at both Active Transportation Company LLC and Jack Cooper Transport Company, Inc., and we believe we will be able to implement that same type of turnaround at Allied.

Letter of Intent
July 21, 2010
Page 2

      Jack Cooper is providing this LOI to Seller and the holders of a majority of Seller's equity securities, junior secured debt, and senior secured debt (collectively, "**Yucaipa**") on the basis that once fully executed by all parties, Seller and Yucaipa will allow Buyer and its financing sources to proceed with confirmatory due diligence in a prompt and expeditious manner to obtain the necessary financing to complete the Transaction. Any final and binding agreement would require execution by Seller and Buyer of a mutually acceptable definitive asset purchase agreement (the "**Definitive Agreement**") and the approval of bankruptcy bid procedures (the "**Bidding Procedures**"), the entry of an order by the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "**Bankruptcy Court**") approving the Transaction, and other related and ancillary agreements and documents (together with the Definitive Agreement, the "**Definitive Documents**").

      The following Sections of this LOI numbered 1 through 6 (collectively, the "**Nonbinding Provisions**") reflect the nonbinding understanding of the parties hereto. The Nonbinding Provisions do not create or constitute any legally binding or enforceable obligation between the parties hereto, and no party hereto shall have any liability to the other parties with respect to the consummation of the Transaction or any of the Nonbinding Provisions. Any obligations of the parties to consummate a Transaction shall be subject in all respects to the satisfactory completion of due diligence as determined by Buyer and its financing sources in their sole and absolute discretion, and the negotiation, execution, and delivery of the Definitive Documents.

1. **Structure of Transaction.** The exact structure of, and the assets to be acquired with respect to, the Transaction will be subject to further due diligence and negotiations. However, Buyer anticipates purchasing substantially all of the assets of Seller, including, without limitation, all real, personal, tangible, intangible, and other property of all types and description, free and clear of all liens, claims, and other encumbrances, pursuant to a sale under Section 363 of the Bankruptcy Code (the "**Bankruptcy Process**"). In addition, Buyer would expect to have Seller assign certain customer contracts, supply agreements, leases, license agreements, and other executory contracts, which executory contracts would be designated by Buyer in its sole and absolute discretion. Except as specifically agreed upon and designated by Buyer in the Definitive Documents as part of the Total Consideration, Buyer would not assume or otherwise be responsible for any indebtedness, trade payables, or other liabilities or obligations of Seller or its bankruptcy estate whatsoever, contingent or otherwise.

2. **Total Consideration.** The total consideration (the "**Total Consideration**") would be comprised of:

    (a) an amount equal to One Hundred Million U.S. Dollars ($100,000,000.00), payable in cash at closing;

Confidential

YUCAIPA709760

Letter of Intent
July 21, 2010
Page 3

    (b) Fifty Million U.S. Dollars ($50,000,000.00) in form of preferred equity in Jack Cooper, with a redemption right exercisable on the fifth (5th) anniversary of the closing of the Transaction and accruing a preferred return of seven percent (7%) per year, provided that such preferred equity would be preferred only with respect to distribution and would not carry any voting rights, consent rights, or other similar rights, preferences, or privileges; and

    (c) the assumption of certain designated liabilities deemed critical to the operations of Allied as determined by Buyer in its sole and absolute discretion.

3. **Signing and Closing.** We would propose to enter into the Definitive Documents as soon as practicable following the completion of due diligence. We would expect it would take no longer than 45 days from the date of execution of this LOI to obtain a financing commitment to finance the Transaction, and the Bankruptcy Process would commence shortly thereafter and be expected to take no longer than an additional sixty (60) days.

Given the fact that Allied and Jack Cooper are major competitors and are involved in litigation, Jack Cooper is not comfortable sharing the specific details of its recapitalization financing or the tack-on financing that would finance the Transaction. However, upon execution of this LOI, Buyer would provide certain evidence of its securing financing for its recapitalization. Furthermore, GHS would verify that the recapitalization funding is on track to close in August 2010 and that the lenders thereof have all indicated that that they would be willing to provide additional funding via tack-on financings for related acquisitions like the Allied acquisition. We recognize that, at any hearing at the Bankruptcy Court to approve the Transaction, Jack Cooper will be required to demonstrate its financial ability to close the Transaction. We also understand that the Definitive Documents, upon execution, may not be conditional upon financing.

