## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) (Jointly Administered) |
| Debtors. | |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS | Adv. Proc. No. 13-50530 |
| Plaintiff, | |
| BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P., | |
| Intervenors, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., YUCAIPA AMERICAN ALLIANCE FUND II, L.P., YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND II, L.P., MARK GENDREGSKE, JOS OPDEWEEGH, JAMES FRANK, DEREX WALKER, JEFF PELLETIER, IRA TOCHNER, and JOSEPH TOMCZAK, | |
| Defendants. | |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BLACK DIAMOND OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co- | Adv. Pro. No. 14-50971 (CSS) |

administrative agent, and SPECTRUM
COMMERCIAL FINANCE LLC, as co-
administrative agent,

Plaintiff,

v.

YUCAIPA AMERICAN ALLIANCE FUND I, L.P.,
YUCAIPA AMERICAN ALLIANCE (PARALLEL)
FUND I, L.P., YUCAIPA AMERICAN ALLIANCE
FUND II, L.P., YUCAIPA AMERICAN ALLIANCE
(PARALLEL) FUND II, L.P., RONALD BURKLE,
JOS OPDEWEEGH, DEREX WALKER, JEFF
PELLETIER, IRA TOCHNER, and JOSEPH
TOMCZAK,

Defendants.

# **DEFENDANTS YUCAIPA AMERICAN ALLIANCE FUND I, L.P. AND YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.'S OBJECTION TO ENTRY OF JUDGMENT AND ADDITIONAL OBJECTIONS TO THE PROPOSED FORM OF JUDGMENT SUBMITTED BY THE LITIGATION TRUSTEE; REQUEST FOR STAY IN THE ALTERNATIVE**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION..................................................................................................... 1

II.  RELEVANT BACKGROUND ................................................................................ 2

III. ARGUMENT ............................................................................................................ 3

    A.   This Court cannot enter a final judgment on Estate Claim 5 and Lender
         Claim 2, both of which are non-core claims. ................................................. 3

    B.   The Court should not enter a partial judgment under Rule 54(b) on the
         Litigation Trustee's core claims (and certainly not the non-core claims). .............. 7

        1.   Partial judgments under Rule 54(b)........................................................ 7

        2.   The Litigation Trustee does not and cannot meet her burden to show
             that a Rule 54(b) partial judgment is appropriate............................................ 9

        3.   The Court should not award prejudgment interest on the Litigation
             Trustee's fraudulent transfer and disallowance claims. ................................. 16

        4.   Prejudgment interest on the Litigation Trustee's contract claims
             should not be calculated as of August 31, 2009. .............................................. 17

        5.   At the very least, the Court should not enter a Rule 54(b) judgment
             only on certain aspects of the equitable subordination claims. ...................... 17

    C.   Alternatively, if this Court does enter a judgment over Yucaipa's
         objection, it should stay any trial of the remaining claims pending
         Yucaipa's appeal. ...................................................................................... 19

    D.   Alternatively, if the Court does enter a Rule 54(b) partial judgment against
         Yucaipa, it should stay enforcement of that judgment pursuant to Rule
         62(h)......................................................................................................... 21

IV.  CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allis-Chalmers Corp. v. Phila. Elec. Co.*,
    521 F.2d 360 (3d Cir. 1975)..............................................................................8, 9

*AM Gen. Holdings LLC v. The Renco Grp., Inc.*,
    2016 WL 4440476 (Del. Ch. Aug. 22, 2016) ..........................................................19

*Ariz. State Carpenters Pension Tr. Fund v. Miller*,
    938 F.2d 1038 (9th Cir. 1991) ...............................................................................18

*In re Axiant, LLC*,
    2012 WL 5614588 (Bankr. D. Del. Nov. 15, 2012) ................................................5

*Beard Research, Inc. v. Kates*,
    8 A.3d 573 (Del. Ch. 2010)....................................................................................16

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)..............................................................8, 9, 13, 14, 15

*Blasland, Bouck & Lee, Inc. v. City of N. Miami*,
    283 F.3d 1286 (11th Cir. 2002) .............................................................................17

*Carter v. City of Phila.*,
    181 F.3d 339 (3d Cir. 1999)....................................................................................8

*Chesapeake Indus., Inc. v. Togova Enters., Inc.*,
    197 Cal. Rptr. 348 (1983) ......................................................................................16

*City of Riverside v. Greyhound Lines, Inc.*,
    2017 WL 3575325 (C.D. Cal. Aug. 2, 2017)........................................................21

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
    176 F.3d 187 (3d Cir. 1999)....................................................................................5

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
    446 U.S. 1 (1980)....................................................................................................7

*Elliott v. Archdiocese of N.Y.*,
    682 F.3d 213 (3d Cir. 2012)....................................................................................8

*EMSI Acquisition, Inc. v. RSUI Indem. Co.*,
    2018 WL 2316633 (D. Del. May 22, 2018)..........................................................12

# TABLE OF AUTHORITIES *(cont'd)*

Page(s)

*Exec. Benefits Ins. Agency v. Arkison,*
  573 U.S. 25 (2014) ............................................................................................................4, 5

*In re Exide Techs.,*
  544 F.3d 196 (3d Cir. 2008) ....................................................................................................4

*Gerardi v. Pelullo,*
  16 F.3d 1363 (3d Cir. 1994) ....................................................................................................9

*Halper v. Halper,*
  164 F.3d 830 (3d Cir. 1999) .................................................................................................3, 4

*Hill v. City of Scranton,*
  411 F.3d 118 (3d Cir. 2005) ....................................................................................................8

*Keurig, Inc. v. Sturm Foods, Inc.,*
  2012 WL 12896333 (D. Del. Nov. 2, 2012) ............................................................................9

*Landis v. N. Am. Co.,*
  299 U.S. 248 (1936) ...............................................................................................................19

*Laurel Gardens, LLC v. Mckenna,*
  948 F.3d 105 (3d Cir. 2020) ..................................................................................................12

*Logan v. Westchester Fire Ins. Co.,*
  445 B.R. 402 (D. Del. 2011) ....................................................................................................5

*Luster v. PuraCap Labs., LLC,*
  2021 WL 311256 (D. Del. Jan. 29, 2021) ..............................................................................18

