## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC CORPORATION, et al.,[1] | Case No. 12-11564 (CSS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET. AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS | Adv. Proc. No. 13-50530 (CSS) |
| Plaintiff, | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P., | |
| Intervenors, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., | |
| Defendants. | |

CATHERINE E. YOUNGMAN, LITIGATION
TRUSTEE FOR ASHINC CORPORATION, ET

---

[1] The Debtors in these cases, along with the federal tax identification number (or Canadian business number where applicable) for each of the Debtors, are: ASHINC Corporation (f/k/a Allied Systems Holdings, Inc.) (58- 0360550); AAINC Corporation (f/k/a Allied Automotive Group, Inc.) (58-2201081); AFBLLC LLC (f/k/a Allied Freight Broker LLC) (59-2876864); ASCCO (Canada) Company (f/k/a Allied Systems (Canada) Company) (90- 0169283); ASLTD L.P. (f/k/a Allied Systems, Ltd. (L.P.) (58-1710028); AXALLC LLC (f/k/a Axis Areta, LLC) (45 5215545); AXCCO Canada Company (f/k/a Axis Canada Company) (875688228); AXGINC Corporation (f/k/a Axis Group, Inc.) (58-2204628); Commercial Carriers, Inc. (38-0436930); CTSINC Corporation (f/k/a CT Services, Inc.) (38 2918187); CTLLC LLC (f/k/a Cordin Transport LLC) (38-1985795); F.J. Boutell Driveway LLC (38-0365100); GACS Incorporated (58-1944786); Logistic Systems, LLC (45-4241751); Logistic Technology, LLC (45-4242057); QAT, Inc. (59-2876863); RMX LLC (31-0961359); Transport Support LLC (38-2349563); and Terminal Services LLC (91-0847582).

AL., AS SUCCESSOR TO BDCM
OPPORTUNITY FUND II, LP, BLACK
DIAMOND CLO 2005-1 LTD., SPECTRUM
INVESTMENT PARTNERS, L.P., BLACK
DIAMOND COMMERCIAL FINANCE, L.L.C.,
as co-administrative agent, and SPECTRUM
COMMERCIAL FINANCE LLC, as co-
administrative agent,

               Plaintiff,

               v.

YUCAIPA AMERICAN ALLIANCE FUND I,
L.P., and YUCAIPA AMERICAN ALLIANCE
(PARALLEL) FUND I, L.P.,

               Defendants.

Adv. Proc. No. 14-50971 (CSS)

## DEFENDANTS YUCAIPA AMERICAN ALLIANCE FUND I, L.P. AND YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.'S MOTION FOR STAY OF EFFECTIVENESS AND ENFORCEMENT OF JUDGMENT PENDING <u>APPEAL PURSUANT TO BANKRUPTCY RULES 7062 AND 8007(a)</u>

DOCS_DE:234722.11 96991/001

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................................ 1

Jurisdiction And Venue .............................................................................................................. 3

Factual And Procedural Background ......................................................................................... 3

Requested Relief ......................................................................................................................... 5

Legal Argument .......................................................................................................................... 5

I.     Standard for Bankruptcy Rule 8007(a) Stay Pending Appeal ........................................... 6

     A.     Yucaipa is likely to succeed on the merits of its appeal. ....................................... 7

          1.     Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's authority to enter final orders and judgment on non-core claims. .................................................................... 7

               a.     The Judgment resolves Estate Claim 5, which is a non-core claim for breach of contract. .......................................... 7

               b.     The Court may not enter final orders on non-core claims; instead any proposed findings of fact and conclusions of law must be reviewed by the District Court *de novo*. ..................... 8

               c.     Yucaipa has never consented to the Court finally adjudicating the Trustee's non-core claims. ......................................... 9

          2.     Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's entry of a final judgment as to fewer than all claims pursuant to Rule 54(b). ............................................................ 11

          3.     Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's improper factual findings in ruling on the Cross-Motions for Summary Judgment on what are disputed and material factual issues. ...................................................................... 15

          4.     Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's finding that the breach of contract claims were not barred by the contractual covenant not to sue. ........................... 18

          5.     Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's unsupported award of prejudgment interest with respect to the fraudulent transfer claims. ........................................... 19

     B.     Yucaipa will be irreparably harmed if a stay is not granted. ............................... 20

     C.     A stay of the Judgment pending appeal will not injure the Trustee. ..................... 21

     D.     Granting a stay is in the public interest. ................................................................ 22

i

II.      Standard for Rule 62(h) Stay ............................................................................................. 22

III.     Yucaipa should not be required to post a bond. ................................................................ 23

Notice .......................................................................................................................................... 24

No Prior Request .......................................................................................................................... 24

Conclusion ................................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Allis-Chalmers Corp. v. Phila. Elec. Co.*
  521 F.2d 360 (3d Cir. 1975)..................................................................... 11

*Basank v. Decker*
  No. 20-cv-2518, 449 F. Supp. 3d 205, 2020 U.S. Dist. LEXIS 53191,
  2020 WL 1481503, at *4 (S.D.N.Y. Mar. 26, 2020) ............................. 20

*Bennett v. Genoa AG Cntr., Inc. (In re Bennett)*
  154 B.R. 126 (Bankr. N.D.N.Y. 1992) ................................................... 10

*Berckeley Inv. Grp., Ltd. v. Colkitt*
  455 F.3d 195 (3d Cir. 2006).................................................................... 12

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*
  974 F.2d 1358 (3d Cir. 1992).................................................................. 15

*Brotherhood of Locomotive Engineers & Trainmen v. Long Island R.R. Co.*
  340 Fed. App'x. 727 (2d Cir. 2009)......................................................... 19

*Carickhoff v. Goodwin (In re Decade S.A.C., LLC)*
  Case No. 18-11668, Adv. Proc. No. 19-50095
  2020 Bankr. LEXIS 702 (Bankr. D. Del. March 18, 2020)....................... 5

*Carter v. City of Phila.*
  181 F.3d 339 (3d Cir. 1999).................................................................... 11

*Century Glove, Inc. v. Iselin (In re Century Glove, Inc.)*
  151 B.R. 327 (Bankr. D. Del. 1993) ....................................................... 12

*City of Riverside v. Greyhound Lines, Inc.*
  No. 16-796, 2017 U.S. Dist. LEXIS 181293,
  2017 WL 3575325, at *1 (C.D. Cal. Aug. 2, 2017).................................. 22

*Cont'l Oil Co. v. Frontier Ref. Co.*
  338 F.2d 780 (10th Cir. 1964) ................................................................ 23

*CoreStates Bank, N.A. v. Huls Am., Inc.*
  176 F.3d 187 (3d Cir. 1999)...................................................................... 8

*Curtiss-Wright Corp. v. Gen. Elec. Co.*
  446 U.S. 1 (1980)..................................................................................... 11

*Exec. Benefits Ins. Agency v. Arkison*
  573 U.S. 25 (2014).................................................................................... 8

*Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*
  316 F.3d 431 (3d Cir. 2003).................................................................... 11

*Golden Pac. Bancorp v. F.D.I.C.*
  273 F.3d 509 (2d Cir. 2001).................................................................... 19

*Halper v. Halper*
  164 F.3d 830 (3d Cir. 1999)...................................................................... 7

