## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ASHINC Corporation, *et al.*, | Case No. 12-11564 (CSS) (Jointly Administered) |
| Debtors. | |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS, | Adv. Proc. No. 13-50530 |
| Plaintiff, | |
| BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P., | |
| Intervenors, | |
| v. | |
| YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P., | |
| Defendants. | |

| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM COMMERCIAL FINANCE LLC, as co-administrative agent,<br><br>Plaintiff,<br><br>v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.,<br><br>Defendants. | Adv. Pro. No. 14-50971 (CSS) |
| --- | --- |

**LITIGATION TRUSTEE'S MEMORANDUM OF LAW IN RESPONSE TO YUCAIPA'S MOTION FOR A STAY OF THE EFFECTIVENESS AND ENFORCEMENT OF JUDGMENT PENDING APPEAL**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ...............................................................................................................2

    I.    THERE IS NOT A STRONG LIKELIHOOD THAT YUCAIPA WILL PREVAIL ON APPEAL ......2

        A.    This Court Did Not Err in Finding it Had Authority to Enter Final Orders and Judgments on Estate Claims ...............................................................................2

        B.    The Court Did Not Err by Entering a Rule 54(b) Judgment ................................6

        C.    The Court Did Not Decide Disputed Issues of Fact .............................................9

        D.    Yucaipa Fails to Challenge the Court's Critical Holding Regarding the Covenant Not to Sue ...........................................................................................12

        E.    The Court Awarded Prejudgment Interest on Estate Claims 10, 11, and 13 at the Customary Rate ........................................................................................12

    II.    YUCAIPA WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A STAY ...........13

    III.    THE TRUSTEE WILL BE SEVERELY PREJUDICED IF A STAY IS GRANTED WITHOUT ANY BOND OR SECURITY ...........................................................................15

    IV.    A STAY IS NOT IN THE PUBLIC INTEREST .....................................................................17

CONCLUSION..........................................................................................................18

i

**Page(s)**

**Cases**

*Allis-Chalmers Corp. v. Philadelphia Elec.* Co.,
    521 F.2d 360 (3d Cir. 1975)..................................................................................7 n.11

*Berckeley Inv. Grp. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006)..........................................................................................7

*Carter v. City of Philadelphia*,
    181 F.3d 339 (3d Cir. 1999).........................................................................................7 n.11

*CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*,
    2021 WL 212692 (D. Del. Jan. 21, 2021)..................................................................13

*Conestoga Wood Specialties Corp. v. Sec. of U.S. Dep't of Health & Hum. Servs.*,
    2013 WL 1277419 (3d Cir. Feb. 8, 2013)...............................................................1

*Cont'l Oil Co. v. Frontier Ref. Co.*,
    338 F.2d 780 (10th Cir. 1964) ....................................................................................16 n.21

*Exec. Benefits Ins. Agency v. Arkinson*,
    573 U.S. 25 (2014).........................................................................................................14

*Heritage Handoff Holdings, LLC v. Fontanella*,
    2019 WL 1056270 (D. Del. Mar. 6, 2019) ............................................................. 12-13

*Hirschfield v. B'nai B'rith Int'l*,
    2010 WL 11565250 (W.D. Pa. Aug. 10, 2010) ....................................................3

*Hohe v. Casey*,
    868 F.2d 69 (3d Cir. 1989)..........................................................................................13

*HOP Energy, L.L.C. v. Loc. 553 Pension Fund*,
    678 F.3d 158 (2d Cir. 2012).........................................................................................11

*In re Allied Sys. Holdings, Inc.*,
    556 B.R. 581(D. Del. 2016),
    *aff'd sub nom. In re ASHINC Corp.*, 683 F. App'x 131 (3d Cir. 2017) .......................4 n.6

*In re Am. Tissue, Inc.*,
    2015 WL 1516973 (D. Del. Mar. 31, 2015) .................................................................17

*In re Extraction Oil & Gas, Inc.*,
    2020 WL 7186847 (D. Del. Dec. 7, 2020) .......................................................................14

*In re Green Field Energy Servs., Inc.*,
    2018 WL 6191949 (Bankr. D. Del. Nov. 28, 2018) ......................................................13

*In re Groggel*,
    333 B.R. 261 (Bankr. W.D. Pa. 2005) ...........................................................................3

*In re Nw. Missouri Holdings, Inc.*,
    2015 WL 3638000 (D. Del. June 11, 2015) ..................................................................17

*In re Opus E., LLC*,
    528 B.R. 30 (Bankr. D. Del. 2015) ..........................................................................13 n.16

*In re Pennsylvania Gear Corp.*,
    2008 WL 2370169 (E.D. Pa. Bankr. Apr. 22, 2008) .......................................................6

*In re Revel AC, Inc.*,
    802 F.3d 558, 571 (3d Cir. 2015) .................................................................................13

*In re Revstone Indus., LLC*,
    019 WL 2929328 (D. Del. July 8, 2019) .......................................................................9

*In re St. Mary Hosp.*,
    117 B.R. 125 (Bankr. E.D. Pa. 1990) ...................................................................6, 5 n.7

*In re Stipetich*,
    294 B.R. 635 (Bankr. W.D. Pa. 2003) ....................................................................5 n.7

*In re Tribune Media Co.*,
    902 F.3d 384 (3d Cir. 2018) ...................................................................................5 n.7

*In re Winstar Commc'ns, Inc.*,
    348 B.R. 234 (Bankr. D. Del. 2005),
    *aff'd*, 2007 WL 1232185 (D. Del. Apr. 26, 2007),
    *aff'd in part, modified in part*, 554 F.3d 382 (3d Cir. 2009) ............................................9

*Int'l Multifoods Corp. v. Com. Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002).............................................................................................12

*Keurig, Inc. v. Sturm Foods, Inc.*,
    2012 WL 12896333 (D. Del. Nov. 2, 2012),
    *aff'd*, 732 F.3d 1370 (Fed. Cir. 2013) ..............................................................................8

*Marcus v. PQ Corp.*,
  458 F. App'x 207 (3d Cir. 2012) ...........................................................12 n.15

*Norfolk S. Corp. v. Oberly*,
  594 F. Supp. 514 (D. Del. 1984)...................................................................13

*Ryan v. Asbestos Workers Union Loc. 42 Pension Fund*,
  2002 WL 87470 (D. Del. Jan. 22, 2002)..............................................17 n.22

*S. Track and Pump, Inc. v. Terex Corp.*,
  2014 WL 4825249 (D. Del. Sept. 29, 2014).................................................17

*VICI Racing LLC v. T-Mobile USA*,
  921 F. Supp. 2d 317 (D. Del. 2013)
  *vacated in part on other grounds*, 763 F.3d 273 (3d Cir. 2014).....................1 n.3, 16, 17

