IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ASHINC CORPORATION, *et al.*, | : | Case No. 12-11564 (CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| _____ | : | |
| CATHERINE E. YOUNGMAN, | : | |
| LITIGATION TRUSTEE FOR ASHINC | : | |
| CORPORATION, ET AL., AS | : | |
| SUCCESSOR TO THE OFFICIAL | : | |
| COMMITTEE OF UNSECURED | : | |
| CREDITORS OF ASHINC | : | |
| CORPORATION, AND ITS | : | |
| AFFILIATED DEBTORS | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Proc. No.: 13-50530 (CSS) |
| BDCM OPPORTUNITY FUND II, LP | : | |
| BLACK DIAMOND CLO 2005-1 LTD., | : | |
| SPECTRUM INVESTMENT | : | |
| PARTNERS, L.P., | : | |
| | : | |
| | : | |
| Intervenors, | : | |
| v. | : | |
| | : | |
| YUCAIPA AMERICAN ALLIANCE | : | **Related Docket No. 891** |
| FUND I, L.P., YUCAIPA AMERICAN | : | |
| ALLIANCE (PARALLEL) FUND I, L.P., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| CATHERINE E. YOUNGMAN, | : | |
| LITIGATION TRUSTEE FOR ASHINC | : | |
| CORPORATION, ET AL., TO BDCM | : | |
| OPPORTUNITY FUND II, LP., | : | |
| BLACK DIAMOND CLO 2005-1 | : | |
| LTD., SPECTRUM INVESTMENT | : | |
| PARTNTERS L.P., BLACK | : | |

DIAMOND COMMERICAL :
FINANCE, L.L.C., as co-administrative :
agent, and SPECTRUM :          Adv. Pro. No. 14-50971 (CSS)
COMMERICAL FINANCE LLC, :
as co-administrative agent :
                              :
        Plaintiff, :
                              :
v.                            :          **Related docket No. 626**
                              :
YUCAIPA AMERICAN ALLIANCE :
FUND I, L.P., YUCAIPA AMERICAN :
ALLIANCE (PARALLEL) FUND I, L.P., :
                              :
        Defendants. :
_____:

## MEMORANDUM ORDER

Upon consideration of the Defendants Yucaipa American Alliance Fund I,

L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P.s Motion for Stay of

Proceedings Pursuant to Bankruptcy Rule 8007(e), filed on October 4, 2021 (the

"Motion");[1] Litigation Trustee's Opposition to Defendants Yucaipa American

Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P.'s

Motion for Stay of Proceedings Pursuant to Bankruptcy Rule 8007(e), filed on

November 1, 2021;[2] Reply in Support of Defendants' Yucaipa American Alliance

Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P.'s Motion for

---

[1] Adv. 13-50530, Adv. Docket No. 891; Adv. 14-50971, Adv. Docket No. 626, filed by collectively, "Yucaipa."

[2] Adv. 13-50530, Adv. Docket No. 896; Adv. 14-50971, Adv. Docket No. 631, filed by the "Trustee."

Stay of Proceedings Pursuant to Bankruptcy Rule 8007(e), filed on November 18, 2021;[3] the Court having reviewed the Motion; and the Court finding that (1) the Court has jurisdiction over these matters, pursuant to 28 U.S.C. § 1334; and (2) notice of the Motion was adequate under the circumstances;

## FACTUAL AND PROCEDURAL BACKGROUND[4]

1.      On May 4, 2021, the Court entered its Opinion[5] and Order,[6] granting in part and denying in part, the Trustee Summary Judgment Motion as follows:

> Trustee's Motion on Estate Claims 1 (Equitable Subordination) and 2 (Equitable Subordination) and Lender Claim 1 (Equitable Subordination) is granted, in part, and denied, in part.
>
> Trustee's Motion on Estate Claim 5 (Breach of Contract) and Lender Claim 2 (Breach of Contract) is granted.[7]

---

[3] Adv. 13- 50530, Adv. Docket No. 899; Adv. 14-50971, Adv. Docket No. 634.  Although the Motion and associated briefing were filed in both adversary actions (collectively, the "Adversary Proceedings"), the Court will reference only docket numbers in Adv. Pro. 13-50530, unless otherwise indicated.

