## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ASHINC Corporation, *et al.*,<br><br><div align="center">Debtors.</div> | Chapter 11<br><br>Case No. 12-11564 (CSS)<br>(Jointly Administered) |
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASHINC CORPORATION, AND ITS AFFILIATED DEBTORS,<br><br><div align="center">Plaintiff,</div><br><br>BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., and SPECTRUM INVESTMENT PARTNERS, L.P.,<br><br><div align="center">Intervenors,</div><br><br><div align="center">v.</div><br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.,<br><br><div align="center">Defendants.</div> | Adv. Proc. No. 13-50530 |

| | |
|---|---|
| CATHERINE E. YOUNGMAN, LITIGATION TRUSTEE FOR ASHINC CORPORATION, ET AL., AS SUCCESSOR TO BDCM OPPORTUNITY FUND II, LP, BLACK DIAMOND CLO 2005-1 LTD., SPECTRUM INVESTMENT PARTNERS, L.P., BLACK DIAMOND COMMERCIAL FINANCE, L.L.C., as co-administrative agent, and SPECTRUM COMMERCIAL FINANCE LLC, as co-administrative agent,<br><br>     Plaintiff,<br><br>  v.<br><br>YUCAIPA AMERICAN ALLIANCE FUND I, L.P., and YUCAIPA AMERICAN ALLIANCE (PARALLEL) FUND I, L.P.,<br><br>     Defendants. | Adv. Pro. No. 14-50971 (CSS) |

 

 

**LITIGATION TRUSTEE'S PRE-TRIAL BRIEF**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF FACTS ..................................................................................................... 3

      A.     Yucaipa Assumes Requisite Lender Status in Bad Faith and Sues CIT .............. 3

      B.     Yucaipa's Self-Interested Dealings With JCT in Spring 2011 ............................ 4

      C.     Yucaipa Continued to Demand a Premium
            for Itself and Killed the JCT Deal in Late 2011-2012 ........................................ 6

      D.     Yucaipa Refused to Agree to Equal and Ratable Treatment ............................... 7

      E.     Litigation History ............................................................................................... 8

ARGUMENT ..................................................................................................................... 10

    I.    YUCAIPA BREACHED ITS FIDUCIARY DUTY ................................................. 10

      A.     Yucaipa Undisputedly Owed Fiduciary Duties to Allied
            for the Benefit of All Residual Claimants, Including Creditors ........................ 10

      B.     Yucaipa Breached its Fiduciary Duties ............................................................ 11

            1.     *Yucaipa Usurped the JCT Negotiations*
                 *and the Entire Fairness Standard Applies* ................................................. 11

            2.     *Yucaipa Cannot Satisfy the Entire Fairness Standard* ............................. 13

      C.     Damages Suffered ............................................................................................ 14

    II.   IN THE ALTERNATIVE, YUCAIPA BREACHED THE
        IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ........................... 16

    III.  YUCAIPA'S CLAIMS SHOULD BE EQUITABLY SUBORDINATED ..................... 18

CONCLUSION .................................................................................................................. 21

**Page(s)**

**Cases**

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
  98 N.Y.2d 144 (2002) ...........................................................................................17

*ABN AMRO Bank, N.V. v. MBIA Inc.*,
  17 N.Y.3d 208 (2011) .......................................................................................17 n.28

*Ams. Mining Corp. v. Theriault*,
  51 A.3d 1213 (Del. 2012) ..............................................................................11, 13

*Basho Techs. Holdco B, LLC v. Georgetown Basho Inv'rs, LLC*,
  2018 WL 3326693 (Del. Ch. July 6, 2018), *aff'd sub nom.*
  *Davenport v. Basho Techs. Holdco B, LLC*, 221 A.3d 100 (Del. 2019)..............14, 16 n.25

*BDCM Opportunity Fund II, LP v. Yucaipa Am. All. Fund I, LP*,
  2013 WL 1290394 (N.Y. Sup. Ct. Mar. 8, 2013),
  *aff'd*, 112 A.D.3d 509 (N.Y. App. Div. 2013)...........................................................9 n.15

*Beard Rsch., Inc. v. Kates*,
  8 A.3d 573 (Del. Ch. 2010),
  *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010) ................16 n.25

*Berteau v. Glazek*,
  2021 WL 2711678 (Del. Ch. June 30, 2021)....................................................................11

*Bomarko, Inc. v. Int'l Telecharge, Inc.*,
  794 A.2d 1161 (Del. Ch. 1999),
  *aff'd*, 766 A.2d 437 (Del. 2000).................................................................................14

*Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*,
  160 F.3d 982 (3d Cir. 1998)....................................................................................20

*Dalton v. Educ. Testing Serv.*,
  87 N.Y.2d 384 (1995) .......................................................................................17 n.28

*Demetre v. HMS Holdings Corp.*,
  127 A.D.3d 493 (N.Y. App. Div. 2015) ............................................................17 n.28

*Gesoff v. IIC Indus., Inc.*,
  902 A.2d 1130 (Del. Ch. 2006).................................................................................13

*Hackettstown Nat'l Bank v. D.G. Yuengling Brewing Co.*,
    74 F. 110 (2d Cir. 1896)....................................................................18

*In re Allied Sys. Holdings Inc*,
    556 B.R. 581 (D. Del. 2016),
    *aff'd*, 683 F. App'x 131 (3d Cir. 2017).....................................9 n.15

*In re ASHINC Corp.*,
    683 F. App'x 131 (3d Cir. 2017) ..............................9 n.15, 18 n.30

*In re BMT-NW Acquisition, LLC*,
    582 B.R. 846 (Bankr. D. Del. 2018) ................................................11

*In re EZCORP Inc. Consulting Agreement Derivative Litig.*,
    2016 WL 301245 (Del. Ch. Jan. 25, 2016) ......................................11

*In re Mid-Am. Waste Sys., Inc.*,
    284 B.R. 53 (Bankr. D. Del. 2002) ..................................................20

*In re NSC Wholesale Holdings LLC*,
    2022 WL 386134 (Bankr. D. Del. Feb. 9, 2022) .............................10

*In re Viacom Inc. S'holders Litig.*,
    2020 WL 7711128 (Del. Ch. Dec. 29, 2020), *as corrected* (Dec. 30, 2020)....................12

*In re Winstar Commc'ns, Inc.*,
    348 B.R. 234 (Bankr. D. Del. 2005),
    *aff'd*, 2007 WL 1232185 (D. Del. Apr. 26, 2007),
    *aff'd in part, modified in part*, 554 F.3d 382 (3d Cir. 2009) .......................20, 21

*Kahn v. Lynch Commc'n Sys., Inc.*,
    638 A.2d 1110 (Del. 1994) ..............................................................10

*Sage v. Cent. Ry. Co.*,
    99 U.S. 334 (1878)............................................................................17

*Salladay v. Lev*,
    2020 WL 954032 (Del. Ch. Feb. 27, 2020) .....................................11

## Rules & Statutes

11 U.S.C. § 363................................................................... *passim*

11 U.S.C. § 510(c) ...........................................................................19

**Other Authorities**

11 DANIEL R. COQUILLETTE ET AL.,
    MOORE'S FEDERAL PRACTICE § 56.40 (3d ed. 2021)........................................................19

1 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, DELAWARE LAW OF CORPORATIONS
    AND BUSINESS ORGANIZATIONS § 4.16 (4th ed. Supp. 2022)...................................... 10-11

Pursuant to the Order Approving the Amended Trial Scheduling Order,[1] Plaintiff Catherine E. Youngman, as Litigation Trustee (the "**Trustee**") for ASHINC Corporation (formerly known as Allied Systems Holdings, Inc.) and related Debtors ("**Allied**" or the "**Company**") respectfully submits this pre-trial brief.[2]

## PRELIMINARY STATEMENT

In the months leading up to its 2012 bankruptcy filing, Allied was hopelessly insolvent and under the direct control of Yucaipa. Yucaipa dominated every aspect of Allied's capital structure and business. It was Allied's controlling shareholder, held a majority of its First and Second Lien debt, illegitimately claimed the status of Requisite Lender through its bad faith acquisition of First Lien Debt, controlled Allied's Board, and hand-picked Allied's CEO.