4. **Closing Conditions and Due Diligence.** Our estimation of the Total Consideration is based upon our understanding at this time of the enterprise value of Allied, and is subject to, among other things: (a) satisfactory completion of due diligence, including, but not limited to, business, legal, financial, accounting, tax, environmental, regulatory, customer, supplier, intellectual property, and HR due diligence; (b) negotiation and execution of the Definitive Documents; (c) the receipt of all necessary consents (including, without limitation, from lenders and customers) and regulatory and other approvals; (d) the entry of a final non-appealable order of the Bankruptcy Court approving the Transaction pursuant to Bankruptcy Code Section 363 in a form acceptable to Buyer and to be attached to the Definitive Agreement; (e) the continued operation of Seller in the ordinary course of business;

Confidential

YUCAIPA709761

Letter of Intent
July 21, 2010
Page 4

    (f) the taking of various actions by Seller and its Board of Directors, stockholders, and creditors necessary to approve and facilitate the completion of the Transaction; (g) Buyer's receipt of qualified legal and financial opinions as determined in its sole and absolute discretion; (h) Buyer having secured adequate financing to consummate the Transaction on terms acceptable to it in its sole and absolute discretion; and (i) the absence of any material adverse change in Seller's business, financial condition, prospects, assets, or operations.

5. **Employee Hiring.** Certain of Seller's employees and management might be offered employment in the same or substantially similar roles to be determined by Buyer prior to the closing. Any "golden parachute" arrangements, pension benefits, or other significant employee contracts or obligations that may exist between management and Seller are to be cancelled or settled (without payment from Buyer) prior to closing and would not be future liabilities of Buyer.

6. **Consents.** Buyer and Seller would cooperate with each other and proceed, as promptly as is reasonably practicable following the execution of the Definitive Documents, to prepare and file any governmental notifications required by any laws or regulations, to seek to obtain all other necessary consents and approvals from third parties (including consent of the lenders and customers of Seller), and to endeavor to comply with all other legal or contractual requirements for, or preconditions to, the consummation of the Transaction.

    Upon execution by the parties hereto of this LOI, the following Sections numbered 7 through 17 (collectively, the "**Binding Provisions**") shall constitute the legally binding and enforceable agreements of the parties hereto in recognition of the significant costs to be borne by each in pursuing the Transaction and further in consideration of their mutual undertakings as to the matters described herein.

7. **Exclusivity.** Seller and Yucaipa acknowledge that Buyer has spent and will continue to spend considerable time and has incurred and will continue to incur substantial costs and expenses in connection with its due diligence investigation, drafting and negotiating this LOI and the Definitive Documents, and considering the entering into the Transaction. Accordingly, Seller and Yucaipa agree that, from the date hereof through the earlier of (a) November 30, 2010 and (b) the entry of an acceptable order by the Bankruptcy Court approving the Bidding Procedures (the "**Exclusivity Period**"), neither Seller nor Yucaipa shall, and each shall cause its Representatives not to, directly or indirectly, (i) enter into or continue any discussions or negotiations with respect to, agree to, approve, recommend, or enter into any agreement or any understanding with respect to, or solicit, initiate, encourage, or facilitate the submission of any inquiries, proposals, or offers for, the acquisition (including by merger, consolidation, or other business combination, a lease or licensing transaction, or otherwise) by any person or entity (other than as expressly contemplated by this

Letter of Intent
July 21, 2010
Page 5

LOI), directly or indirectly, of any shares of capital stock or other equity interests in Seller or all or any material portion of the assets and properties of Seller (an "**Alternative Transaction**"), or (ii) furnish, or cause to be furnished, any information concerning Seller or its assets and properties to, or allow access to the books, records, properties, or management of Seller by, any person or entity with a view to, or in furtherance of, an Alternative Transaction. Seller and Yucaipa each hereby agrees, and shall cause its Representatives, to suspend immediately any existing discussions or negotiations with any person or entity with respect to an Alternative Transaction. If Seller or Yucaipa, or any of their Representatives, shall receive an indication of interest, term sheet, letter of intent, proposal, request for information, or any similar submission in each case, in respect of an Alternative Transaction, such person shall, within twenty-four hours of the receipt thereof, deliver written notice thereof to Buyer, which written notice shall include the material terms thereof and the identity of the person or persons making or submitting such indication of interest, term sheet, letter of intent, proposal, request for information, or similar submission. Seller and Yucaipa shall be jointly and severally liable for any and all breaches by their Representatives of the terms set forth in this Section or any other Binding Provisions. For purposes of this LOI, "**Representatives**" means, as to any party hereto, such party's affiliates, subsidiaries, stockholders, members, directors, managers, officers, employees, representatives, existing and potential financing sources, relatives, related parties, and agents (including accountants, attorneys, and investment bankers).