*Lyman Commerce Sols, Inc. v. Lung,*
  2015 WL 4545089 (S.D.N.Y. July 16, 2015) ........................................................................16

*Marina Dist. Dev. Co. v. Ivey,*
  2018 WL 40089025 (D.N.J. Aug. 28, 2018) ..........................................................................21

*McLish v. Roff,*
  141 U.S. 661 (1891) .................................................................................................................7

*Microsoft Corp. v. Baker,*
  137 S. Ct. 1702 (2017) .............................................................................................................7

*In re Millennium Lab Holdings II, LLC,*
  575 B.R. 252 (Bankr. D. Del. 2017) ........................................................................................4

## TABLE OF AUTHORITIES *(cont'd)*

Page(s)

*Nken v. Holder*,
    556 U.S. 418 (2009).................................................................................19

*Norman v. Elkin*,
    961 F.3d 275 (3d Cir. 2020)......................................................................19

*In re Palermo*,
    739 F.3d 99 (2d Cir. 2014)........................................................................16

*In re Paragon Offshore PLC*,
    598 B.R. 761 (Bankr. D. Del. 2019) ..........................................................6

*Phar-Mor, Inc. v. Coopers & Lybrand*,
    22 F.3d 1228 (3d Cir. 1994).......................................................................5

*Razak v. Uber Techs., Inc.*,
    951 F.3d 137 (3d Cir. 2020)......................................................................11

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015)......................................................................19

*Sears, Roebuck & Co. v. Mackey*,
    351 U.S. 427 (1956)....................................................................................8

*Stauffer Chemical Co. v. Keysor-Century Corp.*,
    541 F. Supp. 234 (D. Del. 1982)...............................................................12

*Stayton v. Del. Health Corp.*,
    117 A.3d 521 (Del. 2015) ..........................................................................11

*Torchin v. Blue Shore Grill, LLC*,
    2012 WL 6634441 (D.V.I. Dec. 20, 2012) ...............................................14

*In re Vaso Active Pharm., Inc.*,
    2012 WL 4793241 (Bankr. D. Del. Oct. 9, 2012) ....................................16

*In re Weiand Auto. Indus.*,
    612 B.R. 824 (Bankr. D. Del. 2020) ...........................................................4

*Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015)....................................................................................6

*Wright v. Elton Corp.*,
    2019 WL 7293694 (D. Del. Dec. 27, 2019)..........................................10, 15

# TABLE OF AUTHORITIES *(cont'd)*

Page(s)

## Statutes

28 U.S.C. § 157 ..................................................................................................3, 4

## Rules

Fed. R. Bank. Proc. 7054 .......................................................................................7

Fed. R. Bank. Proc. 9033 .......................................................................................4

Fed. R. Civ. Proc. 54 ..................................................................................... *passim*

Fed. R. Civ. Proc. 56 ..............................................................................................2

Fed. R. Civ. Proc. 62(h) ........................................................................................21

## I.    INTRODUCTION

Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa") respectfully object to the entry of a judgment in this case resulting from the May 4, 2021 Opinion (the "Opinion") and Order (the "Order") granting in part and denying in part the parties' cross-motions for summary judgment in these two related adversary proceedings.  *See* Adv. Proc. No. 13-50530 ("Estate Action"), D.I. 825, 826; Adv. Proc. No. 14-50947 ("Lender Action"), D.I. 563, 564.  Yucaipa also presents specific objections to the [Proposed] Form of Judgment filed by the Litigation Trustee on May 18, 2021 (the "Proposed Judgment").  *See* Estate Action, D.I. 829, 829-1; Lender Action, D.I. 567, 567-1.

Two separate and independent grounds support this objection.

- With respect to the Order granting the Trustee's motion for summary judgment on the breach of contract claims (Estate Claim 5 and Lender Claim 2):  These are non-core claims and therefore this Court lacks jurisdiction to issue a judgment on them.  Pursuant to 28 U.S.C. § 157, this Court may only issue proposed findings of fact and conclusions of law to the District Court for *de novo* review, not a final judgment.

- With respect to all claims addressed in the Opinion and Order—breach of contract, fraudulent transfer, and disallowance (Estate Claims 5, 10, 11, and 13 and Lender Claim 2)—in addition to the jurisdictional issue raised above:  Although Federal Rule of Civil Procedure 54(b) allows the Court to enter a partial judgment on fewer than all claims, such a partial judgment would be inappropriate here given the close relationship and high degree of overlap between the adjudicated and unadjudicated claims, among other reasons.  All of the claims share the same basic factual predicates—the gravamen of this case revolves around a handful of key factual issues.  Because the Court's 117-page Opinion is so detailed and makes so many factual findings, these findings necessarily implicate the remainder of the claims.  To allow the factual findings contained in the Opinion to support a partial final judgment when those very same findings will be part of, and implicated in, a trial, would be plainly unfair to Yucaipa and render the trial—where

1

disputed factual issues are supposed to be resolved—compromised.  It would also risk wasting judicial and party resources because it could lead to inconsistent rulings and multiple trials.

Yucaipa respectfully requests that the Court (1) issue proposed findings of fact and conclusions of law with respect to the contract claims in Estate Claim 5 and Lender Claim 2 and (2) not issue a judgment on the remainder of the claims until the trial in this case is completed. As would then be appropriate, the District Court would conduct a *de novo* review of those proposed findings of fact and conclusions of law pursuant to Bankruptcy Rules 8018.1 and 9033 and trial would proceed on the remaining claims.[1]

Alternatively, if this Court is inclined to issue a partial judgment, Yucaipa respectfully requests that the Court stay the enforcement of any judgment and stay the remaining claims while Yucaipa seeks review by the District Court.

## II.    RELEVANT BACKGROUND

The Opinion and Order granted the Trustee's summary judgment motion as to the following claims or portions of claims against Yucaipa[2]:

- Estate Claim 1 for equitable subordination:  Granted in part, denied in part.
- Estate Claim 2 for equitable subordination:  Granted in part, denied in part.
- Estate Claim 5 for breach of contract:  Granted.
- Estate Claim 10 for avoidance and recovery of constructive fraudulent transfer: Granted.
- Estate Claim 11 for avoidance and recovery of fraudulent transfers and conveyances: Granted.
- Estate Claim 13 for disallowance of claim:  Granted.