*Henry v. Champlain Enterps., Inc.*
  445 F.3d 610 (2d Cir. 2006).................................................................... 19

iii

*Hilton v. Braunskill*
481 U.S. 770 (1987) .................................................................................... 6

*In re Adelphia Communications Corp.*
361 B.R. 337, 368 (S.D.N.Y. 2007) ......................................................... 23

*In re Exide Techs.*
544 F.3d 196 (3d Cir. 2008) ....................................................................... 8

*In re Gorsoan Ltd.*
No. 18-MC-0431, 2020 U.S. Dist. LEXIS 128980,
2020 WL 4194822, at *7 (S.D.N.Y. July 21, 2020 .................................. 21

*In re Millennium Lab Holdings II, LLC*
945 F.3d 126 (3d Cir. 2019) ....................................................................... 9

*In re Millennium Lab Holdings II, LLC*
575 B.R. 252 (Bankr. D. Del. 2017)
*aff'd*, 591 B.R. 559 (D. Del. 2018), *aff'd sub nom* ................................. 9

*In re Opus E., LLC*
528 B.R. 30 (Bankr. D. Del. 2015) .......................................................... 20

*In re Paragon Offshore PLC*
598 B.R. 761 (Bankr. D. Del. 2019) .......................................................... 9

*In re Revel AC, Inc.*
802 F.3d 558 (3d Cir. 2015 ................................................................. 6, 20

*In re Tribune Co.*
477 B.R. 465 (Bankr. S.D.N.Y. 2012) ....................................................... 7

*In re United Merchs. & Mfrs., Inc.*
138 B.R. 426 (D. Del. 1992) ..................................................................... 23

*Kittay v. Korff (In re Palermo)*
739 F.3d 99 (2d Cir. 2014) ....................................................................... 19

*Marina Dist. Dev. Co. v. Ivey*
No. 14-2283, 2018 U.S. Dist. LEXIS 145805,
2018 WL 40089025, at *2 (D.N.J. Aug. 28, 2018) ................................... 22

*Nken v. Holder*
556 U.S. 418 (2009) .................................................................................... 6

*Nordhoff Investments, Inc. v. Zenith Elecs. Corp.*
258 F.3d 180 (3d Cir. 2001) ..................................................................... 23

*Penson Fin. Servs. v. O'Connell (In re Arbco Capital Mgmt., LLP)*
479 B.R. 254 (Bankr. S.D.N.Y. 2012) ..................................................... 10

*Peroza-Benitez v. Smith*
994 F.3d 157 (3d Cir. 2021) ..................................................................... 15

*Stayton v. Del. Health Corp.*
117 A.3d 521 (Del. 2015) ......................................................................... 13

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.*
467 B.R. 712 (S.D.N.Y. 2012) ................................................................. 10

*Wellness Int'l Network, Ltd. v. Sharif*
575 U.S. 665 (2015) .................................................................................... 9

*Wharton v. Danberg*
854 F.3d 234 (3d Cir. 2017) ..................................................................... 15

DOCS_DE:234722.11 96991/001

# Statutes

28 U.S.C. § 157 ................................................................................................................. 3, 9

28 U.S.C. §157(b) .................................................................................................................. 7

28 U.S.C. §1334 .................................................................................................................... 3

28 U.S.C. §1408 .................................................................................................................... 3

28 U.S.C. § 1409 ................................................................................................................... 3

28 U.S.C. § 1961 ................................................................................................................. 20

Fed. R. Bankr. P. 7012 ....................................................................................................... 10

Fed. R. Bankr. P. 7012(b) .................................................................................................. 10

Fed. R. Bankr. P. 7054 ......................................................................................................... 5

Fed. R. Bankr. P. 7056 ....................................................................................................... 17

Fed. R. Bankr. P. 7062 ............................................................................................... 1, 5, 22

Fed. R. Bankr. P. 8007 ....................................................................................................... 23

Fed. R. Bank. P. 8007(a) ........................................................................................ 1, 3, 5, 6, 22

Fed. R. Bankr. P. 8007(a)(1)(A) .......................................................................................... 6

Fed. R. Bankr. P. 8007(a)(1)(B) ........................................................................................ 23

Fed. R. Bankr P 8007(a)(2) .................................................................................................. 5

Fed. R. Bankr. P. 9033 ................................................................................................. 3, 5, 9

Fed. R. Civ. P. 54(b) ..................................................................................... 5, 6, 11, 13, 15, 22

Fed. R. Civ. P. 56(a) ........................................................................................................... 17

Fed. R. Civ. P. 62 .................................................................................................................. 5

Fed. R. Civ. P. 62(h) ..................................................................................................... 22, 23

# Other Authorities

11 C. Wright & A. Miller, Federal Practice and Procedure
    § 2948, at 440 (1973) ..................................................................................................... 21

Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. (collectively, "Yucaipa") by and through their undersigned counsel, hereby respectfully move this Court (the "Motion"), pursuant to Rules 7062 and 8007(a) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), for entry of an order granting a stay of the effectiveness and enforcement of the Court's *Judgment* dated June 23, 2021 [Adv. Proc. No. 13-50530 ("Estate Action"), D.I. 841; Adv. Proc. No. 14-50971 ("Lender Action"), D.I. 579] (together, the "Judgment"), including all matters attendant thereto, in the above-captioned adversary proceedings (the "Adversary Proceedings") pending Yucaipa's appeal thereof. The Judgment was made in connection with the Yucaipa Summary Judgment Motion[1] and the Trustee Summary Judgment Motion[2] and in furtherance of the Court's Opinion thereon [Estate Action, D.I. 825; Lender Action, D.I. 563], denominated findings of fact and conclusions of law, and the related Order thereon [Estate Action, D.I. 826; Lender Action, D.I. 564], filed on May 4, 2021.[3] In support of this Motion, Yucaipa respectfully states as follows:

## **Preliminary Statement**

1.      By this Motion, Yucaipa requests that a stay be imposed as to the effectiveness of the Court's Judgment, while Yucaipa appeals whether the Court, *inter alia*:[4] (a) erred in finding that "this Court has the judicial power to enter a final order"[5] and in entering the Judgment granting the Trustee Summary Judgment Motion as to the Estate breach of contract claim[6] rather than submitting proposed findings of fact and conclusions of law to the District Court for *de novo*

---

[1] Estate Action, D.I. 696; Lender Action, D.I. 453 (the "Yucaipa Summary Judgment Motion").

[2] Estate Action, D.I. 705; Lender Action, D.I. 462 (pursued by the "Trustee" and referred to herein as "Trustee Summary Judgment Motion" and together with Yucaipa Summary Judgment Motion, the "Cross-Motions for Summary Judgment").

[3] Yucaipa timely objected to the Opinion and Order pursuant to Bankruptcy Rule 9033 [*see* Estate Action, D.I. 828; Lender Action, D.I. 566 ("Rule 9033 Objection")] as well as to entry of the Judgment and the proposed form thereof [*see* Estate Action, D.I. 830; Lender Action, D.I. 568 ("Entry of Judgment Objection")].

[4] For the avoidance of doubt, Yucaipa's notice of appeal will identify additional, significant flaws with the Judgment, and underlying Opinion and Order.

[5] Order at 2.

[6] Estate Claim 5.