*Wellness Int'l Network, Ltd. v. Sharif*,
  575 U.S. 665 (2015)................................................................. 2, 4, 5 & n.7

## Rules & Statutes

D. Del. LR 7012-1 .............................................................................................4

FED. R. BANKR. P. 2004 ....................................................................................16

FED. R. BANKR. P. 7012(b)................................................................. 2, 3, 4, 5 n.7

FED. R. BANKR. P. 7062 ...............................................................................1 & n.2

FED. R. BANKR. P. 7069 ....................................................................................16

FED. R. CIV. P. 8(b) ............................................................................................3

FED. R. CIV. P. 54(b) ...............................................................................6, 7 n.11

FED. R. CIV. P. 62(b) ...............................................................................1 & n.2, 16

28 U.S.C. § 157.....................................................................................2, 3, 5 n.7

28 U.S.C. § 1334....................................................................................................3

<u>**PRELIMINARY STATEMENT**</u>[1]

Yucaipa's Motion for a Stay of the Effectiveness and Enforcement of Judgment Pending Appeal (13-50530, D.I. 845; 14-50971, D.I. 583, the "**Stay Motion**") seeks a remedy already available to it as a matter of right. It simply has to post a bond or other security. *See* Fed. R. Civ. P. 62(b); Fed. R. Bankr. P. 7062.[2] "The purpose of a supersedeas bond [requirement] under Rule 62[(b)] is to preserve the status quo during the pendency of an appeal and protect the winning party from the possibility of loss resulting from the delay in execution."[3] Remarkably, however, Yucaipa asks the Court — on a supposed "emergency" basis — to waive all protection for the Trustee's right to the approximately $132.4 million in damages and prejudgment interest awarded without <u>any</u> showing that it is incapable of posting a bond or security during the years it may spend appealing this Court's Opinion.

The Third Circuit recognizes that a stay of a judgment pending appeal is an "extraordinary remedy" that is "rarely granted, because in [this Circuit] the bar is set particularly high." *See Conestoga Wood Specialties Corp. v. Sec. of U.S. Dep't of Health & Hum. Servs.*, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013). The "standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Id.* As such, Yucaipa bears the heavy burden of demonstrating (1) it has a strong likelihood to succeed on the merits of its

---

[1]     Abbreviations relied on, and citation conventions used in, the Trustee's briefing for summary judgment and her response to Yucaipa's Objections (13-50530, D.I. 836; 14-50971, D.I. 574) (the "**Trustee Responses**") are used again here. For the Court's convenience, an appendix of abbreviations relied on by the Trustee is attached as **Appendix A**. The Trustee hereby incorporates by reference all evidence, arguments, and authorities set forth in (1) the summary judgment briefing (2) during oral argument on summary judgment held on February 4, 2021, and (3) the Trustee's Responses to Yucaipa's Objections.

[2]     Fed. R. Civ. P. 62(b) — made applicable by Fed. R. Bankr. P. 7062 — provides: "At any time after judgment is entered, a party may obtain a stay by providing a bond or other security."

[3]     *VICI Racing LLC v. T-Mobile USA*, 921 F. Supp. 2d 317, 335 (D. Del. 2013), *vacated in part on other grounds*, 763 F.3d 273 (3d Cir. 2014).

1

appeal; (2) it will be irreparably injured absent a stay; (3) the issuance of the stay will not substantially injure the Trustee; and, (4) the public interest lies in granting the stay sought. Yucaipa cannot carry its burden on any, much less all, of these required showings. The Stay Motion should be denied.

## ARGUMENT

### I. THERE IS NOT A STRONG LIKELIHOOD THAT YUCAIPA WILL PREVAIL ON APPEAL

#### A. This Court Did Not Err in Finding it Had Authority to Enter Final Orders and Judgments on Estate Claims

The Supreme Court's decision in *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 686 (2015) makes clear that parties may consent to a bankruptcy court "enter[ing] appropriate orders and judgments" by express or implied consent. Yucaipa's Stay Motion persists in spinning a fiction that Yucaipa never consented because it "repeatedly and consistently objected to the Court issuing any final orders or judgments" with respect to Estate Claims. (Stay Motion at ¶27 & n.14). As previously addressed in the Trustee Responses, it did not. Among other things:

**Yucaipa Consented to Jurisdiction Because its Answer Did Not Include Any Rule 7012 Statement and It Admitted the Estate Action Was a Core Proceeding.** Yucaipa filed its operative Answer to the Estate Claims on April 1, 2013. (13-50530, D.I. 95) (the "**Answer**"). At that time, FED. R. BANKR. P. 7012(b) provided that "if the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge."[4] No such statement is included in Yucaipa's Answer. Rather, in responding to the allegation that "the adversary proceeding is a 'core' proceeding pursuant to 28 U.S.C. § 157(b)[,]" Yucaipa averred, without a denial, that the

---

[4]     Emphasis is added to, and quotations and internal punctuation is omitted from, quotations in this brief, unless otherwise indicated.

allegation "set forth legal conclusions to which no response is required." (*Compare* 13-50530, D.I. 76 at ¶22 & Answer ¶22). Courts considering this precise scenario have held that the failure to deny this allegation functions as an admission to the Court's jurisdiction. *See, e.g.*, *In re Groggel*, 333 B.R. 261, 268 (Bankr. W.D. Pa. 2005) ("Unfortunately for [defendant], the Trustee's averment that the instant adversary proceeding is a core matter is not the kind of allegation [by the Trustee] to which no responsive pleading is required. In fact, such a responsive pleading is explicitly required under Bankruptcy Rule 7012(b)."); *see also Hirschfield v. B'nai B'rith Int'l*, 2010 WL 11565250, at \*5 (W.D. Pa. Aug. 10, 2010) ("[A] bankruptcy court may find that failure to admit or deny the [] party's core averment is an admission that the adversary proceeding is core, and therefore, an expression of consent to judgment by the bankruptcy court"); *see also* FED. R. CIV. P. 8(b)(1)(B) and 8(b)(6) (failure to deny an allegation as to which a response is required functions as an admission).