[4] The Court hereby incorporates the factual and procedural history set forth in the Court's Opinion dated May 4, 2021 (Adv. Pro. No. 13-50530, Adv. D.I. 825) (*Youngman v. Yucaipa American Alliance Fund I, L.P. (In re ASHInc Corp.)*, 629 B.R. 154 (Bankr. D. Del. 2021)).

[5] Adv. D.I. 825.

[6] Adv. D.I. 826.

[7] Yucaipa filed its Objections to Bankruptcy Court's May 4, 2021 Summary Judgment Opinion and Order, pursuant to Federal Rule of Bankruptcy Procedure 9033 (the "9033 Objection"), seeking transition to and *de novo* review by the District Court of certain portions of the Opinion (Adv. D.I. 825) and Order (Adv. D.I. 826) relating to the granting of summary judgment in favor of the Trustee on Lender Claim 2 (Breach of Contract).  *See* Adv. D.I. 828.  Yucaipa also filed the Objection to Entry of Judgment and Additional Objections to the Proposed Form of Judgment Submitted by the

> Trustee's Motion on Estate Claims 10 (Constructive Fraudulent Transfers), 11 (Constructive Fraudulent Transfers), and 13 (Disallowance of Claims) are granted.
>
> Trustee's Motion on Lender Claim 4 (Tortious Interference) is denied.[8]

2.      On May 18, 2021, Yucaipa filed its Rule 9033 Objection and Entry of Judgment Objection.  On June 22, 2021, the Trustee filed her Trustee Rule 9033 Response, responding to specific questions the Court posed regarding its ability to enter a final order with respect to the non-core claims in the Estate Action and Lender Action.[9]  On June 22, 2021, Yucaipa filed its Entry of Judgment Reply, in which it responded to the Court's questions and argued that the Court did not have authority to enter the Judgment.[10]

3.      On June 23, 2021, the Court entered the Judgment on certain counts, pursuant to the Order.[11]  The Judgment directed entry of a final judgment as to

---

Litigation Trustee, Request for Stay in the Alternative (Adv. D.I. 830) (the "Entry of Judgment Objection").

[8]  The Order also ruled on Yucaipa's Summary Judgment Motion as follows: (i) Yucaipa's Motion on Estate Claim 3 (Recharacterization) was granted; (ii) Yucaipa's Motion on Estate Claim 4 (Specific Performance) was granted; (iii) Yucaipa's Motion on Estate Claim 5 (Breach of Contract) and Lender Claim 2 (Breach of Contract) was denied; (iv) Yucaipa's Motion on Lender Claim 3 (Breach of Duty of Good Faith and Fair Dealing) was denied, (v) Yucaipa's Motion on Estate Claim 6 (Specific Performance) was granted; (vi) Yucaipa's Motion on Estate Claim 7 (Breach of Fiduciary Duty) was denied; and (vii) Yucaipa's Motion on Estate Claims 10 (Constructive Fraudulent Transfers) and 11 (Constructive Fraudulent Transfers) was denied.  Adv. D.I. 826.

[9]  Adv. D.I. 836.

[10]  Adv. D.I. 839.

[11]  Adv. D.I. 841.

less than all of the claims in the Adversary Proceeding after determining that there

was no just reason for delay, pursuant to Rule 54(b), made applicable by

Bankruptcy Rule 7054.

4.      On July 6, 2021, Yucaipa filed its Notice of Appeal, pursuant to

Bankruptcy Rule 8002(a).[12]  The appeal is pending in the United States District

Court before Chief Judge Connolly as Civil Action Nos. 21-cv-994 and 21-cv-995.