Rather than use its control position to lock in a lucrative transaction on equal terms for Allied's Lenders with JCT — a committed suitor that had been pursuing Allied for years and offered to purchase Allied's assets in a 363 sale — Yucaipa demanded an outsize premium for itself. When confronted with the unfairness of this attempt and asked to re-negotiate its deal with JCT to facilitate a transaction on equal and ratable terms, the Yucaipa representatives in control of Allied's Board did nothing. Yucaipa itself refused to agree to equal treatment through and after the filing of Allied's bankruptcy. JCT later acquired Allied's assets for far less, causing significant damage to the Estate and its creditors.

At all times, Yucaipa knew what was right. Yucaipa's Founder and Managing Principal

---

[1]     13-50530, D.I. 920, 14-50971, D.I. 655.

[2]     Abbreviations and citation conventions used in the Trustee's prior briefing are used again here. For the Court's convenience, an appendix of abbreviations routinely relied on by the Trustee is attached as **Appendix A**. By agreement of the parties, exhibits previously marked as deposition exhibits are referred to as "**Ex.**," additional exhibits used by the Trustee are referred to as "**PX**," and additional exhibits used by Yucaipa are referred to as "**DX**." Given page limitations, this brief does not purport to cite all documentary or testimonial evidence.

1

Ron Burkle admitted under oath that *pari passu* is, in fact, "fair" and what other First Lien Lenders were entitled to. This belated acknowledgement is cold comfort. Yucaipa's failure to fulfill its obligations in 2011-2012 resulted in $158.6 million in damages to the Estate from the loss of the JCT deal, plus pre-judgment interest accruing over the decade that the Trustee and Allied's creditors have spent responding to Yucaipa's scorched earth litigation tactics.[3]

It is the law of the case that "Yucaipa owed a fiduciary duty to Allied." (Opinion at 75). The Trustee seeks recovery from Yucaipa for its abdication of that duty in the amount of $295.6 million, plus continuing interest.

The Trustee is also seeking to fully subordinate Yucaipa's debt holdings and recover Yucaipa's share of the JCT 363 Sale that has been held in escrow since late 2013 (presently totaling approximately $34.7 million). This Court has already ruled that the Trustee has proved that:

1. Yucaipa acted in bad faith in buying first lien debt under an invalid Fourth Amendment and assuming Requisite Lender status;

2. Yucaipa breached the Third Amendment by failing to provide a substantial capital contribution to Allied at a time when Allied was insolvent, in default of its loans, and needed the capital contribution;

3. Yucaipa's inequitable conduct resulted in lawsuits and fees that Allied was required to pay at a time when Allied was insolvent;

4. The conduct described in (1), (2), and (3) resulted in injury to Allied or its creditors or resulted in the advantage of Yucaipa; and

5. Yucaipa did not conduct itself in good faith and inherent fairness in taking these actions.[4]

---

[3]  Alternatively, Yucaipa has harmed First Lien Lenders in the amount of $72.2 million, plus pre-judgment interest, for breaching the implied duty of good faith and fair dealing by its actions (Lender Claim 3). As routinely recognized by the Trustee, Estate Claim 7 subsumes this claim, and the Trustee is not seeking double recovery.

[4]  Opinion at 108-09.

The remaining issues for trial on the equitable subordination claim are: (i) whether Yucaipa's conduct in the JCT Negotiations was unreasonable (it was), (ii) whether Yucaipa caused Allied to commit events of default under the FLCA (it did), and (iii) the degree of injury and "exact extent to which Yucaipa's claims should be subordinated."[5] Yucaipa contends that equitable subordination is unwarranted because the Trustee has a Judgment for $132.4 million, and the subordination remedy is only intended to be "remedial rather than penal."[6] This fails to account not only for the severity of Yucaipa's wrongdoing but also for the fact that Yucaipa: (i) has not paid a dime of the Judgment, and (ii) is now judgment proof, having brazenly distributed hundreds and millions from its coffers during this litigation. Yucaipa has depleted its resources all but completely, leaving almost nothing to recover against the Judgment. Under these circumstances, there is <u>nothing</u> penal about fully subordinating Yucaipa's debt holdings for the benefit of over $18 billion of Estate claims within the Trustee's mandate.

### <u>SUMMARY OF FACTS</u>[7]

### A.    <u>Yucaipa Assumes Requisite Lender Status in Bad Faith and Sues CIT</u>

In late August 2009, "Yucaipa acted in bad faith in purchasing first lien debt under an invalid Fourth Amendment and assuming Requisite Lender status."[8] Thereafter, Yucaipa told its investors that the purchase made it "[R]equisite [L]ender for purposes of any amendments or consents to the Company's first lien credit facility," explaining this was "notable because it puts

---

[5]    *Id.* at 109.

[6]    *See* 13-50530, D.I. 918, 14-50971, D.I. 653 at 10 n.10.

[7]    The Trustee incorporates by reference the Parties' Statement of Uncontested Facts and the Trustee's Statement of Facts Which are in Dispute set forth in the parties' Joint Pre-Trial Memorandum.

[8]    Opinion at 108.

us in the position of controlling every tranche of the Company's capital structure." (Ex. 529).[9]

However, the First Lien Agent (CIT) refused to recognize Yucaipa as Requisite Lender despite Yucaipa's repeated requests and threats of litigation. (Ex. 530; PX III; PX G). Yucaipa and Allied then sued CIT in Georgia state court seeking, among other things, a declaratory judgment holding that the Fourth Amendment was valid, and that Yucaipa was Requisite Lender under the FLCA (the "**CIT Litigation**"). (Ex. 630).

On December 21, 2009, CIT filed counterclaims in the CIT Litigation on behalf of itself and First Lien lenders seeking, among other things, declaratory judgment that (i) the Fourth Amendment was ineffective, (ii) the Third Amendment to the FLCA remains in full force and effect, and (iii) Yucaipa cannot be "Requisite Lenders" under the FLCA. (Ex. 193). CIT also sought specific performance requiring Yucaipa to make a capital contribution to the Company under the operative Third Amendment to the FLCA. (*Id.*).

Two years later, in December 2011, CIT settled the CIT Litigation on its own behalf, but expressly not on behalf of any of Allied's other lenders. (Ex. 198). This settlement did not resolve the validity of the Fourth Amendment, and on January 17, 2012, BD/S filed a lawsuit in New York State Court seeking a declaration that the Fourth Amendment was invalid, and that Yucaipa was not the Requisite Lender (the "**NY Action**"). (PX AA).

### B. Yucaipa's Self-Interested Dealings With JCT in Spring 2011

By spring 2011, Yucaipa was well aware of Allied's dire prospects. Indeed, the Yucaipa-controlled Board was informed by Allied's CFO that, "[e]ven with capital expenditures cut to the minimum, the Company was forecast to run out of cash in 2012." (Ex. 573). During

---

[9]     It is undisputed that Allied was in default under the FLCA at all times from August 2008 forward, due, among other reasons, to its failure to make any principal or interest payments to Lenders starting in August 2009.