In the event that Seller consummates an Alternative Transaction, Buyer shall be entitled to, and Seller and Yucaipa shall be jointly and severally liable for, a break-up fee of three percent (3%) of the Total Consideration and an expense reimbursement for the actual costs and fees incurred by Buyer and its Representatives through the date of the consummation of the Alternative Transaction (collectively, the "**Break-up Fee**").

8. **Filing a Motion to Approve Transaction.** Within ten (10) business days from the date on which Buyer and Seller execute the Definitive Documents, Seller shall file its bankruptcy cases in the Bankruptcy Court. Seller shall file, on the same date as the date of the bankruptcy filings, a motion and form of order, both in form acceptable to Buyer in its reasonable discretion, seeking approval of the Transaction, the Break-up Fee, and certain other bid protections, including, but not limited to, a minimum overbid and minimum bidding increments, acceptable to Buyer in its reasonable discretion (collectively, with the Break-up Fee, the "**Bid Protections**"), pursuant to Bankruptcy Code Section 363. Seller shall use its best efforts promptly to obtain approval by the Bankruptcy Court of the Bid Protections and the Transaction.

9. **Access to Information and Conduct of Business.** During the Exclusivity Period, Seller and Yucaipa shall afford (and shall cause its Representatives to afford) to Buyer and its Representatives full access at reasonable times to Seller's financial,

Letter of Intent
July 21, 2010
Page 6

legal, tax, and other data and information and its employees, suppliers, and customers to conduct its due diligence investigation of Seller and its business and affairs. Such information shall be made available on a confidential basis and shall be governed by the terms and conditions of that certain Mutual Nondisclosure Agreement between Jack Cooper and Allied Holdings of even date herewith, which shall remain in full force and effect. Furthermore, during the Exclusivity Period, Seller shall: (a) conduct its business only in the ordinary course and consistent with past practice and shall not enter into any transactions other than in the ordinary course of business (including, without limitation, any sale or disposition of assets outside the ordinary course of business or any distributions or payments to stockholders); (b) preserve intact its business organization, management, commercial relationships, and goodwill; and (c) promptly notify Jack Cooper of any material change in the normal course of its business

10. **Confidential Joint Settlement and Mutual Release.** The parties hereto shall and hereby agree to enter into that certain Confidential Joint Settlement and Mutual Release attached hereto as **Exhibit A** and incorporated herein by this reference.

11. **Transaction Costs.** Each party hereto shall bear its own transaction costs, including, without limitation, legal, accounting, and investment banking costs, except as otherwise provided herein for Buyer in the event of Seller's consummation of an Alternative Transaction. Each party hereto shall indemnify the other parties hereto from any claim by any broker or finder based upon arrangements made by or on behalf of the indemnifying party or any of its Representatives in connection with this LOI or the Transaction.

12. **No Public Announcements.** Except as required by applicable laws, regulations, and legal proceedings, the parties hereto and their respective Representatives shall not make any announcement or other disclosure to any third party of the execution of this LOI or the Transaction, both before and after the consummation of the Transaction or the termination of this LOI, without the prior written consent of the parties hereto.

13. **Governing Law.** This LOI shall be governed by and construed in accordance with the laws of the State of Georgia, without giving effect to the choice of law rules thereof.

14. **Nonbinding Provisions.** Each party hereto acknowledges and agrees that the Nonbinding Provisions do not create or constitute any legally binding obligations among the parties. The parties hereto do not intend to be bound by the Nonbinding Provisions, and no party hereto shall have any liability to the other parties hereto with respect to the Nonbinding Provisions. No party hereto may reasonably rely on any promises inconsistent with this Section.

Letter of Intent
July 21, 2010
Page 7

15. **Counterparts.** This LOI may be executed in two or more counterparts (including by means of facsimile or electronically transmitted portable document format (PDF) signature pages), each of which shall be deemed to be an original, but all of which together shall constitute and be one and the same instrument; provided that facsimile or electronically transmitted signatures of this LOI shall be deemed to be originals. Counterpart signatures need not be on the same page and shall be deemed effective upon receipt.