---

[1]  For the avoidance of doubt, Yucaipa has identified other significant flaws with the Opinion and Order, including the misapplication of the governing Rule 56 standard and factual findings that are unsupported by the record, as well as numerous legal errors.  Yucaipa preserves all of these arguments for a later date; these objections are limited to those issues set forth within this document, and does not constitute a waiver of other arguments that demonstrate that the Opinion and Order are defective as a matter of law.

[2]  Capitalized terms shall have the same meaning as in the Opinion.

- Lender Claim 1 for equitable subordination:  Granted in part, denied in part.
- Lender Claim 2 for breach of contract:  Granted.

The Order directed the parties to "submit a proposed form of Judgment consistent with the Opinion and Order within 14 days of the date hereof," that is, by May 18, 2021.

Even if there were some ambiguity about this Court's intention to enter a judgment promptly based on the Opinion and Order (there wasn't), the Court reaffirmed its intention at the status conference on May 12, 2021, when it emphasized:  "Let's just be clear, judgment will be entered.  The Court's ruled.  Of course you have your appeal rights and that's what District Court and the Third Circuit are for.  It could actually go to the Supreme Court so.  But those are all of course fully preserved.  But judgment will be entered."  (5/12/21 Tr. at pp. 9:25-10:6 (emphases added).)  Accordingly, on May 18, 2021, the Litigation Trustee submitted her proposed form of judgment for the Court's consideration.  *See* Estate Action D.I. 829-1; Lender Action D.I. 567-1. For the reasons explained in these Objections, Yucaipa is not submitting a competing form of proposed judgment—because there is no form of judgment that would be appropriate at this time.

## III.    ARGUMENT

### A.    This Court cannot enter a final judgment on Estate Claim 5 and Lender Claim 2, both of which are non-core claims.

It is black letter law that a Bankruptcy Court is not able to enter *any* judgment on non-core claims.  A core claim is one that "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."  *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).  Non-core claims, by contrast, "include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case."  *Id*. at 837 (quoting 28 U.S.C. § 157(c)(1)).[3]

---

[3]  On page 6, the Opinion states, incorrectly, that:  "This is a core proceeding, pursuant to 28 U.S.C. § 157(b)."  The Order then goes on to state:  "this is a core proceeding, pursuant to 28 U.S.C. § 157(b)," and that "this Court has the judicial power to enter a final order."

Under Supreme Court and Third Circuit precedent, it is well established that in non-core proceedings—those "that are 'not ... core' but are 'otherwise related to a case under title 11'"—the bankruptcy court "submit[s] proposed findings of fact and conclusions of law to the district court," who "review[s] those proposed findings and conclusions *de* novo and enter[s] any final orders or judgments." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) (quoting 28 U.S.C. § 157); *see also, e.g.*, *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 261 (Bankr. D. Del. 2017), *aff'd*, 591 B.R. 559 (D. Del. 2018), *aff'd sub nom. In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019) ("[B]ankruptcy judges can only hear, but not determine, non-core proceedings, meaning that the bankruptcy judge must enter proposed findings of fact and conclusions of law for review by the district court under Federal Rule of Bankruptcy Procedure 9033."). Put differently, "[f]or non-core proceedings related to a matter under title 11 a bankruptcy court has advisory power and shall submit proposed findings of fact and conclusions of law to the district court subject to de novo review by that court. In this circumstance, the district court enters final orders. In contrast, … [a] bankruptcy court has final adjudicative power over core proceedings that is subject to appellate review by district courts." *In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020) (citations and quotation marks omitted).

The Opinion and Order found in favor of the Litigation Trustee on Estate Claim 5 and Lender Claim 2 (among other claims). These claims are quintessentially non-core, state-law claims for breach of contract that neither "invoke[] a substantive right provided by title 11," nor have anything to do with bankruptcy-law related causes of action. *Halper*, 164 F.3d at 836 (citation omitted). First, breach of contract claims do not appear on the list of core proceedings in Section 157(b). Second, these claims could (and regularly do) exist regardless of whether there is a pending adversary proceeding, and they cannot fairly be described as arising "only in the context of a bankruptcy case." *Id.* (citation omitted); *see In re Exide Techs.*, 544 F.3d 196, 207 (3d Cir. 2008) (breach of contract claim was "a state law cause of action, sounding in contract" that "d[id] not appear to be proceedings that 'could arise only in the context of a

bankruptcy case'"); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1239 n.19 (3d Cir. 1994) (holding that breach of contract action that may bring property into estate "is precisely the type of proceeding that is non-core and outside the power of the bankruptcy court to adjudicate"); *In re Axiant, LLC*, 2012 WL 5614588 (Bankr. D. Del. Nov. 15, 2012) (breach of contract is a non-core claim); *Logan v. Westchester Fire Ins. Co.*, 445 B.R. 402, 405 (D. Del. 2011) ("The action is for breach of two reinsurance agreement and bad faith refusal to pay claims. This does not involve a dispute that could arise only in the context of a bankruptcy case.").

In fact, this Court ***has already ruled in this case that Lender Claim 2 is non-core***. *See* Lender Action D.I. 70 at 2 ("The Second . . . Claim[] for Relief asserted by the Plaintiffs . . . constitute[s] [a] non-core claim[].").  There is no debate that the gravamen of the breach of contract claim in Lender Claim 2 and the breach of contract claim in Estate Claim 5 are identical—they address the same breach of the same agreement and identify the same substantial allegations.  Indeed, the Opinion states exactly that when it acknowledges that the Litigation Trustee's "victory [on the Estate Claim] subsumes the Lender Claims."  Opinion at 46 n.122.

District Judge Robinson, who formerly supervised this case in the District Court, expressly recognized that this case involves both core and non-core claims:  "some of Judge Sontchi's decisions will be in the form of proposed findings of fact and conclusions of law" because some of the claims at issue are non-core claims.  Case No. 1:13-CV-1010, D.I. 34, at 3 n.1 (D. Del. Nov. 13, 2015).

Because Estate Claim 5 and Lender Claim 2 are non-core claims, it is not within the purview of this Court to enter a final judgment on either claim.  *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 196 (3d Cir. 1999).  Rather, it is only the District Court, following *de novo* review, that may "enter any final orders or judgment."  *Arkison*, 573 U.S. at 34.