1

review because such claim is a non-core claim and the Court lacked statutory or constitutional authority to enter final judgment thereon; (b) abused its discretion in directing the entry of a final judgment as to fewer than all claims pursuant to Rule 54(b); (c) incorrectly made factual findings or relied on disputed factual findings in ruling on the Cross-Motions for Summary Judgment on what are disputed and material factual issues; (d) erred in finding the breach of contract claims to not be barred by the contractual covenant not to sue; and (e) erred in awarding prejudgment interest on the fraudulent transfer claims[7] at a rate in excess of 6% (based on quarterly compounded interest at the average Federal Reserve discount rate between the date of each transfer and the date of the Judgment, plus 5.0%) without any explanation for the interest rate applied.

2.      Yucaipa respectfully submits that the Judgment is not a final, executable judgment, both because this Court lacked adjudicatory authority over the non-core claim that is the subject of the Judgment and because the Court's entry of a partial judgment under Rule 54(b) was improper, since "just reason" existed in this case to delay the entry of any final judgment until final adjudication of all claims for relief.  The entry of a stay would prevent the premature execution by the Trustee – and would allay the effects of any such premature execution – on a Judgment that the District Court might well conclude on appeal is not a final judgment.

3.      Notably, the Trustee stated in her recent Trustee Rule 9033 Response that she "does not oppose the issuance of a stay" pending Yucaipa's expected appeal, subject to Yucaipa posting security.  Trustee Rule 9033 Response at 12.  As set forth below, the Trustee is already protected by an escrow account (the Disputed Obligations Escrow) which holds tens of millions of dollars.  Case No. 12-11564, D.I. 1837 (Sale Order establishing existence of Disputed Obligations Escrow).

---

[7] Estate Claims 10 and 11.

4.      If the Court does not stay the effectiveness of the Judgment while Yucaipa appeals, the Trustee would almost certainly attempt to execute on the Judgment immediately. Yet, as explained above, the Court's very authority to issue the Judgment is being challenged on constitutional grounds.  If the Trustee were permitted to enforce the Judgment against Yucaipa prior to the District Court's adjudication of the appeal, Yucaipa's constitutional and appellate rights could be destroyed, as the Trustee would attempt to dismember Yucaipa before the District Court has an opportunity to consider the issues on appeal.  Depriving Yucaipa of such rights constitutes irreparable harm.

5.      Concurrently with this Motion, Yucaipa has also filed a motion to shorten time seeking an emergency hearing on the Motion to consider entry of the stay pending appeal.

## Jurisdiction and Venue

6.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.[8]

7.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

8.      The basis for the relief sought herein is Bankruptcy Rules 7062 and 8007(a).

## Factual and Procedural Background

9.      Yucaipa respectfully refers the Court to the factual background set forth in the Yucaipa Summary Judgment Motion and the related briefing, the Rule 9033 Objection[9] and the Entry of Judgment Objection,[10] which it incorporates fully herein by reference.  The following

---

[8] Yucaipa does not consent to the entry of final orders or judgments by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

[9] Estate Action, D.I. 828; Lender Action, D.I. 566 ("Rule 9033 Objection").

[10] Estate Action, D.I. 830; Lender Action, D.I. 568 ("Entry of Judgment Objection").

includes only the background necessary to highlight the need for the relief requested in the Motion.

10.     On May 4, 2021, the Court entered the Order granting in part and denying in part, the Trustee's Summary Judgment Motion as follows:

- Trustee's Motion on Estate Claims 1 (Equitable Subordination) and 2 (Equitable Subordination) and Lender Claim 1 (Equitable Subordination) is granted, in part, and denied, in part.

- Trustee's Motion on Estate Claim 5 (Breach of Contract) and Lender Claim 2 (Breach of Contract) is granted.

- Trustee's Motion on Estate Claims 10 (Constructive Fraudulent Transfers), 11 (Constructive Fraudulent Transfers), and 13 (Disallowance of Claims) are granted.

- Trustee's Motion on Lender Claim 4 (Tortious Interference) is denied.

11.     The Order also ruled on Yucaipa's Summary Judgment Motion as follows:

- Yucaipa's Motion on Estate Claim 3 (Recharacterization) is granted.

- Yucaipa's Motion on Estate Claim 4 (Specific Performance) is granted.

- Yucaipa's Motion on Estate Claim 5 (Breach of Contract) and Lender Claim 2 (Breach of Contract) is denied.

- Yucaipa's Motion on Lender Claim 3 (Breach of Duty of Good Faith and Fair Dealing) is denied.

- Yucaipa's Motion on Estate Claim 6 (Specific Performance) is granted.

- Yucaipa's Motion on Estate Claim 7 (Breach of Fiduciary Duty) is denied.

- Yucaipa's Motion on Estate Claims 10 (Constructive Fraudulent Transfers) and 11 (Constructive Fraudulent Transfers) is denied.

12.     The Court also issued an accompanying Opinion explaining the basis for the rulings it made.  *See* Estate Action, D.I. 825; Lender Action, D.I. 563.

13.     On May 18, 2021, Yucaipa filed its Rule 9033 Objection and Entry of Judgment Objection.  On June 22, 2021, the Trustee filed her Trustee Rule 9033 Response,[11] responding to specific questions the Court posed regarding its ability to enter a final order with respect to the non-core claims in the Estate Action and Lender Action.  On June 22, 2021 Yucaipa filed its Entry of Judgment Reply,[12] in which it responded to the Court's questions and explained that the Court did not have authority to enter the Judgment.

14.     On June 23, 2021, the Court entered the Judgment on certain counts pursuant to the Order.  *See* Estate Action, D.I. 841; Lender Action, D.I. 579.  The Judgment directed entry of a final judgment as to less than all of the claims in the Adversary Proceeding after determining that there was no just reason for delay pursuant to Rule 54(b), made applicable by Bankruptcy Rule 7054.  Pursuant to Bankruptcy Rule 8002(a), the parties are afforded 14 days from entry of the Judgment to file a notice of appeal.[13]  Similarly, pursuant to Bankruptcy Rule 7062, enforcement of the Judgment is automatically stayed for the same 14-day period following entry.

### Requested Relief

15.     By this Motion, Yucaipa respectfully requests entry of an order staying enforcement of the Judgment pending exhaustion of Yucaipa's appellate rights pursuant to Bankruptcy Rules 7062 and 8007(a).

### Legal Argument

16.     A stay of the Judgment should be granted under either Bankruptcy Rule 8007(a), which governs a stay pending appeal, or Bankruptcy Rule 7062, which makes Rule 62 of the

---

[11] Estate Action, D.I. 836; Lender Action, D.I. 574 ("Trustee Rule 9033 Response").

[12] Estate Action, D.I. 839; Lender Action, D.I. 576 ("Entry of Judgment Reply").

[13] On or before the expiration of this period, Yucaipa will file a notice of appeal with respect to the Judgment. *See* Bankruptcy Rule 8007(a)(2) ("The motion [for stay pending appeal] may be made either before or after the notice of appeal is filed.").  In light of the Court's determination in *Carickhoff v. Goodwin (In re Decade S.A.C., LLC)*, Case No. 18-11668, Adv. Proc. No. 19-50095, 2020 Bankr. LEXIS 702 (Bankr. D. Del. March 18, 2020) (Sontchi, J.) that the Court is divested of jurisdiction to enter a stay pending appeal after a notice of appeal is filed, Yucaipa intends to file a notice of appeal following this Motion.