**Yucaipa Previously Claimed This Court Had "Exclusive Jurisdiction" Over Claims Regarding the First Lien Credit Agreement.** Prior to filing its Answer in the Estate Action, Yucaipa filed counterclaims and cross-claims in the related Allied Adversary Proceeding alleging that the action — which addressed the parties' rights under the First Lien Credit Agreement — "constitute[d] a core proceeding pursuant to 28 U.S.C. § 157" and "implicate[d] matters within this Court's exclusive jurisdiction under 28 U.S.C. § 1334." (*See* 12-50947, D.I. 65, ¶31). Yucaipa also admitted that the Bankruptcy Court had jurisdiction in the Allied Adversary Proceeding and that it was a core proceeding (*id.* at 5 (¶¶30-31)), while maintaining that the Bankruptcy Court is "the only court capable of resolving the core issues" relating to the First Lien Credit Agreement. (*Id.* at 15; *see also* Trustee Responses at 6-7). Further, in responding to BD/S' motion for summary judgment filed in both the Allied Adversary

Proceeding <u>and</u> the Estate Action on July 23, 2013, Yucaipa did not include any statement that it did not consent to entry of final orders and judgment as required by this Court's Local Rule 7012-1, which provides:

> In addition to statements required by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, <u>any answer, motion or response shall contain a statement that the filing party does or does not consent to entry of final orders or judgment by the Court</u> if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. **<u>If no such statement is included in the answer, motion or responses thereto, the filing party shall have waived the right to contest the authority of the Court to enter final orders or judgment</u>**.[5]

**Yucaipa Never Objected to This Court's Prior Orders and Judgments.** Over the long history of these proceedings, this Court has issued multiple Orders and Judgments without objection from Yucaipa with respect to its ability to do so. For example, on February 27, 2013, this Court dismissed Yucaipa's cross-claims and counterclaims in the Allied Adversary Proceedings, finding, among other things, that it "has judicial power to enter a final Order." (12-50947, D.I. 139 at 3). Yucaipa filed an appeal without raising any jurisdictional challenge to the Court's issuance of the final order. (*Id.*, D.I. 149). Similarly, Yucaipa raised no objection to this Court's jurisdiction when it granted summary judgment to BD/S in the Estate Action on August 8, 2013. (13-50530, D.I. 280, 289). Nor did Yucaipa raise a jurisdictional objection in its appeals to the District Court and Third Circuit seeking to overturn this order, or in its failed petition for panel rehearing.[6]

**Yucaipa Did Not Consistently Object Following the *Wellness* Decision.** Nor did

---

[5]   *See* https://www.deb.uscourts.gov/sites/default/files/local_rules/LocalRules_2013.pdf.

[6]   *See In Re Allied Sys. Holdings, Inc.*, 556 B.R. 581 (D. Del. 2016), *aff'd sub nom. In re ASHINC Corp.*, 683 F. App'x 131 (3d Cir. 2017) (affirming this Court's holdings that (i) the Fourth Amendment is *void ab initio*, (ii) the Third Amendment was validly enacted, (iii) Yucaipa's First Lien Debt holdings are excluded from calculating Requisite Lender status, (iv) BD/S are Requisite Lenders, and (v) the First Lien Credit Agreement and Third Amendment are unambiguous).

Yucaipa begin "consistently object[ing] to the Court issuing any final orders or judgments" in the wake of the Supreme Court's ruling in *Wellness*, which made it clear that implied consent to the Bankruptcy Court's issuance of final orders and judgments is sufficient. *See Wellness*, 575 U.S. at 686.[7] For example, Yucaipa's counsel filed a Certificate of Counsel concerning an amended case scheduling order on July 1, 2016 — *i.e.*, over a year and a half after the *Wellness* decision — which included a statement that Yucaipa's former co-defendant "Mr. Gendregske d[id] not consent to the entry of final orders or judgments by the Court[,]" while remaining silent on the issue with respect to Yucaipa. (*See* 13-50530, D.I. 391). Further, Yucaipa affirmatively consented to entry of a final judgment by this Court in the Allied Adversary Proceeding over three years after *Wellness* was decided.[8]

**Yucaipa Cannot Revoke Its Consent After 4.5 Years.** To support its contention that it "consistently objected to the Court issuing any final orders or judgments," Yucaipa continues to rely on "no consent" language raised in filings for *first time* four and a half years into the Estate

---

[7]     Yucaipa relies heavily on its argument that it "cannot be deemed to have impliedly consented to the Court's entry of a final order" because Rule 7012(b) required express consent of the parties prior to an amendment effective December 1, 2016. (Stay Motion at ¶28). This is wrong. The Supreme Court's decision in *Wellness* — which pre-dates the 2016 amendments to the Federal Rules of Bankruptcy Procedure — held that a party <u>can</u> implicitly consent to the Bankruptcy Court's adjudication of non-core matters under 28 U.S.C. § 157. *See Wellness*, 575 U.S. at 684-85. Moreover, the Third Circuit has made clear that a litigant's conduct can determine whether it knowingly and voluntarily consented without regard to whether there was express consent in a party's Answer to a Complaint. *See, e.g.*, *In re Tribune Media Co.*, 902 F.3d 384, 394 (3d Cir. 2018) (collecting cases in which implied consent was sufficient, including several cases commenced prior to the effective date of the 2016 amendments to the Bankruptcy Rules). *See also In re Stipetich*, 294 B.R. 635, 650 (Bankr. W.D. Pa. 2003) ("the substantial weight of authority indicates that a party can impliedly consent to entry of judgment by the bankruptcy court in a non-core related matter"); *In re St. Mary Hosp.*, 117 B.R. 125, 131 (Bankr. E.D. Pa. 1990) ("an admission that a proceeding is core accords irrevocable consent to a bankruptcy court to determine the proceeding, even if it is non-core.").

[8]     *See* 12-50947, D.I. 317 at 3 ("[F]inal judgment is hereby entered as to all issues in this Adversary Proceeding.").

Action.  (*See* Stay Motion at 9-10 & n.14) (identifying first objection on August 31, 2017).

Yucaipa's earlier consent to this Court's jurisdiction in the Estate Action, however, cannot be

revoked after four and a half years. *See, e.g.*, *In re Pennsylvania Gear Corp.*, 2008 WL 2370169,

at *5 (E.D. Pa. Bankr. Apr. 22, 2008) (admission to jurisdiction "accords irrevocable consent to

bankruptcy court to determine the proceeding") (quoting *In re St. Mary Hosp.*, 117 B.R. at 131).

Moreover,  it is not even clear whether the "no consent" language raised for the first time

in a filing in the Estate Action in August 2017 was actually intended to apply to the Estate

Claims at issue in the Judgment.[9]  As discussed in the Trustee's Responses, it became the parties'

practice to file duplicate copies in both Adversary Proceedings after the Litigation Trustee was

substituted as Plaintiff in both actions and the two Adversary Proceedings were coordinated for

discovery purposes in early 2017.  (Trustee Responses at 9).  Thus, it is unclear whether Yucaipa

simply intended its "no consent" language to continue to reserve objections previously raised to

the Court's jurisdiction in the Lender Action where — unlike the Estate Action — Yucaipa (1)

stated in the Answer that it did not consent to the Court's jurisdiction; (2) filed a motion to

withdraw the reference; and (3) sought a determination of the non-core status of Lender Direct

Claims 2-4.  (*Id.*).  Yucaipa's Stay Motion fails to dispel any uncertainty in this respect.