5.      On October 4, 2021, Yucaipa filed its motion to withdraw the

reference.[13]

6.      By this Motion, Yucaipa requests entry of an order staying the

Adversary Proceeding pending exhaustion of Yucaipa's appellate rights, pursuant

to Bankruptcy Rule 8007(e).

## ANALYSIS

### I.    The Court Retains Jurisdiction to Adjudicate the Remaining Claims

7.      The "divestment doctrine" is defined as follows:

> Filing a notice of appeal is an event of jurisdictional
> significance, conferring jurisdiction on the appellate
> court, and divesting the court of origin of its control
> over "those aspects of the case involved in the appeal."
> The divestment doctrine is a judge-made rule, the
> purpose of which is to "prevent confusion and

---

[12]  Adv. D.I. 858.

[13]  Adv. D.I. 890.

inefficiency if two courts were to adjudicate the same issues simultaneously." As long as the matters in front of the lower court would not alter the appealed order, the trial court is not divested of jurisdiction. Indeed, a lower court may enforce or implement its order unless the appellant has obtained an order staying the underlying action pending appeal. Thus, courts "are not divested of jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal." "This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review."[14]

"[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process."[15] And the converse is true; if the lower court does not "disrupt the appellate process," then the "bankruptcy court courts are not divested of jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal."[16] As a result, the Court must examine the remaining

---

[14] *Claridge Assoc., LLC v. Schepis (In re Pursuit Cap. Mgmt., LLC)*, No. 14-10610 (LSS), 2017 WL 2537234, at *6 (Bankr. D. Del. June 9, 2017) (footnotes and citations omitted). *See also In re Tribune Co.*, 472 B.R. 223, 231 (Bankr. D. Del. 2012) ("The application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner.") (*quoting Whispering Pines Ests., Inc. v. Flash Island, Inc. (In re Whispering Pines Ests., Inc.)*, 369 B.R. 752, 758 (B.A.P. 1st Cir. 2007)).

[15] *In re Whispering Pines Ests., Inc.*, 369 B.R. at 759.

[16] *In re Bd. of Directors of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001) ("The lower court is divested of jurisdiction over 'those aspects of the case involved in the appeal', not over any

claims to determine if they are different from and collateral to those involved in the appeal.

### a. Preferential Transfer Claims

8.      The Trustee is not pursuing claims at trial that have been subsumed by Estate Claims already decided, including preferential transfers.    Thus, preferential transfer claims will not be tried.

### b. Breach of Contract Claims and Implied Covenant of Good Faith and Fair Dealing Claim

9.      The Court found that Yucaipa breached the Third Amendment by failing to make its required capital contribution to Allied on or before August 31, 2009, and awarded as damages the value of the capital contribution Yucaipa failed to make.[17]   The Trustee's implied covenant claim is not premised on the capital contribution breach; the implied covenant claim is based on Yucaipa's assuming the role of Requisite Lender and on the reduction in value that it caused.  As the Court already held:

---

matters that may arise in the matter.  Thus, notwithstanding the pendency of an appeal, bankruptcy courts are not divested of jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal." (citations omitted)).

[17] *In re ASHInc Corp.*, 629 B.R. at 179 ("The Court finds that Allied was damaged in the full amount of the Capital Contribution that Yucaipa failed to make on the date of the breach. It is now impossible for Yucaipa to contribute its Term Loans at this stage of the bankruptcy case, in other words, Yucaipa's original option of cash or contribution of Term Loans is now precluded. Thus, the full cash value of the Capital Contribution is the appropriate measure of damages.").