4

this period, Yucaipa also discussed internally whether to disclose Allied's grim financials to Lenders for the period from March and April 2011, and decided not to do so — an act that Derex Walker, then a Yucaipa Partner and Chairman of Allied's Board, acknowledged "is simply another breach (one of many) under the credit agreement."  (Ex. 636).

Despite Allied's struggles, Mike Riggs (the CEO of Active, and later JCT) was highly motivated to acquire Allied.  Mike Riggs testified that combining with Allied "was really kind of the dream" and he "really wanted it to work whatever it took."[10]  Beginning as early as September 2008, Mike Riggs began communicating this desire.[11]  He persisted for 5 years.

In spring of 2011, Black Diamond, encouraged by Yucaipa, attempted to put a deal together with JCT.  This prompted a Letter of Intent from Mike Riggs to Derex Walker of Yucaipa/Allied and Stephen Deckoff and Richard Ehrlich of Black Diamond concerning the possible purchase of substantially all of Allied's assets through a 363 sale.  (PX V).  Yucaipa acknowledged internally at this time that Mike Riggs "desperately wants to do a deal,"[12] but it ultimately walked away from an offer of about 84 cents on the dollar of First Lien Debt — approximately a $225 million enterprise valuation for the Company at the time.  (Ex. 663). Looking after its own interests instead of the interests of Allied and its creditors as a whole, Yucaipa demanded a steep premium to par for its debt — which Riggs described as "[a] crazy high price" — and scuttled the deal.  (*Id.*; Ex. 827).

---

[10]     *See, e.g.*, Riggs Dep. Tr. 97:17-98:5, 79:8-11.

[11]     These communications included: (i) an unsolicited offer to purchase Yucaipa's stake in Allied made to Derex Walker on September 16, 2008 (Exs. 526 & 101); (ii) meetings with Yucaipa representatives in Los Angeles in late June 2009 (Ex. 102); and (iii) a Letter of Intent to acquire substantially all the assets of Allied sent in July 2010.  (Ex. 105).

[12]     *See* Ex. 410.

## C. Yucaipa Continued to Demand a Premium for Itself and Killed the JCT Deal in Late 2011-2012

On December 9, 2011, JCT sent Ira Tochner — a senior Yucaipa Partner and Allied Board member — a Term Sheet for the acquisition of Yucaipa's Allied debt holdings and consummating a 363 Sale. (Ex. 116). This Term Sheet offered Yucaipa 100 cents on the dollar for its First Lien Debt holdings. Yucaipa responded by seeking 119 cents on the dollar, plus accruing interest through closing of a 363 Sale (Ex. 117).

On December 19, 2011, JCT sent proposals to purchase Yucaipa's Fist Lien debt at 111 cents on the dollar ($150 million), BD/S's at 100 cents on the dollar ($56.4 million), and CIT's at 60 cents on the dollar ($20 million). (Exs. 90, 99, 118, 383). Confronted with this disparity of treatment, and convinced that Yucaipa illegitimately acquired its debt and was not Requisite Lender, BD/S filed the NY Action and authorized its lawyers to send a letter to the Yucaipa-controlled Allied Board. In their February 15, 2012, letter, BD/S's lawyers stressed that the Company was insolvent and offered, on BD/S's behalf, "to engage the Board of Directors immediately in a discussion regarding an appropriate restructuring and/or recapitalization … to preserve and protect the Company's assets, and to maximize the value for all interested parties." (Ex. 117).

There was no response to the February 15, 2012, letter, and Yucaipa continued to demand a premium for its debt from JCT in ensuing negotiations. (Ex. 638). This culminated in JCT's Final Term Sheet offering Yucaipa 115 cents on the dollar for Yucaipa's First Lien Debt on March 8, 2012. (Ex. 122). Theo Ciupitu — JCT's then General Counsel — testified that, from JCT's perspective, "it made sense to placate [Yucaipa] and give them a premium" because JCT "equated [the] requisite lender position similar to a control[] premium."[13]

---

[13] Ciupitu Dep. Tr. 69:14-21.

On March 8, 2012, the same day JCT sent Yucaipa that Final Term Sheet, it sent BD/S a revised Term Sheet with a reduced offer of between 60 and 70 cents on the dollar (depending on payment form and timing). (Ex. 86). On March 22, 2012, BD/S's lawyers wrote again to the Board, emphasizing that "it would be a breach of the Board of Directors' fiduciary duties for [the Board] to facilitate a transaction between the Yucaipa Entities and JCT that permits the Yucaipa Entities to recover more on account of their Obligations than other similarly situated Lenders, including our clients," and imploring them to engage in discussions for a restructuring "that provides equal treatment to all creditors." (Ex. 350). All of JCT's offers required Allied's cooperation and involvement.

### D.    Yucaipa Refused to Agree to Equal and Ratable Treatment

On May 14, 2012, in a call between Yucaipa and BD/S, Yucaipa was asked to compromise on the price it demanded from JCT in order to facilitate equal and ratable treatment for others. Yucaipa representatives did not agree but agreed to speak again the next day.

On May 15, 2012, at noon EST, the parties spoke again. Neither Yucaipa nor its counsel would commit to equal and ratable treatment of all Lenders, but BD/S's counsel agreed to prepare a draft agreement for consideration. To allow time to prepare and review that draft, all parties agreed to extend a prior standstill agreement regarding any bankruptcy filing until May 17, 2012, at noon EST. (Ex. 472).

On May 16, 2012, at 6:26 p.m. EST, BD/S's counsel circulated a draft letter agreement and asked for comments by 11:00 a.m. EST in light of the noon expiration of the standstill. (Ex. 265). This draft letter agreement contained an "Equal and Ratable Sharing" clause, providing that Yucaipa would not engage in a transaction that did not result in equal consideration to the parties. (*Id.*). Yucaipa never signed it and never agreed to sign it.

On May 17, 2012, at 11:50 a.m., BD/S's counsel advised Yucaipa representatives and their counsel that BD/S had not received any comments on the May 16 draft agreement nor any indication that Yucaipa and Allied would agree to further extend the standstill with respect to commencement of any bankruptcy cases. The email further advised that, "unless we receive extension agreements from each of Yucaipa and Allied by 12 noon today, the clients have authorized us to file the involuntary petitions." (PX HH). Yucaipa and Allied responded by agreeing to further extend the standstill agreement until 5:00 p.m. EST that day, and Yucaipa advised that Ron Burkle would be calling Black Diamond's founder and managing principal, Stephen Deckoff, before the 5:00 pm. EST deadline on May 17, 2012. (PX GG; Ex. 477).

Despite several assurances from Derex Walker, Ron Burkle never reached out to Stephen Deckoff on May 17, 2012, and the two did not have any discussion that day. (Exs. 475, 477). Nor did Yucaipa provide any comments on the draft agreement circulated on May 16, 2012.

Faced with a patently unfair process dominated and controlled by Yucaipa — which had achieved its bargaining power illegitimately and in bad faith — BD/S filed an involuntary bankruptcy petition for Allied at 5:45 p.m. on May 17, 2012. (PX II; DX B). Allied subsequently consented to the bankruptcy and Allied and certain affiliates filed voluntary Chapter 11 Petitions (the "**Bankruptcy**"). Following commencement of the Bankruptcy, Yucaipa never agreed to equal and ratable treatment in connection with a JCT transaction.