16. **Miscellaneous.** Any waiver, amendment, modification, or supplement of or to any term or condition of the Binding Provisions shall be effective only if in writing and signed by each party hereto. The rights and obligations under this LOI are not assignable by any party thereto without the prior written consent of the other parties hereto, except that Jack Cooper may assign some or all of its rights or obligations hereunder to one or more of its affiliates, whether nor in existence or to be formed.

17. **Expiration of this LOI.** Unless signed by the parties hereto no later than 5:00 p.m. EST on July 30th, 2010, this LOI shall expire.

If you have any questions regarding this LOI, please do not hesitate to call me at (262) 496-5440. We look forward to working with you.

Sincerely,

**Jack Cooper Holdings LLC**

By: _____

Name: T. Michael Riggs
Title: Chairman

Accepted and Agreed to by:

**Allied Systems Holdings, Inc.**

By: _____  _____
    Name: Mark J. Gendregske    DATE
    Title: CEO and President

Confidential

YUCAIPA709765

Letter of Intent
July 21, 2010
Page 8

Acknowledged and Agreed to by:

**The Yucaipa Companies, LLC**

By: _____   _____
    Name: Derex Walker        DATE
    Title: Chairman

**Yucaipa American Alliance Fund I, LP**

By its General Partner, _____

By: _____

    Name: _____
    Title: _____

**Yucaipa American Alliance (Parallel) Fund I, LP**
By its General Partner, _____

By: _____

    Name: _____
    Title: _____

cc:  Robert Griffin, CEO
      Michael S. Testman, CFO
      Theo A. Ciupitu, EVP and GC
      Jeff Zolkin (GHS)
      Jesse H. Austin, III, Esq. (Paul, Hastings, Janofsky & Walker LLP)

*Formatted: Font color: Black, Highlight*
*Formatted: Font color: Black, Highlight*

Confidential

YUCAIPA709766

## CONFIDENTIAL JOINT SETTLEMENT AND MUTUAL RELEASE

This CONFIDENTIAL JOINT SETTLEMENT AND MUTUAL RELEASE (the "**Agreement**") is entered into to be effective as of this _____ day of July, 2010 (the "**Effective Date**"), by and between: (i) T. Michael Riggs ("**Riggs**"), Jack Cooper Holdings LLC (f/k/a IEP Carhaul LLC), and Jack Cooper Transport Company, Inc. (through merger, now including the entities f/k/a Active Carhaul Acquisition, Inc., FNBC Acquisitions Group, Inc., Active Carhaul LLC, and Active Transportation Company LLC) (collectively, the "**Riggs Companies**"); and (ii) Mark J. Gendregske ("**Gendregske**"), Allied Systems Holdings, Inc. ("**Allied**"), and The Yucaipa Companies, LLC, Yucaipa American Alliance Fund I, LP, Yucaipa American Alliance (Parallel) Fund I, LP, and YEC, Inc. (collectively, "**Yucaipa**"); for the purposes and considerations set forth herein. The parties hereto are referred to, individually, as a "**Party**" and, collectively, as the "**Parties**."

WHEREAS, the Riggs Companies and Allied are competitors in the carhaul business;

WHEREAS, Yucaipa is the parent company and controlling shareholder of Allied;

WHEREAS, Allied has brought claims against Riggs and the Riggs Companies, and Riggs and the Riggs Companies have brought counterclaims against Allied, Gendregske, and The Yucaipa Companies, LLC, in the Superior Court of Cobb County, State of Georgia, in a case captioned *Allied Systems Holdings, Inc. v. T. Michael Riggs, IEP Carhaul LLC, Jack Cooper Transport Company, Inc., and Active Carhaul Acquisition, Inc. v. The Yucaipa Companies, LLC and Mark J. Gendregkse*, Civil Action File No. CV-09-1-10536-48 (the "**Allied Lawsuit**"); and

WHEREAS, the Parties desire to resolve, settle, and release any and all claims, liabilities, or causes of action (known or unknown) between and among them arising or accruing at any time prior to the date of this Agreement, including, without limitation, all claims, liabilities, or causes of action arising out of the Allied Lawsuit; provided, however, that the Parties do not intend to in any way prejudice the rights any of the Plaintiffs have in a separate lawsuit the Riggs Companies (or certain of them) filed against ComVest Investment Partners III, L.P. and ComVest III Partners LLC filed in The Circuit Court of The Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 09-CA-042921-AI (the "**ComVest Lawsuit**").