Finally, Yucaipa has not consented to the Bankruptcy Court finally adjudicating the Litigation Trustee's non-core claims.  The Supreme Court has emphasized that a litigant's consent to the Bankruptcy Court entering final orders on non-core claims "whether express or

implied," must "be knowing and voluntary"—the "key inquiry" is whether "'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015); *see also In re Paragon Offshore PLC*, 598 B.R. 761, 769-70 (Bankr. D. Del. 2019) (finding no implied consent even where litigant entered into a settlement agreement and failed to object to jurisdictional provisions of the confirmed plan).

Yucaipa has repeatedly and consistently objected to the Bankruptcy Court issuing any final orders or judgments on the Litigation Trustee's non-core claims. *See, e.g.*, Estate Action D.I. 416 (Aug. 31, 2017) ("Yucaipa do[es] not consent to the entry of final orders or judgments by the Court to the extent that the Court has determined that it, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Further, Yucaipa do[es] not consent to the entry of final orders or judgments by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution."); Lender Action D.I. 216 (Aug. 31, 2017) (same); Estate Action D.I. 429 (May 24, 2018) (same); Estate Action D.I. 696 (May 1, 2020) (same); Lender Action D.I. 453 (May 1, 2020) (same); *see also* Case No. 12-11564, D.I. 3196-1, at 18 (Bankr. D. Del. Sept. 9, 2015) (Amended Plan § 3.7(e): "The Plan and Confirmation Order shall have no effect on or prejudice in anyway Yucaipa['s] . . . respective rights, claims or defenses."); Case No. 12-11564, D.I. 3383, at 49 (Bankr. D. Del. Dec. 9, 2015) (Confirmation Order § 54: "[N]othing in the Plan, Plan Supplement, or this Confirmation Order shall be deemed to (i) provide the Bankruptcy Court with jurisdiction over any Litigation Claims and any claims involving any of the persons or entities described in Section 3.7(e) of the Plan [or] (ii) limit or impair any named or unnamed defendant's right to contest the Bankruptcy Court's jurisdiction over any Litigation Claim and any claims involving any of the persons or entities described in Section 3.7(e) of the Plan that may be asserted against them.").

**B.    The Court should not enter a partial judgment under Rule 54(b) on the Litigation Trustee's core claims (and certainly not the non-core claims).**

The Opinion and Order also resolved the Litigation Trustee's core claims for fraudulent transfer (Estate Claims 10 and 11) and disallowance of claim (Estate Claim 13).[4]  Even as to these core claims—for which a Bankruptcy Court would have the authority to enter a final order or judgment—it would be improper to enter judgment at this time.  First, the Opinion and Order did not resolve either adversary proceeding in its entirety (that is, certain claims remain to be tried), so the Court may not enter a final judgment until all claims are resolved.  Second, although courts may enter partial judgment on fewer than all claims under Federal Rule of Civil Procedure 54(b) (made applicable in these proceedings by Federal Rule of Bankruptcy Procedure 7054), a partial judgment is a narrow exception to the "one final judgment rule," and the criteria for issuing one are not met here.  Third, a partial judgment on only certain claims would ignore District Judge Robinson's fundamental directions to avoid "piecemeal litigation."

**1.    Partial judgments under Rule 54(b).**

"'From the very foundation of our judicial system,' the general rule has been that the whole case and every matter in controversy in it [must be] decided in a single appeal." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017) (alteration in original) (quoting *McLish v. Roff*, 141 U.S. 661, 665-66 (1891)).

Rule 54(b) provides a narrow exception to this principle:  it states that in an action that "presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b); *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980).  The Litigation Trustee's Proposed Judgment (1) expressly states that there is "no just reason for delay" (even though this Court made no such finding in its Opinion and

---

[4]  The Opinion and Order also addressed *portions* of the equitable subordination claims (Estate Claims 1 and 2, and Lender Claim 1).  As explained below in Section III.B.5, even the Litigation Trustee appears to recognized (in her Proposed Judgment) that it would be improper at this time to enter judgment on only *portions* of those claims.

Order) and (2) states the Proposed Judgment is a Rule 54(b) judgment, as she must, because several claims still remain for adjudication and therefore any judgment entered at this stage can only be a partial judgment under Rule 54(b). *See Hill v. City of Scranton*, 411 F.3d 118, 124 (3d Cir. 2005).

Rule 54(b) "preserves the historic federal policy against piecemeal appeals," *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956), while trying to "mak[e] review available at a time that best serves the needs of the parties." *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 363 (3d Cir. 1975). In other words, "[c]ertification of a judgment as final under Rule 54(b) is the exception, not the rule." *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 220 (3d Cir. 2012).

When evaluating whether to certify a partial judgment as final under Rule 54(b), a court must determine whether there has been "a final judgment on the merits" as to certain claims or parties and, if so, determine and expressly state that there is "no just reason for delay." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006); *accord Elliott*, 682 F.3d at 224. It is not enough that a court simply "recite the 54(b) formula of 'no just reason of delay.'" *Allis-Chalmers*, 521 F.2d at 364. Rather, courts must "provide a statement of reasons when entering final judgment under Rule 54(b)." *Carter v. City of Phila.*, 181 F.3d 339, 343 (3d Cir. 1999).

In considering whether to enter a partial judgment under Rule 54(b), courts are directed to consider several factors when evaluating whether there is "no just reason for delay":

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [bankruptcy] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Berckeley*, 455 F.3d at 203 (citing *Allis-Chalmers*, 521 F.2d at 364).[5]  The party requesting a

Rule 54(b) judgment bears the burden of establishing there is no just reason for delay.  *See Allis-*

*Chalmers*, 521 F.2d at 365.

> **2.      The Litigation Trustee does not and cannot meet her burden to show that a
> Rule 54(b) partial judgment is appropriate.**

The Litigation Trustee never asked this Court for a partial judgment under Rule 54(b).

To the contrary, she expressly sought "partial summary judgment" and requested only "an order

granting the Motion and awarding such other and further relief as the Court deems appropriate."

Estate Action D.I. 705 at 3.  And she made no arguments in her summary judgment papers about

Rule 54(b) or whether there was any "just reason for delay" to enter a partial judgment if the

Court were to grant her motion in whole or in part.  Nonetheless, the Litigation Trustee now tries

to smuggle in a finding of "no just reason for delay" in her Proposed Judgment, *see* Proposed

Judgment at 4, in an effort to justify a partial judgment under Rule 54(b), even though this Court

made no such finding in its Opinion and Order.