Federal Rules of Civil Procedure applicable, and governs the stay of a final judgment entered on less than all claims pursuant to Rule 54(b).

## I.    Standard for Bankruptcy Rule 8007(a) Stay Pending Appeal

17.    Bankruptcy Rule 8007(a) provides "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal[.]" Fed. R. Bankr. P. 8007(a)(1)(A).

18.    The Third Circuit has held that courts should consider the following factors in determining whether to grant a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (*quoting Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

19.    The Third Circuit in *Revel* endorsed the balancing of each of the four factors. *Revel AC*, 802 F.3d at 568.  However, citing the Supreme Court's ruling in *Nken v. Holder*, 556 U.S. 418, 434 (2009), the *Revel* court stated that the likelihood of success and irreparable harm factors are "the most critical," and that the likelihood of success factor "is arguably the more important piece of the stay analysis." *Id.*  In evaluating all four factors, the *Revel* court provided that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale approach.

*Id.* at 571 (internal quotations and citation omitted).

20.    Because each of these factors favors staying the Judgment pending appeal, the Court should grant an order issuing such a stay.

6

**A.      Yucaipa is likely to succeed on the merits of its appeal.**

21.      In the Third Circuit, "a sufficient degree of success for a strong showing [of success on the merits] exists if there is a reasonable chance, or probability, of winning.  Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning on appeal need not be more likely than not."  *Revel AC*, 802 F.3d at 568-69 (internal citations and quotation marks omitted).

22.      Yucaipa has, at the very least, a reasonable chance of winning on the merits of its appeal.  And as discussed *infra*, the other factors for consideration on a motion to stay pending an appeal also tilt in Yucaipa's favor.  Accordingly, notwithstanding the Court's explanation for the basis of its Judgment, Yucaipa is entitled to a stay.  *See In re Tribune Co*., 477 B.R. 465, 475 (Bankr. S.D.N.Y. 2012) (finding movants had "made an adequate showing of likelihood of success on the merits with respect to the issues on appeal to require analysis of the remaining . . . factors," despite noting that the court was satisfied that it had "thoroughly—and correctly— examined and determined the disputed issues").

    1.      **Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's authority to enter final orders and judgment on non-core claims.**

        a.      **The Judgment resolves Estate Claim 5, which is a non-core claim for breach of contract.**

23.      The Court entered the Judgment in favor of the Trustee on Estate Claim 5 (among other claims).  This claim is quintessentially a non-core, state-law claim for breach of contract that neither "invokes a substantive right provided by title 11," nor has anything to do with bankruptcy-law related causes of action.  *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (citation omitted).  First, breach of contract claims do not appear on the list of core proceedings in section 157(b).  Second, this claim could have been asserted regardless of whether there was a pending adversary proceeding, and it cannot fairly be described as arising "only in the context of

7

a bankruptcy case." *Id.* (citation omitted); *see In re Exide Techs.*, 544 F.3d 196, 207 (3d Cir. 2008) (breach of contract claim was "a state law cause of action, sounding in contract" that "d[id] not appear to be proceedings that 'could arise only in the context of a bankruptcy case.'").

24.    In fact, this Court has already ruled in this case that Lender Claim 2 is non-core. *See* Lender Action D.I. 70 at 2 ("The Second . . . Claim[] for Relief asserted by the Plaintiffs . . . constitute[s] [a] non-core claim[].").    There is no debate that the gravamen of the breach of contract claim in Lender Claim 2 and the breach of contract claim in Estate Claim 5 are identical—they address the same breach of the same agreement and identify the same substantive allegations.    Indeed, the Opinion states exactly that when it acknowledges that the Trustee's "victory [on the Estate Claim] subsumes the Lender Claims."    Opinion at 46 n.122.    In the Trustee Rule 9033 Response, the Trustee acknowledged that the Court should not enter a final order on Lender Claim 2 and requested that the Court enter a clarification that the Opinion's rulings be entered as proposed findings and conclusions.    Trustee Rule 9033 Response at 2.

25.    Because Estate Claim 5 is a non-core claim, this Court lacks authority to enter a final judgment thereon.    *See CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 196 (3d Cir. 1999).    Rather, it is only the District Court, following *de novo* review, that may "enter any final orders or judgment."    *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014).

### b.    The Court may not enter final orders on non-core claims; instead any proposed findings of fact and conclusions of law must be reviewed by the District Court *de novo*.

26.    This Court cannot enter a final judgment on Estate Claim 5, but must submit proposed findings of fact and conclusions of law to the District Court (as will be done with Lender Claim 2).    Under Supreme Court and Third Circuit precedent, it is well established that in non-core proceedings—those "that are 'not ... core' but are 'otherwise related to a case under title 11'"— the bankruptcy court "submit[s] proposed findings of fact and conclusions of law to

8

the district court," which "review[s] those proposed findings and conclusions *de* novo and enter[s] any final orders or judgments." *Arkison*, 573 U.S. at 34 (quoting 28 U.S.C. § 157); *see also, e.g.*, *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 261 (Bankr. D. Del. 2017), *aff'd*, 591 B.R. 559 (D. Del. 2018), *aff'd sub nom. In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019) ("[B]ankruptcy judges can only hear, but not determine, non-core proceedings, meaning that the bankruptcy judge must enter proposed findings of fact and conclusions of law for review by the district court under Federal Rule of Bankruptcy Procedure 9033.").

### c. Yucaipa has never consented to the Court finally adjudicating the Trustee's non-core claims.

27.     An exception to the rule that a bankruptcy court may not enter final orders or judgments over non-core claims exists in the limited instance that both parties have consented to same.  Yucaipa has not consented to the Court finally adjudicating the Trustee's non-core claims.  A litigant's consent to the bankruptcy court entering final orders on non-core claims "whether express or implied," must "be knowing and voluntary"—the "key inquiry" is whether "'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015); *see also In re Paragon Offshore PLC*, 598 B.R. 761, 769-70 (Bankr. D. Del. 2019) (finding no implied consent even where litigant entered into a settlement agreement and failed to object to jurisdictional provisions of the confirmed plan).  Yucaipa has repeatedly and consistently objected to the Court issuing any final orders or judgments on the Trustee's non-core claims.[14]

---

[14] Yucaipa has, for years, objected to the Court issuing any final orders or judgments on non-core claims in the Estate Action. *See, e.g.*, Estate Action D.I. 416 (Aug. 31, 2017) ("Yucaipa do[es] not consent to the entry of final orders or judgments by the Court to the extent that the Court has determined that it, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Further, Yucaipa

9

28.     Further, Yucaipa cannot be deemed to have impliedly consented to the Court's entry of a final order or judgment.  At the time Yucaipa filed its answer in the Estate Action on February 11, 2013 (D.I. 16), the Federal Rules of Bankruptcy Procedure made clear that consent to adjudication must be express when made through a responsive pleading in a non-core matter. Fed. R. Bankr. P. 7012(b) (2013) ("In non-core proceedings, final orders and judgments shall not be entered on the bankruptcy judge's order *except with the express consent of the parties*.") (emphasis added); s*ee also Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 722 (S.D.N.Y. 2012) ("Under Fed. R. Bankr. P. 7012(b), which requires 'express consent of the parties' for a bankruptcy court to enter final orders and judgments in non-core matters, mere implied consent appears to be insufficient.").[15]  Accordingly, implied consent cannot be found from a party's failure to include a statement of non-consent in a responsive pleading when Rule 7012 mandated that consent be express.