### B.     The Court Did Not Err by Entering a Rule 54(b) Judgment

The Court committed no error by entering Judgment pursuant to Fed. R. Civ. P. 54(b).

As set forth in the Judgment, this was done for multiple reasons, including the critical reality that

the "long and arduous" litigation history between the parties has "now resulted in the Trustee's

reasonable concerns about the solvency of Yucaipa."  (Judgment at 5).[10]  This Court is afforded

---

[9]     *See* 13-50530, D.I. 841; 14-50971, D.I. 579 (the "**Judgment**").

[10]    Yucaipa's election to file the Stay Motion rather than obtain the relief sought as a matter of right by posting a bond or security makes clear that these concerns are justified.

broad discretion in making this determination, and Yucaipa does not (because it cannot) contend that the Court improperly considered this factor. *See Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 202-03 (3d Cir. 2006) (including "delay, economic and solvency considerations" among the factors relevant to the question whether there is "no just reason to delay").[11] On this basis alone, Yucaipa fails to demonstrate that it is likely to succeed on the merits of an appeal that the Court improperly certified the Judgment.

Yucaipa's arguments regarding the overlapping nature of the adjudicated and unadjudicated claims are also baseless.

**Overlapping Factual Issues, If Any, Are Insignificant**. Yucaipa argues that "the factual findings made in connection with the Opinion supporting the Judgment implicate the remainder of the claims." (Stay Motion at 13-14). The Court, however, did not make *any* factual findings in the Opinion and the facts forming the basis of the Judgment were undisputed. Yucaipa *admitted* that it breached the Capital Contribution Provision,[12] and it does not dispute the transfers that formed the basis of the Judgment on Estate Claims 10, 11, and 13. Indeed, Yucaipa has not indicated that it will challenge these facts on appeal (*see* Stay Motion at 15-17),

---

[11]    Yucaipa's suggestion that the Court failed to adequately explain its reasoning for granting judgment to the Trustee under Rule 54(b) is meritless. (*See* Stay Motion at 11-12). A "brief reasoned statement in support of [the Court's] determination" is sufficient in the Third Circuit. *See Allis-Chalmers Corp. v. Philadelphia Elec.* Co., 521 F.2d 360, 364 (3d Cir. 1975); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 345-46 (3d Cir. 1999) (A statement of reasons stands not as a "jurisdictional prerequisite" but "a prophylactic means of enabling the appellate court to ensure that immediate appeal will advance the purposes of the rule"). Here, the Court's reasoning serves this purpose.

[12]    13-50530, D.I. 822 at 59:25-60:15 (Yucaipa's Counsel: "[I]n hindsight we know the fourth amendment was *void ab initio*, so when Yucaipa acquired more than the third amendment allowed, that was a breach of the contract. The second breach is what we call the capital contribution provision … [T]en days after acquiring term loans [Yucaipa] needs to make a capital contribution; undisputed Yucaipa didn't do that. And, again … in hindsight we know that that was required, and it was a breach of the contract in failing to make the capital contribution within ten days.").

and they will remain undisputed at trial. As the Court stated in the Opinion, the factual issues

that remain to be tried concern Yucaipa's conduct as Requisite Lender, including its "conduct in

the JCT Negotiations" and whether it "caused Allied to commit events of default under the

FLCA." (Opinion at 109) (denying summary judgment in part on Estate Claims 1-2 and Lender

Claim 1). These facts, among others, are part of the Trustee's remaining claims, including for

Equitable Subordination (Estate Claims 1-2 and Lender Claim 1), Breach of Fiduciary Duty

(Estate Claim 7), and Breach of the Duty of Good Faith and Fair Dealing (Lender Claim 3). The

reality is that the remaining factual issues of significance for trial relate to Yucaipa torpedoing

the JCT Transaction in late 2011 and 2012. The appeal from the Judgment will not address these

facts or the legal claims underlying it remaining for trial. As such, Yucaipa's assertion that there

are "[o]verlapping factual issues between the claims decided on summary judgment and those

remaining for trial" is overstated, at best. (Stay Motion at 13).[13] *See also Keurig, Inc. v. Sturm

Foods, Inc.*, 2012 WL 12896333, at *2 (D. Del. Nov. 2, 2012) (relevant question is not whether

there is any factual overlap between the adjudicated and unadjudicated claims, but whether "the

degree of overlap is insignificant on the whole."), *aff'd*, 732 F.3d 1370 (Fed. Cir. 2013).

**There Are No Overlapping Damages**. There is also no possibility of overlapping

damages being considered on appeal. Contrary to Yucaipa's assertion that the damages from its

alleged breaches of fiduciary duty "arise out of the same conduct and alleged harm that form the

basis of the breach of contract claims" (Stay Motion at 12), the Trustee seeks different measures

of damages for these claims. For Yucaipa's breach of contract, the Trustee sought (and this

Court awarded) the cash value of the Capital Contribution that Yucaipa was required to make by

---

[13]     As discussed in the Trustee's Responses, Yucaipa's reference to Judge Robinson's remarks
regarding the relationship between the Estate Claims and Lender Claims (which Yucaipa repeats
in its Stay Motion), are inapposite. (*See* Trustee Responses at 13 n.25).

August 31, 2009. (Opinion at 32-33). In contrast, the Trustee measures damages for Yucaipa's breaches of fiduciary duty as the difference between the proceeds the Estate should have received from a sale to JCT in late 2011 to 2012, and the proceeds it actually received as a result of Yucaipa's fiduciary breaches. (*See* Singer Declaration Ex. 103 (Risius Report) ¶¶91-100).[14]

Yucaipa also exaggerates the possibility of overlapping damages between the claims resolved by the Judgment and the Trustee's equitable subordination claims. (Stay Motion at 12). "[T]he Third Circuit has opined that the doctrine of equitable subordination was intended by Congress to allow for flexible application by the courts." *In re Winstar Commc'ns, Inc.*, 2007 WL 1232185, at \*5 (D. Del. Apr. 26, 2007), *aff'd in part, modified in part*, 554 F.3d 382 (3d Cir. 2009). This Court is more than capable of awarding damages to the Trustee for its equitable subordination claims that are distinct from the damages awarded in the Judgment.