> The Estate Claim for breach of contract (Estate Claim 5) relates to Yucaipa's breach of the Capital Contribution Provision in section 2.7(e) of the Third Amendment.  The fiduciary duty claim is centered on Yucaipa's breach of duty of loyalty by causing Allied to enter into the Fourth Amendment, which "serve no valid corporate purpose for Allied" but carried "significant benefits to Yucaipa."  Furthermore, the damages for the Capital Contribution Claim ($57.4 million, as discussed *supra*) are distinct and separate from the fiduciary duty damages being sought (the difference between the unconsummated JCT deal versus the JCT 363 Sale price).  As a result, although the claims share a common nucleus of facts, the breach of fiduciary duty claim is broader in scope and involves a different remedy.  Thus, the Court finds that the breach of fiduciary duty claim is not duplicative of the breach of contract claim.[18]

As a result, the damages for each of these claims is distinct (as well as the factual predicates for each of these claims).

10.    The factual issues remaining to be tried concern Yucaipa's conduct when masquerading as Requisite Lender, including its "conduct in the JCT Negotiations" and whether it "caused Allied to commit events of default under the FLCA."[19]  These facts underlie each of the Trustee's remaining claims for equitable subordination and breach of fiduciary duty, as well as breach of the implied covenant.  Thus, there is no reason to delay the trial on these issues.

---

[18] *In re Ashinc Corp.*, 629 B.R. at 205 (footnotes omitted).

[19] *In re Ashinc Corp.*, 629 B.R. at 221.

c. **Equitable Subordination**

11.     Yucaipa asserts that Estate Claim 2 (equitable subordination based on breach of contract) is included in the Judgment.  The Trustee responds that the breach of contract claim is one of *many* examples of Yucaipa's inequitable conduct underlying the Trustee's equitable subordination claim.

12.     The Court held that:

> The Trustee has failed to prove, as undisputed, that: (i) Yucaipa's conduct in the JCT Negotiations was unreasonable as there still exist genuine issues of fact as to whether (a) the JCT Negotiations were a missed opportunity for Allied, (b) whether Yucaipa agreed to *pari passu* treatment, or (c) whether it was Yucaipa's or BDS's actions which terminated the JCT Negotiations; and (ii) Yucaipa caused Allied to commit events of default under the FLCA as there still exist genuine issues of fact as to whether Yucaipa was able to prevent the defaults. Left for trial are the above facts as well as whether acts (i) and (ii) above resulted in injury to Allied, creditors, or the advantage of Yucaipa.[20]

13.     Therefore, the Court held that the Trustee must now prove the extent to which Yucaipa's claims will be equitably subordinated; as explained, this is separate from the breach of contract claim.

14.     Yucaipa also asserts that the equitable subordination damages will be duplicative of the breach of contract damages awarded in the Judgement.

---

[20] *In re Ashinc Corp.*, 629 B.R. at 221.

However, this Court can properly measure damages and ensure that the damages are not duplicative.[21]

### d. Breach of Fiduciary Duty and Implied Covenant Claims

15.     Yucaipa asserts that the damages from its breaches of fiduciary duty and breach of implied covenant of good faith and fair dealing form the basis of the Estate's breach of contract claim.  However, the Trustee seeks different measures of damages arising out of different conduct on each of these claims.  The Trustee sought (and was awarded) the cash value of the capital contribution that Yucaipa failed to make by August 31, 2009, for its breach of contract claim.  For Yucaipa's (alleged) breaches of fiduciary duty and breach of implied covenant, the Trustee seeks damages based on Yucaipa's destruction of the JCT deal in 2011-2012.  However, the Trustee acknowledges that the damages are duplicative between the breach of fiduciary duty and the breach of the implied covenant and only seeks the damages once – so that the Trustee could prevail on either or both claims but will only collect once.

---

[21] *Lucent Tech., Inc. v. Shubert (In re Winstar Commc'ns, Inc.)*, Case No. 01-1063, 2007 WL 1232185, at *5 (D. Del. Apr. 26, 2007) (*citing Burden v. United States*, 917 F.2d 115, 120 (3d Cir. 1990) (further citation omitted)) ("[T]he Third Circuit has opined that the doctrine of equitable subordination was intended by Congress to allow for flexible application by the courts."), *aff'd in part, modified in part*, 554 F.3d 382 (3d Cir. 2009).  *Burden*, 917 F.2d at 120–21 ("[W]e conclude that § 510(c) permits equitable subordination of nonpecuniary loss tax penalties; in determining whether to subordinate courts must balance the equities of the various claims; and creditor misconduct is not a prerequisite for equitable subordination.").