E.      **Litigation History**

The long and arduous history of litigation between the parties is well known to this Court.[14] The Fourth Amendment has been held invalid by numerous courts, and it was

---

[14]      *See* Opinion at 7-8.

determined that BD/S, not Yucaipa, were Requisite Lenders.[15]  Further, this Court has determined as a matter of law that "Yucaipa acted in bad faith in purchasing first lien debt under an invalid Fourth Amendment and assuming Requisite Lender status."[16]

On June 23, 2021, this Court entered Judgment awarding damages in the amount of $132,431,957 (inclusive of pre-judgment interest), plus post-judgment interest on Estate Claim 5 (Breach of Contract), and Estate Claims 10, 11, and 13 (Fraudulent Transfers and Disallowance of Claims).  Yucaipa has yet to pay any amount of that Judgment.  Despite Yucaipa's efforts to conceal this information, the Trustee learned through Rule 2004 discovery that Yucaipa distributed virtually all of its assets during the pendency of this litigation, rendering itself judgment proof.

The remaining claims and relief sought for the upcoming trial are:

- Equitable Subordination (Estate Claim 1 / Lender Claim 1): seeking a judgment equitably subordinating 100% of Yuciapa's Allied debt holdings.

- Breach of Fiduciary Duty Claim Against Yucaipa (Estate Claim 7): seeking a judgment for damages of $158,596,000.00 plus pre-judgment interest reflecting the value of the lost JCT transaction less the JCT 363 Sale proceeds.

---

[15]     "[U]nder the Third Amendment, Yucaipa could never be the Requisite Lender. ... It is clear Yucaipa knew that it was prohibited from acquiring LC Commitments and that the Third Amendment restricted Yucaipa's rights as a Lender."  *In re ASHINC Corp.*, 683 F. App'x 131, 139, 140 (3d Cir. 2017).  *See also BDCM Opportunity Fund II, LP v. Yucaipa Am. All. Fund I, LP*, 2013 WL 1290394 at *5 (N.Y. Sup. Ct. Mar. 8, 2013) ("Yucaipa ... caused Allied to enter into that certain Amendment No. 4 ... [, and] seiz[ed] control of the Lenders' rights and remedies under the Credit Facility.  This was, of course, flatly prohibited under the Credit Agreement …, and thus the Purported Fourth Amendment is invalid and of no force or effect."), *aff'd*, 112 A.D.3d 509 (N.Y. App. Div. 2013); *In re Allied Sys. Holdings Inc*, 556 B.R. 581, 598 (D. Del. 2016) ("The Third Amendment specifically prohibited Yucaipa from buying sufficient debt to ever become the Requisite Lender and stripped Yucaipa's debt of any voting rights."), *aff'd*, 683 F. App'x 131 (3d Cir. 2017).

[16]     Opinion at 108; *see also* 2/8/22 Tr. at 15 ("The undisputed facts prove as a matter of law that [Yucaipa] acted in bad faith.  Period.").

- <u>Breach of the Implied Covenant of Good Faith and Fair Dealing (Lender Claim 3)</u>: to the extent damages are not awarded on Estate Claim 7, seeking, in the alternative, an Order recommending damages of $72,176,000.00 plus pre-judgment interest reflecting the value of the lost JCT transaction less the JCT 363 Sale proceeds in favor of the non-Yucaipa First Lien Lenders.

## ARGUMENT

## I.   YUCAIPA BREACHED ITS FIDUCIARY DUTY

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *In re NSC Wholesale Holdings LLC*, 2022 WL 386134, at *8 (Bankr. D. Del. Feb. 9, 2022) (Sontchi, J.).  The Trustee will prove at trial that Yucaipa fully controlled Allied and its Board, purported to fully control Allied's equity and debt, and abused its position of control by failing to act with the utmost loyalty and fairness required during the JCT Negotiations in late 2011/2012, culminating in significant harm to the Estate for which Yucaipa is liable in damages.

### A.   Yucaipa Undisputedly Owed Fiduciary Duties to Allied for the Benefit of All Residual Claimants, Including Creditors

As this Court held, "[i]t is undisputed that Yucaipa owed a fiduciary duty to Allied." (Opinion at 75) (citing *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113-14 (Del. 1994) ("[A] shareholder owes a fiduciary duty … if it owns a majority interest in or exercises control over the business affairs of the corporation."))."  It is further undisputed that Allied was insolvent at all relevant times, from early 2008 onward.  (*See* Opinion at 51 n.130 ("Yucaipa's expert concedes that Allied was insolvent by early 2008.") (citing, *inter alia*, Ex. 805 (Fischel Report) ¶19)).  Under longstanding principles of Delaware law, when a corporation becomes insolvent, its fiduciaries owe duties "to the corporation for the benefit of all of its residual claimants, a category which now includes creditors."  1 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS § 4.16[E][4]

(4th ed. Supp. 2022). *See also, e.g.*, *In re BMT-NW Acquisition, LLC*, 582 B.R. 846, 863 (Bankr. D. Del. 2018) ("[W]hen the Debtor reached insolvency, Broad Street [the Debtor's sole member and fiduciary] would then be obligated to exercise its control and influence over the Debtor <u>for the benefit of the Debtor's creditors</u>."). Thus, Yucaipa unquestionably owed fiduciary duties to Allied for the benefit of all its residual claimants, including Allied's secured and unsecured creditors, at all relevant times.

### B.    <u>Yucaipa Breached its Fiduciary Duties</u>

The Trustee will prove at trial that Yucaipa breached its fiduciary duties by intentionally acting in its own selfish interests and not advancing the best interests of the Estate during the JCT Negotiations, thus failing to maximize the value of the Estate.

#### 1.    *Yucaipa Usurped the JCT Negotiations and the Entire Fairness Standard Applies*

"When a transaction involving self-dealing by a controlling shareholder is challenged, the applicable standard of judicial review is entire fairness," and "the defendants bear the burden of proving that the transaction with the controlling stockholder was entirely fair to the minority stockholders." *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1239 (Del. 2012). Under settled Delaware law, "the entire fairness framework governs any transaction between a controller and the controlled corporation in which the controller receives a <u>non-ratable benefit</u>" relative to other stakeholders, or where the controller "compete[s] with the minority stockholders for the transaction consideration." *Berteau v. Glazek*, 2021 WL 2711678, at *12 (Del. Ch. June 30, 2021) (citing *In re EZCORP Inc. Consulting Agreement Derivative Litig.*, 2016 WL 301245, at *11 (Del. Ch. Jan. 25, 2016) and *Salladay v. Lev*, 2020 WL 954032, at *8 (Del. Ch. Feb. 27, 2020)).

JCT was a highly motivated buyer prepared to pay more than $244 million to acquire

substantially all of Allied's assets in a two-step debt purchase followed by a 363 sale in late 2011

through spring 2012. Rather than accept a lucrative transaction that would have benefitted

Allied and all of its creditors, Yucaipa insisted on a non-ratable benefit for itself — at a time

when it dominated and controlled Allied. As this Court recognized:

> From late 2011 through spring 2012, Yucaipa demanded a premium price of $1.15
> for each dollar of its First Lien Debt, based on the premise that it was Requisite
> Lender. Yucaipa's demand for a premium left less JCT money available for all
> other First Lien debtholders, so JCT lowered its offer [to] other debtholders like
> BD/S … .

(Opinion at 19 n.26 (citing Exs. 638, 123)). Yucaipa used Allied to demand this premium. This

is the essence of self-dealing. After capitulating to Yucaipa's $1.15 demand, JCT's offers to

BD/S — which were initially at par — fell to 70 cents on the dollar.[17] Yucaipa's insistence on

receiving a premium directly resulted in lowered consideration for other minority creditors. This

is precisely the kind of situation where the demanding entire fairness standard applies. *See, e.g.*,

*In re Viacom Inc. S'holders Litig.*, 2020 WL 7711128, at *11 (Del. Ch. Dec. 29, 2020), *as*

*corrected* (Dec. 30, 2020) ("The controller will be deemed to 'compete with common

stockholders for consideration' when [it] … receives greater monetary consideration for its

shares than the minority stockholders … . Under … th[is] scenario[], the controller's conduct

will be tested for entire fairness … .").[18]

---

[17]     *Compare* Ex. 90 (12/19/11 term sheet), *with* Ex. 122 (3/8/12 Yucaipa's Final Term Sheet)
and Ex. 123 (5/10/12 final term sheet sent to BD/S).