NOW THEREFORE, in consideration of the foregoing recitals, the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**1. Incorporation of Recitals**: The foregoing recitals contained above are incorporated by reference as if set forth in full herein.

**2. Dismissal of Claims**: Allied agrees to dismiss with prejudice all claims filed in the Allied Lawsuit against Riggs and the Riggs Companies within five (5) days after execution of this Agreement (the "**Allied Dismissal**"). Riggs and the Riggs Companies agree to dismiss with prejudice all counterclaims filed in the Allied Lawsuit against Allied, Gendregske, and The Yucaipa Companies, LLC within five (5) days of the Allied Dismissal; provided, however, that

[Formatted: Font color: Black, Highlight]

said dismissal shall in no way prejudice the claims of Riggs and the Riggs Companies in the ComVest Lawsuit.

3. **Mutual General Release**:

   a. **Allied-Yucaipa Parties General Release**. Allied, Gendregske, and Yucaipa, on behalf of themselves and their affiliates, their respective parent, subsidiary, and other affiliated companies, predecessors, successors, assigns, shareholders, members, partners, principals, directors, managers, officers, employees, agents, representatives, and attorneys, and their respective beneficiaries, heirs, personal representatives, and fiduciaries (collectively, the "**Allied-Yucaipa Parties**"), knowingly, voluntarily, irrevocably, unconditionally, and absolutely release, waive, cancel, acquit, relinquish, remise, and forever discharge any and all claims, charges, demands, complaints, actions, causes of action, suits, grievances, controversies, debts, liens, costs (including, without limitation, attorneys', accountants', and other advisors' fees and costs), obligations, promises, agreements, rights, damages, losses, and liabilities of any nature whatsoever, whether known or unknown, asserted or unasserted, liquidated or unliquidated, absolute, accrued, fixed, contingent, or otherwise, and without limitation of law, equity, or otherwise (all hereinafter referred to as "**Claims**") that any one or more of the Allied-Yucaipa Parties had, now have, or may claim to have against any one or more of Riggs, the Riggs Companies, and their respective affiliates, their respective parent, subsidiary, and other affiliated companies, predecessors, successors, assigns, shareholders, members, partners, principals, directors, managers, officers, employees, agents, representatives, and attorneys, and their respective beneficiaries, heirs, personal representatives, and fiduciaries (the "**Riggs Parties**") by reason of any fact, circumstance, event, matter, act, omission, or cause that has arose, accrued, or occurred up to and including the time of the Effective Date, including, without limitation, all claims, liabilities, and causes of action relating to or arising out of the Allied Lawsuit.

   b. **Riggs Parties General Release**. The Riggs Parties knowingly, voluntarily, irrevocably, unconditionally, and absolutely release, waive, cancel, acquit, relinquish, remise, and forever discharge any and all Claims that any one or more of the Riggs Parties had, now have, or may claim to have against any one or more of Allied-Yucaipa Parties by reason of any fact, circumstance, event, matter, act, omission, or cause that has arose, accrued, or occurred up to and including the time of the Effective Date, including, without limitation, all claims, liabilities, and causes of action relating to or arising out of the Allied Lawsuit.

   c. **No Assignment of Claims**. Each Party represents and warrants to the other Parties that no Claim waived or released herein by such Party has been assigned, expressly, impliedly, by operation of law, or otherwise, and that all Claims waived and released herein by such Party are owned by such Party and such Party has the sole right, authority, and power to release them.

- 2 -

d. **No Suit Covenants**. Each Party shall and hereby agrees to forever refrain and forebear from commencing, instituting, or prosecuting any lawsuit, action, or proceeding, judicial, administrative, or otherwise, or otherwise attempting to collect or enforce any Claims which are waived and released herein by such Party, and shall indemnify, defend, and hold harmless all the parties released herein from any Claims arising from or relating to any of the Claims which are waived and released herein by such Party.

e. **Defense**. Each Party understands and agrees that this Agreement shall be pleaded as a full and complete defense to any lawsuit, action, or proceeding which is or may be instituted, prosecuted, or maintained by such Party against any other Party asserting Claims that are waived and released herein by such Party.