In any event, the Litigation Trustee cannot meet her burden to show that a Rule 54(b)

partial judgment would be appropriate.

> **a.      There is a close relationship between the adjudicated and
> unadjudicated claims.**

The Third Circuit has warned that "a court should be particularly cautious in certifying as

final a judgment on a claim which is not truly distinct from the claims on remaining issues, for

even if the certified judgment is inherently final, the facts underlying the claim resulting in that

judgment may be intertwined with the remaining issues."  *Gerardi v. Pelullo*, 16 F.3d 1363, 1372

(3d Cir. 1994); *cf. Keurig, Inc. v. Sturm Foods, Inc.*, 2012 WL 12896333, at *2 (D. Del. Nov. 2,

2012) (explaining concern for "piecemeal appellate review . . . is tempered when . . . the claims

at issue are separate and distinct").

---

[5]  The fourth factor—the possibility of setoff against the judgment—is not relevant here.

The Litigation Trustee's Proposed Judgment states in conclusory fashion that "the claims upon which this Judgment is being entered are severable and distinct from the claims and issues remaining for trial." Proposed Judgment at 4. But that is simply not true.

Several issues in the adjudicated breach of contract, fraudulent transfer, and disallowance claims are equally relevant to the claims remaining before this Court. For example, Yucaipa's statute of limitations argument applies both in Lender Claim 2 (breach of contract) and Lender Claim 3 (breach of the implied covenant of good faith and fair dealing), the latter of which remains to be tried. The Court recognized this overlap in its Opinion and applied the same analysis to each claim. *See* Opinion at 38 ("Lender Claims 2 and 3: Breach of Contract and Breach of Duty of Good Faith and Fair Dealing – Statute of Limitations"). Given that there are unadjudicated claims "that are intertwined with the legal issues decided by the court" regarding the adjudicated claims, a Rule 54(b) judgment is improper. *Wright v. Elton Corp.*, 2019 WL 7293694, at *4 (D. Del. Dec. 27, 2019).

Damages for the breach of contract claims also closely overlap with the fiduciary duty and equitable subordination claims. As Yucaipa has argued, the Litigation Trustee's breach of fiduciary duty claim is duplicative of the Lenders' breach of contract claims. Estate Action D.I. 697 at 45. The Litigation Trustee even recognized as much with respect to damages: "If there is recovery for the Estate Claim for breach of fiduciary duty in connection with Yucaipa torpedoing the JCT deal in 2011-2012, then the Direct Lender Claim for breach of contract for that misconduct is academic because the Trustee is not seeking duplicative damages." Estate Action D.I. 770 at 45.

Similarly, the extent to which Yucaipa's claims are subordinated (which has not been adjudicated) also overlaps with the breach of contract damages (which has). The Opinion concluded that equitable subordination was partially warranted because Yucaipa acted in bad faith in purchasing the first lien debt under the invalid Fourth Amendment and in failing to make the capital contribution. Opinion at 108-09. The breach of contract claims are premised on the same alleged conduct. Because the Litigation Trustee cannot recover twice for the same

underlying wrong, and because the fiduciary duty damages and subordination of claims rely on the same conduct and alleged harm that form the basis of the breach of contract claims, there is substantial overlap between the claims for breach of fiduciary duty, equitable subordination, and breach of contract. *See, e.g.*, *Stayton v. Del. Health Corp.*, 117 A.3d 521, 534 (Del. 2015) ("'a plaintiff is entitled to compensation sufficient to make him whole, but no more").

Overlapping factual issues also remain. Much of this case relates to Yucaipa and Allied's actions with respect to the Third and Fourth Amendments to the FLCA. The Litigation Trustee's breach of contract claims are premised on an alleged breach of the Third Amendment. *See* Opinion at 26. The fraudulent transfer and disallowance claims concern, in part, Yucaipa's supposed "bad faith" in causing Allied to enter into the Fourth Amendment and subsequent related litigation and fees. *See id.* at 52-54, 65-66, 70.

The facts concerning the Third and Fourth Amendments bear *directly* on the equitable subordination claims and breach-of-fiduciary duty claims that remain before this Court. And the Opinion (incorrectly) concluded that certain facts related to these amendments were undisputed. *See, e.g.*, *id.* at 102 ("Yucaipa advantaged itself by . . . acquiring more than $50 million in principal amount of Term Loans . . . avoiding the requirement that it make the Capital Contribution, and . . . Yucaipa's actions injured Allied and creditors, as it withheld the Capital Contribution.").[6] In fact, the Court acknowledged in the equitable subordination section of the Opinion that it "has already determined that Yucaipa's attempt to amend the FLCA was bad faith conduct," citing the Opinion's discussion on the fraudulent transfer and disallowance claims. *See id.* at 108 & n.321. Because consideration of the remaining claims "require[s] consideration of the same factual record" and concern "the *same* contract" as the adjudicated claims, entry of

---

[6] Yucaipa contends that the Court cannot make "factual findings" at summary judgment, particularly when, as here, doing so required the resolution of disputed issues of material fact and drawing inferences against the non-moving party, in connection with the breach of contract, fraudulent transfer, and disallowance claims. *See Razak v. Uber Techs., Inc.*, 951 F.3d 137, 145 (3d Cir. 2020) ("[W]here there are genuine questions of material fact that need resolution, these questions must go to a fact-finder.").

judgment under Rule 54(b) would be improper.  *EMSI Acquisition, Inc. v. RSUI Indem. Co.*, 2018 WL 2316633, at *1 (D. Del. May 22, 2018) (emphasis in original) (denying Rule 54(b) certification following dismissal of claims at summary judgment).

Yucaipa also moved for partial summary judgment as to the issue of damages on the Lender's claims for breach of contract (Lender Claim 2) and breach of the implied covenant of good faith and fair dealing (Lender Claim 3).  The Court denied Yucaipa's motion as to Lender Claim 2 and instead ruled in the Litigation Trustee's favor.  But the Litigation Trustee did not move on Lender Claim 3, so that claim will need to be tried.  Yet if the Court enters a Rule 54(b) partial judgment on Lender Claim 2, the factual and legal issues concerning damages will be subject to *de novo* review by the District Court (as to Lender Claim 2), and simultaneously will need to be tried (as to Lender Claim 3).  This definitively shows that the claims resolved in the Opinion and Order are not "truly distinct" from the remaining claims—which Rule 54(b) requires.