---

do[es] not consent to the entry of final orders or judgments by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution."); Estate Action D.I. 429 (May 24, 2018) (same); Estate Action D.I. 696 (May 1, 2020) (same); *see also* Case No. 12-11564, D.I. 3196-1, at 18 (Bankr. D. Del. Sept. 9, 2015) (Amended Plan § 3.7(e): "The Plan and Confirmation Order shall have no effect on or prejudice in anyway Yucaipa['s] . . . respective rights, claims or defenses."); Case No. 12-11564, D.I. 3383, at 49 (Bankr. D. Del. Dec. 9, 2015) (Confirmation Order § 54: "[N]othing in the Plan, Plan Supplement, or this Confirmation Order shall be deemed to (i) provide the Bankruptcy Court with jurisdiction over any Litigation Claims and any claims involving any of the persons or entities described in Section 3.7(e) of the Plan [or] (ii) limit or impair any named or unnamed defendant's right to contest the Bankruptcy Court's jurisdiction over any Litigation Claim and any claims involving any of the persons or entities described in Section 3.7(e) of the Plan that may be asserted against them.").

[15] Although the version of Bankruptcy Rule 7012(b) in effect in 2013 required express consent to a bankruptcy court's adjudication of "non-core proceedings," this phrase was applicable also to any non-core claims within, as here, a proceeding involving both "core" and "non-core" claims.  *See, e.g., Bennett v. Genoa AG Cntr., Inc. (In re Bennett)*, 154 B.R. 126, 140 (Bankr. N.D.N.Y. 1992) (determining whether each claim in a proceeding with mixed core and non-core claims was a core or non-core proceeding and applying Rule 7012(b)'s express consent standard to each non-core claim); *Penson Fin. Servs. v. O'Connell (In re Arbco Capital Mgmt., LLP)*, 479 B.R. 254, 267 (Bankr. S.D.N.Y. 2012) (finding express consent not obtained with respect to non-core claims or Stern claims in a proceeding with mixed claims and concluding that the bankruptcy court lacked authority to finally adjudicate these claims); *see also Wellness*, 135 S. Ct. 1932, 1949 (Alito, J., concurring) (noting that courts will need to consider how to treat *Stern* claims for purposes of Bankruptcy Rule 7012(b)).  Thus, the version of Rule 7012 in effect at the time that Yucaipa filed its responses did not permit the Court to adjudicate non-core claims without Yucaipa's express consent, which was never provided.

10

29.     Accordingly, Yucaipa is likely to succeed on appeal in establishing that this Court did not have authority to render a final judgment on the non-core claims.

>    **2.    Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's entry of a final judgment as to fewer than all claims pursuant to Rule 54(b).**

30.     In directing that the Judgment is a final order even though less than all claims in the Adversary Proceedings were resolved pursuant to Rule 54(b), made applicable to these Adversary Proceedings by Bankruptcy Rule 7054, the Court, respectfully, abused its discretion. *See Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 440 (3d Cir. 2003) ("We review a district court's Rule 54(b) certification decision for an abuse of discretion.").

31.     Yucaipa is likely to prevail on its appeal with respect to the Court's entry of a partial final judgment because Rule 54(b) provides a narrow exception to the principle of the "one final judgment" rule.  The standards for justifying such an exception are not satisfied here. The rule itself provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . *only if the court expressly determines that there is no just reason for delay*." Fed. R. Civ. P. 54(b) (emphasis added); *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980).

32.     Although the Court included such a finding in the Judgment, it is not enough that a court simply "recite the 54(b) formula of 'no just reason of delay.'"  *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975).  Rather, courts must "provide a statement of reasons when entering final judgment under Rule 54(b)" [*Carter v. City of Phila.*, 181 F.3d 339, 343 (3d Cir. 1999)], considering such factors as (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [bankruptcy] court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim

or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006) (*citing Allis-Chalmers*, 521 F.2d at 364).

33.    Although the Judgment summarily concludes that "the claims upon which the Judgment is being entered are severable and distinct from the claims and issues remaining for trial" [Judgment at 5], the remaining claims will be impacted directly by – and could very well be mooted by – the outcome of Yucaipa's appeal of the Judgment.  For example, the availability of equitable subordination as a remedy and the extent to which Yucaipa's claims might be subordinated (which has not been adjudicated) overlap with the breach of contract damages awarded by the Court.  The Opinion concluded that equitable subordination was partially warranted because Yucaipa acted in bad faith in purchasing the first lien debt under the invalid Fourth Amendment and in failing to make the capital contribution.  Opinion at 108-09.  The breach of contract claims are premised on the same alleged conduct.  But, "a debtor may not obtain both equitable subordination and an award of money damages which would compensate it for the damages resulting from the same conduct.  On the contrary, equitable subordination is a remedy available only when damages cannot be reasonably ascertained." *Century Glove, Inc. v. Iselin (In re Century Glove, Inc.)*, 151 B.R. 327, 332 (Bankr. D. Del. 1993) (citations omitted). Therefore, the availability of equitable subordination as a remedy – and the extent of the remedy, if any – will depend entirely on the outcome of the appeal.

34.    Furthermore, because the Trustee cannot recover twice for the same underlying wrong, and because the claims for damages arising out of alleged breaches of fiduciary duties arise out of the same conduct and alleged harm that form the basis of the breach of contract claims, the claims for breach of fiduciary duty overlap substantially with the breach of contract

12

claims that are the subject of the Judgment and appeal. *See, e.g., Stayton v. Del. Health Corp.*, 117 A.3d 521, 534 (Del. 2015).  This overlap creates a substantial risk that duplicative review by the reviewing court will be necessary. For example, the Court's determination that the Estate suffered $57.4 million in damages will be challenged on appeal.  Any ruling by the Bankruptcy Court that this alleged loss or any part thereof is recoverable under any of the remaining claims, will necessarily bring the same issue of damages before the reviewing court again.

35.    Overlapping factual issues between the claims decided on summary judgment and those remaining for trial also demonstrate a clear error in the Judgment's Rule 54(b) certification.  Much of this case relates to actions allegedly taken by Yucaipa and Allied with respect to the Third and Fourth Amendments to the First Lien Credit Agreement ("FLCA"). The Trustee's breach of contract claims are premised on an alleged breach of the Third Amendment. *See* Opinion at 26. The fraudulent transfer and disallowance claims concern, in part, Yucaipa's supposed "bad faith" in causing Allied to enter into the Fourth Amendment and subsequent related litigation and fees. *See id*. at 52-54, 65-66, 70. The facts and findings made by the Court concerning the Third and Fourth Amendments bear directly on the equitable subordination claims and breach-of-fiduciary duty claims that remain before this Court.  As discussed in section I.A.4. above, the Opinion (incorrectly) concluded that certain facts related to these amendments were undisputed. *See*, *e.g*., *id*. at 102 ("Yucaipa advantaged itself by . . . acquiring more than $50 million in principal amount of Term Loans . . . avoiding the requirement that it make the Capital Contribution, and . . . Yucaipa's actions injured Allied and creditors, as it withheld the Capital Contribution.").  These same facts will be argued at trial in connection with the remaining claims, and, to the extent the Court makes the same findings it made in its Opinion at trial, those findings will need to be reviewed by the reviewing Court a second time.  Indeed, Yucaipa has defined appellate rights that could be eviscerated if a stay pending appeal is not

granted and the Trustee is allowed to proceed to trial on disputed material facts that are simultaneously being reviewed on appeal.