### C. The Court Did Not Decide Disputed Issues of Fact

Recycling rejected arguments raised in its 9033 Objections, Yucaipa again argues that the Court made "improper factual findings," which are subject to a successful appeal. (*See* Stay Motion at 15-17; 9033 Objections at 10-12). Yucaipa, however, still fails to point to *evidence* it put forth precluding the entry of summary judgment on any issue forming the basis of the Opinion, Order, and Judgment. As discussed below, none of Yucaipa's "illustrative" examples is likely to succeed on appeal. *See In re Revstone Indus., LLC*, 2019 WL 2929328, at \*4 (D. Del. July 8, 2019) ("Contrary to Defendant's assertions, the Bankruptcy Court did not weigh any evidence or determine the truth of any matter. Rather, the Bankruptcy Court determined that

---

[14] While the Trustee seeks the *Lenders'* damages from the JCT sale as the measure of damages for Lender Claim 3 (Breach of the Duty of Good Faith and Fair Dealing), the Trustee has already clarified that it is not seeking duplicative damages. (13-50530, D.I. 770 at 45). Should the Court award the Trustee the damages it seeks for Estate Claim 7 (breach of fiduciary duty), the Trustee would not seek further damages for Lender Claim 3.

Defendant failed to present anything in rebuttal to the Motions other than conclusory, self-serving, and hedged statements unsupported by any evidence.").

**Yucaipa's Option to Contribute Cash or Debt in August 2009**. The Court awarded the Trustee the cash value of the Capital Contribution that Yucaipa was required to make on August 31, 2009, (1) relying on the plain meaning of the First Lien Credit Agreement (which gave Yucaipa the option of making a cash contribution), and (2) recognizing the undisputed fact that Yucaipa can no longer contribute its Term Loans to Allied. (Opinion at 28-32). Whether it would have made more sense for Yucaipa to contribute Term Loans, rather than cash, to Allied on August 31, 2009, has no bearing on this determination because it is undisputed that "Allied received neither." (*Id*. at 30). Yucaipa has no likelihood of a successful appeal based on arguments that fail to address the actual merits of the Court's decision.

**The Effect on Allied of Yucaipa's Failure to Make a Capital Contribution**. For the reasons discussed in the Trustee's Responses, Yucaipa's assertion that the Court "speculat[ed]" regarding the effect on Allied of Yucaipa's failure to make a Capital Contribution is baseless. The Court rejected Yucaipa's expert's speculation regarding the effect on Allied if Yucaipa had made the Capital Contribution and awarded damages to the Trustee based on settled New York law that the full cash value of the Capital Contribution is a stable foundation to award damages for Yucaipa's admitted breach. (*See* Trustee Responses at 18-19). Yucaipa's argument, which fails to challenge the Court's legal conclusions, has no likelihood of success on appeal.

**Whether Yucaipa Demanded a Premium on Its Debt Was Not "Heavily Disputed."** Yucaipa's arguments that it offered ratable treatment to First Lien Lenders during the JCT Negotiations cannot substitute for *evidence* creating a genuine dispute on this issue. (*See id.* at 17-18). In any event, the Court specifically held that whether "Yucaipa's conduct in the JCT

Negotiations was unreasonable" remained a triable issue of fact. (Opinion at 109). Thus, there is nothing for Yucaipa to appeal relating to this issue.

**The Court Correctly Applied New York Law to Measure Damages**. The Court correctly held that: (1) Yucaipa failed to carry its burden with respect to proving the damages (or lack thereof) resulting from its breach of the Capital Contribution Provision; and (2) the Trustee offered a "stable foundation" for a reasonable estimate. (Opinion at 31; *see also* Trustee Reponses at 19-20). Yucaipa's conclusory argument that there was "genuine dispute" on this issue fails to explain how the Court's application of New York law on this issue was erroneous. (Stay Motion at 17).

**The Court Followed Third Circuit Precedent in Concluding that Yucaipa Acted in Bad Faith**. The Court concluded that Yucaipa did not act in good faith in amending the First Lien Credit Agreement by applying the Third Circuit's precedent on this issue (Opinion at 65), not by "weigh[ing] conflicting evidence," as Yucaipa wrongly asserts (Stay Motion at 17). Yucaipa has no likelihood of success on an appeal misconstruing the Court's decision.

**The "Intent of the Parties with Respect to the Covenant-Not-to-Sue" Was Not a Disputed Issue**. The Court determined that the Covenant Not to Sue did not bar the Estate's breach of contract claim based on the plain meaning of the First Lien Credit Agreement. (Opinion at 38) ("The language is clear and unambiguous that the Covenant Not to Sue only applies when Yucaipa makes a Capital Contribution of its Term Loans, which Yucaipa did not do."). Thus, the parties' subjective intent is irrelevant and cannot form the basis of a successful appeal under controlling New York law. *See HOP Energy, L.L.C. v. Loc. 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) ("With unambiguous contracts, a party's subjective intent and understanding of the terms is irrelevant.").

### D. Yucaipa Fails to Challenge the Court's Critical Holding Regarding the Covenant Not to Sue

Yucaipa repeats its argument that the Court improperly referred to hypothetical "omissions" that could apply to the Covenant Not to Sue in rejecting Yucaipa's interpretation of the provision. (Stay Motion at 18-19; *see also* 9033 Objections at 13). Again, this argument does not have a strong likelihood of success because it fails to challenge the Court's critical holding that the Covenant Not to Sue was unambiguous. (*See* Trustee Reponses at 20-21). Yucaipa's alternative argument that the Court's understanding of the plain meaning of Covenant Not to Sue is "unsupported by the evidence" is also deficient and runs counter to black letter New York law. *See Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (under New York law, "if the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract *without the aid of extrinsic evidence* and it may then award summary judgment").

### E. The Court Awarded Prejudgment Interest on Estate Claims 10, 11, and 13 at the Customary Rate

Yucaipa argues that the Court's award of prejudgment interest on Estate Claims 10, 11, and 13 was "unsupported" but fails to cite <u>any</u> precedent from this Circuit (or Delaware) for its contention that an award of prejudgment interest requires an "explanation." (*See* Stay Motion at 19-20).[15] In Delaware, successful plaintiffs are entitled to prejudgment interest "as a matter of right" and federal courts in this State routinely set prejudgment interest at Delaware's "legal rate" of 5% over the Federal Reserve discount rate. *See, e.g., Heritage Handoff Holdings, LLC*

---

[15] In fact, an explanation is only required in this Circuit when a trial court deviates from the general policy of awarding prejudgment interest. *See, e.g., Marcus v. PQ Corp.*, 458 F. App'x 207, 214 (3d Cir. 2012) ("An abuse of discretion occurs when a [trial] court deviates from this policy without a reasoned explanation.").