### e. Conclusion

16.     As this Court has previously held, the Court made no factual findings in its Opinion.[22]  Thus, any factual issues to be decided on appeal and in the 9033 Objection will not contradicted by the Court's Opinion.   Any legal determinations made on appeal by the District Court will have no impact on the factual issues this Court will need to resolve at trial.  Furthermore, the claims to be tried are separate and distinct from the breach of contract claim on appeal.  Thus, the "divestment doctrine" has not been triggered and this Court is not divested of the remaining issues to be tried.

17.     As noted and previously held by this Court, the Court's Opinion made determinations as a matter of law, and nothing will limit the facts the Trustee must prove or the defenses that Yucaipa will be permitted to argue at trial.  As discussed above, the damages to be decided, if any, at trial will be distinct from the damages the Court awarded in the Judgment.

---

[22]  Adv. D.I. 864 (Tr. of Hr'g July 6, 2021, 31:21-32:3 ("[T]there was no fact finding. There's no violation of the summary judgment rules. Every fact that is the underpinning of the judgment was undisputed or, to the extent there was a dispute as to what it might have meant if you had applied parol[e] evidence, it was irrelevant because it was based solely on the plain meaning of the documents. Plain meaning of documents is not a fact-finding exercised by the Court that could somehow be disputed.").

II.    **Yucaipa has Not Met its Burden for a Discretionary Stay.**

18.    In the alternative, Yucaipa seeks a discretionary stay, pursuant to Bankruptcy Rule 8007(e), which provides that: "the bankruptcy court may: (1) suspend or order the continuation of other proceedings in the case; or (2) issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest."[23]  Yucaipa, as movant, bears the "burden of proof on these factors by a preponderance of the evidence."[24]

19.    The Third Circuit has held that courts should consider the following factors in determining whether to grant a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[25]

---

[23]  Fed. R. Bankr. P. 8007(e).

[24]  *In re Innovative Commc'ns*, 390 B.R. 184, 187 (Bankr. D.V.I. 2008).

[25]  *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

"In order not to ignore the many gray shadings stay requests present, courts 'balance[e] them all" and "consider the relative strength of the four factors.'"[26]  The Third Circuit held:

> the first two factors are the most critical, if the chance of success on the merits is only better than negligible and the possibility of irreparable injury is low, a stay movant's request fails.  Likewise, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the stay opponent if a stay is granted, it is still required to show, at a minimum, serious questions going to the merits.[27]

The Third Circuit continues:

> all four stay factors are interconnected, and thus the analysis should proceed as follows.  Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) and (b) will suffer irreparable harm absent a stay?  If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach.  However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest] is unnecessary, and the stay should be denied without further analysis.  But depending on how strong a case the stay movant has on the merits, a stay is permissible even if the balance of harms and public

---

[26]  *Id.* (*quoting Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (further citation omitted)).

[27]  *In re Revel AC, Inc.*, 802 F.3d at 570 (citations, quotation marks and modifications omitted).

interest weigh against holding a ruling in abeyance pending appeal.[28]

With that framework, the Court will undertake the factor analysis.

### a. Success on the Merits

20. The Third Circuit has held:

> For our Court, a sufficient degree of success for a strong showing exists if there is "a reasonable chance, or probability, of winning." Thus, while it "is not enough that the chance of success on the merits be 'better than negligible,'" the likelihood of winning on appeal need not be "more likely than not . . ."[29]

21. Yucaipa does not make this argument in the Motion but refers the Court to Yucaipa's Motion for stay pending appeal[30] (the "Initial Stay Motion") which this Court already denied. Therein, Yucaipa asserts that Estate Claim 5 (Breach of Contract) is non-core and, thus, this Court lacks authority to enter final judgment.