[18]     Yucaipa cannot credibly argue that it was merely negotiating a private debt deal with JCT.
Mike Riggs testified clearly that his goal was never to own debt — he wanted to acquire Allied,
and debt was the currency for use in a 363 sale. (*See* Riggs Dep. Tr. 235:22-236:15 ("I was not in
the debt investing business, I was in the business of running companies, so this whole thing was
to try to get a package together.")). The term sheets exchanged all specified that they were "for
acquiring first and second lien secured debt claims with respect to [Allied] and consummating 363
sale under Chapter 11 of the Bankruptcy Code." Yucaipa and its counsel were directly negotiating
a Cooperation and Support Agreement on Allied's behalf which Allied would sign to facilitate a
bankruptcy filing and 363 sale to JCT. (*See* Ex. 804).

### 2. *Yucaipa Cannot Satisfy the Entire Fairness Standard*

Yucaipa cannot carry its heavy burden of demonstrating that its actions in the JCT Negotiations were entirely fair to the Company and its residual claimants. *See Ams. Mining Corp.*, 51 A.3d at 1239. This demanding standard requires objective fairness, independent of Yucaipa's subjective belief. *See, e.g.*, *Gesoff v. IIC Indus., Inc.*, 902 A.2d 1130, 1145 (Del. Ch. 2006). Nevertheless, Yucaipa understood what was required. Ron Burkle has admitted that Allied's creditors were "entitled to *pari passu*" treatment in the JCT Negotiations, that *pari passu* treatment for all creditors is "what [he] would have done," and what he instructed his team to do. (*See* Burkle Dep. Tr. 173:8-175:20). Fair and ratable treatment for creditors in the JCT Negotiations was the cardinal principle urged in multiple communications from BD/S to Yucaipa — in numerous letters, emails, and phone calls throughout late 2011-2012.[19] Despite having multiple opportunities to satisfy its fiduciary obligations, the evidence at trial will demonstrate that Yucaipa never agreed to ratable treatment, causing significant damage to the Allied Estate and its creditors.

The evidence at trial will demonstrate that the Yucaipa-controlled Board impermissibly favored the interests of Yucaipa over other stakeholders, and that Yucaipa and the Board failed to take any steps to minimize the rife conflicts of interest by taking any measures such as (i) engaging with JCT directly; (ii) creating a "special committee" (or "restructuring committee") composed of independents to evaluate the potential transaction and the possibility of alternative transactions; or (iii) retaining an investment bank to pursue the potential transaction. Nor did the Yucaipa-affiliated directors step down or recuse themselves from the Board, either during the

---

[19] *See, e.g.*, Exs. 350, 713, 472, 265, 477; PX HH, PX NNN, PX OOO, PX GG.

JCT Negotiations or after the involuntary bankruptcy was filed.[20]

## C.  Damages Suffered

To establish damages to the Estate from Yucaipa's breach, the Trustee need only present a "responsible estimate." *Basho Techs. Holdco B, LLC v. Georgetown Basho Inv'rs, LLC*, 2018 WL 3326693, at *50 (Del. Ch. July 6, 2018) ("Responsible estimates … are permissible" and "uncertainties in awarding damages are generally resolved against the wrongdoer."), *aff'd sub nom. Davenport v. Basho Techs. Holdco B, LLC*, 221 A.3d 100 (Del. 2019).  In fact, under settled Delaware law, Yucaipa bears the burden of establishing that there was <u>no likelihood</u> of a deal with JCT.  *See, e.g.*, *Bomarko, Inc. v. Int'l Telecharge, Inc.*, 794 A.2d 1161, 1181 (Del. Ch. 1999) (some likelihood of a deal is sufficient basis of damages once a breach of fiduciary is established), *aff'd*, 766 A.2d 437 (Del. 2000).

Yucaipa cannot satisfy this burden.  The Trustee will present at trial an evaluation of the Estate's damages that is not only responsible, but conservative.  The Trustee's damages expert, Jeffrey Risius of Stout Risius Ross, LLC, has over 30 years of experience performing valuations. Mr. Risius will testify that the Estate suffered damages of $158,596,000, plus pre-judgment interest, reflecting the delta between the value of lost JCT transaction and the actual proceeds of the JCT 363 Sale in late 2013.  He will also explain how his damages calculation is conservative and supported by the available evidence, including:

- **The JCT Term Sheets.**  The term sheets exchanged during the JCT Negotiations were arms-length negotiations among market participants, and reflect JCT's willingness to acquire Allied for $244.2 million — an objectively better outcome for

---

[20]    *See, e.g.*, Tochner Dep. Tr. 302:1-21 (no recollection of any discussion about Yucaipa-affiliated board members stepping down at any time between 2007 and 2013).

Allied and its constituents than the $135 million JCT ultimately paid in late 2013.[21]

- **Yucaipa's Internal Valuations.** Yucaipa's internal, contemporaneous valuations, which relied on the JCT term sheets to value Yucaipa's investment in Allied. Yucaipa reported that value to Yucaipa's auditors and Limited Partners, further confirming the soundness of Mr. Risius' reliance on the JCT term sheets for his valuation.

- **Yucaipa's Judicial Admissions.** Yucaipa's allegations in multiple federal court filings that (i) JCT was offering a pre-bankruptcy deal of $305 million for all of Allied's debt and (ii) a JCT sale would have been consummated at $170 million more than the ultimate $135 million if not for the 2012 bankruptcy filing.[22] Yucaipa's own damages claims were <u>approximately $60 million higher</u> than the Trustee's conservative estimate.

Moreover, in order to ensure a "responsible" damages calculation, Mr. Risius assumed that, in the but-for world, JCT's expenses in connection with a pre-packaged bankruptcy would be $5 million. This is conservative given that the Term Sheets contemplated a closing within 90 days. Mr. Risius also deducted an additional $26.8 million to account for additional recoveries by the First Lien Lenders (including equity and an earnout in the reorganized Debtor, wind down reserve proceeds, and real estate not purchased by JCT). (*See* Ex. 832 (Risius Report) at ¶¶91-100). These reductions further establish the conservative nature of Mr. Risius' calculation.

---

[21] *See* Ex. 832 (Risius Report) at ¶¶68, 93; Ex. 90 (12/19/11 term sheet).

[22] *See* PX BBB (S.D.N.Y. RICO Complaint) at ¶¶25, 172, 204; PX CCC (D. Del. RICO Complaint) at ¶¶185, 217; Adv. Proc. No. 14-50971, D.I. 19 (Answer and Counterclaim), Counterclaim ¶10(e). *See also* PX FFF (Interrogatory Reponses) at 10-13 (Response to Interrogatory No. 2).