f. **Further Waiver**. Each Party further waives all benefits under any applicable statute or other law providing that a general release does not extend to claims which the creditor does not know or suspect to exist in its favor at the time of executing the waiver and release, which if known by it must have materially affected its settlement with the debtor, as well as any other statutes or other law of similar effect, to the extent that such benefits may contravene the general releases set forth herein.

g. **ComVest Parties Not Released**. Notwithstanding anything herein to the contrary, no Riggs Party has released or discharged or hereby releases or discharges, and the general releases provide for herein do not release or discharge, any Claims against ComVest Investment Partners III, L.P. or ComVest III Partners LLC, any principal thereof (including, without limitation, Mark Hughes, Robert L. Priddy, Pete Kight, and Michael S. Falk), or any of their respective affiliates, parent, subsidiary, and other affiliated companies, predecessors, successors, assigns, shareholders, members, partners, principals, directors, managers, officers, employees, agents, representatives, and attorneys, and their respective beneficiaries, heirs, personal representatives, and fiduciaries (collectively, the "**ComVest Parties**"), and all of the Riggs Parties' Claims against the ComVest Parties shall survive the execution of this Agreement. Without limiting anything in the preceding sentence, nothing herein shall in any way prejudice the claims of Riggs and the Riggs Companies in the ComVest Lawsuit.

**4. Consideration**: The consideration for this Agreement is the mutual promises and covenants contained herein, the sufficiency of which is hereby acknowledged by the Parties.

**5. Cooperation in ComVest Litigation**: Allied, Gendregske, and Yucaipa agree to cooperate with Riggs and the Riggs Companies in the ComVest Lawsuit and produce upon request and without objection any evidence relevant to the claims of Riggs and the Riggs Companies in the ComVest Lawsuit.

- 3 -

Confidential

YUCAIPA709769

**6. No Admission of Liability**: It is understood that this Agreement is intended to settle and resolve all past and present claims, liabilities, and causes of action arising or accruing at any time prior to date of this Agreement, including, without limitation, those relating to or arising out of the Allied Lawsuit. The Parties agree that this Agreement shall not be construed in any way as an admission of liability or fault by any Party.

**7. Entire Agreement**: It is the intention of the Parties that this Agreement contain the entire agreement between the Parties with respect to the matters described and referenced herein. This Agreement may only be modified, amended, or terminated in writing signed by all the Parties.

**8. Advice of Counsel**: Each Party individually warrants by affixing its signature to this Agreement that it has read this Agreement in its entirety and has been given the opportunity to consult with counsel before signing said Agreement.

**9. Confidentiality**: The terms and conditions of this Agreement are to remain strictly confidential and shall not to be disclosed to anyone except the Parties and/or any Party's designated attorneys.

**10. Counterparts**: This Agreement may be executed in any number of counterparts and signatures may be delivered by facsimile, each of which may be executed by less than all parties, each of which shall be enforceable against the parties actually executing such counterparts, and all of which together shall constitute one instrument.

**11. Applicable Law**: This Agreement is to be governed by and construed under the laws of the State of Georgia, without giving effect to such State's conflict of laws rules.

*[Signatures Follow on Next Pages]*

- 4 -

Confidential

YUCAIPA709770

**IN WITNESS WHEREOF**, the Parties hereto have executed this Confidential Joint Settlement and Mutual Release to be effective as of the Effective Date.

---
T. MICHAEL RIGGS

---
Date

JACK COOPER HOLDINGS LLC

By:_____

---
Printed Name & Title

---
Date

JACK COOPER TRANSPORT COMPANY, INC.

By:_____

---
Printed Name & Title

---
Date

*[Signatures Continue on Next Page]*

- 5 -

Confidential

YUCAIPA709771

---
MARK J. GENDREGSKE

---
Date


ALLIED SYSTEMS HOLDINGS, INC.

By:_____

---
Printed Name & Title

---
Date


THE YUCAIPA COMPANIES, LLC

By:_____

---
Printed Name & Title

---
Date


YUCAIPA AMERICAN ALLIANCE FUND I, LP

By:_____

---
Printed Name & Title

---
Date


- 6 -

Confidential

YUCAIPA709772

YUCAIPA AMERICAN ALLIANCE
(PARALLEL) FUND I, LP

By:_____

_____
Printed Name & Title

_____
Date

YEC, INC.

By:_____

_____
Printed Name & Title

_____
Date

Formatted: Font color: Black,
Formatted: Font color: Black, highlight

- 7 -

Confidential

YUCAIPA709773