It bears noting that when courts do enter partial final judgments under Rule 54(b), it is only when the remaining claims are actually unrelated (factually and legally) to the adjudicated claims.  For example, in *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105 (3d Cir. 2020), the Third Circuit affirmed the district court's entry of judgment pursuant to Rule 54(b) as to several defendants because the underlying order dismissed those defendants due to lack of personal jurisdiction, so they "were the only defendants dismissed in the action on the basis of personal jurisdiction, and the basis for their dismissal [was] factually unique to them."  *Id.* at 116.  Similarly, in *Stauffer Chemical Co. v. Keysor-Century Corp.*, 541 F. Supp. 234 (D. Del. 1982), the district court entered partial judgment under Rule 54(b) following summary judgment on plaintiff's claims because the remaining counterclaims were related to entirely different transactions.  Here, by contrast, the adjudicated and unadjudicated claims—and all the underlying facts—are interrelated and overlap, making entry of a partial judgment pursuant to Rule 54(b) inappropriate.

Notably, District Judge Robinson, in denying Yucaipa's motion to withdraw the reference, expressly acknowledged the overlapping nature of the claims in this case: "These proceedings involve at least some overlapping claims and certainly involve overlapping facts." Case No. 1:13-CV-1010, D.I. 34 at 3 (D. Del. Nov. 13, 2015). This is why Judge Robinson directed that piecemeal litigation and appeals should not occur in this matter: "Rather than have piecemeal litigation – either discrete withdrawals or interlocutory appeals – I conclude that it makes more sense to have the entire dispute resolved in the first instance by Judge Sontchi, with this court taking one comprehensive review of the dispute rather than attenuated glances. This procedure avoids as well the risk of inconsistent rulings." *Id.*; *see also id.* at n.1 ("Recognizing, of course, that some of Judge Sontchi's decisions [i.e., as to core claims] will be in the form of proposed findings of fact and conclusions of law."). Therefore, the entry by this Court of a partial judgment under Rule 54(b) would contravene Judge Robinson's prior directive that this Court resolve the "entire dispute" so that the District Court may take "one comprehensive review of the dispute."

> **b.      There is no possibility that the need for review of the adjudicated claims might or might not be mooted by future developments in the Bankruptcy Court.**

The second factor weighs against this Court's entry of a Rule 54(b) partial judgment because there is no possibility that the adjudicated claims on appeal will "moot the remaining derivative claims" or "appellate review [of the adjudicated claims] might be mooted by further developments" in this Court. *Berckeley*, 455 F.3d at 204.

Here, the Litigation Trustee's adjudicated claims for breach of contract, fraudulent transfer, and disallowance are not merely derivative of the remaining claims that must be tried, even though there is a high degree of overlap amount these claims. Nor are the remaining claims (breach of the implied covenant, breach of fiduciary duty, and equitable subordination) derivative of the adjudicated claims. For example, even if Yucaipa prevails on appeal as to fraudulent transfer, the balance of the claims that remain before this Court would not become

moot, because Yucaipa's position is that there are triable issues of material fact that make summary judgment on fraudulent transfer improper.  Instead, any decision by the District Court would simply clarify which claims involved disputed issues of fact and what claims are precluded as a matter of law.  Therefore, the "determination on appeal" will not moot the remaining claims, nor will the claims remaining to be tried moot the appeal before the District Court.

> ### c.    Entering a partial final judgment now may result in the District Court (and Third Circuit) considering the same issue a second time.

Factor three asks whether there is a possibility that "the reviewing court might be obliged to consider the same issue a second time." *Berckeley*, 455 F.3d at 203.  This factor typically weighs in favor of a Rule 54(b) partial judgment where "the remaining claims d[o] not involve" the same defendants who had claims adjudicated against them. *Id.* at 203-04; *see Torchin v. Blue Shore Grill, LLC*, 2012 WL 6634441, at *6 (D.V.I. Dec. 20, 2012) (finding third factor weighs in favor of Rule 54(b) judgment because "the unadjudicated claims do not involve the parties who had the resolved claims adjudicated in their favor").  Here, because multiple claims against Yucaipa will still remain before this Court, it is likely the reviewing court will need to consider the same issues a second time if a partial judgment were to issue now.

In fact, entering partial final judgment now under Rule 54(b) will *likely* result in multiple appeals to the District Court (and potentially the Third Circuit).  In this scenario, Yucaipa will be forced to immediately appeal the Rule 54(b) judgment to preserve its appellate rights.  With much of the case against Yucaipa still remaining to be tried, there is a substantial likelihood that the District Court will have to deal with this case again—including the overlapping factual and legal issues, *see* Section III.B.2.a, *supra*.  For example, the District Court may conclude on appeal from a Rule 54(b) judgment that there is a disputed issue of fact as to the damages for the Litigation Trustee's contract claims (assuming for argument's sake that a Rule 54(b) judgment could even issue on those non-core claims), sending this issue back to this Court.  The District Court may later need to that issue again—i.e., determine the amount of contract damages (if

any).  This concern should be given particular weight given the District Court's admonition that "piecemeal litigation" should be avoided.  Case No. 1:13-CV-1010, D.I. 34, at *3 (D. Del. Nov. 13, 2015).

> ### d. The "miscellaneous" factors do not weigh in favor of entry of a final judgment.

In considering whether to enter a partial judgment, courts are also to consider "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Berckeley*, 455 F.3d at 203.  The Litigation Trustee's Proposed Judgment pays lip service to these factors, citing her supposed "reasonable concerns about the solvency of Yucaipa" and the "long and arduous" history of the case as reasons why a partial final judgment must be entered now.  *See* Proposed Judgment at 4. But these miscellaneous factors do not weigh in favor of entry of judgment.

*First*, a partial judgment will not necessarily expedite any recovery by the Litigation Trustee and therefore a partial judgment will not remedy the Litigation Trustee's supposed concern about Yucaipa's solvency.  The vast majority of this Court's monetary damages award was on the non-core, breach of contract claims.  But if this Court were to enter a partial judgment on those claims (rather than merely issuing proposed findings), it would be plain, reversable error, for all the reasons identified above.  In that scenario, Yucaipa would immediately appeal, and Yucaipa respectfully submits that it would have at least a reasonable chance of obtaining a stay of enforcement of that portion of the judgment, which would be defective on its face.