36.     Moreover, if the District Court or the Third Circuit Court of Appeals were to reverse the Bankruptcy Court on any one of the overlapping findings, duplicative trials would likely be necessary.  Given the close relationship and high degree of overlap between the adjudicated and unadjudicated claims, which all share the same basic factual predicates, the factual findings made in connection with the Opinion supporting the Judgment implicate the remainder of the claims.  The District Court might well see the facts (and the law) differently, which could compromise the entire proceeding before this Court.  In addition, given the intertwined nature of the issues on appeal with the remaining claims, there will likely be continuing disputes over whether the Court is divested of jurisdiction as to various particular issues.  Thus, there is a significant risk of wasting judicial and party resources due to the potential for inconsistent rulings and multiple, duplicative trials.

37.     Notably, District Judge Robinson, in denying Yucaipa's motion to withdraw the reference, expressly acknowledged the overlapping nature of the claims and facts in this case: "These proceedings involve at least some overlapping claims and certainly involve overlapping facts." Case No. 1:13-CV-1010, D.I. 34 at 3 (D. Del. Nov. 13, 2015).  To avoid some of the same risks Yucaipa seeks to avoid by virtue of this Motion, Judge Robinson directed that piecemeal litigation should not occur in this matter: "Rather than have piecemeal litigation – either discrete withdrawals or interlocutory appeals – I conclude that it makes more sense to have the entire dispute resolved in the first instance by Judge Sontchi, with this court taking one comprehensive review of the dispute rather than attenuated glances. This procedure avoids as well the risk of inconsistent rulings." *Id*.; *see also id.* at n.1 ("Recognizing, of course, that some of Judge Sontchi's decisions [i.e., as to non-core claims] will be in the form of proposed findings of fact

and conclusions of law.").  Respectfully, the Court failed to consider precisely these risks and inefficiencies described by Judge Robinson when entering the Rule 54(b) certification.

38.    Yucaipa is, therefore, likely to succeed on the merits of its appeal that the Court improperly certified the Judgment pursuant to Rule 54(b).  *See*, *e.g.*, *Allis-Chalmers*, 521 F.2d at 364 (adopting the policy of requiring a written statement of reasons by the district court in support of its determination to certify a judgment as final under Rule 54(b)).

> **3.    Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's improper factual findings in ruling on the Cross-Motions for Summary Judgment on what are disputed and material factual issues.**

39.    Respectfully, the Opinion does not comport with the fundamental standards that are supposed to guide courts' resolution of summary judgment motions. Namely, the Court resolved or ignored genuine disputes of material fact, ignored or mischaracterized evidence, failed to construe the evidence in a light most favorable to the non-moving party (Yucaipa), drew inferences against the non-moving party (Yucaipa), and in some instances allowed the Trustee to rely on nothing more than speculation.  *See*, *e.g.*, *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) ("At summary judgment, we must construe all facts and inferences in favor of the nonmoving party.  Our role is to determine whether there is a genuine issue for trial, it is not . . . to weigh the evidence and determine the truth of the matter." (citation and quotation marks omitted)); *Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017) ("[S]peculation and conjecture may not defeat a motion for summary judgment[.]" (citation omitted)); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("When deciding a motion for summary judgment . . . a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations").

40.    The following examples are merely illustrative, not exhaustive, examples of factual findings made by the Court that are inconsistent with its mandate to construe all facts

DOCS_DE:234722.11 96991/001

against the non-moving party and examples of findings in which the Court erred in making factual findings against Yucaipa, which highlight Yucaipa's likelihood in succeeding on the merits with respect to this issue:[16]

- At page 30 of the Opinion, the Court concluded that in August 2009, Yucaipa had the option, entirely in its own discretion, to make a Capital Contribution either in the form of $57 million in cash or "as an exchange [of Yucaipa's newly acquired Term Loans] for equity interests" in Allied, but that Yucaipa did neither, which constituted a breach of contract. See Opinion at 30. For one thing, the FLCA as amended is clear that the capital contribution is to be made by way of Yucaipa converting Term Loans into equity in Allied. There is no evidence in the record supporting a finding that Yucaipa was obligated to contribute cash. Even if contribution of cash was an option (it was not) the Court's "logical" leap that, in August 2009, Yucaipa indisputably would have elected to contribute cash was made without any evidentiary support. The Court found "It is illogical to think that Yucaipa would exchange its Term Loans in favor of worthless equity in Allied." This factual conclusion is not only unsupported, it is itself illogical. The Court ignored Yucaipa's argument that it would have been absurd for it to have agreed in August 2009 to pay $43 million to ComVest to acquire $145.1 million (principal face value) of debt, and then ten days later pay a massive premium of an additional $57.4 million to Allied in cash, instead of simply converting half of the discounted debt to Allied equity. *See* Adv. Proc. No. 13-50530, D.I. 766; Adv. Proc. No. 14-50971, D.I. 511 (the "<u>Yucaipa Opp. Br.</u>") at 5. In other words, the Court erroneously concluded that the only "logical" course for Yucaipa in August 2009 would have been to pay more than double what ComVest had paid for the same debt six months earlier, even when Allied's outlook continued to decline in the interim.

- On page 31 of the Opinion, the Court found that "Allied was insolvent at the time of the breach" in August 2009. Opinion at 31. On the next page of the Opinion, the Court concluded that Yucaipa's failure to contribute $57.4 million to Allied in August 2009 somehow "ensured" Allied's involuntary bankruptcy nearly three years later. No evidence supports the Court's speculation about what would have happened in that counterfactual scenario. Indeed, the only evidence that the Court cites in support of this finding—the deposition testimony of the Trustee's damages expert—directly contradicts the Court's finding. The expert testified: "I'm not going to speculate on what would have happened with that cash because there's too many . . . variables." Opinion at 32 n.78.

- The Opinion finds that "[f]rom late 2011 through Spring 2012, Yucaipa demanded a premium price of $1.15 for each dollar of its First Lien Debt, based on the premise that it was Requisite Lender." Opinion at 19 n.26 (emphasis added). But the question of whether Yucaipa demanded a "premium" in those negotiations was heavily disputed. For example, in Yucaipa's summary judgment opposition brief (at pages 24-25), it demonstrated, with supporting evidence, that "Yucaipa agreed to ratable treatment, but then BD/S walked away from the deal and filed the involuntary bankruptcy instead." *See* Yucaipa Opp. Br.

---

[16] Yucaipa reserves all rights to challenge every erroneous factual and/or evidentiary ruling in the Opinion.