*v. Fontanella*, 2019 WL 1056270, at *13 (D. Del. Mar. 6, 2019) (plaintiff's request for Delaware

legal rate "is consistent with the approach taken by Delaware courts" and is "reasonable"); *see

also CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, 2021 WL 212692, at *2 (D. Del. Jan. 21,

2021) (awarding prejudgment interest at Delaware legal rate); *In re Green Field Energy Servs.,

Inc.*, 2018 WL 6191949, at *89 n.6 (Bankr. D. Del. Nov. 28, 2018) (same). The Judgment is not

subject to remand for following this State's customary practice.[16]

## II.   YUCAIPA WILL NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A STAY

"To establish irreparable harm, a stay movant must demonstrate an injury that is neither

remote nor speculative, but actual and imminent." *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d

Cir. 2015). Yucaipa's arguments fail to satisfy this burden for at least three reasons:

*First*, Yucaipa's argument that an alleged constitutional violation creates a presumption

of irreparable harm has been expressly rejected in the Third Circuit. *See Hohe v. Casey*, 868

F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the

irreparable harm necessary for issuance of a preliminary injunction"); *see also Norfolk S. Corp.

v. Oberly*, 594 F. Supp. 514, 522 (D. Del. 1984) ("The Third Circuit has made it clear that not all

violations of constitutional rights constitute irreparable injury.").[17] In any event, any error

supposedly made by this Court in entering a judgment is harmless because the District Court can

cure it by issuing its own judgment following a *de novo* review. As such, Yucaipa cannot satisfy

---

[16]    Yucaipa's argument that *In re Opus E., LLC*, 528 B.R. 30 (Bankr. D. Del. 2015) is "inconsistent" with the Court's award in this case is meritless. In *Opus*, the Court recognized that Delaware courts "[g]enerally … apply the 'legal rate of interest' for prejudgment interest" but decided that the federal judgment rate was the "appropriate" rate in that case without further explanation. *Id*. at 108-109. How the *Opus* Court elected to exercise its discretion is not binding on this Court's exercise of its discretion.

[17]    Yucaipa's reliance on authority strictly from the Second Circuit is, therefore, inapposite. (Stay Motion at ¶51).

its burden of showing irreparable harm by pointing to its alleged constitutional violation. *See Exec. Benefits Ins. Agency v. Arkinson*, 573 U.S. 25, 39-40 (2014) (District Court's *de novo* review of the Bankruptcy Court's order granting summary judgment and entry of its own judgment cured any error in the Bankruptcy Court's earlier entry of judgment).

*Second*, Yucaipa's contention that the Trustee would "attempt to dismantle" it before it can appeal or defend the remaining claims is speculative, and speculation cannot constitute irreparable harm as a matter of law. (Stay Motion at 21). *See In re Extraction Oil & Gas, Inc.*, 2020 WL 7186847, at *5 (D. Del. Dec. 7, 2020) ("To satisfy the irreparable harm factor, a stay movant must demonstrate an injury that is neither remote nor speculative" rather than "hypothetical and contingent").

*Third*, Yucaipa fails to offer any explanation as to why it has no alternative means to satisfy the Judgment, including by invoking its indemnification rights under its Limited Partnership Agreements. (*See* 12-11564 D.I. 4086 at 8 n.5) (quoting provision in Limited Partnership Agreement authorizing Yucaipa to require limited partners to return distributions to satisfy the Partnership's "indemnity obligations for Damages"); *see also Extraction Oil*, 2020 WL 7186847, at *5 (movant failed to show irreparable harm that would result from approved rejection of contracts and leases because movant failed to analyze "whether the pipelines could be sold or whether they could renegotiate new rates and contracts"). Moreover, Yucaipa's founder and controlling partner — Ron Burkle — is a billionaire.[18] If Yucaipa believes it has a strong likelihood of success on appeal, it could rely on its founder to support issuance of a bond or security.

---

[18] *See, e.g.*, https://www.forbes.com/profile/ron-burkle/?sh=4d8329e64460 (estimating Ron Burkle's net worth at $1.5 billion); *see also* Scolnick Ex. 12 (Burkle Dep.) 148:3-9 (testifying that he "fl[ies] an embarrassing[ly] large plane … all over the country").

### III. THE TRUSTEE WILL BE SEVERELY PREJUDICED IF A STAY IS GRANTED WITHOUT ANY BOND OR SECURITY

Yucaipa maintains that the "Trustee [will] not be harmed by a stay of the Judgment pending appeal" and, that Yucaipa should therefore not be required to post a bond.  (Stay Motion ¶¶54, 57-61).  Both contentions are utterly devoid of merit.

As addressed in the Trustee's Motion for an Order Authorizing the Taking of Document Discovery and Deposition Testimony from the Yucaipa Funds (12-11564, D.I. 4086) (the "**Rule 2004 Motion**"), the Trustee discovered in late 2019 that Yucaipa was dissipating assets through large distributions to its investors notwithstanding the massive contingent liability presented by the Adversary Proceedings and its General Partner's duty to maintain adequate reserves for such liabilities.[19]

In early 2020, the Trustee sought a consensual turnover of information regarding Yucaipa's distributions to assess what measures are necessary to protect the beneficiaries of the Litigation Trust consistent with her fiduciary obligations, including through commencement of any actions as to which limitations periods may be running.  Yucaipa refused to turn over the relevant information, citing unspecified "privacy concerns" and arguing, among other things, that the relief sought is relevant "*only* if [the Trustee] were able to obtain a judgment against Yucaipa" in the Adversary Proceedings, and "*only* if that judgment exceeded the approximately $45 million (not including interest) reserved under the Allied Plan for reimbursement of Yucaipa's litigation fees and expenses and as Yucaipa's pro rata share of first lien Lender

---

[19] Any suggestion that the Adversary Proceedings presented less than a substantial risk of significant liability for Yucaipa is not credible.  By 2017, Yucaipa had exhausted its appeals to challenge, among other things, multiple courts' rulings that the Fourth Amendment to the First Lien Credit Agreement was *void ab initio* and that the Third Amendment was operative.  (*See* n.6, above).  As such, Yucaipa was, at a minimum, indisputably in breach of its obligations under the mandatory Capital Contribution provision.

distribution." (12-11564, D.I. 4105 at 2).

During a hearing on the Rule 2004 Motion on September 24, 2020, this Court acknowledged that the Trustee's concerns were valid, and that the matter should not be overly delayed due to the Trustee's need to obtain discovery prior to the potential expiration of statutes of limitations.[20] The Rule 2004 Motion was denied without prejudice to renewal after the parties' cross-motions for summary judgment were decided. The Trustee sought renewal shortly after issuance of the Opinion and is respectfully awaiting a decision regarding Rule 2004 discovery into Yucaipa's distributions. Now that the Judgment for approximately $132.4 million has been granted, it is critical that the Trustee promptly obtain disclosure provided by FED. R. BANKR. P. 7069 and/or Rule 2004. If Yucaipa is granted a stay without a bond requirement, it will inevitably rely on the stay to continue shielding disclosure of information which, by its own admission, is now relevant. This presents the risk of serious prejudice to the Trustee with respect to collection efforts.