22. Among other things, this Court has held that Yucaipa's Constitutional argument was "baseless," that there was "no fact finding [in the Opinion] that went beyond the summary judgment standard," and that claims and

---

[28] *In re Revel AC, Inc.*, 802 F.3d at 571 (citations and internal quotation marks and modifications omitted).

[29] *In re Revel AC, Inc.*, 802 F.3d at 568–69 (citations omitted).

[30] Adv. D.I. 845.

issues remaining for trial really "don't cross-contaminate in any way" with issues

on appeal.[31]  Yucaipa offers no grounds to depart from these findings.

23.     Thus, the Court (again) finds no likelihood of success on the merits.

**b. Irreparable Injury**

24.     On the second factor, the Third Circuit has held that

the applicant must "demonstrate that irreparable
injury is likely [not merely possible] in the absence of
[a] [stay]." While a reference to "likelihood" of success
on the merits has been interpreted by courts to cover
the generic range of outcomes, for irreparable harm we
understand the Supreme Court's use of "likely" to
mean more apt to occur than not.[32]

25.     Yucaipa advances three arguments in support of its irreparable

harm.  First, Yucaipa asserts that it will suffer irreparable harm if it were forced to

try the remaining claims before the District Court reviews the factual findings and

legal conclusions reached by this Court on substantially overlapping claims.[33]

Yucaipa relies on *Dana Corp. v. Fireman's Fund Insurance Co.*[34] to assert that a "risk

---

[31] Adv. D.I. 857 (Order Denying Initial Stay Motion); Adv. D.I. 864 (Tr. of Hr'g July 6, 2021, 31:21-32:3).

[32] *In re Revel AC, Inc.*, 802 F.3d at 569 (citations omitted).

[33] *See* Adv. D.I. 864 (Tr. of Hr'g July 6, 2021, 32:18-21 ("Having found the Constitutional argument baseless, the Court certainly can't find that there's irreparable injury somehow not being able to pursue a baseless argument."); 32:22-33:8 ("I don't think there's irreparable injury" caused by "some sort of cross-contamination fact finding at trial")).

[34] No. 3:83CV1153, 1997 WL 135595, at *1 n. 3 (N.D. Ohio Mar. 11, 1997) ("Federalism and comity are built on the sanctity of judgments and judicial orders. Potentially unbearable stress can be

of duplicative litigation" constitutes irreparable harm. *Dana Corp.* involved a host of lawsuits filed in multiple jurisdictions that all required the interpretation of the same agreement against the same defendant. That is not the case here. Here, as stated above, the claims to be tried before this Court are not duplicative of those Yucaipa appealed.

26.    Second, Yucaipa refers to its Initial Stay Motion and its Constitutional argument that this Court cannot issue a final order on non-core matters. As this Court previously held, the Court did not make findings of fact but only findings of law. Furthermore, "Constitutional harm is not necessarily synonymous with the irreparable harm."[35]

27.    Third, Yucaipa raises the filing of the Motion to Withdraw the Reference. The Court agrees with the Trustee. Yucaipa's recent decision to move to withdraw the reference – 8 ½ years into this litigation – cannot possibly be the cause of Yucaipa's irreparable harm.

28.    As a result, the Court finds that Yucaipa will not be irreparably harmed.

---

placed on both cornerstones of our jurisprudence whenever duplicative lawsuits in diverse forums create a danger of divergent decisions." (citation omitted)).

[35]    *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989).