Yucaipa's contention that JCT's offers in late 2011-2012 were speculative and subject to contingencies, and are therefore inappropriate as a measure of damages, is rebutted by Yucaipa's own conduct. Yucaipa expressly relied on JCT's offers as a measure of Allied's value, both in reporting to its investors and auditors[23] and in bringing claims against BD/S in federal court.[24] Yucaipa cannot credibly claim now that JCT's offers are unreliable. Yucaipa's attack on Mr. Risius' reliance on the JCT offers also fails for two additional reasons. *First*, given Yucaipa's clear fiduciary breaches, any uncertainty in the measure of damages is resolved in the Trustee's favor.[25] *Second*, the JCT 363 Sale was similarly subject to certain contingencies (including obtaining the necessary approvals under the Hart-Scott-Rodino Act and other antitrust laws) and closed in 2013 without issue.[26]

## II. IN THE ALTERNATIVE, YUCAIPA BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In the alternative to the Estate's claim for breach of fiduciary duty, Yucaipa has breached the implied covenant of good faith and fair dealing to the other First Lien Lenders. Under controlling New York law,[27] the covenant of good faith and fair dealing is implied in every

---

[23]   *See, e.g.*, PX EE at YUCAIPA728840 (4/27/12 email attaching auditor memo valuing Yucaipa's Allied investment based on potential transaction proceeds); PX FF at YUCAIPA745745 (5/1/12 email attaching backup for auditor memo reflecting valuation based on 3/8/12 Final Term Sheet with JCT); Ex. 642 (minutes of 10/23/12 YAAF I Advisory Committee board meeting, reporting that Yucaipa's investment is valued based on expected proceeds from a contemplated transaction at $155 million).

[24]   *See* n.22 above.

[25]   *See, e.g.*, *Basho Techs.*, 2018 WL 3326693, at *50 ("Once a breach of duty is established, uncertainties in awarding damages are generally resolved against the wrongdoer."); *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010) ("Public policy has led Delaware courts to show a general willingness to make a wrongdoer bear the risk of uncertainty of a damages calculation … ."), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).

[26]   *See* Ex. 129; DX Z; DX AA; DX BB.

[27]   *See* Ex. 133 (FLCA) at § 10.14.

contract.  *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).  "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Id.*  At trial, the Trustee will prove every element of this claim: (i) Yucaipa and the First Lien Lenders were parties to a binding contract (the FLCA); (ii) assuming the Court has not found a direct breach of contract in connection with the JCT Negotiations, Yucaipa acted in a manner that, although not expressly forbidden by a contractual provision, deprived the First Lien Lenders of the rights to receive the benefits of the bargain under the contract; (iii) the implied promise is not contrary to any express provision in the contract; and (iv) the First Lien Lenders suffered damages resulting from Yucaipa's breach.[28]

In the specific context of the rights of lenders to a consortium, going back 100 years, New York courts have used the duty of good faith and fair dealing to impose a duty on majority lenders not to abuse their contractual rights to achieve an unfair or disproportional recovery compared to minority lenders.  *See Sage v. Cent. Ry. Co.*, 99 U.S. 334, 341 (1878) (noting that the majority could not "crush out the rights of the minority, or subject them to any disadvantage" but rather the agreements between the two "authorized only such arrangements as would inure equally to the benefit alike of the majority and the minority").  Yucaipa bears the burden of proving that it acted "in the utmost good faith" toward the other First Lien Lenders.

---

[28]     *See, e.g.*, *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 228-29 (2011) ("[T]he implied covenant of good faith and fair dealing embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."); *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (same); *Demetre v. HMS Holdings Corp.*, 127 A.D.3d 493, 494 (N.Y. App. Div. 2015) (reversing dismissal of implied covenant claim where the complaint alleged that the defendant "in bad faith, engaged in acts that had the effect of destroying or injuring the plaintiffs' right to receive the fruits of the contract").

*Hackettstown Nat'l Bank v. D.G. Yuengling Brewing Co.*, 74 F. 110, 112 (2d Cir. 1896) (holding that a "[c]ommunity of interest, whether in the case of partners or security holders, creates mutual obligation, and imposes upon all persons occupying that position the duty of acting in <u>the utmost good faith</u> towards the interests of their associates").  Under the law of this case, Yucaipa cannot meet this burden.  On the contrary, it has been determined as a matter of law that "Yucaipa acted in bad faith in purchasing first lien debt under an invalid Fourth Amendment and assuming Requisite Lender Status,"[29] that Yucaipa "could never be the Requisite Lender," and that it "knew the restrictions [in the FLCA] were designed to prevent [this]."[30]

By falsely — and in bad faith — holding itself out as Requisite Lender during the JCT Negotiations and refusing to work with the other First Lien Lenders to achieve an equal and ratable recovery, Yucaipa deprived the First Lien Lenders of the right to receive the benefits of the FLCA, by depriving them of the ability to exercise any remedies and ultimately depriving the First Lien Lenders of a recovery from a transaction with JCT in late 2011 to 2012 that would have been far greater than the recovery they ultimately received from the post-bankruptcy JCT 363 Sale.  As a result, the First Lien Lenders have suffered damages of $72,176,000.00, plus pre-judgment interest, reflecting the difference between the lost JCT transaction in 2012 and the JCT 363 Sale proceeds to the non-Yucaipa First Lien Lenders.[31]

### III.    YUCAIPA'S CLAIMS SHOULD BE EQUITABLY SUBORDINATED

At trial, the Trustee must prove that Yucaipa's debt claim should be equitably subordinated (Estate Claims 1-2 and Lender Claim 1) based on the following elements: "(i) there

---

[29]    Opinion at 108; *see also* 2/8/22 Tr. at 15 ("The undisputed facts prove as a matter of law that [Yucaipa] acted in bad faith.  Period.").

[30]    *In re ASHINC Corp.*, 683 F. App'x at 139-40.

[31]    *See* Ex. 832 (Risius Report) at ¶¶134-44.

was inequitable conduct; (ii) the inequitable conduct resulted in: (a) injury to the debtor or creditors or (b) created an unfair advantage for the claimant; and (iii) equitable subordination is consistent with the Bankruptcy Code." (Opinion at 101 (citing DANIEL R. COQUILLETTE ET AL., 11 MOORE'S FEDERAL PRACTICE § 56.40 (3d ed. 2021))). The Court has already ruled that the Trustee has "met her burden and produced admissible, undisputed evidence proving that":

> (i) Yucaipa acted in bad faith in purchasing first lien debt under an invalid Fourth Amendment and assuming Requisite Lender status thereunder; (ii) Yucaipa breached the Third Amendment to the FLCA by failing to provide a substantial capital contribution to Allied at a time that Allied was insolvent, in default of its loans, and needed the capital contribution, (iii) Yucaipa's inequitable conduct resulted in lawsuits and fees that Allied was required to pay at a time when Allied was insolvent, (iv) the conduct described in (i), (ii), and (iii) resulted in injury to Allied or creditors or resulted in the advantage of Yucaipa, and (v) Yucaipa did not conduct itself in good faith and inherent fairness.

(Opinion at 108-09). The Court has further ruled that

> (i) Yucaipa is an insider and fiduciary; (ii) Yucaipa's conduct described in acts (i)–(iii), above, (a) constitute inequitable conduct and (b) injured Allied or Allied's lenders or advantaged Yucaipa; (iii) Yucaipa did not act in good faith in the instances of inequitable conduct described above; and (iv) the Court finds that the type of equitable subordination the Trustee is requesting (debt subordinated to debt) is consistent with the provisions of the Bankruptcy Code.

(*Id.* at 109).

All that remains for trial are (i) the determination whether Yucaipa's conduct in the JCT Negotiations, and/or causing Allied to commit events of default under the FLCA are "inequitable acts" within the meaning of 11 U.S.C. § 510(c); (ii) the "degree of injury that Allied or Lenders suffered;" and (iii) the "exact extent to which Yucaipa's claims should be subordinated." (*Id.* at 109). The Trustee will present evidence proving each of these items.