*Second*, the existence of the "long and arduous" "litigation history between the parties," Proposed Judgment at 4, is not persuasive in the Rule 54(b) analysis.  *See, e.g.*, *Wright*, 2019 WL 7293694, at *4 (denying Rule 54(b) motion despite acknowledging that the "case is already nearly three years old").  In contrast, in *Berckeley*, the Third Circuit noted that delay weighed in favor of entering Rule 54(b) judgment in part because it had been six years since the district court entered the *summary judgment order*.  455 F.3d at 204.

15

### 3. The Court should not award prejudgment interest on the Litigation Trustee's fraudulent transfer and disallowance claims.

The Litigation Trustee's Proposed Judgment awards prejudgment interest on the fraudulent transfer and disallowance claims (Estate Claims 10, 11, and 13). Proposed Judgment at 3-4. Yucaipa objects because the Court made no such finding in its Opinion and Order to justify an award of prejudgment interest on these claims. "Absent some explanation from [this Court]" as to why prejudgment interest is justified, the district court will likely vacate the award of prejudgment interest and remand the issue. *In re Palermo*, 739 F.3d 99, 108 (2d Cir. 2014).

Even if prejudgment interest were theoretically available despite virtually no briefing on this issue and no reasoning in the Opinion to support it, prejudgment interest still should not be awarded because the Opinion and Order do not specify which law (federal or a specific state) applies to each fraudulent transfer. *E.g.*, Opinion at 47-48, 56 n.154. The relevant law impacts both the availability of prejudgment interest and the applicable rate. *See In re Palermo*, 739 F.3d at 107 ("[C]laims that arise out of federal law are governed by federal rules, claims arising out of state law are governed by state rules."). *Compare Lyman Commerce Sols, Inc. v. Lung*, 2015 WL 4545089, at *4 (S.D.N.Y. July 16, 2015) ("[P]laintiffs in a fraudulent conveyance action are not necessarily entitled to the statutory interest rate as a matter of right," but "interest may . . . be awarded in the district court's discretion."), *with Beard Research, Inc. v. Kates*, 8 A.3d 573, 620 (Del. Ch. 2010) ("In the absence of an express contract rate, Delaware courts use the 'legal rate' as a default rate.") *and In re Vaso Active Pharm., Inc.*, 2012 WL 4793241, at *23-24 (Bankr. D. Del. Oct. 9, 2012) (awarding prejudgment interest in summary judgment order because it is within the court's discretion to do so even though the Bankruptcy Code "does not include a specific reference to prejudgment interest").

Each state likewise has different tests and factors to consider when deciding whether to award prejudgment interest. *E.g.*, *Chesapeake Indus., Inc. v. Togova Enters., Inc.*, 197 Cal. Rptr. 348, 351 (1983) (prejudgment interest under California law may be awarded if "the defendant actually knows the amount owed" or the defendant could have computed the amount owed "from

reasonably available information"); *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1297 (11th Cir. 2002) (Florida law considers whether the delay between injury and judgment is the fault of the prevailing party and whether a party could have, but failed to, mitigate damages).  Therefore, even though the Court concluded that the fraudulent transfer law for six different states and under federal law "generally track the [same] legal elements," Opinion at 56 n.154, the availability of prejudgment interest, the interest rate, and the consideration of the relevant factors varies based on the applicable law, which has not been addressed by the parties or the Court.

> **4.      Prejudgment interest on the Litigation Trustee's contract claims should not be calculated as of August 31, 2009.**

The Litigation Trustee's Proposed Judgment awards prejudgment interest on the breach of contract claims (Estate Claim 5 and Lender Claim 2) "from August 31, 2009, through the date this judgment is entered."  Proposed Judgment at 3.  Yucaipa objects to an award of prejudgment interest that accrues "from the date of the breach" of the Capital Contribution provision in August 2009.  Opinion at 33.  In analyzing the timeliness of Lender Claim 2, this Court (erroneously) agreed with the Litigation Trustee that "Yucaipa continuously breached" the FLCA through 2013, such that it would be improper to "isolate" the August 2009 breach, and it was therefore "impossible to determine the extent of the breach" or the damages resulting from it until the JCT 363 sale in December 2013.  *Id*. at 42-45.  But it cannot simultaneously be true that (a) there was an actionable breach causing the Lenders harm in August 2009 such that prejudgment interest started accruing immediately at that time and (b) the August 2009 breach was not independently actionable because it was part of one "continuous" breach that did not accrue or become actionable until December 2013.

> **5.      At the very least, the Court should not enter a Rule 54(b) judgment only on certain aspects of the equitable subordination claims.**

As noted above, the Opinion and Order resolved certain aspects of the Litigation Trustee's equitable subordination claims (Estate Claims 1 and 2, and Lender Claim 1), but

expressly left various other issues for trial, including the reasonableness of Yucaipa's conduct in the JCT negotiations, whether Yucaipa caused events of default under the FLCA and if so whether that was unreasonable, the degree of injury that Allied or the Lenders suffered as a result of Yucaipa's conduct, whether Yucaipa gained an unfair advantage from its conduct, and "the exact extent to which Yucaipa's claims should be subordinated."  Opinion at 109.

On May 12, 2021, the Litigation Trustee shared with Yucaipa's counsel an initial version of the Proposed Judgment that included a "judgment" on the portions of the equitable subordination claims resolved in the Opinion and Order.  Yucaipa's counsel explained to the Litigation Trustee's counsel that it would be plain error to include a "judgment" on portions of the equitable subordination claims before they are resolved in their entirety.  The Litigation Trustee appears to have agreed with Yucaipa; the Proposed Judgment that the Litigation Trustee filed on May 18, 2021, does not include any reference to equitable subordination.

Nonetheless, for the avoidance of doubt, Yucaipa reemphasizes that it would be error to enter a "judgment" on only certain aspects of the equitable subordination claims.  Where, as here, a court's ruling resolves only a portion of a claim, leaving other portions of the claim for trial, judgment cannot be entered at all—under Rule 54(b) or otherwise.  *E.g.*, *Luster v. PuraCap Labs., LLC*, 2021 WL 311256, at \*3 (D. Del. Jan. 29, 2021) (declining to issue a judgment or partial judgment because "[t]his Court's decision granting-in-part Plaintiff's motion for partial summary judgment (D.I. 99) did not ultimately dispose of an individual claim."); *see also Ariz. State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991).