41.     Similarly, the Court premised its ruling on factual findings that were, at best, disputed issues of fact that cannot be resolved on summary judgment, again highlighting Yucaipa's likelihood in succeeding on the merits with respect to this issue:

- For Estate Claim 5, the Court erred in concluding that the Trustee had established as a matter of law and undisputed fact that the Estate and the Lenders suffered damages resulting from Yucaipa's purported breach of the Capital Contribution Provision, and that the appropriate measure of damages was the full amount of the Capital Contribution. As Yucaipa demonstrated in its summary judgment papers, the Trustee had no evidence of damages resulting from the alleged breach, and at the very least there was a genuine dispute concerning the fact and amount of any damages, which precludes summary judgment. *See* Adv. Proc. No. 13-50530, D.I. 696; Adv. Proc. No. 14-50971, D.I. 453 at 27-30 (the "Yucaipa Opening Br.").; Yucaipa Opp. Br. at 3-11; Adv. Proc. No. 13-50530, D.I. 803; Adv. Proc. No. 14-50971, D.I. 554 at 17-18 (the "Yucaipa Reply Br.").

- The Opinion found that "Yucaipa did not act in good faith by amending the FLCA," Opinion at 65, despite Yucaipa offering substantial evidence in support of its position, including (a) testimony from non-Yucaipa individuals who believed that the Fourth Amendment to the FLCA was the only way for Allied to avoid a second, and potentially fatal, bankruptcy, (b) advice provided to the Allied's board of directors by then-counsel to Allied, and (c) approval of the Fourth Amendment by independent members of Allied's board of directors. *E.g.*, Estate Action D.I. 697 at 17-18; Estate Action D.I. 700 at Ex. 51 (Allied's counsel advising that alternative to Fourth Amendment was liquidation), Ex. 65 (July 2009 email stating customers were concerned about whether the majority debtholder intended to liquidate Allied for profit), Ex. 69, Ex. 15 at 300, Ex. 10 at 328-30. In so finding, the Court impermissibly weighed conflicting evidence in ruling on a summary judgment motion. *See* Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056.

- As set forth in greater detail, below, the Opinion found that the parties could not have intended for the covenant-not-to-sue to waive Allied's right to sue for failure to make a capital contribution. The intent of the parties with respect to the covenant-not-to-sue is a disputed issue, which should not have been resolved on summary judgment.

42.     Accordingly, Yucaipa is likely to succeed on appeal in establishing that this Court made improper factual findings in ruling on the Cross-Motions for Summary Judgment on what are disputed and material factual issues.

**4.      Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's finding that the breach of contract claims were not barred by the contractual covenant not to sue.**

43.      The Bankruptcy Court erred in concluding as a matter of law and undisputed fact that the Third Amendment's covenant-not-to-sue did not bar Estate Claim 5. Opinion at 37-38. As Yucaipa demonstrated in its summary judgment papers, the covenant-not-to-sue expressly bars Allied (and thus the Trustee, who now stands in Allied's shoes as to Estate Claim 5) from asserting claims against Yucaipa premised on any "omission" with respect to the Capital Contribution, and the only potentially relevant omission in connection with the Capital Contribution was Yucaipa's failure to make it. *See* Yucaipa Opening Br. at 31-35; Yucaipa Reply Br. at 18-25. The Bankruptcy Court's conclusion that the express inclusion of "omissions" in the covenant-not-to-sue did not necessitate a finding that the covenant barred claims based on Yucaipa's failure to make contributions was unsupported by evidence.  In support of its interpretation of the covenant, the Court surmised that that the express reference precluding claims based on "omissions" could have referred to other omissions, different from Yucaipa's failure to make the contribution.  But the hypothetical omissions identified by the Court are either not found in the record or would have been actionable *only by the Administrative Agent*, not by Allied as borrower under the FLCA.  *See* Opinion at 37-38 & n.96 (cross-referencing footnote 67 for mechanics of contributing term loans, which in turn highlights missing paperwork as an omission – which was actionable only by the Administrative Agent, not Allied; Section 2.7(f) of the Third Amendment provides that following the contribution of Term Loans, Yucaipa was to provide all information "reasonably requested by the Administrative Agent" under the loan agreement, not to Allied as borrower).

44.      In any event, the dispute over the interpretation of the provision presents a disputed issue that cannot be resolved on summary judgment.  Opinion at 35 n.87 (*citing Golden*

18

*Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514–15 (2d Cir. 2001) (citations and internal quotations marks omitted).   The Court's finding that the covenant-not-to-sue was unambiguous was improper because, on its face, the provision is susceptible to different interpretations with respect to whether it precludes claims based on Yucaipa's failure to make capital contributions.   The basis for the Court's finding—namely that the parties could not have intended to impose a capital contribution obligation on Yucaipa that Allied could not enforce—was an assumption unsupported by the evidence, and which ignored evidence to the contrary.

45.     Yucaipa is, therefore, likely to succeed on the merits of its appeal with respect to the Court's finding that the breach of contract claims are not barred by the contractual covenant not to sue.

### 5. Yucaipa is likely to succeed on the merits of its appeal with respect to the Court's unsupported award of prejudgment interest with respect to the fraudulent transfer claims.

46.     Although prejudgment interest awards are subject to court discretion, "[t]he court must [] explain and articulate its reasons for any decision regarding prejudgment interest." *Henry v. Champlain Enterps., Inc.*, 445 F.3d 610, 623 (2d Cir. 2006) (vacating award of prejudgment interest because District Court's statement that "Plaintiff is awarded prejudgment simple interest at the rate of 9% from March 15, 1994 to October 29, 2004, in the sum of $7,410,937.50" was insufficient); *see also Brotherhood of Locomotive Engineers & Trainmen v. Long Island R.R. Co.*, 340 Fed. App'x. 727, 729 (2d Cir. 2009) (when court does not justify its award, including the interest rate or commencement date selected, "reversal is required"); *Kittay v. Korff (In re Palermo)*, 739 F.3d 99, 106 (2d Cir. 2014) (on similar facts, stating "even as generous a standard of review as abuse of discretion, however, cannot be exercised on such a sparse record" and remanding to district court).

47.     Here, the Judgment provides, with no explanation for the rate it adopted ("the average Federal Reserve discount rate [compounded quarterly] . . . plus 5.0%"):

> The Court enters judgment . . . in the amount of $7,038,711.30, plus prejudgment interest in the amount of $7,053,387, based on quarterly compounded interest at the average Federal Reserve discount rate between the date of each transfer and the date this judgment is entered plus 5.0%, calculated from the date of each transfer through the date this judgment is entered, making the total of the award and pre-judgment interest the amount of $14,092,099, with post-judgment interest accruing until the payment of the judgment is complete.

Judgment at 4.

48.     Further, the awarded interest rate is inconsistent with the authorities cited in the Trustee's own memorandum in support of partial summary judgment.  Estate Action, D.I. 712, Lender Action, D.I. 465 at 37 (*citing In re Opus E., LLC*, 528 B.R. 30, 108-09 (Bankr. D. Del. 2015) (awarding prejudgment interest *at federal judgment rate*, per 28 U.S.C. § 1961, on fraudulent transfers accruing from the date on which it occurred.).

49.     Accordingly, Yucaipa is likely to succeed in its appeal with respect to the Court's unsupported award of interest on the fraudulent transfer claims.