Additionally, the Court should reject Yucaipa's contention that a bond is not necessary because there is an "absence of proof showing a likelihood of harm" in this case.[21] The burden of proving a likelihood that it will suffer irreparable injury in the absence of a stay lies on Yucaipa. The Trustee does not bear the burden of coming forward with evidence that it will be harmed if a stay is not granted. The purpose of the supersedeas bond under Rule 62(b) is to protect the winning party from the risk of delay in execution on a judgment. *See VICI Racing*, 921 F. Supp. 2d at 335. Courts have routinely read this rule as "requiring the <u>whole amount</u> of

---

[20]    *See* 12-11564, D.I. 4152 at 25.

[21]    Tellingly, Yucaipa is limited to a sound bite from a 57-year-old inapposite case — decided outside this Circuit — to support this proposition. (*See* Stay Motion at ¶58 (citing *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782 (10th Cir. 1964)).

the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay." *See, e.g.*, *S. Track and Pump, Inc. v. Terex Corp.*, 2014 WL 4825249, at *1 (D. Del. Sept. 29, 2014); *VICI Racing*, 921 F. Supp. 2d at 335 ("The bond in whatever form should generally be sufficient in amount to satisfy the judgment, plus interest and costs."). The Stay Motion makes no showing that Yucaipa is incapable of posting a bond to protect the full Judgment, interests, and costs.[22] Instead, it suggests that the $45 Million in "the Disputed Obligations Escrow provides the Trustee with … protection." (Stay Motion at ¶60). However, accounts holding only about a third of the Judgment awarded — with a trial over even larger claims on the horizon — do not provide sufficient protection for the Trustee.

## IV.  A STAY IS NOT IN THE PUBLIC INTEREST

The public interest weighs in favor of denying the Stay Motion. "[A]s a general matter, there is always a strong public interest in having lawsuits move forward to resolution as speedily as possible." *In re Nw. Missouri Holdings, Inc.*, 2015 WL 3638000, at *3 (D. Del. June 11, 2015). In contrast, there are no Article III concerns at stake because Yucaipa failed to demonstrate that it was deprived of any constitutional right. (*See* pp. 2-6, above). *See also In re Am. Tissue, Inc.*, 2015 WL 1516973, at *5 (D. Del. Mar. 31, 2015) (movant's argument that "the enforcement of the case law and the statute is clearly in the public's interest" is unpersuasive because movant "has failed to demonstrate that the statute or case law weighs in his favor."). Any interest that Yucaipa had in having an Article III court enter judgment in this case was eviscerated by its knowing and voluntary waiver of that right. Moreover, as discussed above and

---

[22]   A failure to make this showing, standing alone, is grounds to deny the extraordinary relief sought by Yucaipa. *See, e.g.*, *Ryan v. Asbestos Workers Union Loc. 42 Pension Fund*, 2002 WL 87470, at *1 (D. Del. Jan. 22, 2002) (Denying motion to stay bond requirement because "[t]he defendants have made no showing that posting the bond would be impossible or impractical.").

in the Trustee Responses, Yucaipa's Article III concerns are unfounded because it will be receiving the same *de novo* review from the District Court regardless of whether it is presented as proposed findings and conclusions or the Judgment.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Trustee respectfully requests that the Court deny Yucaipa's request for a stay of the enforcement of the Judgment pending exhaustion of its appellate rights.

Dated: July 2, 2021

**FOX ROTHSCHILD LLP**

By: _____/s/ Seth A. Niederman_____
Seth A. Niederman (DE Bar No. 4588)
Citizens Bank Center
919 N. Market Street, Suite 300
Wilmington, DE 19801
Tel.: (302) 654-7444
Fax: (302) 656-8920
sniederman@foxrothschild.com

-and-

**JOSEPH HAGE AARONSON LLC**
Gregory P. Joseph
Douglas J. Pepe
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, NY 10017
Telephone: (212) 407-1200
gjoseph@jhany.com

-and-

**ZAIGER LLC**
Jeffrey H. Zaiger
Judd A. Lindenfeld (*pro hac vice forthcoming*)
2187 Atlantic Street, 9th Floor
Stamford, CT 06902
Telephone: (917) 572-7701
jzaiger@zaigerllc.com

*Counsel for the Litigation Trustee and Plan Administrator*

**Abbreviations and Defined Terms**

| | |
|---|---|
| **13-50530** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Adv. Proc. No. 13-50530 (Bankr. D. Del.) |
| **14-50971** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Adv. Proc. No. 14-50971 (Bankr. D. Del.) |
| **2005 Bankruptcy** | *In re Allied Holdings, Inc., et al.*, Case Nos. 05-12515 through 05-12526 and 05-12528 through 05-12537 (Bankr. N.D. Ga.) |
| **9033 Objections** | Yucaipa's Objections to the Bankruptcy Court's May 4, 2021 Summary Judgment Opinion and Order [Federal Rule of Bankruptcy Procedure 9033], dated May 18, 2021 (13-50530, D.I. 828; 14-50971, D.I. 566) |
| **Active** | Active Carhaul |
| **Allied Adversary Proceeding** | *ASHINC Corp. v. AMMC VIII, Ltd. et al.*, Adv. Proc. No. 12-50947-CSS (Bankr. D. Del) |
| **Allied** or the **Company** | ASHINC Corp.(formerly known as Allied Systems Holdings, Inc.) and related Debtors |
| **Amended Plan** | Debtors' Modified First Amended Joint Chapter 11 Plan of Reorganization dated December 3, 2015 (Case No. 12-11564, D.I. 3360-1) |
| **Answer** | Answer and Affirmative Defenses of Yucaipa to Plaintiff's Amended Complaint, dated April 1, 2013 (13-50530, D.I. 95) |
| **BD/S** | Black Diamond and Spectrum |
| **Black Diamond** | BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd. |
| **Board** | Allied's Board of Directors |
| **Burkle** | Defendant Ronald Burkle |
| **CIT** | CIT Group/Business Credit, Inc. |
| **ComVest** | ComVest Investment III, L.P. |
| **Covenant Not to Sue** | Covenant not to sue at § 2.7(f) of the First Lien Credit Agreement (Ex. 9) |
| **Credit Agreements** | Allied's First Lien Credit Agreement and Second Lien Credit Agreement |
| **D. Del. Compl.** | *Yucaipa Am. All. Fund I, L.P. et al. v. Richard A. Ehrlich et al.*, No. 15-cv-373 (D. Del. May 8, 2015), ECF No. 1 |
| **Direct Lender Claims** | Claims brought on behalf of the lenders under Allied's first lien credit facility asserted in Adv. Proc. No. 14-50971 |
| **Ehrlich Decl.** | The accompanying Declaration of Richard Ehrlich, dated December 18, 2020 |
| **Entities Opposition** or **Entities Opp.** | Litigation Trustee's Opposition to the Motion for Summary Judgment by Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP, dated July 17, 2020 |