### c. Substantial Injury to the Trustee

29.    The third prong of the discretionary stay is whether the Trustee will

be substantially injured by the stay of proceedings.  The Third Circuit has stated:

> We weigh the likely harm to the movant (absent a stay)
> (factor two) against the likely irreparable harm to the
> stay opponent(s) if the stay is granted (factor three).
> This is called the balancing of harms or balancing of
> equities.[36]

30.    A stay of all proceedings pending resolution of the appeals "will

serve to carry on the delays that [Yucaipa] has been so successful in achieving to

date, to the immediate and irreparable detriment of [Allied's] creditors and []

estate."[37]  Further, a stay will not "preserve the parties' and the Court's resources,"

as Yucaipa claims.[38]  On the contrary, it would deplete them. The parties and the

---

[36] *In re Revel AC, Inc.*, 802 F.3d at 569.

[37]  *Halperin v. Moreno (In re Green Field Energy Servs., Inc.)*, No. 13-12783(KG), 2017 WL 2729065, at *3 (Bankr. D. Del. June 23, 2017).  *See also Robles v. Domino's Pizza, LLC*, No. 216CV06599SJOFFM, 2019 WL 6482232, at *5 (C.D. Cal. July 30, 2019) (holding that "delaying an action that has already been pending for several years is prejudicial to Plaintiff. Plaintiff has a strong interest in the timely resolution of litigation."); *Vine v. PLS Fin. Servs., Inc.*, No. 4:18-CV-00450, 2019 WL 4257108, at *9 (E.D. Tex. Sept. 9, 2019) ("Plaintiffs . . . have been waiting for more than three years since they initially filed suit. During this time, Plaintiffs were subjected to a year-long stay of proceedings pending PLS' first appeal. This constitutes sufficient harm to the non-moving party, as it increases the difficulty they already face presenting their case."); *Faulkner v. New Mexico Child., Youth & Fams. Dep't*, No. CV 15-852 CG/LAM, 2016 WL 9818609, at *5 (D.N.M. Nov. 3, 2016) ("The Court agrees that any delay caused by a stay pending appeal would substantially injure Plaintiffs. This case has already been significantly delayed, and a stay would cause substantial, potentially years-long delay. Unlike Defendants CYFD and Kirkpatrick's highly attenuated, theoretical injury, Plaintiffs' potential injury is grounded in the significant delay they have already experienced and undoubtedly will experience if a stay is issued.")

[38]  Motion at ¶ 40.

Court are highly familiar with the facts, operative documents, and issues of this case as a result of the recent cross-motions for summary judgment. Trial should be held now so that the parties and the Court are not forced to relearn these topics after a long period of time.

31.     As a result, the Court finds that the Trustee would be substantially harmed by another delay in this litigation.

### d. Public Interest

32.     As this Court previously held, there is no public interest at stake in this commercial dispute between financial players, notwithstanding Yucaipa's Constitutional challenge.[39]   Additionally, "as a general matter, there is always a strong public interest in having lawsuits move forward to resolution as speedily as possible."[40]

### e. Conclusion

33.     Yucaipa has not met any of the prongs for a discretionary stay.

_____

[39] Adv. D.I. 864 (Tr. of Hr'g July 6, 2021, 35:15-17 ("[T]he public doesn't care, nor should the public care, and I don't think the Constitutional argument changes that analysis at all, given that I just don't think it's valid.")).

[40] *Nw. Missouri Holdings, Inc. v. Townes Missouri, Inc. (In re Nw. Missouri Holdings, Inc.)*, No. BR 15-10728-BLS, 2015 WL 3638000, at *3 (D. Del. June 11, 2015) (*citing Castle v. Crouse*, No. CIV.A.03-5252, 2004 WL 1490336, at *5 (E.D. Pa. July 2, 2004) "There is always a strong public interest in having lawsuits move forward to resolution as speedily as possible. See Fed. R. Civ. P. 1.")).

## CONCLUSION

34.      Based on the above, it is hereby ORDERED that the Motion is DENIED.

35.      The Court retains jurisdiction over the implementation of this Order and the remaining issues to be adjudicated between the parties.

_____
Christopher S. Sontchi
United States Bankruptcy Judge

Date: December 6, 2021