**Yucaipa's Conduct Was Inequitable.** Yucaipa's conduct throughout the JCT Negotiations reflects an impermissible attempt to arrogate benefits for itself at the expense of Allied and its stakeholders, and a total disregard for its duty as an insider and fiduciary of an

insolvent company. Yucaipa's abandonment of its fiduciary obligations for its own benefit constitutes inequitable conduct supporting full subordination of its claim. *See, e.g.*, *Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 988-89 (3d Cir. 1998) (affirming holding that breaches of insider's fiduciary duties in failing to act in the best interest of debtor and its creditors demonstrated inequitable conduct warranting equitable subordination); *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 70 (Bankr. D. Del. 2002) (breach of fiduciary duties "generally recognized" as "misconduct which may constitute inequitable conduct for insiders"). At the very least, it is "material evidence of unfair conduct," which is all the Trustee must show to prove equitable subordination of an insider like Yucaipa. *In re Winstar Commc'ns, Inc.*, 348 B.R. 234, 284 (Bankr. D. Del. 2005), *aff'd*, 2007 WL 1232185 (D. Del. Apr. 26, 2007), *aff'd in part, modified in part*, 554 F.3d 382 (3d Cir. 2009).

**Degree of Injury.** As discussed above, Yucaipa's fiduciary breaches damaged the Estate in the amount of $158.6 million (exclusive of the unpaid $132.4 million Judgment). This is a significant injury by any measure.

**Extent to Which Yucaipa's Claims Should be Subordinated.** Yucaipa's claims should be fully subordinated to the over $18 billion in claims of Allied's stakeholder constituents represented by the Trustee, who stand to recover under a Litigation Proceeds Waterfall approved by this Court.[32] While the Trustee was awarded the Judgment against Yucaipa on her breach of contract and fraudulent transfer claims over six months ago, she has not been able to recover a penny from Yucaipa to date.[33] Rather, Yucaipa brazenly transferred nearly $380 million to its

---

[32]    *See* 12-11564, D.I. 3360-1, Amended Plan §§ 5.11(b), 5.14 (Yucaipa is an exception to this recovery waterfall).

[33]    The Trustee's earlier settlement of claims against the individual Yucaipa defendants in 2020 has no bearing on her claim for equitable subordination. That settlement resulted in a recovery from D&O insurers — not from Yucaipa — on claims that are no longer part of this case.

investors (including to insiders) over the past several years, notwithstanding the massive liability presented by the Adversary Proceedings and applicable law restricting such transfers that now remain to be adjudicated separately.  Equity dictates that Yucaipa's actions to "reap[] a substantial benefit" for itself "at the expense of the Debtors' other creditors" not be countenanced.  *See Winstar*, 348 B.R. at 285.  Full subordination of its holdings is warranted.

## CONCLUSION

In light of Yucaipa's clear breaches of its fiduciary duty and pattern of inequitable conduct warranting equitable subordination of its debt claim, the Trustee respectfully requests that a judgment be entered on Estate Claims 1 and 7 (Equitable Subordination and Breach of Fiduciary Duty) and, in the alternative, a judgment on equitable subordination and an Order recommending judgment on Lender Claim 3 (Breach of the Implied Covenant of Good Faith and Fair Dealing).

Dated: February 23, 2022

**FOX ROTHSCHILD LLP**

By:           */s/ Seth A. Niederman*

        Seth A. Niederman (DE Bar No. 4588)
        Citizens Bank Center
        919 N. Market Street, Suite 300
        Wilmington, DE 19801
        Telephone: (302) 654-7444
        Fax: (302) 656-8920
        sniederman@foxrothschild.com

            -and-

**JOSEPH HAGE AARONSON LLC**

        Gregory P. Joseph
        Gila S. Singer
        485 Lexington Avenue, 30th Floor
        New York, NY 10017
        Telephone: (212) 407-1200
        gjoseph@jhany.com

            -and-

**ZAIGER LLC**

        Jeffrey H. Zaiger
        Judd A. Lindenfeld
        2187 Atlantic Street, 9th Floor
        Stamford, CT 06902
        Telephone: (917) 572-7701
        jzaiger@zaigerllc.com

            -and-

**COHEN AND GRESSER LLP**

        Douglas J. Pepe
        800 Third Avenue
        New York, NY 10022
        Telephone: (212) 957-7605
        dpepe@cohengresser.com

*Counsel for the Litigation Trustee and Plan Administrator*

**Appendix A**

**Abbreviations and Defined Terms Relied on in Trustee's Briefing Since May 1, 2020**

| | |
|---|---|
| **13-50530** or **Estate Action** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Adv. Proc. No. 13-50530 (Bankr. D. Del.) |
| **14-50971** or **Lender Action** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Adv. Proc. No. 14-50971 (Bankr. D. Del.) |
| **21-994** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Civ. No. 21-cv-00994 (CFC) (D. Del.) |
| **21-995** | *Catherine E. Youngman, Litig. Tr. for ASHINC Corp. v. Yucaipa Am. All. Fund I, L.P.*, Civ. No. 21-cv-00995 (CFC) (D. Del.) |
| **2005 Bankruptcy** | *In re Allied Holdings, Inc., et al.*, Case Nos. 05-12515 through 05-12526 and 05-12528 through 05-12537 (Bankr. N.D. Ga.) |
| **7/6/21 Hearing** | Transcript of Hearing on Defendants' Motion for Stay Pending Appeal, dated July 6, 2021 (13-50530, D.I. 864) |
| **9033 Objections** | Yucaipa's Objections to the Bankruptcy Court's May 4, 2021 Summary Judgment Opinion and Order [Federal Rule of Bankruptcy Procedure 9033], dated May 18, 2021 (13-50530, D.I. 828; 14-50971, D.I. 566) |
| **Active** | Active Carhaul |
| **Adversary Proceedings** | The Estate Action (13-50530) and Lender Action (14-50971) |
| **Agent** | The Agent to the Lenders Under the First Lien Credit Agreement. |
| **Allied Adversary Proceeding** | *ASHINC Corp. v. AMMC VIII, Ltd. et al.*, Adv. Proc. No. 12-50947-CSS (Bankr. D. Del) |
| **Allied** or the **Company** | ASHINC Corp.(formerly known as Allied Systems Holdings, Inc.) and related Debtors |
| **Amended Plan** | Debtors' Modified First Amended Joint Chapter 11 Plan of Reorganization dated December 3, 2015 (Case No. 12-11564, D.I. 3360-1) |
| **Answer** | Answer and Affirmative Defenses of Yucaipa to Plaintiff's Amended Complaint, dated April 1, 2013 (13-50530, D.I. 95) |
| **Bankruptcy** | *In re ASHINC Corp., et al.*, Case No. 12-11564 (CSS) (Bankr. D. Del). |
| **BD/S** | Black Diamond and Spectrum |
| **Black Diamond** | BDCM Opportunity Fund II, LP and Black Diamond CLO 2005-1 Ltd. |
| **Board** | Allied's Board of Directors |
| **Burkle** | Ronald Burkle |
| **CIT** | CIT Group/Business Credit, Inc. |
| **ComVest** | ComVest Investment III, L.P. |
| **Covenant Not to Sue** | Covenant not to sue at § 2.7(f) of the First Lien Credit Agreement |