In addition, if the judgment were to include those portions of the equitable subordination claims resolved in the Opinion and Order, that would obviously exacerbate the "overlap" identified above between adjudicated and unadjudicated claims (and amplify the potential for duplication and inconsistent rulings), further illustrating why a Rule 54(b) judgment is unwarranted at this time.

**C.**     **Alternatively, if this Court does enter a judgment over Yucaipa's objection, it should stay any trial of the remaining claims pending Yucaipa's appeal.**

This Court suggested during the May 12, 2021 status conference that it intends to schedule a trial on the remaining issues and claims as early as this fall.  To the extent this Court enters any Rule 54(b) judgment in connection with its Opinion and Order, over Yucaipa's objection, Yucaipa would request in the alternative that the Court stay any trial on the remaining claims pending resolution of Yucaipa's appeal to the District Court.

Courts possess substantial inherent powers to control and manage their dockets, which includes the power to stay proceedings where the court finds it would best serve the economy and time of the court and parties.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  Generally, a court should consider four factors whether deciding whether to stay a case:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  The first two factors are "the most critical" to the court's consideration.  *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015).

Under the first factor, Yucaipa must demonstrate "a sufficient degree of success for a strong showing [which] exists if there is 'a reasonable chance, or probability of winning.'"  *Id.* And for the reasons explained above, if this Court were to enter a judgment—particularly on the non-core breach of contract claims—Yucaipa believes that the District Court would likely determine that this Court lacked the authority to enter such a judgment.  *See* Section III.A, *supra*. And on the merits, Yucaipa also contends that this Court erred in finding the breach of contract claims to be timely and not barred by the contractual covenant not to sue, based on binding Delaware and Third Circuit law that the Opinion neither cited nor attempted to distinguish.  *See Norman v. Elkin*, 961 F.3d 275, 286 (3d Cir. 2020); *AM Gen. Holdings LLC v. The Renco Grp., Inc.*, 2016 WL 4440476, at *11 (Del. Ch. Aug. 22, 2016).

Yucaipa similarly contends it is likely to prevail on the fraudulent transfer and disallowance claims, for the Court premised its ruling on factual findings that were, at best, disputed issues of fact that cannot be resolved on summary judgment.  For example, the Opinion found that "Yucaipa did not act in good faith by amending the FLCA," Opinion at 65, despite Yucaipa offering substantial evidence in support of its position, including (a) testimony from non-Yucaipa individuals who believed that the Fourth Amendment to the FLCA was the only way for Allied to avoid a second, and potentially fatal, bankruptcy, (b) advice provided to the Allied's board of directors by then-counsel to Allied, and (c) approval of the Fourth Amendment by independent members of Allied's board of directors.  *E.g.*, Estate Action D.I. 697 at 17-18; Estate Action D.I. 700 at Ex. 51 (Allied's counsel advising that alternative to Fourth Amendment was liquidation), Ex. 65 (July 2009 email stating customers were concerned about whether the majority debtholder intended to liquidate Allied for profit), Ex. 69, Ex. 15 at 300, Ex. 10 at 328-30.

As to the second and third factors, both parties are likely to incur unnecessary litigation expenses absent a stay.  A reversal of this Court's judgment (if issued) as to the breach of contract claims would necessarily impact the breach of the implied covenant claim, both with respect to the statute of limitations and damages.  A reversal of the fraudulent transfer and disallowance claims, particularly on the grounds that this Court inappropriately resolved factual disputes and drew inferences against the non-moving party, would impact many of the remaining claims at trial, most prominently the equitable subordination claims.  *See* Section III.B.2.a, *supra*.

Fourth, the public interest and notions of judicial economy both weigh in favor of a stay of the trial pending Yucaipa's appeal to the District Court.  The Court has indicated that it intends to schedule a trial date as early as this fall.  But if the Court enters a partial judgment now, Yucaipa will have the right to immediately appeal it.  If this Court declines to stay the remaining claims, the District Court may issue a reversal on the Rule 54(b) judgment *after* the remaining claims are tried.  This would result in needing to potentially re-try the case.

**D.    Alternatively, if the Court does enter a Rule 54(b) partial judgment against Yucaipa, it should stay enforcement of that judgment pursuant to Rule 62(h).**

Under Federal Rule of Civil Procedure 62(h), "[a] court may stay the enforcement of a final judgment entered under Rule 54(b) until it enters a later judgment or judgments, and may prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered."  As with a stay of trial proceedings pending appeal, courts evaluate the four *Nken* factors when evaluating a stay of enforcement of a judgment under Rule 62(h).  *See Marina Dist. Dev. Co. v. Ivey*, 2018 WL 40089025, at *2 (D.N.J. Aug. 28, 2018); *City of Riverside v. Greyhound Lines, Inc.*, 2017 WL 3575325, at *1 (C.D. Cal. Aug. 2, 2017).  For the same reasons that the claims remaining before this Court should be stayed pending appeal of the Rule 54(b) judgment, the Court should also stay enforcement of the Rule 54(b) judgment pursuant to Rule 62(h).  *See* Section III.C, *supra*.

## IV.    CONCLUSION

For these reasons, the Court should reject the Litigation Trustee's Proposed Judgment and should not enter any judgment at this time.  In the alternative, if this Court does enter a judgment, the remaining proceedings in this Court and the judgment itself should be stayed pending resolution of an appeal to the District Court.

Dated: May 18, 2021

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

_/s/ Michael S. Neiburg_____
Michael R. Nestor (No. 3526)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
mnestor@ycst.com

- and-

GIBSON, DUNN & CRUTCHER LLP
Maurice M. Suh (*Pro Hac Vice*)
Robert A. Klyman (*Pro Hac Vice*)
Kahn Scolnick (*Pro Hac Vice*)
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: (213) 229-7000
msuh@gibsondunn.com

*Attorneys for Defendants Yucaipa American
Alliance Fund I, L.P. and Yucaipa American
Alliance (Parallel) Fund I, L.P.*