**B.      Yucaipa will be irreparably harmed if a stay is not granted.**

50.     As to whether the applicant will be irreparably injured absent a stay, the applicant must "demonstrate that irreparable injury is likely [not merely possible] in the absence of [a] [stay]."  *In re Revel AC, Inc*., 802 F.3d at 569 (citation omitted) (brackets in original).

51.     "[I]t is well-settled that an alleged constitutional violation constitutes irreparable harm."  *Basank v. Decker*, No. 20-cv-2518, 449 F. Supp. 3d 205, 2020 U.S. Dist. LEXIS 53191, 2020 WL 1481503, at *4 (S.D.N.Y. Mar. 26, 2020) (collecting cases); *see also Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("The district court therefore properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."); *In re Gorsoan Ltd*., No. 18-MC-0431, 2020 U.S. Dist. LEXIS 128980, 2020 WL 4194822, at *7 (S.D.N.Y. July 21,

20

2020) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (*quoting* 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2948, at 440 (1973)).

52.    If a stay is not granted, the Trustee can be expected to immediately attempt to execute on the Court's Judgment.  Yet, as explained above, the Court's very authority to issue that Judgment is being challenged on constitutional and statutory grounds.  If the Trustee were permitted to enforce the Judgment against Yucaipa prior to the District Court's adjudication of the appeal, Yucaipa's constitutional and appellate rights could be destroyed, as the Trustee would attempt to dismember Yucaipa before the District Court has an opportunity to consider the issues on appeal.  Accordingly, depriving Yucaipa of such rights constitutes irreparable harm and a stay pending appeal should be granted.

53.    Additionally, in its efforts to enforce the judgment the Trustee is likely to attempt to dismantle Yucaipa before it has an opportunity to exercise its constitutional right of appeal and defend against the unadjudicated claims at trial.

## C.    A stay of the Judgment pending appeal will not injure the Trustee.

54.    The Trustee would not be harmed by a stay of the Judgment pending appeal.  The Trustee's appellate rights are preserved and any unadjudicated claims remain for potential trial with the appropriate court.   No delay factors that commonly appear in many chapter 11 cases are present here – there is no pending confirmation of a plan, no sale that needs to close quickly, and no imminent circumstances that will prejudice the Trustee.  Thus, the Trustee will not suffer any great harm if a stay is granted, and all of her appeal rights will be preserved and decided by the District Court in the normal course of the appellate process.

21

**D.      Granting a stay is in the public interest.**

55.      Granting a stay of these proceedings and allowing Yucaipa's appeal to proceed would protect the public interest in ensuring that only an appropriate Article III court may render judgment on non-core claims.  Because Estate Claim 5 is a non-core claim, it is not within the purview of this Court to enter a final judgment on that claim.  And, because the Court's findings and conclusions with respect to that claim impact nearly every other claim at issue in these proceedings, there is a significant risk of wasteful, duplicative proceedings in one or more of the reviewing courts.

**II.     Standard for Rule 62(h) Stay**

56.      The Court should also stay enforcement of the Judgment pursuant to Rule 62(h), made applicable to these Adversary Proceedings by Bankruptcy Rule 7062.  Under Federal Rule of Civil Procedure 62(h), "[a] court may stay the enforcement of a final judgment entered under Rule 54(b) until it enters a later judgment or judgments, and may prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered."  Fed. R. Civ. P. 62(h).  As with a stay of trial proceedings pending appeal, courts evaluate the four *Nken* factors when evaluating a stay of enforcement of a judgment under Rule 62(h).  *See Marina Dist. Dev. Co. v. Ivey*, No. 14-2283, 2018 U.S. Dist. LEXIS 145805, 2018 WL 40089025, at *2 (D.N.J. Aug. 28, 2018); *City of Riverside v. Greyhound Lines, Inc*., No. 16-796, 2017 U.S. Dist. LEXIS 181293, 2017 WL 3575325, at *1 (C.D. Cal. Aug. 2, 2017).  For the same reasons that a stay pending appeal should be granted under Rule 8007(a), the Court should also stay enforcement of the Rule 54(b) judgment pursuant to Rule 62(h).

### III.    Yucaipa should not be required to post a bond.

57.    Bankruptcy Rule 8007 allows the Court to condition a stay pending appeal on the filing of a bond upon the motion of the prevailing party, which motion has not yet been made. *See* Fed. R. Bankr. P. 8007(a)(1)(B).  Rule 62(h) provides that the Court "may prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered."  Fed. R. Civ. P. 62(h).  The Court should exercise its discretion and not impose a bond on Yucaipa as a condition of a stay pending appeal.

58.    The purpose of a bond "is to protect the adverse party from potential losses resulting from the stay." *In re United Merchs. & Mfrs., Inc*., 138 B.R. 426, 430 (D. Del. 1992). The Court has "wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Cont'l Oil Co. v. Frontier Ref. Co*., 338 F.2d 780, 782 (10th Cir. 1964) (footnote omitted).

59.    Where the adverse party will not suffer losses as a result of a stay pending appeal, a bond is not necessary.  *See United Merchs*., 138 B.R. at 430; *see also Nordhoff Investments, Inc. v. Zenith Elecs. Corp*., 258 F.3d 180, 191 (3d Cir. 2001) (noting that a stay may be sought "with or without posting a bond").  Generally, a bond is only necessary where the stay is "likely to cause harm by diminishing the value of an estate or endanger [the non-moving parties'] interest in the ultimate recovery . . . ." *In re Adelphia Communications Corp*., 361 B.R. 337, 368 (S.D.N.Y. 2007) (internal quotation marks omitted).

60.    The Trustee's sole justification for a bond appears to be that, absent a bond, Yucaipa may make what the Trustee claims are impermissible distributions.  Yucaipa would be willing to agree that, as a condition to the stay, no distributions will be made its limited partners until the stay is lifted or otherwise expires.  Additionally, the Disputed Obligations Escrow provides the Trustee with tens of millions of dollars in protection.  The Trustee will suffer little

23

or no harm if the Court grants a stay pending appeal, whereas conditioning a stay pending appeal on a bond is almost certain to result in Yucaipa's loss of appellate rights.

61.     Thus, Yucaipa should not be required to post a bond as a condition to obtaining a stay pending appeal.

## Notice

62.     Notice of this Motion has been provided to counsel for the Trustee. Yucaipa submits that no other or further notice is required under the circumstances.

## No Prior Request

63.     No prior request for the relief sought herein has been made to this Court or any other court.

DOCS_DE:234722.11 96991/001

## Conclusion

WHEREFORE, for the foregoing reasons, Yucaipa respectfully requests that this Court (i) enter an order, substantially in the form attached hereto as **Exhibit A**, granting a stay of the enforcement of the Judgment pending final resolution of Yucaipa's appeal; and (ii) granting such other and further relief as the Court deems equitable and proper.

Dated:  June 25, 2021

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Peter J. Keane (DE Bar No. 5503)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Fax: (302) 652-4400
Email: ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        pkeane@pszjlaw.com

-and-

GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP
Patricia L. Glaser (*admitted pro hac vice*)
Gali Grant (*admitted pro hac vice*)
Matthew P. Bernstein (*admitted pro hac vice*)
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Fax: (310) 556-2920
Email: pglaser@glaserweil.com
        ggrant@glaserweil.com
        mbernstein@glaserweil.com

Counsel for Yucaipa

25