| | |
|---|---|
| **Estate Claims** | Claims brought on behalf of the Allied Estates asserted in Adv. Proc. No. 13-50530 |
| **Ex.** | Exhibits to the first Declaration of Gila S. Singer, dated May 1, 2020 (13-50530, D.I. 713; 14-50971, D.I. 466); Second Declaration of Gila S. Singer, dated August 21, 2020 (13-50530, D.I. 772; 14-50971, D.I. 516); and the accompanying Third Declaration of Gila S. Singer |
| **First Lien Credit Agreement or "FLCA"** | Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 (Ex. 9) |
| **Gendregske Br.** | Defendant Mark Gendregske's Opening Brief in Support of his Motion for Summary Judgment, dated May 1, 2020 (13-50530, D.I. 708) |
| **Georgia Action** | *Allied Systems Holdings, Inc., et al. v. The CIT Group/Business Credit, Inc.*, Civil Action No. 2009-CV-177574 (Super. Ct. Fulton Cnty.) |
| **Harris Decl.** | The accompanying Declaration of Adam C. Harris, dated December 18, 2020 |
| **Indiv. Br.** | Memorandum of Points and Authorities in Support of Motion for Summary Judgment by Defendants Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner (13-50530, D.I. 699; 14-50971, D.I. 456) |
| **Individual Defendants** | Defendants Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner |
| **Individuals Opposition or Indiv. Opp.** | Litigation Trustee's Opposition to the Motion for Summary Judgment by the Individual Defendants, dated July 17, 2020 |
| **Jack Cooper or JCT** | Jack Cooper Transport |
| **JCT 363 Sale** | Purchase by JCT of substantially all of Allied's assets for $135 million following an auction for Debtors' assets under 11 U.S.C. §363, which closed on December 27, 2013 |
| **Joint Procedural History** | Joint Procedural History, dated July 25, 2019 (13-50530, D.I. 599; 14-50971, D.I. 365) |
| **Judgment** | Judgment, dated June 23, 2021 (13-50530, D.I. 841; 14-50971, D.I. 579) |
| **Kasowitz** | Kasowitz Benson Torres LLP |
| **Latham** | Latham & Watkins LLP |
| **LPA** | Loan Purchase Agreement between Yucaipa and ComVest, dated August 21, 2009 (Ex. 43) |
| **MMSA** | Monitoring and Management Services Agreement, dated May 29, 2007 (Scolnick Ex. 32) |

| NY Action | *BDCM Opportunity Fund II, LP, et al. v. Yucaipa American Alliance Fund I, L.P., et al.*, Index No. 650150/2012 (N.Y. Sup. Ct. N.Y. Cnty.) |
|---|---|
| **Objections** | 9033 Objections and Proposed Judgement Objections |
| **Opinion** | Opinion, dated May 4, 2021 (13-50530, D.I. 825; 14-50971, D.I. 563) |
| **Opposition** or **Opp.** | Opposition to the Litigation Trustee's Motion for Summary Judgment by Defendants Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Ronald Bukle, Ira Tochner, Derex Walker, Jos Opdeweegh, and Jeff Pelletier |
| **Order** | Order, dated May 4, 2021 (13-50530, D.I. 826; 14-50971, D.I. 564) |
| **Plan** | Second Amended Joint Plan of Reorganization, *In re Allied Holdings, Inc.*, No. 05-12515 (CRM) (Bankr. N.D. Ga.), D.I. 2802 (Ex. 11) |
| **Proposed Judgment Objections** | Objection to Entry of Judgment and Additional Objections to the Proposed Form of Judgment Submitted by the Litigation Trustee; Request for Stay in the Alternative, dated May 18, 2021 (13-50530, D.I. 830; 14-50971, D.I. 568) |
| **Requisite Lenders** | As defined in Allied's First Lien Credit Agreement (Ex. 9 at 41) |
| **Rule 2004 Motion** | Trustee's Motion for an Order Pursuant to Bankruptcy Rule 2004 and/or Sections 105(a) and 542(e) of the Bankruptcy Code Authorizing the Taking of Document Discovery and Deposition Testimony from the Yucaipa Funds, dated July 31, 2020 (12-11564, D.I. 4086) |
| **Scolnick Ex.** | Exhibits to the Declaration of Kahn A. Scolnick, dated May 1, 2020 (13-50530, D.I. 721; 14-50971, D.I. 457) |
| **Scolnick Opp. Ex.** | Exhibits to the Declaration of Kahn A. Scolnick, dated August 21, 2020 (13-50530, D.I. 767; 14-50971, D.I. 511) |
| **SDNY Compl.** | *Yucaipa Am. All. Fund I, L.P. et al. v. Richard A. Ehrlich et al.*, No. 15-cv-916 (S.D.N.Y. Feb. 6, 2015), ECF No. 1 |
| **Second Lien Credit Agreement** | Second Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 |
| **Spectrum** | Spectrum Investment Partners, L.P. |
| **Stay Motion** | Yucaipa's Motion for a Stay of the Effectiveness and Enforcement of Judgment Pending Appeal Pursuant to Bankruptcy Rule 7062 and 8007(a), dated June 25, 2021 (13-50530, D.I. 845; 14-50947, D.I. 583) |
| **Tender Offer** | February 4, 2009 tender offer by Yucaipa for Allied first lien debt (Ex. 30) |
| **Third Amendment** | Amendment No. 3 to First Lien Credit Agreement and Consent, dated as of April 17, 2008 |
| **Troutman** | Troutman Sanders LLP |
| **Trustee** | Plaintiff Catherine E. Youngman, as Litigation Trustee for ASHINC Corp. (formerly known as Allied Systems Holdings, Inc.) and related Debtors |

| | |
|---|---|
| **Trustee Brief** | Litigation Trustee's Memorandum in Support of Motion for Partial Summary Judgment, dated May 1, 2020 (13-50530, D.I. 706; 14-50971 D.I. 463) |
| **Trustee Responses** | Trustee's Memorandum in Response to: (1) Yucaipa's Objections to Summary Judgment Opinion and Order, Entry of Judgment, and Proposed Form of Judgment, and (2) Questions from the Court, dated June 22, 2021 (13-50530, D.I. 836; 14-50947, D.I. 574) |
| **UVTA** | Uniform Voidable Transactions Act |
| **Yucaipa** | Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. |
| **Yucaipa Br.** | Memorandum of Points and Authorities in Support of Motion for Summary Judgment by Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P., dated May 1, 2020 (13-50530, D.I. 697; 14-50971, D.I. 454) |
| **Yucaipa Directors** | Defendants Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner |
| **Yucaipa-ComVest Transaction** | Yucaipa's August 21, 2009 purchase of ComVest's $145.1 million (principal face amount) of Allied First Lien Debt for approximately $43 million pursuant to the LPA |