| Credit Agreements | Allied's First Lien Credit Agreement and Second Lien Credit Agreement |
|---|---|
| D. Del. Compl. | *Yucaipa Am. All. Fund I, L.P. et al. v. Richard A. Ehrlich et al.*, No. 15-cv-373 (D. Del. May 8, 2015), ECF No. 1 |
| Direct Lender Claims | Claims brought on behalf of the lenders under Allied's first lien credit facility asserted in Adv. Proc. No. 14-50971 |
| Ehrlich Decl. | The Declaration of Richard Ehrlich, dated December 18, 2020 |
| Entities Opposition or Entities Opp. | Litigation Trustee's Opposition to the Motion for Summary Judgment by Yucaipa American Alliance Fund I, LP and Yucaipa American Alliance (Parallel) Fund I, LP, dated July 17, 2020 |
| Estate Claims | Claims brought on behalf of the Allied Estates asserted in Adv. Proc. No. 13-50530 |
| First Lien Credit Agreement or "FLCA" | Amended and Restated First Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 |
| Gendregske Br. | Defendant Mark Gendregske's Opening Brief in Support of his Motion for Summary Judgment, dated May 1, 2020 (13-50530, D.I. 708) |
| Georgia Action | *Allied Systems Holdings, Inc., et al. v. The CIT Group/Business Credit, Inc.*, Civil Action No. 2009-CV-177574 (Super. Ct. Fulton Cnty.) |
| Harris Decl. | The accompanying Declaration of Adam C. Harris, dated December 18, 2020 |
| Indiv. Br. | Memorandum of Points and Authorities in Support of Motion for Summary Judgment by Defendants Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner (13-50530, D.I. 699; 14-50971, D.I. 456) |
| Individual Defendants | Defendants Ronald Burkle, Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner |
| Individuals Opposition or Indiv. Opp. | Litigation Trustee's Opposition to the Motion for Summary Judgment by the Individual Defendants, dated July 17, 2020 |
| Initial Stay Motion[1] | Yucaipa's Motion for a Stay of the Effectiveness and Enforcement of Judgment Pending Appeal Pursuant to Bankruptcy Rule 7062 and 8007(a), dated June 25, 2021 (13-50530, D.I. 845; 14-50947, D.I. 583) |
| Initial Stay Motion Opposition | Litigation Trustee's Memorandum of Law in Response to Yucaipa's Motion for Stay of the Effectiveness and Enforcement of Judgment Pending Appeal, dated July 2, 2021 (13-50530, D.I. 855; 14-50971, D.I. 591) |
| Jack Cooper or JCT | Jack Cooper Transport |

---

[1] Previously abbreviated "**Stay Motion**" in the Initial Stay Motion Opposition.

| | |
|---|---|
| **JCT 363 Sale** | Purchase by JCT of substantially all of Allied's assets for $135 million following an auction for Debtors' assets under 11 U.S.C. §363, which closed on December 27, 2013 |
| **JCT Negotiations** | Negotiations concerning JCT's desire to acquire Allied in late 2011 through 2012 |
| **Joint Procedural History** | Joint Procedural History, dated July 25, 2019 (13-50530, D.I. 599; 14-50971, D.I. 365) |
| **Judgment** | Judgment, dated June 23, 2021 (13-50530, D.I. 841; 14-50971, D.I 579) |
| **Kasowitz** | Kasowitz Benson Torres LLP |
| **Latham** | Latham & Watkins LLP |
| **LPA** | Loan Purchase Agreement between Yucaipa and ComVest, dated August 21, 2009 |
| **MMSA** | Monitoring and Management Services Agreement, dated May 29, 2007 |
| **NY Action** | *BDCM Opportunity Fund II, LP, et al. v. Yucaipa American Alliance Fund I, L.P., et al.*, Index No. 650150/2012 (N.Y. Sup. Ct. N.Y. Cnty.) |
| **Objections** | 9033 Objections and Proposed Judgement Objections |
| **Opinion** | Opinion, dated May 4, 2021 (13-50530, D.I. 825; 14-50971, D.I. 563) |
| **Opposition** or **Opp.** | Opposition to the Litigation Trustee's Motion for Summary Judgment by Defendants Yucaipa American Alliance Fund I, L.P., Yucaipa American Alliance (Parallel) Fund I, L.P., Ronald Bukle, Ira Tochner, Derex Walker, Jos Opdeweegh, and Jeff Pelletier |
| **Order** | Order, dated May 4, 2021 (13-50530, D.I. 826; 14-50971, D.I. 564) |
| **Plan** | Second Amended Joint Plan of Reorganization, *In re Allied Holdings, Inc.*, No. 05-12515 (CRM) (Bankr. N.D. Ga.), D.I. 2802 |
| **Proposed Judgment Objections** | Objection to Entry of Judgment and Additional Objections to the Proposed Form of Judgment Submitted by the Litigation Trustee; Request for Stay in the Alternative, dated May 18, 2021 (13-50530, D.I. 830; 14-50971, D.I. 568) |
| **Requisite Lenders** | As defined in Allied's First Lien Credit Agreement |
| **Rule 2004 Motion** | Trustee's Motion for an Order Pursuant to Bankruptcy Rule 2004 and/or Sections 105(a) and 542(e) of the Bankruptcy Code Authorizing the Taking of Document Discovery and Deposition Testimony from the Yucaipa Funds, dated July 31, 2020 (12-11564, D.I. 4086) |
| **SDNY Compl.** | *Yucaipa Am. All. Fund I, L.P. et al. v. Richard A. Ehrlich et al.*, No. 15-cv-916 (S.D.N.Y. Feb. 6, 2015), ECF No. 1 |
| **Second Lien Credit Agreement** | Second Lien Secured Super-Priority Debtor in Possession and Exit Credit and Guaranty Agreement, dated as of May 15, 2007 |
| **Spectrum** | Spectrum Investment Partners, L.P. |

| | |
|---|---|
| **Stay Motion** or **Second Stay Motion** | Emergency Motion of Appellants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P.'s Motion for Stay of Effectiveness and Enforcement of Judgment Pending Appeal Pursuant to Bankruptcy Rules 7062 and 8007 (21-994, D.I. 4; 21-995, D.I. 4) |
| **Tender Offer** | February 4, 2009 tender offer by Yucaipa for Allied first lien debt |
| **Third Amendment** | Amendment No. 3 to First Lien Credit Agreement and Consent, dated as of April 17, 2008 |
| **Third Stay Motion** | Yucaipa's Motion for Stay of Proceedings Pursuant to Bankruptcy Rule 8007(e), dated October 4, 2021 (13-50530, D.I. 891; 14-50971, D.I. 626) |
| **Troutman** | Troutman Sanders LLP |
| **Trustee** or **Litigation Trustee** | Plaintiff Catherine E. Youngman, as Litigation Trustee for ASHINC Corp. (formerly known as Allied Systems Holdings, Inc.) and related Debtors |
| **Trustee Brief** | Litigation Trustee's Memorandum in Support of Motion for Partial Summary Judgment, dated May 1, 2020 (13-50530, D.I. 706; 14-50971 D.I. 463) |
| **Trustee Responses** | Trustee's Memorandum in Response to: (1) Yucaipa's Objections to Summary Judgment Opinion and Order, Entry of Judgment, and Proposed Form of Judgment, and (2) Questions from the Court, dated June 22, 2021 (13-50530, D.I. 836; 14-50947, D.I. 574) |
| **UVTA** | Uniform Voidable Transactions Act |
| **Withdrawal Motion** | Yucaipa's Motion for Entry of an Order Pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a) Withdrawing the Reference of Adversary Proceedings, dated October 4, 2021 (13-50530, D.I. 890; 14-50971, D.I. 625) |
| **Yucaipa** | Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P. |
| **Yucaipa Br.** | Memorandum of Points and Authorities in Support of Motion for Summary Judgment by Defendants Yucaipa American Alliance Fund I, L.P. and Yucaipa American Alliance (Parallel) Fund I, L.P., dated May 1, 2020 (13-50530, D.I. 697; 14-50971, D.I. 454) |
| **Yucaipa Directors** | Defendants Jos Opdeweegh, Derex Walker, Jeff Pelletier, and Ira Tochner |
| **Yucaipa-ComVest Transaction** | Yucaipa's August 21, 2009 purchase of ComVest's $145.1 million (principal face amount) of Allied First Lien Debt for approximately $43 million pursuant to the LPA |